<u>Response to Request for Production No. 30:</u>

Teva objects to this request to the extent that the phrase "supply agreement" is vague and ambiguous. Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as seeking information that is irrelevant to any issue in this lawsuit or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search related to agreements on the supply of risedronate in the United States.

<u>Request for Production No. 31:</u>

All documents and things relating to any desire, consideration or need by Defendant to obtain or not obtain a license under any of the patents-in-suit.

<u>Response to Request for Production No. 31:</u>

Teva objects to this request as seeking information that is irrelevant to any issue in this lawsuit or not reasonably calculated to lead to the discovery of admissible evidence. Teva objects tot his request to the extent that the phrase "desire, consideration, or need" is vague and ambiguous. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

WP3:1115673.1

999999.0755

Request for Production No. 32:

All documents and things related to licensing agreements among Defendant and/or between Defendant and any other person for the production, distribution or sale of risedronate.

Response to Request for Production No. 32:

Teva objects to this request to the extent that the phrase "among Defendant" is vague and ambiguous. Teva further objects to this request as seeking information that is irrelevant to any issue in this lawsuit or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search related to the production, distribution or sale of risedronate in the United States.

Request for Production No. 33:

All documents and things relating to any potential labeling, promotion, advertising or claims to be used in marketing risedronate by Defendant in the U.S. or any other country.

Response to Request for Production No. 33:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents not related to making, using, importing, promoting or selling products in the United States. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search related to marketing risedronate in the United States.

Request for Production No. 34:

All documents and things concerning marketing or whether to market risedronate in the U.S. or any other country.

Response to Request for Production No. 34:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents not related to making, using, importing, promoting or selling products in the United States. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search related to marketing risedronate in the United States.

Request for Production No. 35:

All documents and things relating to market share and market potential for risedronate in the U.S. or any other country.

Response to Request for Production No. 35:

Teva objects to this request to the extent that the phrase "market potential" is vague and ambiguous. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents not related to making, using, importing, promoting or selling products in the United States. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search relating to market share and potential for risedroante in the United States.

- 19 -

Request for Production No. 36:

    All documents and things relating to the dollar amounts expended or predicted to be expended by Defendant or any other person for the promotion of risedronate in the U.S. or any other country.

WP3:1115673.1

999999.0755

<u>Response to Request for Production No. 36:</u>

Teva objects to this request as overly broad, unduly burdensome, and seeking information

that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably

calculated to lead to the discovery of admissible evidence to the extent that it requires production

of documents not related to making, using, importing, promoting or selling products in the

United States. Teva additionally objects to this request to the extent that the phrase "or any other

person" is overly broad and unduly burdensome, and imposes an obligation upon Teva to inquire

about or search for documents and things that are not within its possession, custody, or control

within the meaning of Fed. R. Civ. P. 34. Subject to the foregoing Specific and General

Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or

control of Teva that can be located by a reasonable search related to the promotion of risedronate

in the United States.

<u>Request for Production No. 37:</u>
All documents and things relating to any comparison of risedronate to any other product.

<u>Response to Request for Production No. 37:</u>

Teva objects to this request to the extent that it imposes an obligation upon Teva to

inquire about or search for documents and things that are not within its possession, custody, or

control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly

broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of

a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible

evidence to the extent that it requires production of documents relating to "any other product."

Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-

privileged documents in the possession, custody, or control of Teva that can be located by a

reasonable search.

WP3:1115673.1                                                        999999.0755

<u>Request for Production No. 38:</u>

All documents and things relating to any comparison of risedronate to any product containing a bisphosphonate (including salts and esters thereof).

<u>Response to Request for Production No. 38:</u>

Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any product containing a bisphosphonate." Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search..

<u>Request for Production No. 39:</u>

All documents and things relating to the dollar amounts expended by Defendant or any other person for the preparation and filing of Abbreviated New Drug Application No. 77-132.

<u>Response to Request for Production No. 39:</u>

Teva objects to this request as seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that the phrase "or any other person" is overly broad and unduly burdensome, and imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva Pharmaceuticals

U.S.A., Inc. and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 40:

All documents and things relating to all forms of promotions for or marketing of risedronate in the U.S. or any other country by Defendant or any other person.

Response to Request for Production No. 40:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents not related to making, using, importing, promoting or selling products in the United States. Teva additionally objects to this request to the extent that the phrase "or any other person" is overly broad and unduly burdensome, and imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search related to the marketing of risedronate in the United States.

Request for Production No. 41:

All documents and things relating to any communications to or from Defendant's sales force, agents, dealers, representatives, distributors, the press, or any news wire service relating to this lawsuit, and/or any of the patents-in-suit.

Response to Request for Production No. 41:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege

and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the

foregoing Specific and General Objections, Teva will produce relevant, non-privileged

documents in the possession, custody, or control of Teva that can be located by a reasonable

search.

<u>Request for Production No. 42:</u>
      All documents and things relating to any market survey, market analysis, sales projections or forecast of customer demand with respect to risedronate in the U.S. or any other country.

<u>Response to Request for Production No. 42:</u>

      Teva objects to this request as overly broad, unduly burdensome, and seeking information

that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably

calculated to lead to the discovery of admissible evidence to the extent that it requires production

of documents not related to making, using, importing, promoting or selling products in the

United States. Teva further objects to this request to the extent that it imposes an obligation

upon Teva to inquire about or search for documents and things that are not within its possession,

custody, or control within the meaning of Fed. R. Civ. P. 34. Subject to the foregoing Specific

and General Objections, Teva will respond to the document requests with respect to Teva and

will produce relevant, non-privileged documents in the possession, custody, or control of Teva,

that can be located by a reasonable search related to risedronate in the United States.

<u>Request for Production No. 43:</u>
      All documents and things relating to Defendant's research and development efforts related to risedronate.

<u>Response to Request for Production No. 43:</u>

      Teva objects to this request to the extent that the phrase "research and development

efforts related to risedronate" is vague, ambiguous, overly broad, and unduly burdensome. Teva

additionally objects to this request to the extent that it calls for information that is protected by

                                                       

the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from

discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant,

non-privileged documents in the possession, custody, or control of Teva that can be located by a

reasonable search.

Request for Production No. 44:
　　　　All documents and things relating to Defendant's research and development of tablets
　　　　containing risedronate.

Response to Request for Production No. 44:

　　　　Teva objects to this request to the extent that the phrase "research and development" is

overly broad and unduly burdensome. Teva additionally objects to this request to the extent that

it calls for information that is protected by the attorney-client privilege and/or the work-product

doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General

Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or

control of Teva that can be located by a reasonable search.

Request for Production No. 45:
　　　　All documents and things relating to patent applications, including the patents
　　　　themselves, filed in any country by Defendant referencing, referring, or relating to
　　　　risedronate.

Response to Request for Production No. 45:

　　　　Teva objects to this request as overly broad, unduly burdensome, and seeking information

that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably

calculated to lead to the discovery of admissible evidence to the extent that it requires production

of documents not related to making, using, importing, promoting or selling products in the

United States. Teva additionally objects to this request to the extent that it calls for information

that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise

immune from discovery. Subject to the foregoing Specific and General Objections, Teva will

WP3:1115673.1　　　　　　　　　　　　　　　　　　　　　　　　　　　　999999.0755

produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 46:

All documents and things relating to any tests comparing P&G's risedronate product with the risedronate product that Defendant or any other person has produced.

Response to Request for Production No. 46:

Teva objects to this request to the extent that the phrase "risedronate product" is vague and ambiguous. Teva further objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 47:

Any samples of P&G products that contain risedronate that have been tested or examined by Defendant or any persons working on its behalf and the results of any such tests or examinations.

Response to Request for Production No. 47:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

WP3:1115673.1

999999.0755

Request for Production No. 48:

All documents and things relating to any testing performed using P&G's risedronate.

Response to Request for Production No. 48:

Teva objects to this request to the extent that the phrase "P&G's risedronate" is vague and ambiguous. Teva additionally objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 49:

All documents and things relating to Defendant's knowledge of Merck's, P&G's, or any other entity's activities in the research, patenting, development, manufacture, marketing, use or sale of any pharmaceutical formulation of risedronate.

Response to Request for Production No. 49:

Teva objects to this request to the extent that the phrase "any other entity's activities" is vague and ambiguous. Teva additionally objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-

WP3:1115673.1                                                                999999.0755

privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 50:
All documents and things relating to Defendant's activities in the research, patenting, development, manufacture, marketing, use or sale of any pharmaceutical formulation of risedronate or any other bisphosphonate, including salts and esters thereof.

Response to Request for Production No. 50:

Teva objects to this request to the extent that the term "activities" is vague, ambiguous, and overly broad. Teva further objects to this request as overly broad and unduly burdensome to the extent that the phrase "any other bisphosphonate" requires production of documents that are irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 51:
All documents and things Defendant contemplates introducing at trial.

Response to Request for Production No. 51:

Teva objects to this request as premature.

Request for Production No. 52:
All documents and things relied upon or referred to in preparing the Answer to Merck's Complaint in this action and Teva's Notice of Patent Certification, including, but not limited to, all reports, analyses, test results, or other materials.

Response to Request for Production No. 52:

Teva objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from

discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

<u>Request for Production No. 53:</u>
All documents and things produced to any other parties in connection with discovery in U.S. and foreign litigations concerning, referring, or relating to risedronate.

<u>Response to Request for Production No. 53:</u>
Teva additionally objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search

<u>Request for Production No. 54:</u>
All documents and things relating to any experts Defendant contemplates calling at trial, including but not limited to the educational and technical training of each expert and any publications authored by such expert.

<u>Response to Request for Production No. 54:</u>
Teva objects to this request as premature.

<u>Request for Production No. 55:</u>
All documents and things, including but not limited to organizational charts, showing identity and job titles of employees for all of Defendant's divisions and/or subsidiaries

WP3:1115673.1

999999.0755

involved in the research, development, production, analysis, design, manufacture, sale, distribution, marketing, or market analysis of risedronate.

Response to Request for Production No. 55:

Teva objects to this interrogatory as overly broad and unduly burdensome because it seeks information not relevant to any claim or defense of a party in this action and/or not reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva related to organizational charts of Teva since the filing of ANDA No. 77-132, that can be located by a reasonable search.

Request for Production No. 56:

All documents and things setting forth Defendant's document retention and/or destruction policies.

Response to Request for Production No. 56:

Teva objects to this interrogatory as overly broad and unduly burdensome because it seeks information not relevant to any claim or defense of a party in this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

Request for Production No. 57:

All documents and things relating to or constituting applications by Defendant to obtain regulatory approval for risedronate in a foreign country.

Response to Request for Production No. 57:

Teva objects to this request to the extent that the term "applications" is vague and ambiguous.  Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents not related to making, using, importing, promoting or selling products in the United States.  Teva additionally objects to this request to the extent that it calls

- 30 -

for information that is protected by the attorney-client privilege and/or the work-product

doctrine, or is otherwise immune from discovery.

Request for Production No. 58:
      All documents and things referring or relating to correspondence between Defendant and
      P&G referring or relating to risedronate.

Response to Request for Production No. 58:

      Teva objects to this request to the extent that it calls for information that is protected by

the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from

discovery.  Subject to the foregoing Specific and General Objections, Teva will produce relevant,

non-privileged documents in the possession, custody, or control of Teva that can be located by a

reasonable search.

Request for Production No. 59:
      All documents and things referring or relating to correspondence between Defendant and
      any third party relating to risedronate.

Response to Request for Production No. 59:

      Teva objects to this request as overly broad, unduly burdensome, and seeking information

that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably

calculated to lead to the discovery of admissible evidence.  Teva additionally objects to this

request to the extent that it calls for information that is protected by the attorney-client privilege

and/or the work-product doctrine, or is otherwise immune from discovery.  Subject to the

foregoing Specific and General Objections, Teva will produce relevant, non-privileged

documents in the possession, custody, or control of Teva that can be located by a reasonable

search relating to risedronate in the United States.

Request for Production No. 60:
      All documents and things that Defendant has submitted to or received from the FDA
      referring or relating to risedronate.

- 31 -

Response to Request for Production No. 60:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 61:

All documents and things referring or relating to safety and efficacy testing of risedronate.

Response to Request for Production No. 61:

Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 62:

All documents and things from the files of Deborah Jaskot referring or relating to risedronate.

Response to Request for Production No. 62:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 63:
All documents and things reflecting meeting minutes or notes or records of any meeting referring or relating to risedronate.

Response to Request for Production No. 63:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 64:
All documents and things reflecting correspondence referring to or relating to meeting minutes or notes or records of any meeting referring or relating to risedronate.

Response to Request for Production No. 64:

Teva objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 65:

All documents and things reflecting meeting minutes or notes or records of any meeting referring or relating to osteoporosis or drugs used in the treatment or prevention of osteoporosis.

Response to Request for Production No. 65:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad, unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 66:

All documents and things in the possession, custody or control of Deborah Jaskot referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

<u>Response to Request for Production No. 66:</u>

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

<u>Request for Production No. 67:</u>

All documents and things from the files of Marc Goshko referring or relating to risedronate.

<u>Response to Request for Production No. 67:</u>

Teva objects to this request as overly broad and unduly burdensome because it information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

WP3:1115673.1                                         999999.0755

Request for Production No. 68:

All documents and things in the possession, custody or control of Marc Goshko referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

Response to Request for Production No. 68:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 69:

All documents and things from the files of Christopher Pelloni referring or relating to risedronate.

Response to Request for Production No. 69:

Teva objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged

- 36 -

documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 70:

All documents and things in the possession, custody or control of Christopher Pelloni referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

Response to Request for Production No. 70:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 71:

All documents and things from the files of William Marth referring or relating to risedronate.

Response to Request for Production No. 71:

Teva objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to

WP3:1115673.1

999999.0755

the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 72:

All documents and things in the possession, custody or control of William Marth referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

Response to Request for Production No. 72:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 73:

All documents and things from the files of Uzi Karniel referring or relating to risedronate.

Response to Request for Production No. 73:

Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 74:

All documents and things in the possession, custody or control of Uzi Karniel referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

Response to Request for Production No. 70:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 75:

All documents and things from the files of Kenyon & Kenyon referring or relating to risedronate.

Response to Request for Production No. 75:

Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery.

Request for Production No. 76:

All documents and things in the possession, custody or control of Kenyon & Kenyon referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

Response to Request for Production No. 76:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery.

Request for Production No. 77:
All documents and things from the files of William A. Fletcher referring or relating to risedronate.

Response to Request for Production No. 77:

Teva objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 78:
All documents and things in the possession, custody or control of William A. Fletcher referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

Response to Request for Production No. 78:

Teva objects to this request to the extent that the term "relating to osteoporosis" is vague, ambiguous, overly broad, and unduly burdensome. Teva further objects to this request as overly broad and unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requires production of documents related to "any drug used in the treatment and prevention of osteoporosis." Teva additionally objects to this request to the extent that it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery. Subject to the foregoing Specific and General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva that can be located by a reasonable search.

Request for Production No. 79:

All documents and things received from any individuals or organizations related to risedronate.

Response to Request for Production No. 79:

Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 80:

All documents and things relating or referring to prescription volume or prescription data for risedronate.

Response to Request for Production No. 80:

Teva objects to this request to the extent that the terms "prescription volume" and "prescription data" are vague and ambiguous. Teva additionally objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search related to risedronate in the United States.

Request for Production No. 81:

All documents and things relating or referring to market share or sales of risedronate.

Response to Request for Production No. 80:

Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome because it seeks information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in

the possession, custody, or control of Teva, that can be located by a reasonable search related to market share or sales of risedronate in the United States.

Request for Production No. 82:
    All documents and things referring or relating to any bisphosphonate, including salts and esters thereof.

Response to Request for Production No. 82:

    Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent it requires production of documents relating to "any bisphosphonate." Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 83:
    All documents and things referring or relating to any consideration by Defendant for filing an Abbreviated New Drug Application for any bisphosphonate, including salts and esters thereof.

Response to Request for Production No. 83:

    Teva objects to this request to the extent that the term "consideration" is vague and ambiguous. Teva further objects to this request as overly broad, unduly burdensome, and seeking information that is irrelevant to any claim or defense of a party in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence to the extent it requires production of documents relating to "any bisphosphonate." Subject to the foregoing Specific and

- 44 -

General Objections, Teva will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 84:

All documents and things referring or relating to the license between Merck and P&G for risedronate products.

Response to Request for Production No. 84:

Teva objects to this request to the extent that it imposes an obligation upon Teva to inquire about or search for documents and things that are not within its possession, custody, or control within the meaning of Fed. R. Civ. P. 34. Subject to the foregoing Specific and General Objections, Teva will respond to the document requests with respect to Teva and will produce relevant, non-privileged documents in the possession, custody, or control of Teva, that can be located by a reasonable search.

Request for Production No. 85:

One hundred of each of the different tablet doses covered by Teva's Abbreviated New Drug Application No. 77-132.

Response to Request for Production No. 85:

Subject to the foregoing Specific and General Objections, Teva will produce representative samples of the different tablet doses covered by Teva's Abbreviated New Drug Application No. 77-132.

WP3:1115673.1

999999.0755

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*Karen E. Keller*

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672

*Attorneys for defendant Teva
Pharmaceuticals U.S.A., Inc.*

OF COUNSEL
James Galbraith
Maria Luisa Palmese
A. Antony Pfeffer
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 425-7200

WP3:1115673.1

999999.0755

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that I caused copies of the foregoing document to be served on May 25, 2005 upon the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Nicholas G. Barzoukas, Esquire
Howrey, Simon, Arnold & White
750 Bering Drive
Houston, TX 77057

_____
Karen E. Keller (No. 4489)

WP3:1045287.1

58956.1014

# EXHIBIT C

# JOURNAL OF
# Periodontology

Published by The
American Academy
of Periodontology

Volume 66, Number 3
March 1995

**Assessment of Periodontal Tissues Damping Characteristics: Current Concepts and Clinical Trials**
Daniel van Steenberghe, David Rosenberg, Ignace E. Naert, Luc Van den Bossche, Marleen Nys
165

**An Evaluation of Laser Doppler Readings Obtained From Human Gingival Sulci**
James E. Hinrichs, Leilani L. LaBelle, Dorothee Aeppli
171

**The Effects of Smokeless Tobacco on Clinical Parameters of Inflammation and Gingival Crevicular Fluid Prostaglandin $E_2$, Interleukin-1$\alpha$, and Interleukin-1$\beta$**
Thomas K. Poore, Georgia K. Johnson, Richard A. Reinhardt, Connie C. Organ
177

**Histological Location of a Standardized Periodontal Probe in Man**
Alfred Aguero, Jerry J. Garnick, James Keagle, David E. Steflik, William O. Thompson
184

**Removal of Interproximal Subgingival Plaque by Hand and Automatic Toothbrushes**
Jeffery Y. Taylor, Cheryl L. Wood, Jerry J. Garnick, William O. Thompson
191

**Use of the Carbon Dioxide Laser in Retarding Epithelial Migration: A Pilot Histological Human Study Utilizing Case Reports**
Michael Israel, Jeffrey A. Rossmann, Stuart J. Froum
197

**Vascular Changes Following Mucoperiosteal Flap Surgery: A Fluorescein Angiography Study in Dogs**
Thomas N. McLean, Billy A. Smith, Edith C. Morrison, Carlos E. Nasjleti, Raul G. Caffesse
205

**Alendronate Treatment of Naturally-Occurring Periodontitis in Beagle Dogs**
Michael S. Reddy, Thomas W. Weatherford, C. Anne Smith, Brian D. West, Marjorie K. Jeffcoat, Thomas M. Jacks
211

**The Effectiveness of a Disposable Tooth Cleansing Device on Plaque**
Maureen H. Lefkoff, F. Michael Beck, John E. Horton
218

**Prostaglandin $E_2$ Regulates Gingival Mononuclear Cell Immunoglobulin Production**
John C. Harrell, Sidney H. Stein
222

**The Effects of Scaling Procedures on Epithelial Cell Growth on Titanium Surfaces**
Deena R. Kuempel, Georgia K. Johnson, Rebecca S. Zaharias, John C. Keller
228

**Short-Term Effects of Phase I Therapy on Crevicular Cell Populations**
G. Boretti, U. Zappa, H. Graf, D. Case
235

**Factitious Injury of the Oral Mucosa: A Case Series**
K. Kotansky, M. Goldberg, H.C. Tenenbaum, D. Mock
241

**Letters to the Editor**
246

211

# Alendronate Treatment of Naturally-Occurring Periodontitis in Beagle Dogs*

*Michael S. Reddy, Thomas W. Weatherford, III, C. Anne Smith, Brian D. West, Marjorie K. Jeffcoat, Thomas M. Jacks*

THE TREATMENT OF PERIODONTAL DISEASE has been largely directed at the microbiological etiology. The prevention of bone loss by modulating the host response to the bacteria may be a useful adjunctive method in the management of periodontitis. Alendronate, an amino bisphosphonate, may inhibit bone loss in osteolytic diseases by altering osteoclast activity. The objective of this double-blind study was to evaluate alendronate inhibition of alveolar bone loss in the naturally occurring beagle dog model of periodontitis. Sixteen 7 to 9 year old beagles with moderate-to-severe periodontitis were studied for 6 months. The dogs were stratified into two groups based on initial periodontal severity. One group received 3.0 mg/kg alendronate weekly orally and the other group received a placebo. Silk ligatures were placed on the study teeth for the first 3 months of the study to exacerbate the periodontal destruction. Clinical data were collected for attachment level, gingival index, plaque index, and mobility at baseline and one-month intervals. Intraoral radiographs were made at baseline and at 3 and 6 months. The mandibles were processed for histolology at month 6. The radiographs were analyzed by digital image analysis of the subtracted images. A statistically significant difference in bone mass ($P < 0.001$) was observed between the alendronate and placebo groups. The bisphosphonate had no effect on the clinical parameters of gingival inflammation or plaque. A trend toward decreased attachment loss and mobility was observed in favor of the alendronate group. A significant difference in bone density ($P < 0.05$) was found by histomorphometric analysis. Bisphosphonate treatment may be beneficial in the management of alveolar bone destruction associated with periodontal destruction. *J Periodontol 1995; 66:211–217.*

**Key Words:** Bone resorption/prevention and control; periodontitis/drug therapy; bisphosphonates/therapeutic use; double-blind studies.

The periodontal destruction syndrome is initiated by one or more bacterial pathogens. The bacterial species and the immunological response of the host are responsible for the bony destruction observed in the periodontal diseases. The treatment of periodontal disease has largely concentrated on the bacterial etiology, through the use of mechanical instrumentation and surgical alteration of the sites. Pharmaceutical treatment adjuncts have also mainly addressed the bacterial side of the equation through the use of antibiotics and antimicrobials.

In the past 10 years it has been demonstrated that modulation of the host response may play an important role in controlling alveolar bone destruction. Non-antibiotic tetracyclines have been shown to have an anticollagenolytic effect on the periodontium.[1] Non-steroidal anti-inflammatory drugs may have a strong role in the management of the mediators of inflammation associated with alveolar bone

destruction.[2] The prevention of the bone loss associated with periodontal disease progression by modulation of the host response may, therefore, be an adjunct approach to the management of periodontitis.

Alendronate, an amino bisphosphonate, is currently under investigation for the treatment of a variety of bone diseases. Earlier studies have indicated that systemic administration of alendronate is rapidly taken up by bone tissues or excreted by the kidneys.[3] Once taken up by bone, the drug acts as an antiosteolytic agent. Alendronate binds to resorption surfaces, and is locally released during the acidification associated with osteoclastic activity. This release leads to a rise in the local concentration of alendronate resulting in an alteration in the ruffled border membrane characteristic of osteoclasts without destroying the cells.[4] Therefore, the mode of action of the bisphosphonate alendronate is believed to be inhibition of bone resorption by altering osteoclast activity.

Bisphosphonates have been utilized to prevent bone loss in ovariectomized animals[5,6] and in estrogen-deficient

*The University of Alabama, School of Dentistry, Department of Periodontics, Birmingham, AL.

Case 1:04-cv-00939-GMS    Document 63-4    Filed 06/16/2006    Page 35 of 40



*Figure 1. A schematic representation illustrating the image processing methods that were utilized to obtain quantitative measurements of bone loss.*

women.[7] Bisphosphonates have been used in the treatment of malignant hypercalcemia,[8] Paget's disease,[9] and osteoporosis.[10] Alendronate may, therefore, have a potential role in the inhibition of alveolar bone loss in periodontal disease.

The beagle dog model, with naturally-occurring periodontal disease, has been utilized extensively as a test environment for potential periodontal therapies. The use of aged adult beagles who are not actively growing allows for a more accurate transition of findings to clinical practice. The classic model of naturally-occurring disease in the dog has been modified in this study by use of ligatures to induce all sites into an active phase of periodontal destruction. Thereafter the ligatures are removed allowing the natural progression of periodontitis to proceed to a chronic phase. The use of an active and chronic phase in the naturally-occurring dog model may provide a more rigorous challenge for the test of proposed preventive and regenerative periodontal therapy.

The goal of this study was to evaluate the effect of the bisphosphonate drug alendronate on radiographic bone loss and clinical parameters associated with the progression of periodontitis in the naturally-occurring beagle dog model.

## MATERIALS AND METHODS

### Experimental Design

Sixteen beagles with moderate-to-severe alveolar bone loss were studied for a 6-month period. All animals were 7 to 9 years of age and were female. Clinical measurement of attachment level, gingival index, plaque index, and mobility was performed monthly. Intraoral radiographs were made every 3 months. The radiographs were analyzed by digital image analysis of the subtracted radiographs. At month 6 the animals were sacrificed and examined by histomorphometric analysis.

The dogs were stratified into two groups based on the amount of existing bone loss at the start of the study. In order to activate and accelerate the disease process, silk

ligatures were placed on the mandibular premolar teeth for the first 3 months, followed by a 3-month chronic disease progression phase. The ligatures insured that an exacerbation of the disease occurred during the study. The second 3-month phase allowed the activated disease process to progress to a chronic phase.

### Dosing and Clinical Examination

This double-blind study was placebo controlled with each dog receiving either alendronate or placebo orally, once a week in the morning before feeding. In order to aid absorption, food was withheld for 2 hours after dosing. The weekly dose was 3.0 mg/kg for both the alendronate and the lactose placebo group.

All examinations were performed without knowledge of the regimen received by each dog. The dosing code was not revealed until all data were analyzed. At one month intervals the following clinical determinations were made at the premolar study sites: gingival index,[11] plaque index;[12] attachment level measurement from the cemento-enamel junction to the base of the periodontal pocket using a Michigan O Probe; and mobility.[13] All clinical examination parameters were made by the same examiner throughout the study.

### Radiographic Exam and Analysis

Standardized intraoral radiographs were made by fabricating custom occlusal registration appliances for each radiographic projection. An aluminum reference wedge was incorporated in each custom film holder to provide a density reference. In order to assure that the radiographs were assessed without knowledge of the identity of the dog and treatment group, a random number table was used to code each radiographic series.

A personal computer-based image processing work station was used to obtain quantitative measurements (Fig. 1) of bone loss. For each measurement, the radiograph was placed under a video camera and digitized with $512 \times 512$ pixels of spatial resolution and 8 bits (256 gray levels) of

contrast resolution. The first radiograph was digitized and stored on an optical disk. The subsequent radiographic image was aligned to the initial image by manipulating it under a video camera. The images were corrected for variations in contrast and film tilt using computer algorithms.[14,15] The second radiographic image was then subtracted from the first, with the resultant subtraction image showing areas of bone loss (dark areas) and bone gain (light areas) against a neutral gray background. Measurements of bone loss or gain were made along each root surface interactively using a mouse as the pointing device.

The estimate of bone mass change was achieved by converting the subtraction image to a binary image of black and white using a variable operator-controlled threshold. The operator adjusted the threshold until the change appeared white against a background which was black. A morphologic filter was applied to the image to limit the remaining noise in the image.[16] An erode operation was performed on the binary image to remove isolated pixel noise. A dilate operation was then performed on the binary image to remove isolated pixel noise. A dilate operation was then performed to restore the areas of bony change to their approximate original size. Pseudocolor image enhancement was used to represent areas of bone gain as green and areas of bone loss as red.[17] Regions of no change were displayed as the original shades of gray. The color-enhanced image was electronically added to the original radiograph so that the area of change could be visualized on the original radiographic image (Fig. 1). A comparison of the mean change in gray level at the color enhancement region to the gray levels from the subtraction image of the reference wedge allowed calculation of the thickness of the lesion. The thickness and area measurements were used to calculate an index of bone mass change. Previous studies have indicated that the error in repeatability of determination of areas was 4% and that calculated changes in bone mass correlated ($r^2 > 0.9$) with actual changes in bone mass.[16]

### Histomorphometric Analysis

At month 6 the animals were sacrificed and the mandibles, including the test teeth and soft tissue, were removed and fixed in 10% buffered formalin. The specimens were demineralized in 15% formic acid for 2 weeks, dehydrated in increasing ethanol solutions, and embedded in methyl methacrylate. Frontal (bucco-lingual) serial sections (6 mm thick) were cut through mid-furcation areas of second, third, and fourth premolars perpendicular to the long axis of the mandible so as to include the most coronal portion of the buccal and lingual bone and inter-radicular spaces.[18] Sections were deplastified in warm xylene overnight and stained with Masson's trichrome stain.

Quantitative analysis of bone density was determined by the aerial fraction of bone as it relates to its volume. The volume was ascertained using uniform weight and density 5 × 7 black and white photography paper.[19] The central

sections of each dog's mandible were photographed at × 45 magnification. These photographs were made of uniform areas at the apices of the teeth sectioned. Weights being equal, areas of volume were determined, and density established by weighing the amount of mineralized versus non-mineralized component of bone. With each photograph, the bone was out of the picture using a surgical scalpel blade. The bone was weighed using an analytical balance measuring to the nearest milligram. The print of the bone was further sectioned into mineralized and non-mineralized components and weighed individually. These differences in mass of mineralized and non-mineralized bone were then converted into relative percentages for each photographed section. The resulting percentages were then interpreted into the relative densities of the bone.

### Statistical Analysis

The data presented in this report were derived from analysis of variance measures (ANOVA) for each outcome parameter. The dogs and not the site or teeth were used as the unit of analysis between groups. The ANOVA model therefore corrected the error term to account for the nesting of tooth sites within dogs. Teeth that were lost during the study were included in the analysis to that point in time and were statistically treated as equivalent to the most severely involved sites.

### RESULTS

#### Bone Mass and Bone Height

Bone mass was the primary outcome variable for the study. The bone mass or mg equivalents of bone were measured from a reference wedge incorporated into the radiographic films used for digital subtraction radiography. Figure 2 indicates the change in mg of bone for the two groups at 3 and 6 months. From baseline to 3 months, both groups lost bone with no significant difference between the groups. At this point both groups had silk ligatures tied on the study



*Figure 2. The change in bone mass at 3 and 6 months for the alendronate and placebo groups. A statistically significant difference between the groups was observed at 6 months.*

J Periodontol
March 1995

teeth. Following removal of the ligatures both groups demonstrated a gain in bone mass. The alendronate group, however, demonstrated an increase in bone mass above baseline in spite of the activated periodontitis. The placebo group also demonstrated an increase in bone mass which did not recover to baseline. At 6 months a highly significant ($P$ <0.001, ANOVA) difference in bone mass was found between the alendronate and placebo groups.

In addition, the administration of alendronate had an effect on bone height when compared to the placebo group (Fig. 3). Both groups lost bone height when the ligatures were in place during the first 3 months. The placebo group continued to lose bone height at a decreased rate during the second 3 months, whereas a significant rebound in bone height ($P$ < 0.01, ANOVA) almost to baseline was noted in the alendronate group at 6 months.

Overall, the alendronate group lost $0.2 \pm 0.1$ mm and the placebo group $1.4 \pm 0.1$ mm of bone height during the 6-month study.

## Plaque Index

Figure 4 illustrates the clinical measurement of plaque on the teeth on a 4-point scale from 0 to 3, with 3 being severe plaque accumulation on the teeth. The data illustrated no change in plaque over time and no change in either group from baseline. A separation in the groups was observed at the 4-month time point that was not sustained at 5 and 6 months.

## Gingival Index

Figure 5 illustrates the gingival inflammation observed over time. The GI scale was again based on clinical observations on a scale of 0 to 3, with 3 being the most severe gingival inflammation. There was no change in the gingival inflammation observed over the course of the study. Similarly, there was no significant difference in inflammation between groups.

## Attachment Level

Clinical attachment level was measured with a periodontal probe from the cemento-enamel junction to the base of the periodontal pocket. A decreasing number represented a gain of attachment level. Figure 6 indicates the mean attachment loss for each group over time. The groups tended to show a difference at 6 months favoring the alendronate group. However, when we examined the change in attachment level relative to baseline (Fig. 7) the difference was not significant; although a trend for the alendronate group to have less attachment loss than the placebo group was still readily apparent.

## Mobility

Mobility was measured as movement to a lateral force. A mobility of 1 indicated 1 mm of movement. The scale for mobility was from 0 to 3. Figure 8 indicates that when the 6-month data were compared to the time 0 data, the alendronate group showed a decrease in mobility whereas the



*Figure 4. The plaque index for the alendronate and placebo groups measured at one-month intervals. No effect on plaque levels was evident during the study.*



*Figure 3. The change in bone height at 3 and 6 months for the alendronate and placebo groups. The placebo group demonstrated significantly more bone loss at 6 months.*



*Figure 5. The gingival index for the alendronate and placebo groups measured at 1-month intervals. Consistently high gingival inflammation was observed in both groups.*

Volume 66
Number 3



*Figure 6. The change in attachment level measured at 1-month intervals. A decrease in the attachment level measurement indicates a gain in clinical attachment. A trend favoring the alendronate group was observed.*



*Figure 7. A re-analysis of the change in attachment level correcting for the amount of attachment at baseline. A positive change in attachment level represents a gain in clinical attachment. No significant change in attachment level was observed after correction for the baseline amount of attachment loss.*



*Figure 8. The change in mobility at 2 months. The alendronate group demonstrated decreased mobility whereas a trend for increased mobility was observed in the placebo group.*

placebo group showed a trend toward increased mobility. Figure 9 demonstrates the change in mobility over time relative to the initial mobility of the teeth. In the last 3 months, the alendronate group had a tendency toward a decrease in mobility when compared to the control group.

## Histomorphometric Analysis

The histological sections were examined to determine the amount of mineralized cortical and trabecular bone versus non-mineralized medullary space present in the central bucco-lingual sections of the alveolar bone at each test tooth site. The mean percentage of mineralized bone for the alendronate and placebo groups is illustrated in Figure 10. A statistically significant difference in bone density was observed between the groups at the end of the study. This difference may represent prevention of the loss of bone density by administration of alendronate or a gain in density induced by the drug. Overall, the mean percentage of mineralized bone for the alendronate group was $96.8 \pm 1.8\%$ and $85.2 \pm 4.7\%$ for the placebo group ($P < 0.05$, AN-



*Figure 9. The change in mobility relative to baseline for the alendronate and placebo groups at one-month intervals.*



*Figure 10. The mean percentage of mineralized tissue found on histomorphometric analysis of the alendronate and placebo groups at 6 months.*

Case 1:04-cv-00939-GMS    Document 63-4    Filed 06/16/2006    Page 39 of 40

J Periodontol
March 1995



*Figure 11. A bucco-lingual section of an alendronate treated dog demonstrating that most of the section is mineralized bone.*

*Figure 12. A bucco-lingual section of a placebo treated dog showing a higher proportion of non-mineralized connective tissue in the alveolar bone of the bisphosphonate treated example.*

OVA). Examples of typical sections from the alendronate (Fig. 11) and placebo (Fig. 12) groups show a striking difference in the amount of trabecular bone present. The bone in the alendronate group appears within normal limits without the mottled appearance often described in histologic sections of bisphosphonate treated bone.

## DISCUSSION

The beagle dog model for naturally-occurring periodontal disease was utilized in this study. In the absence of oral hygiene measures, as beagles age they will develop gingival inflammation, periodontal pockets, alveolar bone loss and tooth mobility which are very similar to human periodontitis. The beagles in this study were 7 to 9 years of age and had developed moderate-to-severe periodontitis as determined by clinical and radiographic examinations. In pre-

vious studies where a similar experimental design was used to test a potential pharmacological agent in beagles and subsequently in human subjects, comparable results were observed in both the beagle model and in the patients.[2,20]

To further exacerbate the periodontal condition of the dogs, silk ligatures were utilized on the study teeth for the first 3 months of the study. This approach is unique in that both the chronic naturally-occurring model and the acute ligature model of periodontal disease progression in the beagle dog were considered. The effectiveness of any adjunctive agent may depend on the disease activity of the host being examined. This was exemplified by the bone mass, bone height, and attachment level data. With the ligatures in place, a decrease in bone mass was observed for both the alendronate and placebo groups during the first 3 months. After removing the ligatures both groups tended to recover during the chronic phase. The alendronate group made a striking gain in bone mass beyond the mass at the start of the study. The placebo group bounded back slightly after ligature removal but never back to the level at baseline. Overall, the alendronate group gained bone mass, while the placebo group lost bone mass during the study. The alendronate group and placebo group both lost bone height during the ligature phase. After ligature removal, the alendronate group gained bone height, while the placebo group continued to lose bone support. The standard error of the radiographic bone measurements was greater at 3 months than at 6 months. The variance may be due to the different response of some of the animals to the presence of the ligatures on the teeth.

The change in attachment level data showed a similar trend in which the alendronate group tended to gain attachment level in the last 2 months whereas no change in attachment level was observed in the placebo group. The placebo group tended to show loss of attachment during the acute ligature phase, but no attachment loss was evident in the alendronate group. Overall, the tendency for attachment level gain in the alendronate group was not found to be statistically significant. The bisphosphonate therapy was effective in preventing the loss of attachment that was observed in the placebo group during the first 3 months of the study.

The histological analysis demonstrated a significant difference in bone density favoring the alendronate group. Since the histomorphometric analysis only examines the 6-month time point it can be inferred that the bone density difference represents a prevention of loss of bone density due to periodontitis in the treatment group. However, in 7 to 9 year-old dogs the difference between groups observed may be a gain in bone density beyond baseline in the alendronate group.

The gingival index and plaque index demonstrated no difference between the bisphosphonate-treated group and the control group. This result is consistent with previous findings. Bisphosphonate administered intravenously in monkeys retarded the progression of experimental perio-

dontitis as measured by bone density but did not significantly affect the clinical indices of plaque and gingival inflammation.[21] The present study is unique in that it demonstrates an effect on bone at the clinical radiographic and histologic levels after administration of a bisphosphonate orally. Further, the weekly oral dose of alendronate inhibited periodontal progression. If the mechanism of action of the bisphosphonate treatment is directly on bone by alteration and inhibition of osteoclasts, then we would not expect alendronate to have any effect on plaque or inflammation. This may be clinically very important in that the action of the bisphosphonate is independent of the bacterial plaque accumulation present. Therefore, bisphosphonate therapy may be combined with conventional periodontal treatment directed against the microbiological aspects of the disease and also utilized in conjunction with regenerative therapies. The use of bisphosphonates in combination with mechanical surgical approaches, bone grafting, and dental implants may be potential applications of bisphosphonate therapy. Moreover, alendronate accumulates in the bone and may provide protection after the administration of the drug has stopped.

The use of alendronate in beagles with active periodontitis has clearly demonstrated that administration of a bisphosphonate reduced bone loss associated with periodontitis progression. The administration of alendronate may provide a strong adjunctive effect in the management of adult periodontal patients. The use of bisphosphonates may ultimately be added to the armamentarium of the periodontist.

## Acknowledgments

The authors very much appreciate the technical input and animal care provided by Ms. Patsy Henson and Ms. Martha Wilkins in the Department of Orthopaedic Surgery and the veterinary staff in the Department of Comparative Medicine. The University of Alabama at Birmingham supports the Animal Welfare Act in regard to research animal handling and care. We would also like to thank Ms. Elizabeth Gill for her help in administrating the study and preparation of the manuscript. The authors wish to recognize the scientific input of Dr. Miron Weinreb of Tel Aviv University. This study was supported by a grant from Merck & Company, Inc.

## REFERENCES

1. Golub LM, Suomalainen K, Sorsa T. Host modulation with tetracyclines and their chemically modified analogues. *Curr Opin Dent* 1992; 2:80–90.
2. Williams RC, Jeffcoat MK, Howell TH, et al. Altering the progression of human alveolar bone loss with the non-steroidal anti-inflammatory drug flurbiprofen. *J Periodontol* 1989; 60:485–490.
3. Lin JH, Chen IW, Deluna FA, Hichens M. Renal handling of alendronate in rats. An uncharacterized renal transport system. *Drug Metab Dispos* 1992; 20:608–613.
4. Sato M, Grasser W, Endo N, et al. Bisphosphonate action. Alendronate localization in rat bone and effects on osteoclast ultrastructure. *J Clin Invest* 1991; 88:2095–2105.
5. Thompson DD, Seedor JG, Quartuccio H, et al. The bisphosphonate, alendronate, prevents bone loss in ovariectomized baboons. *J Bone Miner Res* 1992; 7:951–960.
6. Seedor JG, Quartuccio HA, Thompson DD. The bisphosphonate alendronate (MK-217) inhibits bone loss due to ovariectomy in rats. *J Bone Miner Res* 1991; 6:339–346.
7. Smith ML, Fogelman I, Hart DM, Scoth E, Bevan J, Leggate I. Effect of etidronate disodium on bone turnover following surgical menopause. *Calcif Tissue Int* 1989; 44:74–79.
8. Jung A, Van Ouwenaller C, Chantraine A, Courvoisier B. Parental disphosphonates for treating malignant hypercalcemia. *Cancer* 1981; 48:1922–1925.
9. O'Doherty DP, Gertz BJ, Tindale W, Sciberras DG, Survill TT, Kanis JA. Effects of five daily 1 h infusions of alendronate in Paget's disease of bone. *J Bone Miner Res* 1992; 7:81–87.
10. Watts NB, Harris ST, Genant HK, et al. Intermittent cyclical etidronate treatment of postmenopausal osteoporosis. *New Engl J Med* 1990; 323:73–79.
11. Löe H, Silness J. Periodontal disease in pregnancy I. Prevalence and severity. *Acta Odontol Scand* 1963; 21:533–535.
12. Löe H, Silness J. Periodontal disease in pregnancy II. Correlation between oral hygiene and periodontal condition. *Acta Odontol Scand* 1964; 22:121–135.
13. Ramfjord SP. Indices for prevalence and incidence of periodontal disease. *J Periodontol* 1959; 30:51–59.
14. Ruttimann UE, Webber RL, Schmidt E. A robust digital method for film contrast correction in subtraction radiography. *J Periodont Res* 1986; 21:486–495.
15. Webber RL, Ruttimann UE, Groenhuis RAJ. Computer correction of projective distortions in dental radiographs. *J Dent Res* 1984; 63: 1032–1036.
16. Jeffcoat MK, Reddy MS, Jeffcoat RL. A morphologically aided technique for quantitative subtraction of dental radiographic images. *IEEE/EMBS* 1990; 12:2068–2070.
17. Reddy MS, Bruch JM, Jeffcoat MK, Williams RC. Contrast enhancement as an aid to interpretation in digital subtraction radiography. *Oral Surg Oral Med Oral Pathol* 1991; 71:763–769.
18. Weinreb M, Quartuccio H, Seedor JG, et al. Histomorphometrical analysis of the effects of the bisphosphate alendronate on bone loss caused by experimental periodontitis in monkeys. *J Periodont Res* 1994; 29:35–40.
19. Hilliard JE. Measurement of volume in volume. In: DeHoff RT, Rhines FN, eds. *Quantitative Microscopy*, Vol. 1. McGraw and Hill: New York; 1968: 53–58.
20. Williams RC, Jeffcoat MK, Wechter WJ, Johnson HG, Kaplan ML, Goldhaber P. Flurbiprofen: A potent inhibitor of alveolar bone resorption in beagles. *Science* 1985; 227:640–642.
21. Brunsvold MA, Chaves ES, Kornman KS, Aufdemorte TB, Wood R. Effects of a bisphosphonate on experimental periodontitis in monkeys. *J Periodontol* 1992; 63:825–830.

Send reprint requests to: Dr. Michael Reddy, UAB School of Dentistry, UAB Station 34, 1919 7th Avenue South, Birmingham, AL 35294-0007.
Accepted for publication August 22, 1994.

Case 1:04-cv-00939-GMS   Document 63-4   Filed 06/16/2006   Page 40 of 40