# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 01-048 (JJF) |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | ~~CONFIDENTIAL SUBJECT TO~~ |
| | ) | ~~PROTECTIVE ORDER~~ |
| Defendant. | ) | |
| | ) | |

**EXPERT REPORT OF GRAHAM RUSSELL**

### I.    QUALIFICATIONS

I am currently the Norman Collison Professor of Musculoskeletal Sciences in the Nuffield Department of Orthopaedic Surgery at the University of Oxford, UK. I am a British citizen. I graduated with First Class Honors in Biochemistry from the University of Cambridge in 1962, and subsequently gained my Ph.D. from the MRC Mineral Metabolism Unit at the University of Leeds. In 1965, I joined Dr. Herbert Fleisch's Medical Research Institute in Davos, Switzerland, and our collaborative work led to the discovery of the biological effects of bisphosphonates. I then moved to Oxford University, where I continued research based at the Nuffield Department of Orthopaedic Surgery. My work with Roger Smith led to the first successful clinical application of bisphosphonates to Paget's disease of bone. Between 1967 and 1971 I completed my medical degree with distinction, having previously completed my pre-clinical studies at Cambridge. I held the Medical Research Fellowship at St. Peter's College from 1972-76. I was awarded my D.M. at Oxford in 1976, and also gained Membership and subsequently Fellowship in the Royal Colleges of Physicians and of Pathology.

During the 1970s, I held appointments in the University of Berne with Herbert Fleisch, and at Harvard University with John Potts and Stephen Krane as the Chiefs of the Endocrine and

Arthritis Units respectively at the Massachusetts General Hospital, before moving in 1976 to the Department of Chemical Pathology in the University of Sheffield Medical School, under the leadership of Jack Martin. I became Professor and Head of the Department of Human Metabolism and Clinical Biochemistry in 1977. Over the following years, I helped to establish Sheffield as a major international center for the study of basic and clinical aspects of bone diseases, and my group has nurtured many clinicians and PhDs who now hold senior positions in the field.

I have worked on topics related to calcium metabolism and bone diseases throughout my career and I am author of more than 480 publications. I have played a central role in studying the biological effects of bisphosphonates, and in their clinical evaluation for the treatment of bone disorders, now including cancer metastases in bone and osteoporosis. My other research interests include bone cell biology, the role of cytokines and hormones, and the pathogenic mechanisms involved in tissue destruction such as occurs in rheumatoid arthritis and osteoarthritis. Current research activities also include studies in myeloma, bone metastases, and other skeletal disorders. My clinical research interests include metabolic bone diseases and osteoporosis, the evaluation of new therapeutic agents and their mode of action, the pharmacology of bone and cartilage, and the use of biochemical methods for monitoring bone and joint metabolism.

I currently hold several national and international appointments in scientific and charitable activities related to bone disease and arthritis. For the Nuffield Foundation (UK), I am Chairman of the Oliver Bird Committee, which is a segment of the Foundation that funds rheumatology research. I am Chairman of the Scientific Advisory Committee of the National Association for Paget's Disease (UK), and a recent member of the Research Advisory Committee for Research into Aging. I am also a member of the Medical Advisory Panel of the

2

Paget's Foundation in the United States. In April 1997, I was co-Chairman of the 25th European

Symposium for Calcified Tissues held in Harrogate, UK. From 1998-2001, I was the President

of the International Bone and Mineral Society, the longest established international academic

society in this field. From 2000 to 2002 I am serving as Chairman of the Council of

Management of the National Osteoporosis Society (NOS, UK), the largest national charity

devoted to osteoporosis.

I was Heberden Orator of the British Society of Rheumatology in 1993, received the John

B. Johnson award from the Paget's Foundation (USA) in 1997, and the Kohn award of the NOS

in 2000. I received the W.F. Neuman award of the American Society of Bone and Mineral

Metabolism in 2000. This is the most senior award of the ASBMR and I was the first British

scientist to receive it. I was elected a Fellow of the Academy of Medical Sciences (UK) in 2000.

In 2001, I was appointed to the newly established Norman Collison Chair of

Musculoskeletal Sciences at Oxford University and I am the first Director of the Oxford

University Institute of Musculoskeletal Sciences (also known as the Botnar Research Centre)

which opened in 2002. I am a Professorial Fellow at St. Peter's College, University of Oxford.

I have been retained by Kenyon & Kenyon to give my opinions regarding certain aspects

of this litigation. My opinions are set forth in detail below. A copy of my curriculum vitae is

attached as Exhibit A. In addition to the opinions set forth here, I may respond to the opinions

and testimony of Merck's witnesses regarding these issues.

## II.     SUMMARY OF OPINIONS

1.     Claims 1-4, 6, 7, 16-19, 21, 22, 30-32, 35, and 36 of the '329 patent are

anticipated by the April 1996 *Lunar News*.

2.     Claims 1-4, 6-9, 16-19, 21-23, 30-33, and 35-37 of the '329 patent are anticipated

by the July 1996 *Lunar News*.

3

3.     Claims 1-3 of the '329 patent are anticipated by Reddy, J. Periodont. 66(3), 211-17 (1995).

4.     Claims 1-4, 6 and 7 of the '329 patent are anticipated by PCT publication WO 95/30421 (Goodship).

5.     As of July 1996, the administration of alendronate sodium once per week at a dose sufficient to inhibit bone resorption would have been obvious to a person of ordinary skill in the art.

6.     In particular, as of July 1996, the administration of alendronate sodium once per week at a dose of 70 mg to treat osteoporosis would have been obvious to a person of ordinary skill in the art. Likewise, as of July, 1996, the administration of alendronate sodium once per week at a dose of 35 mg to prevent osteoporosis would have been obvious to a person of ordinary skill in the art.

7.     As of July 1996, the use of a "kit" consisting of a blister pack and more than one alendronate sodium tablet for administration on a weekly basis would have been obvious to a person of ordinary skill in the art.

8.     The above statements are likewise true at any time between July 1996 and July 22, 1997, the filing date of Merck's first provisional application from which the '329 and '294 patents claim priority.

## III.    BASIS FOR OPINIONS

### A.    Background

Bone is made up of mineral, a fibrillar organic matrix (about 90 percent collagen), cells and water. The mineral portion accounts for about two-thirds of the total dry weight of the bone. The main constituent of the mineral is calcium phosphate, although it is more correctly referred to as imperfectly crystalline hydroxyapatite. The mineral also contains many other constituents

4

| | would have been recognized by a person of skill in the art to be inherent in the Lunar News disclosure. |
|---|---|
| . . . orally administering to said human . . . | The reference teaches oral administration of alendronate. |
| . . . a pharmaceutically accepable amount of alendronate monosodium trihydrate as a unit dosage . . . | The reference teaches the use of higher unit dosages of alendronate on a less frequent basis. Moreover, the reference teaches that single doses of alendronate were shown to have sustained biological responses in patients. Thus, a person of skill in the art would have understood that the reference was teaching the use of "pharmaceutically effective" amounts of the compound, and would have expected such a regimen to be effective. The only approved form of alendronate on the market at that time was alendronate monosodium salt trihydrate, *i.e.*, the active ingredient of Fosamax. |
| . . . according to a continuous schedule having a once-weekly dosing interval. | The April 1996 *Lunar News* teaches the use of higher doses of alendronate on a weekly basis. |

### 3.    Reddy anticipates claims 1 through 3 of the '329 patent

Reddy, J. Periodontology, 66, 211-17 (1995), discloses the once-weekly oral administration of alendronate to beagle dogs with experimentally induced periodontal disease. The study utilized 7 to 9 year old female beagles that had silk ligatures applied to the mandibular premolar teeth for the first three months of the study. After three months the ligatures were removed in order to mimic a chronic progression phase. The author states that results obtained with this particular beagle model have been comparable to those seen in human patients. The double-blind study involved each of the dogs receiving either alendronate or placebo orally once a week in the morning two hours prior to feeding.

Reddy discloses that "The use of alendronate in beagles with active periodontitis has clearly demonstrated that administration of a bisphosphonate reduced bone loss associated with periodontitis progression. The administration of alendronate may provide a strong adjunctive effect in the management of adult periodontal patients."

14

The Reddy article anticipates at least claims 1 through 3 of the '329 patent. The correspondence between the Reddy disclosure and claim 3 of the '329 patent is shown below.

| '329 Patent Claims | Reddy et al. |
|---|---|
| 3. A method for inhibiting bone resorption in a mammal in need thereof . . . | Reddy discloses a method for inhibiting the increased bone resorption associated with periodontitis progression in a beagle dog model. (*See e.g.*, pp. 216-217) |
| . . . comprising orally administering to said mammal . . . | Reddy discloses oral administration of alendronate to the beagles. (*See e.g.*, p. 212) |
| . . . a pharmaceutically acceptable amount of . . . alendronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof . . . as a unit dosage . . . | Reddy discloses the administration of "alendronate," which would comprise either alendronic acid, alendronate sodium (or another salt), or mixtures thereof, in amounts that are effective at inhibiting bone resorption. |
| . . . according to a continuous dosing schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing. | Reddy discloses once-weekly administration of alendronate to the beagles for six months. (*See e.g.*, p. 212) |

### 4.    The Goodship publication anticipates at least claims 1 through 4, 6 and 7 of the '329 patent

Goodship concerns the administration of bisphosphonates to prevent prosthesis loosening and prosthesis migration. It discloses that arthroplasty (surgical reconstruction of a joint) is common for the treatment of people with osteoporotic fracture, among other things. Goodship discloses the use of bisphosphonates, including alendronate, i.e., "4-amino-1-hydroxybutane-1,1-disphosphonic acid, . . ., a pharmaceutically acceptable salt thereof, and any hydrate thereof" (p. 5), for the prevention and treatment of periprosthetic osteolysis following arthroplasty. Goodship states that the compound may be administered orally, and that "the dose mentioned above – either administered as a single dose (which is preferred) or in several partial doses – may be repeated, either once daily, once weekly, once every month, once every three months, once every six months or once a year." (p. 7). The application of the Goodship disclosure to the claims is set forth in the table below.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,                              )
                                                )
              Plaintiff,                        )
                                                )
       v.                                       )  Civil Action No. 01-048 (JJF)
                                                )
TEVA PHARMACEUTICALS USA, INC., and             )
                                                )
              Defendant.                        )
                                                )

## TEVA PHARMACEUTICALS USA'S
## RESPONSE TO MERCK'S FIRST SET OF DOCUMENT REQUESTS (1-60)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Teva responds to Merck's

First Set of Document Requests as follows.

Each response is subject to all objections as to competence, relevance, materiality,

propriety and admissibility, and to any and all other objections on any grounds that would require

the exclusion of any statements contained herein if such responses were asked of, or statements

contained herein were made by, a witness present and testifying in court, all of which objections

and grounds are expressly reserved and may be interposed at the time of the trial.

The following responses are based upon information and writings currently available and

located by Teva and the responses given herein are without prejudice to Teva's right to

supplement or to revise these responses if further investigation or discovery so indicates.

Teva's responses shall not be deemed to constitute admission (i) that any particular

document or thing exists, is relevant, non-privileged, or admissible in evidence, or (ii) that any

statement or characterization in Merck's Document Requests is accurate or complete.  In

addition, willingness to produce documents in response to any particular request is in no way a concession that such documents exist, or that any such documents are within Teva's possession, custody or control.

## GENERAL OBJECTIONS

Teva's specific responses to all Merck's document requests are subject to the following General Objections, which are incorporated by reference in each response.

### General Objection 1

Teva objects to each document request that is inconsistent with or seeks to impose an obligation beyond that required by the Federal Rules of Civil Procedure taken together with the Local Rules of the District of Delaware.

### General Objection 2

Teva objects to the production of any documents or things which are subject to the attorney-client or joint defense privilege or work product immunity. In due course, following a completion of production of documents, Teva will provide a log of documents withheld from discovery on the grounds of attorney-client privilege, work product immunity, or both ("Privileged Document Log"), in exchange for such a log from Merck. Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

### General Objection 3

Teva objects to the identification or production of any documents or things dated or prepared after the filing date of the Complaint in this action as being overly broad and unduly burdensome.

2

## General Objection 4

Teva objects to each document request that is vague, indefinite, overly broad, unduly burdensome, and/or oppressive because the burden on Teva to search for, gather and produce such documents, if any, far outweighs the relevancy of such documents, nor are such documents likely to lead to the discovery of admissible evidence.

## General Objection 5

Teva objects to each request to the extent it seeks production of "all documents" responsive to the requested categories on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, Teva will use reasonable diligence to locate documents in its own files, based on an examination of those files reasonably expected to yield responsive documents, or summary information to the extent it is available. As used in these responses, the phrase "all documents," or phrases of similar import, should be understood to mean those documents Teva and its counsel were able to locate using reasonable diligence and judgment concerning the whereabouts of responsive documents, or a summary of those documents.

## General Objection 6

Teva objects to each document request to the extent it seeks the identification or production of documents or things that are in the public domain and therefore of no greater burden for Merck to obtain than for Teva.

## General Objection 7

Teva objects to each document request to the extent it seeks the identification or production of any and all documents and things that are otherwise producible but which contain confidential or proprietary information, except as provided by the District of Delaware local rules

3

or pursuant to a Protective Order entered in this case.

### General Objection 8

Teva objects to the production of the following categories of documents on the grounds that the requests seeking these categories are overly broad, unduly burdensome, and not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence: (I) documents filed in this action and copies of communications between attorneys in this litigation; (ii) documents relating to settlement negotiations; (iii) duplicative or cumulative documents; and (iv) documents already in the possession of Merck.

### General Objection 9

Teva objects to each document request to the extent it seeks the identification or production of third party documents that are covered by a third-party confidentiality agreement.

### General Objection 10

Teva reserves the right to mask or delete materials from any document or thing that it produces to the extent that such materials are not responsive to any of Merck's requests, not relevant to the subject matter of this action, or not reasonably calculated to lead to the discovery of admissible evidence. Teva also reserves the right to mask or delete materials that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or otherwise immune from discovery.

### General Objection 11

Teva objects to each document request to the extent it seeks the identification or production of any document relating to any FDA filing other than ANDA No. 75-710. Teva further objects to each document request to the extent it seeks identification or production of documents relating to ANDA No. 75-710 that are not relevant to this action.

4

### General Objection 12

Teva objects to each document request to the extent it seeks the identification or production of documents relating to any biphosphonate other than the weekly dose forms of alendronate that are the subject of Teva's October 23, 2000 and August 20, 2001 amendments to ANDA No. 75-710 .

### General Objection 13

Teva objects to each document request to the extent it seeks information relating to Teva's activities outside the United States, including legal proceedings or any efforts to seek marketing approval in a country other than the United States.

### General Objection 14

Teva objects to each document request to the extent it seeks information relating to U.S. Patent Nos. 5,358,941, 5,681,590, 5,849,726, 6,008,207 and 6,090,410.  Merck has withdrawn U.S. Patent No. 5,681,590 from this lawsuit, and has indicated it may withdraw U.S. Patent Nos. 5,358,941, 5,849,726, 6,008,207 and 6,090,410 from this lawsuit as well.  If Merck decides not to withdraw these patents, Teva will withdraw this objection.

### General Objection 15

Teva objects to each document request to the extent it seeks information relating to the manufacture of any of the ingredients in the alendronate formulations that are the subject of ANDA No. 75-710.

### General Objection 16

Teva objects to definition I as overly broad to the extent it includes entities beyond Teva Pharmaceuticals, USA.  For purposes of the document request, responsive documents in the possession, custody or control of Teva Pharmaceuticals, USA will be produced.

5

## General Objection 17

Teva objects to definition BB, except for purposes of the document request

## General Objection 18

Teva objects to the use of the term "defendants" in each of the document requests in which it appears because it is confusing. There is only one defendant in this lawsuit, Teva Pharmaceuticals U.S.A., and Teva will interpret the term accordingly.

## General Objection 19

Teva objects to the use of the term "formulation [s]" in each of the document requests in which it appears because it is ambiguous. Teva will interpret this term to mean pharmaceutical formulations, i.e. active ingredients mixed with a pharmaceutically acceptable carrier.

## General Objection 20

Teva objects to the use of the term "Defendants' certification" in each of the document requests in which it appears because it is confusing and ambiguous. Teva will interpret this term to mean the Teva's certifications relating to the weekly alendronate sodium product that is the subject of ANDA No. 75-710.

## General Objection 21

Teva objects to each of the document requests to the extent they seek documents that have been produced in *Merck v. Teva*, Civ. Action No. 00-035 (JJF). By agreement of the parties, documents produced in that lawsuit will be deemed produced in this lawsuit.

6

## RESPONSES TO DOCUMENT REQUESTS

**Document Request No. 1**

All opinions, legal or otherwise, relating to the validity, invalidity, infringement, non-infringement, enforceability, non-enforceability, liability, or license (either express or implied) to Defendants for any of the patents-in-suit or any other affirmative defense.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 2**

All documents and things, including correspondence with counsel, relating to the validity, invalidity, infringement, non-infringement, enforceability, non-enforceability, liability, or license (either express or implied) to Defendants for any of the patents-in-suit or any other affirmative defense.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 3**

All documents and things relating to patent clearances, freedom to operate opinions or other mechanisms to avoid infringement or willful infringement by Defendants of any of the patents-in-suit.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 4**

All opinions, legal or otherwise, relating to the validity of the patent term extension or the patent term restoration of the '077 patent.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 5**

All documents and things, including correspondence with counsel, relating to validity of the patent term extension or the patent term restoration of the '077 patent to Defendants.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 6**

All documents and things relating to any policies or practices of Defendants concerning patent clearances, freedom to operate opinions or other mechanisms to avoid infringement or willful infringement by Defendants of the patents of others.

**Response**

Teva objects to this request to the extent it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 7**

All Abbreviated New Drug Applications filed by Defendants with the FDA for alendronate formulations or other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium formulations that are the subject of ANDA No. 75-710 will be produced to the extent they are relevant to the issues in this lawsuit.

**Document Request No. 8**

All supplements and amendments to Abbreviated New Drug Applications filed by Defendants with the FDA for alendronate formulations or other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium formulations that are the subject of ANDA No. 75-710 will be produced to the extent they are relevant to the issues in this lawsuit.

9

**Document Request No. 9**

All documents and things relating to or constituting correspondence or other communications, including but not limited to draft documents and correspondence, among Defendants and/or between Defendants and/or any other person and any foreign or domestic regulatory agency including, but not limited to, the FDA or a foreign counterpart concerning alendronate or any other pharmaceutically active biphosphonate.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium amendments to ANDA No. 75-710 will be produced to the extent they are relevant to the issues in this lawsuit.

**Document Request No. 10**

All documents and things relating to the patent certifications made by Defendants as part of an Abbreviated New Drug Application alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium formulations that are the subject of ANDA No. 75-710 will be produced to the extent they are relevant to this lawsuit.

**Document Request No. 11**

All documents and things relating to Defendants' decision to file an Abbreviated New Drug Application alendronate formulations or any other pharmaceutically active biphosphonate formulations, including, but not limited to, the timing of the filing, the cost for the filing, and any cost or benefit analysis.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium amendments to ANDA No. 75-710 will be produced to the extent they are relevant to the issues in this lawsuit.


**Document Request No. 12**

All documents and things relating to the timing, schedule, timetable or projection of approval of Defendants' Abbreviated New Drug Application for alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium amendments to ANDA No. 75-710 will be produced to the extent they are relevant to the issues in this lawsuit.

11

**Document Request No. 13**

All documents and things relating to any labeling, promotion, advertising or claims by Defendants for alendronate formulations or any other pharmaceutically active biphosphonate formulations in the U.S. or any other country.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to this and the General Objections, responsive documents relating to activities in the U.S. regarding the weekly alendronate sodium product that is the subject of ANDA 75-710 will be produced.

**Document Request No. 14**

All documents and things relating to Defendants' decision for file a patent certification as part of an Abbreviated New Drug Application for alendronate formulations or any other pharmaceutically active biphosphonate formulation.

**Response**

*See* response to request no. 10.

**Document Request No. 15**

All documents and things relating to FDA notification of "tentative approval"of the 'Abbreviated New Drug Application for Defendants' alendronate formulations.

12

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium amendments to ANDA No. 75-710 will be produced.

**Document Request No. 16**

All documents and things relating to the patents-in-suit.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 17**

All documents and things relating to the first awareness of the patents-in-suit by Defendants.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 18**

All documents and things created before the filing of this suit concerning or constituting any prior art search relating to any of the patents-in-suit.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 19**

All prior art that Defendants contend supports an allegation that any claim of the patents - in-suit is invalid.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 20**

All documents and things forming the basis of, or relating to, Defendants' certification that any of the patents-in-suit are not, and/or will not be, infringed by Defendants.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 21**

All documents and things forming the basis of, or relating to, Defendants' certification that any of the patents-in-suit are unenforceable.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 22**

All documents and things forming the basis of, or relating to, any and all defenses pleaded by Defendants that any claim of the patents-in-suit is invalid.

14

**Response**

Subject to the General Objections, responsive documents will be produced.


**Document Request No. 23**

All documents and things forming the basis of, or relating to, Defendants' certification that any of the patents-in-suit are invalid as lacking a written description.

**Response**

Subject to the General Objections, responsive documents will be produced.


**Document Request No. 24**

All documents and things forming the basis of, or relating to, Defendants' certification that any of the patents-in-suit are invalid as the specification does not enable the claims.

**Response**

Subject to the General Objections, responsive documents will be produced.


**Document Request No. 25**

All documents and things forming the basis of, or relating to, Defendants' certification that any of the patents-in-suit are invalid as indefinite.

**Response**

Subject to the General Objections, responsive documents will be produced.


**Document Request No. 26**

All documents and things forming the basis of, or relating to, Defendants' certification

15

that any of the patents-in-suit are invalid as lacking utility.

**Response**

    Subject to the General Objections, responsive documents will be produced.

**Document Request No. 27**

    All documents and things forming the basis of, or relating to, Defendants' Certification that any of the patents-in-suit are anticipated by the prior art.

**Response**

    Subject to the General Objections, responsive documents will be produced.

**Document Request No. 28**

    All documents and things forming the basis of, or relating to, Defendants' certification that any of the patents-in-suit are invalid as obvious in light of the prior art

**Response**

    Subject to the General Objections, responsive documents will be produced.

**Document Request No. 29**

    All documents and things relating to the April 21, 1997 patent term restoration of the '077 patent under 35 U.S.C. § 156.

**Response**

    Subject to the General Objections, responsive documents will be produced.

**Document Request No. 30**

All documents related to Defendants' patent certification and Notice of Patent

Certification for Abbreviated New Drug Applications for alendronate formulations.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses

documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to

lead to the discovery of admissible evidence.  Subject to this and the General Objections,

responsive documents relating to the weekly alendronate sodium formulations that are the subject

of ANDA No. 75-710 will be produced.

**Document Request No. 31**

All documents and things relating to any legal or administrative proceedings concerning

the manufacture, importation, sale, and/or offer for sale of pharmaceutical formulations of

alendronate or any other pharmaceutically active biphosphonate in the U.S. by Defendants or any

other person.

**Response**

Teva objects to this request as overly broad and burdensome in that it encompasses

documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to

lead to the discovery of admissible evidence.  Subject to this and the General Objections,

responsive documents relating to the weekly alendronate sodium product that is the subject of

ANDA No. 75-710 will be produced.

17

**Document Request No. 32**

All documents and things concerning any indemnification and/or insurance provided to, received, or granted by Defendants against or for the infringement of any of the patents-in-suit.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 33**

All documents and things relating to Defendants' production or attempted production of alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request as overly broad and burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 34**

All documents relating to research and development of manufacturing processes for alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

18

**Document Request No. 35**

All documents and things relating to or comprising communications among Defendants and/or between Defendants and any other person concerning the design, development, testing, structure, function and/or operation of manufacturing facilities for the production of alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 36**

All documents and things relating to U.S. or foreign lawsuits, pending or previously resolved, or investigations regarding Defendants' production of alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 37**

All documents and things relating to any manufacture, importation, sale, and/or offer for sale of pharmaceutical formulations of alendronate or any other pharmaceutically active biphosphonate in the U.S. by Defendants or any other person.

19

**Response**

  Teva objects to this request as overly broad and burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium product which is the subject of ANDA No. 75-710 will be produced to the extent they are relevant to this lawsuit.

**Document Request No. 38**

  All documents and things relating to any supply agreement for alendronate or any other pharmaceutically active biphosphonate.

**Response**

  Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 39**

  All documents and things constituting or relating to negotiations between Defendants and suppliers or potential suppliers of alendronate or any other pharmaceutically active biphosphonate.

**Response**

  Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 40**

All documents and things relating to any desire, consideration or need by Defendants to obtain or not obtain a license under any of the patents-in-suit.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 41**

All documents and things constituting or relating to licenses and/or agreements for alendronate or any other pharmaceutically active biphosphonate among Defendants and/or between Defendants and any other person.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 42**

All documents and things related to licensing agreements among Defendants and/or between Defendants and any other person for the production, distribution or sale of alendronate formulations or any other pharmaceutically active biphosphonate formulations

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 43**

All documents and things concerning marketing or whether to market alendronate formulations or any other pharmaceutically active biphosphonate formulations in the U.S. or any

21

other country.

**Response**

   Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 44**

   All documents and things relating to market share and market potential for alendronate formulations or any other pharmaceutically active biphosphonate formulations in the U.S. or any other country.

**Response**

   Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium product which is the subject of ANDA No. 75-710 will be produced to the extent they are relevant to this lawsuit.

**Document Request No. 45**

   All documents and things relating to the dollar amounts expended by Defendants or any other person for the promotion of alendronate formulations or any other pharmaceutically active biphosphonate formulations in the U.S. or any other country.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 46**

All documents and things relating to all forms of promotions for or marketing of alendronate formulations or any other pharmaceutically active biphosphonate formulations in the U.S. or any other country by Defendants or any other person.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 47**

All documents and things created after January 1, 1993, relating to any market survey, market analysis, sales projections or forecast of customer demand with respect to alendronate formulations or any other pharmaceutically active biphosphonate formulations in the U.S. or any other country.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to this and the General Objections, responsive documents relating to the weekly alendronate sodium product which is

23

the subject of ANDA No. 75-710 will be produced to the extent they are relevant to this lawsuit.

**Document Request No. 48**

All documents and things relating to any communications to or from Defendants' sales forces, agents, dealers, representatives, distributors, the press, or any news wire service relating to this lawsuit, and/or any of the patents-in-suit.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 49**

All documents, and things relating to research and development of alendronate and alendronate formulations or any other pharmaceutically active biphosphonate and its formulations.

**Response**

Teva objects to this request to the extent it is overly broad and unduly burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the General Objections, responsive documents relating to the weekly alendronate product which is the subject of ANDA No. 75-710 will be produced to the extent they are relevant to the issues in this lawsuit.

**Document Request No. 50**

Two hundred alendronate tablets for each dosage form produced by Defendants for the

purpose of obtaining FDA approval.

**Response**

      Teva objects to this request to the extent it is overly broad and unduly burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this and the General Objections, Teva will produce one hundred tablets of each of the weekly alendronate sodium product dosage forms that are the subject of ANDA No. 75-710.

**Document Request No. 51**

      All documents and things relating to any tests comparing Merck's alendronate product with the alendronate product that Defendants produced.

**Response**

      Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 52**

      Any samples of Merck products that contain alendronate or any other pharmaceutically active biphosphonate that have been tested or examined by Defendants or any persons working on their behalf.

**Response**

      Teva objects to this request as overly broad and unduly burdensome and is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of

admissible evidence.

**Document Request No. 53**

All documents and things relating to any testing performed using Merck's alendronate product.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome in that it calls for documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 54**

All documents and things relating to Defendants' knowledge of Merck's activities in the research, patenting, development, manufacture, use or sale of any pharmaceutical formulation of alendronate or any other pharmaceutically active biphosphonate.

**Response**

Subject to the General Objections, responsive documents will be produced.

**Document Request No. 55**

All documents and things Defendants contemplate introducing at trial.

**Response**

Teva objects to this request as premature.

**Document Request No. 56**

All documents and/or things relating to any experts Defendants contemplate calling at trial, including but not limited to the educational and technical training of each expert and any publications authored by such expert.

**Response**

Teva objects to this request as premature.

**Document Request No. 57**

All documents and things, including but not limited to organizational charts, showing identity and job titles of employees since January 1, 1993 to the present for all of Defendants' divisions and/or subsidiaries involved in the research, development, production, design, manufacture or sale of alendronate formulations or any other pharmaceutically active biphosphonate formulations.

**Response**

Teva objects to this request to the extent it is overly broad and unduly burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Objections, documents, documents sufficient to describe Teva's organization to the extent it relates to the weekly alendronate sodium product that is the subject of ANDA No. 75-710 will be produced.

**Document Request No. 58**

All documents and things setting forth Defendants' document retention and/or destruction policies.

**Response**

Teva objects to this request to the extent it is overly broad and unduly burdensome in that it encompasses documents that are not relevant to any issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Objections, responsive documents will be produced.

**Document Request No. 59**

All documents and things relating to or constituting applications by Defendants to obtain regulatory approval for alendronate or any other pharmaceutically active biphosphonate in a foreign country.

**Response**

*See* General Objection 12.

**Document Request No. 60**

Two grams of each ingredient in the alendronate tablets produced by Defendants for the purpose of obtaining FDA approval.

**Response**

Teva objects to this request because it is overly broad and unduly burdensome. Subject to this and the General Objections, Teva has already produced a two gram representative sample of the active ingredient in the alendronate product that is the subject of ANDA 75-710 in *Merck*

28

*v. Teva,* Civil Action No. 00-035 (JJF) .

YOUNG CONAWAY STARGATT<br>& TAYLOR, LLP

Josy W. Ingersoll (# 1088)
The Brandywine Building
1000 West Street
Wilmington Delaware 19801
Telephone: (302) 571-6672
Telecopy:   (302) 576-3301

James Galbraith
Maria Luisa Palmese
William G. James, II
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone:  (212) 425-7200
Telecopy: (212) 425-5288

Attorneys for Defendant
Teva Pharmaceuticals U.S.A., Inc.

463432

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that I caused copies of the

foregoing document to be served on April 19, 2002 upon the following counsel of record:

### BY HAND DELIVERY

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Nicholas G. Barzoukas, Esquire
Howrey Simon Arnold & White, LLP
750 Bering Drive
Houston, TX  77057

Josy W. Ingersoll

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,

        Plaintiff,

    v.

TEVA PHARMACEUTICALS USA, INC

       Defendant.

C.A. No. 01-048-JJF

(Consolidated)

~~CONFIDENTIAL~~
~~FILED UNDER SEAL~~

## MERCK'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND THINGS

MORRIS, NICHOLS, ARSHT & TUNNELL
Mary B. Graham (#2256)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
        Attorneys for PLAINTIFF
        MERCK & CO., INC.

OF COUNSEL:

John F. Lynch
Nicolas G. Barzoukas
Stephen E. Edwards
Jason C. Abair
HOWREY SIMON ARNOLD
& WHITE, LLP
750 Bering Drive
Houston, TX 77057-2198
(713) 787-1400

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ 08889-0100

Edward W. Murray
Gerard M. Devlin, Jr.
MERCK & CO., INC.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

November 12, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,

      Plaintiff,

      v.

TEVA PHARMACEUTICALS USA, INC

      Defendant.

C.A. No. 01-048-JJF
(Consolidated)

~~CONFIDENTIAL~~
~~FILED UNDER SEAL~~

## MERCK'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND THINGS

      Merck & Co., Inc. ("Merck") hereby moves pursuant to Fed. R. Civ. P. 37 (a) for an order compelling Teva Pharmaceuticals USA, Inc. ("Teva") to conduct a proper search for documents responsive to Merck's document requests and to produce those documents promptly. It has now become evident that Teva has failed to search for and produce documents of numerous employees, including key personnel who worked on the project team for the generic product it seeks to market.

### MERCK'S ONCE-WEEKLY FOSAMAX®

      This patent infringement case involves Merck patents covering the continuous oral administration of alendronate sodium on a once-weekly dosing schedule which cover Merck's highly successful once-weekly FOSAMAX®. FOSAMAX®, approved by the Food and Drug Administration ("FDA"), is used for the prevention and treatment of the debilitating disease osteoporosis. Teva has submitted to the FDA an Abbreviated New Drug Application ("ANDA") No. 75-710 to obtain approval to market generic versions of once-weekly FOSAMAX® prior to the expiration of Merck's patents.

<u>TEVA'S INSUFFICIENT DOCUMENT SEARCHES</u>

Merck has pursued discovery of Teva's decision to market a generic version of Merck's once-weekly FOSAMAX® and its work to implement that decision. Merck early on served basic document requests, and has now taken several depositions of Teva employees involved in that process.

Teva's document production in response to Merck's document requests was scant, only about 4,900 pages.[1] Merck has repeatedly asked that Teva provide additional documents, such as documents reflecting Teva's own conclusions on the commercial success of once-weekly FOSAMAX® and Teva's analysis of the market for a generic version. The commercial success of once-weekly FOSAMAX® is relevant to rebut Teva's assertions that this inventive idea was obvious.[2] But Merck's inquiries about Teva's facially questionable production have met only with unelaborated assertions of Teva's outside counsel that Teva's searches were "thorough" and that "Teva has produced all responsive documents to Merck."

Teva's outside counsels' representations are simply not correct, as is now abundantly clear from several depositions of Teva witnesses whose files were not adequately

---

[1]    Merck served its First Requests for Production on March 19, 2002. Teva responded on April 19, 2002 (Exhibit A), and produced about 1,790 pages of documents in early June, 2002 (Exhibit B). The other 3,000 pages of documents were previously produced by Teva in the prior litigation between Merck and Teva. Teva has also produced to Merck approximately 2,310 pages of documents that it obtained from subpoenas of third parties.

[2]    Teva has raised the affirmative defense that Merck's patents-in-suit are invalid for obviousness over the prior art under 35 USC § 103. To rebut this defense, Merck will present evidence on the commercial success of once-weekly FOSAMAX®. *See Graham v. John Deere Co.*, 383 U.S. 1 (1966) (commercial success is a secondary consideration negating obviousness). *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983); *see also Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986) ("all relevant evidence going to the issue of obviousness/nonobviousness, which includes properly presented evidence on
(Continued. . . )

searched, or searched at all, and from Teva documents revealing that other documents, which have not been produced, must exist. Moreover, counsel's assertions were not based on first-hand knowledge. It turns out that it is in-house counsel who searched for documents.

On September 6, 2002, Teva produced for deposition its first witness, Deborah Jaskot, Teva's Executive Director of Regulatory Affairs, one of only three Teva employees listed in Teva's initial disclosures under Rule 26(a). In response to Merck's questions about documents in her personal files and litigation searches of those files, Ms. Jaskot testified that she is in possession of many relevant documents and folders that were never searched.

In particular, Ms. Jaskot testified that she possesses paper and electronic files (Exhibit C at 142, 146-147), including five years' worth of meeting minutes (*id.* at 151-152), and that Teva maintains a "central ANDA file" (*id.* at 147), marketing forecasts for alendronate sales (*id.* at 123), and internal routing sheets for draft documents, including drafts of documents relating to ANDA 75-710 (*id.* at 47-52). The volume and variety of these documents do not appear in Teva's document production. Ms. Jaskot also testified that, while she recalled producing documents from her personal files for the earlier lawsuit between the parties, she does not recall producing documents in connection with the current lawsuit initiated nearly two years later (*id.* at 148-149).

Following that deposition, Merck wrote to Teva's counsel, detailing the deficiencies in Teva's document production and requesting that Teva's employees' files, including those of Ms. Jaskot, be searched (Exhibits D, E). In response, Teva's counsel, Danae

---

(. . . continued.)

secondary considerations must [be] considered prior to reaching a conclusion on obviousness/nonobviousness").

Schuster, on October 8, 2002 produced, without explanation or response to Merck's specific inquiries, 14 pages of documents purportedly collected from Ms. Jaskot's files (Exhibit F). In a follow-up teleconference, Ms. Schuster informed Merck that the search for the documents described in Merck's letters had been handled entirely by in-house counsel for Teva, and that she had made several requests to Teva's in-house counsel for the documents described in Merck's letters. She further said that the only documents in-house counsel had produced were the 14 pages. When Merck asked about the files of the many recipients listed on these documents, counsel simply reiterated that the 14-page supplemental production from Teva's in-house counsel had addressed Merck's concerns.

After this teleconference, Ms. Schuster by letter dated October 9 produced the most recent version of Teva's package inserts (created in June 2002), without explanation of why Teva had withheld them for four months (Exhibit G). Counsel then asserted simply that, "[w]ith respect to your concern about Teva's document production, all additional responsive documents have now been produced" (*id.*). Despite that representation, however, two weeks later Teva produced without explanation an additional 25 pages at the deposition of its employee Christopher Pelloni on October 23, 2002. Notably, Mr. Pelloni could not remember even the most basic of details about any searches for documents responsive to Merck's requests for production (Exhibit I at 5-11.)

Merck again followed up and asked about the searches of Mr. Pelloni's files and all other employees involved in the alendronate project (Exhibit H). Ms. Schuster called on November 1, 2002 to say only that Teva had purportedly searched for and produced all responsive documents from Mr. Pelloni, and that Teva would provide a response to the rest of Merck's concerns by the end of the day on November 4, 2002 (which we never received).

## TEVA DOCUMENTS NOT FOUND IN THE PRODUCTION

Among the 14 pages produced on October 8, 2002 were minutes of two Teva meetings where alendronate was discussed (Exhibit F, T007106 and T007110). These documents went to as many as 28 people who attended the meetings or received the agendas. Teva has not produced, however, <u>any</u> documents from any of these people other than a few purportedly collected from the two Teva employees Merck has deposed, Ms. Jaskot and Mr. Pelloni. It is virtually certain that at least some of the other 26 employees possess other documents responsive to Merck's requests. Furthermore, Ms. Jaskot testified that she took notes at meetings, and that other Teva employees attending these meetings probably took notes (Exhibit C at 128-129). Teva's production of a mere 14 pages cannot possibly reflect all the documents of all relevant Teva employees.

Indeed, Christopher Pelloni testified that the one Teva employee who should be most familiar with Teva's considerations in filing its ANDA is Ms. Anne Payne, who chairs Teva's "product identification team" ("PIT") for alendronate and generates sales forecasts for the prospective generic forms of alendronate and updates to those forecasts (Exhibit I at 39, 40, 120-129). Clearly, Ms. Payne, who is an identified recipient of the minutes, is likely to possess important documents. Yet, Teva has evidently not produced a single document from her files.

The documents Teva has failed to produce relate, *inter alia*, to the commercial success of once-weekly FOSAMAX® in the treatment and prevention of osteoporosis. For example, requests for production nos. 6, 10-14, 16, 17, 43-48 relate to Teva's decision to file ANDA 75-710, Teva's business practices relating to the decision to file ANDA 75-710, and Teva's analysis of the market for the administration of alendronate sodium once per week (Exhibit A.).

Teva has not produced other important documents, including, *inter alia*, internal and external correspondence relating to ANDA 75-710, internal correspondence between members of Teva's committees and teams, routing sheets containing comments pertaining to ANDA 75-710, all of Ms. Jaskot's paper and electronic files relating to internal committees and teams, documents from Teva's "central ANDA file," and documents from Teva's marketing department including alendronate packaging and marketing forecasts. Considering the number of Teva employees who have received documents relating to alendronate sodium, Teva's failure to search for responsive documents, Teva's miniscule production, and Teva's lack of a document retention policy dictating destruction of documents, Teva's assertion that "all additional responsive documents have been produced" is facially unsupportable.

<u>THE RELIEF NEEDED</u>

Teva's nominal attempts to comply with its discovery obligations and respond to Merck's concerns appear to be primarily limited to searches of (some of) one or two employee files conducted by in-house counsel. Merck submits that Teva should be ordered immediately to produce all responsive documents. Moreover, in view of the testimony of Teva's witnesses and the lack of production of known documents from known Teva employees, the blind reliance of outside counsel upon in-house counsel to conduct searches for documents is clearly insufficient.

-6-

Merck requests that Teva be required immediately to conduct a full search for documents, and in view of the history of inadequate production, that Teva's outside counsel conduct the search.

MORRIS, NICHOLS, ARSHT & TUNNELL

_Mary B. Graham_

Mary B. Graham (#2256)
Maryellen Noreika(#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
ATTORNEYS FOR PLAINTIFF
MERCK & CO., INC.

OF COUNSEL:

John F. Lynch
Nicolas G. Barzoukas
Stephen E. Edwards
Jason C. Abair
HOWREY SIMON ARNOLD
& WHITE, LLP
750 Bering Drive
Houston, TX 77057-2198
(713) 787-1400

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ  08889-0100

Edward W. Murray
Gerard M. Devlin, Jr.
MERCK & CO., INC.
126 E. Lincoln Avenue
Rahway, NJ  07065-0907

November 12, 2002
318885

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

Pursuant to Local Rule 7.1.1, I hereby certify that counsel for Merck has made a reasonable effort to reach agreement with opposing counsel on the matters described in the motion to compel, and that the parties were unable to reach any such agreement.

Mary B. Graham