IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-939 (GMS) |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION OF
PLAINTIFF MERCK & CO., INC. TO REOPEN FACT
AND EXPERT DISCOVERY AND OTHERWISE STAY THIS ACTION**

OF COUNSEL:

John F. Lynch
HOWREY, LLP
750 Bering Drive
Houston, TX  77057-2198
713.787.1400

Nicolas G. Barzoukas
Suzy S. Harbison
Jason C. Abair
WEIL, GOTSHAL & MANGES
700 Louisiana, Suite 1600
Houston, TX  77002
713.546.5000

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ  08889-0100
908.423.1000

Edward W. Murray
Gerard M. Devlin
MERCK & CO., INC.
126 E. Lincoln Avenue RY28-320
Rahway, NJ  07065-0907
732.594.4000

Dated:  June 21, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (# 2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff
Merck & Co., Inc.*

<u>TABLE OF CONTENTS</u>

Page

TABLE OF CITATIONS     ii

I.     INTRODUCTION     1

II.     TEVA FAILED TO PRODUCE ITS '685 AND '235 APPLICATIONS     2

    A.     Merck's Requests for Production Covered the '685 and '235 Applications     2

    B.     Teva's Representation that "Teva USA" and "Teva Ltd." Are Separate Entities For Discovery in this Case Remains Bogus     4

    C.     Teva's Argument that Nothing in the '685 and '235 Applications Relates to "U.S. Activities" is Wrong     7

    D.     Teva's General Objections Are Impermissible     9

    E.     Merck Did Not "Acquiesce" to Teva's General Objections     11

III.     TEVA'S WITHHELD '685 AND '235 APPLICATIONS PROVIDE CRITICAL NEW EVIDENCE THAT CONFIRMS THE VALIDITY OF MERCK'S PATENTS     13

    A.     The Inventions in Merck's Patents and Teva's '685 and '235 Applications Rely Solely Upon Beagle Experiments, Unlike the '006 Patent     13

    B.     Teva Ignores the Fact that the Reddy Publication is Neither a Patent Nor a Patent Application     13

    C.     Merck's Beagle Experiments Were Critical to the Federal Circuit's Opinion in the Fosamax® Once-Weekly Case     14

IV.     TEVA WILL NOT BE PREJUDICED WITH A STAY     16

V.     CONCLUSION     17

ii.

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Alexander v. Federal Bureau of Investigation,*
    194 F.R.D. 299 (D.D.C. 2000)                                             12

*Athridge v. Aetna Casualty and Surety* Co.,
    184 F.R.D. 181 (D.D.C. 1998)                                          9, 11

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
    1995 WL 389822 (N.D. Ill. 1995)                                          11

*Graham v. John Deere Co.,*
    383 U.S. 1 (1966)                                                        14

*In re Ochiai,*
    71 F.3d 1565 (Fed. Cir. 1995)                                           15

*Josephs v. Harris Corp.,*
    677 F.2d 985 (3rd Cir. 1982)                                           8, 9

*Levy v. Sterling Holding Co., LLC,*
    2004 WL 2251268 (D.Del. 2004)                                           16

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
    894 F.2d 1482 (5th Cir. 1990)                                          8, 9

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.,*
    395 F.3d 1364 (Fed. Cir. 2005)                                          14

*Momah v. Albert Einstein Medical Center,*
    164 F.R.D. 412 (E.D. Pa. 1996)                                           9

*Poole v. Textron,*
    192 F.R.D. 494 (D. Md. 2000)                                         6, 12

*Starlight Intl., Inc. v. Herlihy,*
    181 F.R.D. 494 (D. Kan. 1998)                                            9

*The Procter & Gamble Company v. Teva Pharmaceuticals USA,*
    *Inc.,* 04-940 (JJF)                                                     17

*Trintec Industries, Inc. v. Top-U.S.A. Corp.,*
    295 F.3d 1292 (Fed. Cir. 2002)                                          15

Statutes

21 U.S.C. § 355(j)(5)(B)(iii)                                                    17

35 U.S.C. § 102                                                                  15

35 U.S.C. § 103                                                                  14

## I.     INTRODUCTION

Having been caught improperly withholding relevant discovery, Teva's Opposition is full of unsupported contentions and sleight of hand.  Nowhere are Teva's improper tactics more obvious than in the way in which it attempts to excuse its failure to produce its patent applications.  For example, Teva's '235 application was unquestionably requested in discovery, and Teva now advances a litany of hollow excuses as to why it did not have to produce it.  Addressing some of them in summary provides insight into the lengths to which Teva will go to prevent a full and fair litigation:

- "Teva USA" was an applicant for the '235 application and yet failed to produce it; this is plain on the face of the application.  The sham distinction between "Teva USA" and "Teva Ltd." does not even apply to this withheld document.  *See* Section II(B).

- The basis for this case is Teva's filing of its ANDA for once-weekly risedronate tablets.  Although "Teva Ltd." has proclaimed its ownership of that very ANDA, Teva attempts to insulate harmful documents by asserting they belong to "Teva Ltd."  *See* Section II(B).

- Teva argues that Merck "acquiesced" to not receiving documents from "Teva Ltd." because "Teva USA in fact did not produce documents from Teva Ltd."  Opposition at 12.  In fact, "Teva USA" did produce documents from "Teva Ltd.," and Merck expected that no relevant documents had been withheld.  *See* Section II(E).

- Teva argues that the '235 application and its US counterpart, the '685 application, had "nothing to do with 'development of tablets containing risedronate.'"  Opposition at 15.  Yet Teva has prosecuted patent claims for the administration of risedronate seeking priority from the '685 application.  *See* Section II(A).

Teva has improperly withheld substantial and critical discovery in this case and in the previous FOSAMAX® once-weekly case.  Teva hid its patent applications relying upon Teva's experiments involving administration of bisphosphonates.  Through this misconduct, Teva short circuited further discovery and facilitated Teva's improper attack

of Merck's beagle experiments.  The withheld information has affected the FOSAMAX®

once-weekly case, and may affect the outcome of this case and of the Rule 60(b) case.

Accordingly, Merck has moved to reopen discovery and to stay pre-trial and trial

proceedings in this case.  Teva's unfounded arguments only serve to underscore the

importance of the concealed information and that Teva will go to any length to perpetuate

its misconduct.

## II.    TEVA FAILED TO PRODUCE ITS '685 AND '235 APPLICATIONS

### A.    Merck's Requests for Production Covered the '685 and '235 Applications

Teva's asserts that Merck's requests for production did not cover the '685 or '235

applications.  *See* Opposition at 14-16.  Teva is wrong.  Merck propounded requests for

production that specifically requested patent applications referring to risedronate and

documents related to research involving risedronate:

> Request for Production No. 44   All documents and things relating to
> Defendant's research and development of tablets containing risedronate.

> Request for Production No. 45   All documents and things relating to
> patent applications, including the patents themselves, filed in any country
> by Defendant referencing, referring, or relating to risedronate.

*See* Merck's Opening Brief at 2.  Teva's withheld '685 and '235 applications disclose

Teva's research experiments with bisphosphonate tablets (Exhibit F, p. 8, line 15; Exhibit

G, p. 12, line 16), and Teva stated in its applications that risedronate is a bisphosphonate

that could be used in those experiments:

> **Examples of bisphosphonates useful in the practice of the present
> invention include** … risedronic acid and pharmaceutically acceptable
> salts thereof (hereinafter, collectively known as "**risedronate**") … ."

3.

*See* Exhibit F at 6 (emphasis added); Exhibit G at 8 (emphasis added).[1]   Teva's arguments that its '685 and '235 applications do not fall within the scope of Merck's requests for production are thus demonstrably wrong.

Teva argued that its '685 and '235 applications fall outside the scope of Merck's requests for production because they have "nothing to do with the 'development of tablets containing risedronate,'" and added as emphasis that, "[i]n fact, the application[s] mention[] 'risedronate' only about twice, in passing… ."   Opposition at 15.   Teva's argument actually underscores that its patent applications are covered by Request 45, which requests all applications "referring ... to risedronate" (twice or otherwise) and is not limited to documents relating to "development of tablets containing risedronate."

Furthermore, this argument is refuted by yet another withheld Teva patent application, published as US Patent Application Pub. No. 2005/0026871 (the "'871 application"), which seeks priority from Teva's '685 application.   A copy of the '871 application is found at Exhibit W.   As noted above, the '685 and '235 applications disclose research with bisphosphonate tablets.[2]   Thus, the '685 and '235 applications clearly deal with the development of tablets containing bisphosphonates.   That the research on bisphosphonate tablets of these applications contemplates risedronate tablets is clear from the '871 application, which includes claims to risedronate and which claims priority from the two earlier applications.   Claim 1 reads:

---

[1]     Exhibits A through V appear in Merck's Appendix to its Opening Brief.   Exhibits W, X and Y are filed with this Reply in a separate appendix.

[2]     See Exhibit F, p. 8, line 15; Exhibit G, p. 12, line 16.

> 1. A method of increasing the bioavailability of a bis-phosphonate comprising administering an effective predose of a vitamin D derivative, and after a time interval, administering a therapeutic dose of a bis-phosphonate, wherein the bis-phosphonate is selected from the group consisting of alendronate, **risedronate**, etidronate, zoledronate, and tiludronate.

*See* Exhibit W at 12 (emphasis added).  Additional claims of the '871 application also specifically claim risedronate.  *Id.*  Indeed, Teva's bold statement that the '685 and '235 applications have "nothing to do" with risedronate is completely disproven by their content and by the claims of its '871 application.  That Teva has withheld yet another one of its risedronate patent applications further evidences that Teva continues to withhold highly relevant discovery from Merck.

### B.    Teva's Representation that "Teva USA" and "Teva Ltd." Are Separate Entities For Discovery in this Case Remains Bogus

Teva clings to the false notion that "Teva Ltd." (i.e., the assignee of the '685 application) and "Teva USA" function as distinct corporate entities such that Teva was excused from producing damaging documents that it attempts to attribute to its corporate parent "Teva Ltd."[3]  As set forth in Merck's Opening Brief, these purportedly separate corporate entities are so intertwined that they actually operate as one and the same.  *See* Merck's Opening Brief at 8-9.

Even Teva confuses where "Teva USA" ends and where "Teva Ltd." begins. This case concerns the infringement effectuated by the filing of Teva's Abbreviated New Drug Application ("ANDA") for generic copies of ACTONEL® once-weekly tablets.  In its Opposition, Teva asserts that "Teva USA" owns this ANDA.  *See* Opposition at 8

---

[3]    Merck refers to Teva Pharmaceuticals USA, Inc. as "Teva USA," and Teva Pharmaceutical Industries Ltd. as "Teva Ltd."  Merck refers to the combination of these intertwined entities as "Teva."

("Teva USA filed its ANDA to market risedronate").  But "Teva Ltd." has elsewhere contradicted this by proclaiming ownership of the ANDA.  According to a press release on the website of "Teva Ltd.":

> Teva Announces Tentative Approval of Risedronate Sodium Tablets
>
> Jerusalem, Israel, August 12, 2005 - **Teva Pharmaceutical Industries Ltd. (Nasdaq: TEVA) announced today that the U.S. Food and Drug Administration has granted tentative approval for the Company's ANDA for Risedronate** Sodium Tablets, 5 mg, 30 mg and 35 mg.  Final approval is expected upon the resolution of pending patent litigation [i.e., the ACTONEL® once-weekly case]. …
>
> Teva Pharmaceutical Industries Ltd., headquartered in Israel, is among the top 20 pharmaceutical companies and among the largest generic pharmaceutical companies in the world.

A copy of the press release is attached as Exhibit X (emphasis added).  Teva's attempt to insulate "Teva Ltd." from discovery in this case is thus belied by its own public statements.  Teva's duplicity in proclaiming ownership by "Teva Ltd." of the ANDA that is at the root of this case, while withholding damaging documents on the basis that they are "Teva Ltd." documents, should not be rewarded.

Teva unequivocally asserts that "Teva USA today and at all relevant times has had no interest in the '685 application or anything corresponding to it."  Opposition at 13. This is wrong – "Teva USA" submitted in the United States Patent and Trademark Office ("PTO") the '235 application, which is the international counterpart of the '685 application.  *See* Merck's Opening Brief at 6-7.  Moreover, Teva admits that "Teva USA was designated as an 'applicant' [on the '235 application] only for a single country

6.

Barbados]."[4] Opposition at 13. That "Teva USA" submitted the '235 application in the PTO and was an applicant on the '235 patent in a foreign country cannot be cast aside. Those facts evidence an irrefutable interest on the part of Teva USA in the '235 application, which corresponds to the '685 application. Likewise, Teva cannot cast aside its obligation to produce the '685 and '235 applications to Merck.

Merck argued in its Opening Brief that Teva should have produced the '685 and '235 applications because they were in the control of Teva's attorneys at Kenyon. *See* Opening Brief at 9-10, *citing Poole v. Textron*, 192 F.R.D. 494, 501 (D. Md. 2000). In response, Teva manufactured straw man arguments to deflect attention from its misconduct:

> Merck also contends that because Teva USA and Teva Ltd. are represented by the same firm, the documents in that firm's office that belong to one party are under the "control" of the other. Kenyon & Kenyon LLP has documents from thousands of clients. To say that therefore each client "controls" the documents of all the others is ridiculous.

Opposition at p. 11, fn. 5. Indeed, this is "ridiculous" because Merck did not make such a bizarre argument. The fact that the supposedly separate "Teva USA" and "Teva Ltd." are both represented by Kenyon in risedronate patent matters and in prosecuting counterparts of the same patent applications proves that these two entities function as one and the

---

[4]     Teva tries to divert attention from its failure to produce the '235 application with the argument that "Teva USA" never prosecuted the '235 application in Barbados. *See* Opposition at 12-13. That does not change the fact that "Teva USA" applied for the '235 application in the PTO.

same with respect to those matters.[5]   Because Teva's '685 and '235 applications and related documents were certainly in Kenyon's files, Teva should have produced them. *See* 192 F.R.D. at 501 ("Plaintiff asserts that 'documents in the possession, custody, or control of a party's attorney or former attorney are within the party's 'control' for the purposes of Rule 34.  This Court agrees.")

**C.    Teva's Argument that Nothing in the '685 and '235 Applications Relates to "U.S. Activities" is Wrong**

Teva's next excuse for withholding its patent applications and underlying data is its general objection to producing documents "not related to U.S. activities."  Teva argues that the beagle experiments were performed in Israel, and therefore, Teva could excuse itself from producing them by virtue of its general objection.  Opposition at 13-14.  Teva asserts that "[n]othing in the '685 application relates to activities within the United States," a strange characterization given that the '685 application was filed in the United States PTO presumably for the purpose of affecting U.S. activities.  *Id*.

First, Teva's General Objection No. 5 is an exemplar of an improper general objection if used to shield damaging documents:

> To the extent that Merck's document requests purport to require production of documents not related to making, using, importing, promoting, or selling products in the United States, Teva objects to them as **overly broad, unduly burdensome and seeking information that is irrelevant to any issue in this lawsuit or not reasonably calculated to lead to the discovery of admissible evidence**.

---

[5]    Teva's privileged documents log provides yet another example of the lack of distinct boundaries between the supposedly separate companies and their representation at Kenyon.  *See* Exhibit L.  For example, entry 20 describes an email communication from Kenyon attorney Steve Lee to carbon copy recipients including "Teva Ltd." employees (e.g., Chris Pelloni, Yehuda Livneh), "Teva USA" employees, and additional Kenyon attorneys (e.g., James Galbraith, Maria Palmese, and Danae Schuster).

*See* Opposition at 13-14; Opposition Exhibit B at 2.  *See also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)(blanket objections to discovery requests as "overly broad, burdensome, oppressive and irrelevant" are "not adequate to voice a successful objection to an interrogatory")(citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3rd Cir. 1982)).

But setting aside Teva's improper general objection, Teva's '685 and '235 applications are indeed related to Teva's "products in the United States."[6]  Teva's ANDA seeks approval for generic copies of ACTONEL® (risedronate sodium) once-weekly tablets in the United States.  The '685 and '235 applications disclose a method for weekly dosing of risedronate:

> **Examples of bisphosphonates useful in the practice of the present invention include** … risedronic acid and pharmaceutically acceptable salts thereof (hereinafter, collectively known as "**risedronate**") … ."

*See* Exhibit F at 6 (emphasis added); Exhibit G at 8 (emphasis added).

> The most preferred bis-phosphonate of the present invention is alendronate … **most preferably between about 10 mg and about 70 mg**.

*See* Exhibit F at 6-7 (emphasis added); Exhibit G at 9 (emphasis added).  Merck's FOSAMAX® once-weekly tablets contain either 35 or 70 mg of alendronate, and FOSAMAX® daily tablets contain either 5 or 10 mg of alendronate.  The "most preferred" dose of the bisphosphonate is therefore a weekly dose.  Accordingly, Teva should have produced both of its applications and underlying data because they relate

---

[6]     Teva mystifyingly argues in its Opposition that "Merck does not dispute that [this][] limitation, restricting the undertaking to produce documents only from Teva USA, excludes the '685 application."  Opposition at 10.  Merck does indeed dispute this, as is plain from its opening brief.

directly to the subject matter at the heart of this case: Teva's generic version of once-weekly risedronate tablets.

### D.      Teva's General Objections Are Impermissible

While appearing to comply with Merck's requests for production, Teva secretly withheld its damaging documents by hiding them behind improper general objections. Teva and its counsel must have known that their practice of selective production would mislead Merck into believing that Teva had complied with its discovery obligations.

Teva cannot grant itself a license to hide its '685 and '235 applications behind improper general objections. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)(blanket objections to discovery requests are not adequate to hide discovery)(citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3rd Cir. 1982)); *Athridge v. Aetna Casualty and Surety* Co., 184 F.R.D. 181, 190 (D.D.C. 1998); *Starlight Intl., Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998)(stating "[t]he court has disapproved of the practice of asserting a general objection to the extent it may apply to particular requests for discovery"); *Momah v. Albert Einstein Medical Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)(holding that "mere recitation of the familiar litany that an interrogatory or a document production is request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice).

Essentially, Teva argues that its general objections allowed it to produce only the documents that it wanted to produce.  For example, in its responses to Merck's requests for production from the files of "Teva Ltd.," Teva assured Merck that despite its general objections, Teva would produce "relevant, non-privileged documents."  Merck requested the production of documents from a "Teva Ltd." employee, Uzi Karniel:

> <u>Request for Production No. 73</u>  All documents and things from the files of Uzi Karniel referring or relating to risedronate.

> <u>Request for Production No. 74</u>    All documents and things in the possession, custody or control of Uzi Karniel referring or relating to osteoporosis or to any drug used in the treatment and prevention of osteoporosis.

*See* Exhibit C at 19.   Mr. Karniel is the General Counsel and Corporate Secretary of "Teva Ltd."  *See* Exhibit K at 5.  Teva's response to each of these requests misled Merck into believing that Teva would produce Mr. Karniel's documents:

> Subject to the foregoing Specific and General Objections, **Teva will produce relevant, non-privileged documents** in the custody or control of Teva that can be located by a reasonable search.

*See* Opposition Exhibit B at 38-40 (emphasis added).   In accord with Teva's current contention that it was under no duty to produce documents from "Teva Ltd." employees, Teva should have forthrightly stated that it refused to produce Mr. Karniel's documents.

Teva decided that it would determine which documents to produce in response to Merck's document requests, and which documents to withhold.   Similar presumptuousness has been rejected before:

> **This type of answer hides the ball.  It leaves the plaintiff wondering what documents are being produced and what documents are being withheld.  Furthermore, it permits the defendant to be the sole arbiter of that decision.**  Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld. The defendant, having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide the question of relevance which is unquestionably the decision of the judge.  …  Asserting a relevance objection, then proceeding to agree to produce "relevant, non-privileged" documents "[s]ubject to and without waiving" that objection, serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review defendant's decisions.

*Athridge v. Aetna Casualty and Surety* Co., 184 F.R.D. 181, 190 (D. D.C. 1998)(emphasis added).

For example, in *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 1995 WL 389822 (N.D. Ill. 1995), a patent infringement case, Ebco requested documents relating to pending patent applications. *Id.* at *4. Elkay responded with a litany of 13 general objections, and withheld such documents on the basis of its general objections. Ebco reasonably relied on Elkay's non-production of pending applications to signify that there were none, thus it did not file a motion to compel; but it later became aware that such applications did exist. *Id.* at *4-5.

The court granted Ebco's motion for sanctions because Elkay's withholding documents based on its general objections "runs completely contrary to the liberal discovery policy underlying the Federal Rules of Civil Procedure." *Id.* at * 1, 5. Elkay's "laundry list" of general objections was "wholly inadequate," and "incomplete, non-responsive, if not deliberately evasive." *Id.* "Elkay had a duty to state clearly the reasons for its objections so that Ebco would have had the opportunity to challenge the validity of these objections." *Id.*

### E.     Merck Did Not "Acquiesce" to Teva's General Objections

Teva argues that Merck acquiesced to Teva's general objections "because the burden was on Merck to challenge [them], either formally or informally." Opposition at 12. Teva is wrong. Indeed, if Teva's position were correct, requesting parties would be forced to file motions to compel on every general objection in order to ensure that relevant documents in the other party's possession were not surreptitiously withheld. That is not the rule. *See Alexander v. Federal Bureau of Investigation,* 194 F.R.D. 299, 302

12.

(D.D.C. 2000) (It is well established that "[t]he **party objecting** to ... discovery bears the burden of 'show[ing] why discovery should not be permitted.'" (internal citations omitted)(emphasis added)); *Poole v. Textron, Inc.,* 192 F.R.D. 494, 500, n.8 (D. Md. 2000)(Textron's gamesmanship regarding Poole's requests for production "exalted form over substance" and were improper).

Moreover, Merck believed that Teva was complying with its discovery obligations because Teva produced documents from "Teva Ltd.," and because Teva assured Merck it would produce documents from Uzi Karniel. *See* Section II(D). Yet Teva now declares that "'Teva USA' in fact did not produce documents from Teva Ltd.." *See* Opposition at 12. Teva's statement is flatly wrong. Teva produced "Teva Ltd." documents related to Israeli business operations. *See* Exhibit Y at R05013, R05022, R05026, R05035, R05039, R05052, R05056, R05057, R05059, R05071, and R05104. Teva also produced documents from Chris Pelloni's files while he was a "Teva Ltd." employee. *See* Exhibit Y at T001093. These are only a few examples of "Teva Ltd." documents appearing in Teva's document production. Significantly, even Teva's privileged documents log includes an entry asserting privilege over a document from a Kenyon attorney addressed *only* to a "Teva Ltd." employee.[7] This led Merck to believe that Teva was conducting appropriate searches for "Teva Ltd." documents as required by Merck's requests for production.

---

[7]     *See* Exhibit M, entry 12. Merck and Teva agreed that documents produced in the FOSAMAX® once-weekly will also be considered produced in the ACTONEL® once-weekly case.

**III.  TEVA'S WITHHELD '685 AND '235 APPLICATIONS PROVIDE CRITICAL NEW EVIDENCE THAT CONFIRMS THE VALIDITY OF MERCK'S PATENTS**

**A.  The Inventions in Merck's Patents and Teva's '685 and '235 Applications Rely Solely Upon Beagle Experiments, Unlike the '006 Patent**

Teva asserts that "Merck knows and has known for years" that Teva has relied on beagle experiments in patent applications.  Opposition at 17.  Teva miscasts the critical issue:  Merck did not know that Teva had filed its own patent applications in this field that disclosed experimental data solely from beagle experiments.  The distinction is seminal.

Teva points to its withheld '006 patent when it argues Merck "has known for years" that Teva relied upon beagle experiments.[8]  The '006 patent does not cast any light on the critical issue that had been hidden from Merck.  Teva was filing and prosecuting its own patent applications in this field that relied solely upon data obtained from beagle experiments, but was hiding those patent applications from Merck.  In contrast, the '006 patent contains data from literally a dozen prior experiments that did not involve beagles and that related to pharmaceutical tablet formulations.  *See* Exhibit O, to which a copy of the '006 patent is attached as Exhibit A.

**B.  Teva Ignores the Fact that the Reddy Publication is Neither a Patent Nor a Patent Application**

Teva also argues that Merck "knew" about the beagle experiments issue because Teva's expert relied upon a journal article called *"Alendronate Treatment of Naturally Occurring Periodontitis in Beagle Dogs."*  Opposition at 19-20.  This journal publication

---

[8]     As described in Merck's Opening Brief, Teva also withheld its '006 patent from Merck during the FOSAMAX® once-weekly case.  *See* Opening Brief at 10-11.

also sheds no light on the seminal issue of whether it is permissible for patents to rely solely upon data obtained from beagle experiments in this field. First, this is a journal article, and neither a patent nor a patent application. Second, if this article were as critical as Teva says it is, Teva would have addressed the article in its specifications for the '685 and '235 applications. It did not.

### C.      Merck's Beagle Experiments Were Critical to the Federal Circuit's Opinion in the FOSAMAX® Once-Weekly Case

Merck's beagle experiments were central to the Federal Circuit's opinion in the FOSAMAX® once-weekly case. By dismissing the beagle experiments, the Federal Circuit held that Merck's patent claims were invalid as obvious under 35 U.S.C. § 103. *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1377 (Fed. Cir. 2005). Obviousness is a legal conclusion based upon four detailed fact inquiries, including the differences between the prior art (e.g., the *Lunar News* articles) and the patented invention (e.g., Merck's patent claims for FOSAMAX® once weekly). *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). In its examination of those differences, the Federal Circuit, upon Teva's urging, found that Merck's beagle experiments offered "nothing" over the *Lunar News* articles. 395 F.3d at 1374. Accordingly, the Federal Circuit held Merck's patent claims invalid. Now, Teva tries two tactics to downplay the importance of Merck's beagle experiments.

First, Teva argues that the beagle experiments in its withheld patent applications are irrelevant because "[a]t no time did Teva USA argue that the patent claims were invalid because they relied on beagles … ." Opposition at 7. To the contrary, that was Teva's argument in the FOSAMAX® once-weekly case. In a section of its Federal

Circuit Reply brief entitled "MERCK DOES NOT DEFEND THE DISTRICT COURT'S

LEGAL ERRORS ON OBVIOUSNESS," Teva asserted:

> The '329 patent does not include data or reports of experimentation proving the workability of an idea that was contrary to some conventional wisdom. Merck's inventors had no such information. On the contrary, the patent provides nothing beyond what [] had already [been] disclosed in the *Lunar News*. **Specifically, the '329 patent includes no clinical trial data or results from studies in people proving the safety and effectiveness of the once-weekly administration of alendronate.** … **Recognizing this weakness, Merck now feebly attempts to rely on the beagle experiments described in Example 1 in the '329 patent.**

*See* Exhibit U at 18 (emphasis added). Teva's experts in the FOSAMAX® once-weekly

case and two of Teva's experts in this case also offered disparaging opinions of beagle

experiments.

Second, Teva leaves the misimpression that Merck's alendronate patent claims

were held invalid because they "parroted what another expert in the field had published in

the prior art," i.e., invalid for anticipation under 35 U.S.C. § 102. Opposition at 7.

Actually, the Federal Circuit held that Merck's patent claims were obvious and *not*

anticipated. 395 F.3d at 1377. This distinction is critical because unlike the anticipation

analysis, the obviousness analysis requires a detailed inquiry into the scientific beliefs

and expectations of those skilled in the field. *See Trintec Industries, Inc. v. Top-U.S.A.*

*Corp.*, 295 F.3d 1292, 1296 (Fed. Cir. 2002)(recognizing that anticipation and

obviousness are distinct legal concepts); *In re Ochiai*, 71 F.3d 1565, 1570 (Fed. Cir.

1995)(recognizing "the fact-intensive inquiry mandated by Section 103."). Simply put,

Teva improperly advances the anticipation legal test to divert attention from Teva's

withheld beagle experiments and how those skilled in the art would view them.

**IV.    TEVA WILL NOT BE PREJUDICED BY A STAY**

As Merck described in its Opening Brief, Merck has moved to stay pre-trial and trial proceedings in this case pending resolution of the Rule 60(b) case.  Much of the withheld discovery in this case will also be at the center of the Rule 60(b) case.[9]  Teva presents only two reasons why a stay could be improper.

First, Teva argues that Merck's Complaint in the Rule 60(b) case is nothing but a "stall tactic."   Teva incorrectly asserts that "Teva USA never withheld anything." Opposition at 24.  By now, it should be clear that Teva withheld at least the '685 and '235 applications, and continues to withhold the experimental data underlying them. Teva has even withheld its '871 application, which specifically claims risedronate.  It is likely that much more has been withheld.  Teva's argument that it "never withheld anything" is plainly false.  Therefore, this predicament is of Teva's own creation.

Second, Teva argues that it will be prejudiced by a delay in the resolution of this case.  As this Court has explained, "[t]he mere fact of delay is inherent in every request to stay.  The issue, therefore, is whether the stay would unduly prejudice the non-moving party." *Levy v. Sterling Holding Co., LLC*, 2004 WL 2251268, *2 (D.Del. 2004).  Teva is required to show some prejudice other than that caused by "the mere fact of a delay." *Id.*  Teva cannot and does not establish any prejudice other than mere delay in the resolution of this case.

Simply put, such delay does not affect Teva's ability to launch its generic product. When Merck filed the Complaint in this case, it effectuated a statutory 30-month stay of

---

[9]     In its Opening Brief, Merck suggested that if a stay of pre-trial and trial proceedings is granted, consolidation of fact discovery in this case with the Rule 60(b) case may conserve the resources of the Court and the parties.

approval of Teva's ANDA. 21 U.S.C. § 355(j)(5)(B)(iii). This statutory stay expires in January 2007. At that time, Teva will no longer be prevented from launching generic copies of ACTONEL® tablets as a result of any Merck action.[10] Therefore, the launch of Teva's generic product will not be impeded by a stay of pre-trial and trial proceedings in this case.

## V.     CONCLUSION

For all of the reasons set forth in Merck's Opening Brief and Reply Brief, Merck respectfully requests that the Court reopen fact and expert discovery, and otherwise stay this case.

---

[10]    In its ANDA, Teva also certified that United States Patent No. 5,583,122, which belongs to P&G, is also invalid. P&G also sued Teva for patent infringement, and that case is pending as *The Procter & Gamble Company v. Teva Pharmaceuticals USA, Inc.*, 04-940 (JJF). The statutory stay that prevents Teva from launching its generic copies of the ACTONEL® products will also expire in January 2007.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/Mary B. Graham*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff*
*Merck & Co., Inc.*

OF COUNSEL:

John F. Lynch
HOWREY, LLP
750 Bering Drive
Houston, TX  77057-2198
713.787.1400

Nicolas G. Barzoukas
Suzy S. Harbison
Jason C. Abair
WEIL, GOTSHAL & MANGES
700 Louisiana, Suite 1600
Houston, TX  77002
713.546.5000

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ  08889-0100
908.423.1000

Edward W. Murray
Gerard M. Devlin
MERCK & CO., INC.
126 E. Lincoln Avenue RY28-320
Rahway, NJ  07065-0907
732.594.4000

Dated:  June 21, 2006
525910

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Josy Ingersoll, Esquire
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 21, 2006 upon the following individuals in the manner indicated:

| BY HAND AND E-MAIL | BY E-MAIL |
|---|---|
| Josy Ingersoll, Esquire | James Galbraith, Esquire |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | KENYON & KENYON |
| The Brandywine Building | One Broadway |
| 1000 West Street, 17th Floor | New York, NY 10004 |
| Wilmington, DE 19801 | |

*/s/ Mary B. Graham*

Mary B. Graham (#2256)