# EXHIBIT 1

# EXHIBIT 1

## JOINT STATEMENT OF UNCONTESTED FACTS

1. Plaintiff Merck & Co., Inc. ("Merck") is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, Whitehouse Station, NJ 08889.

2. Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 650 Cathill Road, Sellersville, PA.

3. On November 30, 1999, United States Patent No. 5,994,329 ("the '329 patent") was issued.

4. Merck is the owner of the '329 patent.

5. On August 13, 2002, United States Patent No. 6,432,932 ("the '932 patent") was issued.

6. Merck is the owner of the '932 patent.

7. Teva USA has filed Abbreviated New Drug Application ("ANDA") No. 77-132, including a certification under Title 21, United States Code § 355(j)(2) with the Food and Drug Administration ("FDA") for tablets containing 35 mg of risedronate sodium.

8. Teva stipulates for the purposes of this trial that the commercial marketing of Teva USA's proposed 35 mg risedronate sodium tablets, in accordance with ANDA No. 77-132, would infringe claims 20 and 34 of the '329 patent if those claims are valid.

9. The date of invention for claims 20 and 24 of the '329 patent is July 22, 1997.

10. The April and July 1996 *Lunar News* are prior art publications to the Merck patents under 35 U.S.C. § 102(a).

11. As set forth by the Federal Circuit in *Merck & Co. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1372 (2005), the claim term "about" in the '329 and '932 patents should be given its ordinary meaning of "approximately."

12. Procter & Gamble administered weekly doses of risedronate to patients on May 21, 1999.

13. The date on which patients were first administered risedronate on a weekly dosage regimen in Procter & Gamble Study No. 199033 is May 21, 1999.

14. The date on which patients were first administered risedronate on a weekly dosage regimen in Procter & Gamble Study No. HMR4003E/3001 is September 23, 1999.

## STATEMENT OF FACTS THAT TEVA USA CONTENDS SHOULD BE UNCONTESTED

Teva USA contends that the following statements of fact cannot in good faith be contested:

1. The history of bisphosphonates as a class is minimally relevant to an analysis of the obviousness of a once-weekly dose of risedronate with respect to side effects because each bisphosphonate possesses unique characteristics. *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 288 F. Supp. 2d 601, 626 (D. Del. 2003) ("*Merck I*").

2. *Lunar News* was a quarterly newsletter distributed to approximately 15,000 to 20,000 physicians and others working in the field of osteoporosis by Lunar Corporation, a manufacturer of bone densitometry equipment used to diagnose osteoporosis. *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1368 n.5 (Fed. Cir. 2005) ("*Merck II*").

3. The *Lunar News* articles were authored by Dr. Richard Mazess, who was the director of the Bone Mineral Laboratory at the University of Wisconsin. Dr. Mazess established

bone densitometry as a diagnostic tool, founded the first manufacturer of bone densitometry measuring equipment (Lunar), was Lunar's first president, has participated in and designed clinical trials for osteoporosis treatment, and is widely published in the bone disease field. *Id.*

4. Dr. Mazess was a person working in the field of, or doing research on, osteoporosis, and so he is skilled in the relevant art. *Id.* at 1376.

5. Dr. Mazess was an expert in osteoporosis. *Id.*

6. The April 1996 and July 1996 *Lunar News* articles suggested the weekly dosing of bisphosphonates to improve patient compliance with the dosing regimen. *Id.* at 1368, 1375.

7. The '329 patent and both the April and July 1996 *Lunar News* articles explain the motivation for a once-weekly dose as increasing patient compliance, by making it easier to take the drug (and incur the inconvenience of the rigorous dosing regimen less frequently). *Id.* at 1373.

8. The literature, specifically the October 1996 article by De Groen published in the *New England Journal of Medicine*, taught that complications related to alendronate were due to prolonged contact of the drug with the esophagus. *Id.*; *Merck I* at 627.

9. In response to reports of adverse GI events with alendronate, Merck revised its dosing instructions for FOSAMAX® and distributed a "Dear Doctor" letter to physicians. *Merck II* at 1373.

10. After Merck sent the "Dear Doctor" letter, the reported incidence of complications with alendronate fell to almost nothing even as the number of patients being prescribed FOSAMAX® doubled by October 1996. *Id.*

11. The '329 patent, both *Lunar News* articles, and the prevailing knowledge of those skilled in the art recognized that taking fewer pills each week could reduce the adverse GI events with alendronate. *Id.* at 1373-74.

12. The '329 patent provides no motivation to overcome adverse GI events beyond that provided by the April and July 1996 *Lunar News* articles. *Id.* at 1373.

13. The '329 patent provides no data showing the safety and tolerability of the claimed invention beyond the teachings set forth in the April and July 1996 *Lunar News* articles. *Id.* at 1374.

14. Financial success is not significantly probative of the question of nonobviousness because others were legally barred from commercially testing the *Lunar News* ideas. *Id.* at 1377.

15. The July 1996 issue of *Lunar News* was not cited by the Patent Examiner during prosecution of the '329 patent, nor was it disclosed to the Patent Examiner by Merck.

16. The July 1996 issue of *Lunar News* is more relevant than any of the references cited by the Patent Examiner during the prosecution of the '329 patent.