EXHIBIT 10

### MERCK'S PRETRIAL PROPOSED FINDINGS OF FACT
### AND CONCLUSIONS OF LAW[1]

1.      Plaintiff Merck & Co., Inc. ("Merck") is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, Whitehouse Station, NJ 08889.

2.      Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 650 Cathill Road, Sellersville, PA 18960.

3.      On November 30, 1999, United States Patent No. 5,994,329 (the "'329 patent") was duly and legally issued to Anastasia G. Daifotis, Arthur C. Santora II, and A. John Yates for a METHOD FOR INHIBITING BONE RESORPTION. Merck filed the application for the '329 patent on July 22, 1997.

4.      Claims 20 and 34 of the '329 patent are being asserted against Teva in this case.

5.      Claim 20 of the '329 patent, rewritten into independent form, claims:

> A method for treating osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.

6.      Claim 34 of the '329 patent, rewritten into independent form, claims:

> A method for preventing osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.

---

[1]   To the extent that any proposed finding of fact is deemed to be an issue of law, it should be so considered, and to the extent that any proposed conclusion of law is deemed to be an issue of fact, it should be so considered.

7.      The '329 patent is set to expire on August 14, 2018.

8.      Merck is the owner of the '329 patent. The '329 patent covers once-weekly ACTONEL® tablets for the treatment and prevention of osteoporosis.

9.      On August 13, 2002, United States Patent No. 6,432,932 (the "'932 patent") was duly and legally issued to Anastasia G. Daifotis, Arthur C. Santora II, and A. John Yates for a METHOD FOR INHIBITING BONE RESORPTION.  Merck filed the application for the '932 patent on September 2, 1999, and that application claims priority from an earlier patent application filed on July 22, 1997.

10.      Claim 6 of the '932 patent is being asserted against Teva in this case.

11.      Claim 6 of the '932 patent, rewritten into independent form, claims:

> A method for treating or preventing osteoporosis in a human, said method comprising orally administering to said mammal a pharmaceutically effective amount of about 35 mg of risedronate monosodium hemi-pentahydrate as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing.

12.      The '932 patent is set to expire on August 14, 2018.

13.      Merck is the owner of the '932 patent. The '932 patent covers once-weekly ACTONEL® tablets for the treatment and prevention of osteoporosis.

14.      Teva filed ANDA No. 77-132 seeking approval to market generic copies of ACTONEL® once-weekly tablets that contain 35 mg of risedronate sodium[2] before the expiration of the '329 and '932 patents.

## II.      TEVA'S ANDA NO. 77-132 INFRINGES CLAIMS 20 AND 34 OF THE '329 PATENT AND CLAIM 6 OF THE '932 PATENT

15.      Under 35 U.S.C. § 271(e)(2), it is an act of infringement to file an ANDA under Section 505(j) of the Federal Food, Drug and Cosmetic Act for a drug claimed in a patent or the use

---

[2] ACTONEL® tablets contain risedronate monosodium hemi-pentahydrate.

of which is claimed in a patent for the purpose of bringing the drug to market before expiration of that patent. *Glaxo v. Novopharm. Ltd.*, 101 F.3d 1562, 1569 (Fed. Cir. 1997). Courts have recognized that such infringement is "artificial," as the accused infringer hasn't yet brought its product to market. The Court thus determines whether the drug's use would infringe the patent, if it were approved. *Id.*

16.     Teva has stipulated to infringement of claims of the '329 patent. Specifically, Teva has stipulated that that the marketing of 35 mg risedronate sodium in accordance with ANDA No. 77-132 would infringe claims 20 and 34 of the '329 patent under 35 U.S.C. § 271(e)(2).

17.     Although Teva has not conceded infringement of claims of the '932 patent, Teva's marketing of 35 mg risedronate sodium in accordance with ANDA No. 77-132 would infringe claim 6 of the '932 patent under 35 U.S.C. § 271(e)(2).

## III.    THE PERSON OF ORDINARY SKILL IN THE ART

18.     The claims of the '329 and '932 patents were not written for laymen, but for "persons experienced in the field of the invention." *E.g.. Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999).

19.     One of skill in art of the '329 and '932 patents is someone with an M.D. or Ph.D. degree, perhaps both, and working in the field of osteoporosis. Such a person would be familiar with the literature and background of bisphosphonates in osteoporosis.

## IV.    DEFENDANT HAS NOT OVERCOME THE STATUTORY PRESUMPTION OF PATENT INVALIDITY

20.     Once issued, patents are presumed to be valid, and the burden of establishing invalidity of a patent claim rests solely on the party asserting such invalidity. *See* 35 U.S.C. § 282. The burden of establishing the invalidity of a claim rests solely on the party asserting invalidity. *See* 35 U.S.C. § 282. The burden is constant, never shifts, and must convince the court of invalidity by

clear and convincing evidence. *E.g., Nupla Corp. v. IXL Mfg. Co.,* 114 F.3d 191, 192-93 (Fed. Cir. 1997). In this case, Teva has failed to establish the invalidity of claims 20 and 34 of the '329 patent and claim 6 of the '932 patent by clear and convincing evidence.

## V.    CLAIMS 20 AND 34 OF THE '329 PATENT AND CLAIM 6 OF THE '932 PATENT ARE NOT ANTICIPATED BY THE PRIOR ART

21.    For anticipation, every element of the claimed invention must be identically shown within the confines of a single reference, arranged as in the claim under review. *E.g., Crown Operations International, Ltd. v. Solutia Inc.*, 789 F.3d 1367, 1375 (Fed. Cir. 2002).

22.    Although a reference can anticipate a claim if its disclosure or a particular claim element is inherent rather than express, there must be no difference between the claimed invention and the reference disclosed, as viewed by a person of ordinary skill in the field of the invention. *See Standard Havens Prod., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991) (affirming denial of JNOV because reference did not anticipate). If even one claim element is missing from a reference, the claim is not "anticipated" by that reference. *Id.*

23.    Claims 20 and 34 of the '329 patent and claim 6 of the '932 patent are not anticipated by the prior art under 35 U.S.C. § 102.

24.    United States Patent No. 5,869,471 (the "'471 patent") fails to disclose every element of claims 20 and 34 of the '329 patent. The '471 patent therefore does not anticipate claims 20 and 34 of the '329 patent.

25.    The Procter & Gamble Co.'s clinical trials pertaining to risedronate fail to anticipate claim 6 of the '932 patent because the clinical trials did not occur before the July 22, 1997, priority date for the '932 patent.

26.    A prior art disclosure cannot anticipate if it does not enable one of skill in the art to make and use the claimed invention. *E.g., PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558,

1566 (Fed. Cir. 1996). Prior art references must enable in order to anticipate because otherwise they fail to place the allegedly disclosed matter in the possession of the public. *Akzo N.V. v. US ITC*, 808 F.2d 1471 (Fed. Cir. 1986).

## VI.    CLAIMS 20 AND 34 OF THE '329 PATENT AND CLAIM 6 OF THE '932 PATENT ARE NOT OBVIOUS IN LIGHT OF THE PRIOR ART

27.    Obviousness is a question of law based upon underlying factual determinations. *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1071 (Fed. Cir. 1994).

28.    When the inquiry turns to obviousness under 35 U.S.C. § 103, the disclosure must again be assessed to determine whether the methods were obvious under all circumstances without employing hindsight. *E.g., Custom Accessories, Inc. v. Jeffrey Allan Indus., Inc.,* 807 F.2d 955, 960 (Fed. Cir. 1986).   It is in this exercise that the Court can avail itself of secondary indicia of nonobviousness such as commercial success and failure of others to assist in reaching a conclusion. *Id.*

29.    In an obviousness determination, the following factual inquires should be considered: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; (4) objective considerations, such as commercial success, long felt need, failure of others, and copying.  *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684 (1966).

30.    It is critical in an obviousness analysis to view the patentability of claims while "casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field."  *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *abrogated on other grounds by In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).

31.     In 1996 and 1997, there was an expectation by clinicians in the bisphosphonates field that risedronate sodium would not be well tolerated at a 35 mg dose.  At this time, those of skill in the art would not have used 35 mg doses of risedronate sodium because of the clear expectation that the safety and tolerability profile for such high doses would have been unacceptable in osteoporosis.

32.     In July 1997, it was well known that the oral administration of bisphosphonates caused dose-related gastrointestinal side effects.  In July 1997, any suggestion to give 35 mg doses of risedronate sodium, a potentially irritating compound, to patients contradicted the understanding of those of skill in the art.

33.     Rank speculation about a therapeutic method fails to enable when those skilled in the art would not consider such method as safe and tolerable by patients.  Guesswork without performance that does not show to a skilled physician the performance of the method does not place anything new in the possession of the public. *See, Crow Operations Int'l., Ltd. v. Solutia, Inc.*, 289 F. 3d 1367, 1375 (Fed. Cir. 2002).

34.     The development of a therapy for disease requires the drug to be safe and well tolerated by the patient.  Based on the knowledge in the field, no reasonable clinician would have increased the dose of risedronate sodium given to patients.  The suggestions in the prior art, including the April 1996 and July 1996 Lunar News, did not address the widely expected and recognized concerns associated with the dose-related gastrointestinal side effects of bisphosphonates.  The Lunar News does not even address risedronate.

35.     The development of a therapy for disease requires the drug to be safe and well tolerated by the patient.  Merck's beagle experiments provided surprising insight that higher weekly oral doses of bisphosphonates, including risedronate sodium, could be at least as safe and tolerable as much smaller daily doses.

36.     Based upon the underlying fact determinations, claims 20 and 34 of the '329 patent and claim 6 of the '932 patent are not obvious under 35 U.S.C. § 103.

## VII.   ONCE-WEEKLY ACTONEL® TABLETS ARE COMMERCIALLY SUCCESSFUL AND THEREFORE NOT OBVIOUS OVER THE PRIOR ART

37.     Courts must take objective indicia of nonobviousness, also known as "secondary considerations," into account before a conclusion on obviousness is reached. *Glaverbel Societe Anonyme v. Northlake Marketing*, 35 F.3d 1550, 1555 (Fed. Cir. 1995); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986).   Secondary considerations include the commercial success of a product embodying the patented invention and the copying of the invention by others. *In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir 1994).   Chief Judge Markey of the Federal Circuit has remarked: "evidence of secondary considerations may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-9 (Fed. Cir. 1983); *see also Pro-Mold and Tool Co. v. Great Lakes Plastic Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996).

38.     Claims 20 and 34 of the '329 patent and claim 6 of the '932 patent claims once-weekly dosing regimens for risedronate sodium, for the prevention and treatment of osteoporosis. ACTONEL® once-weekly risedronate sodium tablets embody the invention of claims 20 and 34 of the '329 patent and claim 6 of the '932 patent '329 patent and are part of the ACTONEL® franchise.

39.     Once-weekly ACTONEL® tablets were first offered for sale in June 2002.  Prior to the introduction of the once-weekly dosing regimen for ACTONEL® tablets, daily risedronate sodium therapy was available.

40.     Teva is free to market risedronate sodium for the treatment and prevention of osteoporosis as of January 2007.

41.     Teva affirmatively decided to file an ANDA and to go forward with a costly and time-consuming litigation all in the hopes that it could freely copy the once-weekly dosing regimen of the '329 and '932 patents.

42.     From its introduction in May 2000 until June 2002, sales and prescription volumes for the daily ACTONEL® product had been increasing at a constant trend. Immediately upon the introduction of the once-weekly dosing regimen, a seminal and fundamental shift upward is seen in this trend.

43.     The only comparable fundamental shift is seen in the prescription volume trends of the FOSAMAX® franchise, which also embodies the inventions claimed by the '329 patent. The dramatic shift only occurs within the FOSAMAX® and ACTONEL® franchises, and is attributable to the introduction of the once-weekly dosing regimens.

44.     This fundamental increase in the prescription volume for ACTONEL® tablets indicates a virtually immediate adoption of the once-weekly dosing regimen by both patients and physicians.

45.     The fundamental increase in ACTONEL® brand sales and prescription volumes due to the introduction of the once-weekly dosing regimen and is testimony to the commercial success of the regimen claimed in the '329 and '932 patents.

46.     The marketplace often measures the significance of an invention better than a courtroom. *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991). Secondary considerations such as commercial success "illuminate the technological and commercial environment of the inventor, and aid in understanding the state of the art at the time the invention was made." *Id*.

47.     The commercial success of the once-weekly ACTONEL® tablets and Teva's continued fight to copy these tablets is clear and weighty evidence of the nonobviousness of the invention of the once-weekly dosing regimen.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

Mary B. Graham (#2256)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*ATTORNEYS FOR PLAINTIFF*
*MERCK & CO., INC.*

OF COUNSEL:

John F. Lynch
Nicolas G. Barzoukas
HOWREY SIMON ARNOLD
& WHITE LLP
750 Bering Drive
Houston, TX 77057-2198
Telephone: 713.787.1400

Paul D. Matukaitis
MERCK & CO., INC.
One Merek Drive
Whitehouse Station, NJ 08889-0100

Edward W. Murray
Gerard M. Devlin, Jr.
126 East Lincoln Ave., RY28-320
Rahway, NJ 07065

Dated:  March 28, 2003

# APPENDIX

## PLAINTIFF'S TRIAL EXHIBIT LIST
## AND CORRESPONDING DEFENDANT'S TRIAL EXHIBITS
### Merck v. Teva, C.A. No. 01-048 (JJF)

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 1 | U.S. Patent No. 5,994,329 (issued Nov. 30, 1999) (certified copy). | DTX 2 |
| PTX 28 | LUNAR CORP., LUNAR NEWS 1-44 (Apr. 1996). | DTX 417 |
| PTX 29 | LUNAR CORP., LUNAR NEWS 1-36 (Jul. 1996). | DTX 418 |
| PTX 30 | LUNAR CORP., LUNAR NEWS 1-44 (Dec. 1996). | |
| PTX 31 | LUNAR CORP., LUNAR NEWS 1-48 (Apr. 1997). | |
| PTX 67 | Letter from Louis M. Shewood, Senior Vice President of Medical and Scientific Affairs, U.S. Human Health, Merck & Co., Inc., to Doctors (Mar. 15, 1996). | DTX 34 |
| PTX 68 | MERCK & CO., INC., FOSAMAX® (ALENDRONATE SODIUM TABLETS),PACKAGE INSERT NO. 7957019 (Issued Jan. 2001). | |
| PTX 69 | Charles H. Chesnut et al., *Alendronate Treatment of the Postmenopausal Osteoporotic Woman: Effect of Multiple Dosages on Bone Mass and Bone Remodeli*ng, 99 AM. J. MED. 144, 144-152 (1995). | DTX 14 |
| PTX 77 | H. I. J. Harinck et al., *Paget's Disease of Bone: Early and Late Responses to Three Different Modes of Treatment with Aminohydroxypropylidene Bisphosphonate* (*APD*), 295 BRIT. MED. J. 1301, 1301-1305 (1987). | |
| PTX 83 | Steven T. Harris et al., *Four-Year Study of Intermittent Cyclic Etidronate Treatment of Postmenopausal Osteoporosis: Three Years of Blinded Therapy Followed by One Year of Open Therapy*, 95 AM. J. MED. 557, 557-567 (1993). | |
| PTX 84 | A. T. M. van Holten-Verzantvoort et al., *Palliative Pamidronate Treatment in Patients with Bone Metastases from Breast Cancer*, 11 J. CLINICAL ONCOLOGY 491, 491-498 (1993). | |
| PTX 86 | S. Adami et al., *Effects of Two Oral Doses of Alendronate in the Treatment of Paget's Disease of Bone*, 15 BONE 415, 415-417 (1994). | |
| PTX 87 | E. G. Lufkin et al., *Pamidronate: An Unrecognized Problem in Gastrointestinal Tolerability*, 4 OSTEOPOROSIS INT'L 320, 320-322 (1994). | |
| PTX 89 | U. A. Liberman et al., *Effects of Oral Alendronate on Bone Mineral Density and the Incidence of Fractures in Postmenopausal Osteoporosis*, 333 NEW ENG. J. MED. 1437, 1437-1443 (1995). | DTX 276 |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 90 | G. Maconi & G. Bianchi Porro, *Multiple Ulcerative Esophagitis Caused by Alendronate*, 90 AM. J. GASTROENTEROLOGY 1889, 1889-1890 (1995). | |
| PTX 91 | P. C. De Groen et al., *Esophagitis Associated with the Use of Alendronate*, 335 NEW ENG. J. MED. 1016, 1016-1021 (1996). | DTX 6 |
| PTX 92 | D. M. Black et al., *Randomised Trial of Effect of Alendronate on Risk of Fracture in Women with Existing Vertebral Fractures*, 348 LANCET 1535, 1535-1541 (1996). | DTX 341 |
| PTX 96 | M. F. Abdelmalek & D. D. Douglas, *Letters to the Editor: Alendronate-Induced Ulcerative Esophagitis*, 91 AM. J. GASTROENTEROLOGY 1282, 1282-1283 (1996). | |
| PTX 98 | Sorrentino et al., *Esophageal Ulceration Due to Alendronate*, 28 ENDOSCOPY 529 (1996). | DTX 404 |
| PTX 100 | D. O. Castell, *Editorials: "Pill Esophagitis" – The Case of Alendronate*, 335 NEW ENG. J. MED. 1058, 1058-1059 (1996). | DTX 8 |
| PTX 101 | G. Naylor & M. H. Davies, *Letter to Editor: Oesophageal Stricture Associated with Alendronic Acid*, 348 LANCET 1030, 1030-1031 (1996). | |
| PTX 102 | D. E. Rimmer & D. E. Rawls, *Letters to the Editor, Improper Alendronate Administration and a Case of Pill Esophagitis*, 91 AM. J. GASTROENTEROLOGY 2648, 2648-2649 (1996). | |
| PTX 104 | M. A. Blank et al., *Nonclinical Model for Assessing Gastric Effects of Bisphosphonates*, 42 DIGESTIVE DISEASES SCI. 281, 281-288 (1997). | |
| PTX 105 | R. E. Colina et al., *A New Probable Increasing Cause of Esophageal Ulceration: Alendronate*, 92 AM. J. GASTROENTEROLOGY 704, 704-706 (1997). | |
| PTX 106 | C. M. Girelli et al., *Esophagitis from Alendronate: Report of Two Cases*, 88 RECENTI PROGRESSI MEDICINA 223, 223-225 (trans. Sl Int'l. Inc. 2003) (1997). | |
| PTX 107 | J. Levine & D. Nelson, *Esophageal Stricture Associated with Alendronate Therapy,* 102 AM. J. MED. 489, 489-491 (1997). | |
| PTX 109 | E. Pizzani & G. Valenzuela, *Esophagitis Associated with Alendronate Sodium*, 124 VA. MED. Q. 181, 181-182 (1997). | |
| PTX 110 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT 3-6, 126-132, 144 (1st ed. 1993). | |
| PTX 111 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT 5-8, 147-154 (2d ed. 1995). | |
| PTX 112 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT 152-160 (3d ed. 1997). | |
| PTX 113 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT, at v – ix, 168-177 (4th ed. 2000). | |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 114 | R. Graham Russell et al., *Clinical Pharmacology of Bisphosphonates in,* TUMOR BONE DISEASES AND OSTEOPOROSIS IN CANCER PATIENTS 377, 377-392 (Jean-Jacques Body ed., 2000). | |
| PTX 115 | J. A. Kanis et al., *Rationale for the Use of Alendronate in Osteoporsis*, 5 OSTEOPOROSIS INT'L 1, 1-13 (1995). | |
| PTX 116 | S. T. Harris et al., *The Effect of Short Term Treatment with Alendronate on Vertebral Density and Biochemical Markers of Bone Remodeling in Early Postmenopausal Women*, 76 J. CLINICAL ENDOCRINOLOGY METABOLISM, 1399, 1399-1406 (1993). | DTX 340 |
| PTX 124 | Bruce Ettinger, et al., *Alendronate Use Among 812 Women: Prevalence of Gastrointestinal Complaints, Noncompliance with Patient Instructions, and Discontinuation*, 4 J. MANAGED CARE PHARMACY 488, 488-492 (1998). | |
| PTX 127 | A. J. P. Yates et al., *Intravenous Clodronate in the Treatment and Retreatment of Paget's Disease of Bone*, LANCET 1474, 1474-1477 (1985). | |
| PTX 129 | G. Heynen et al., *Clinical and Biological Effects of Low Doses of (3 Amino-1 Hydroxypropylidene)-1, 1-Bisphosphonate (APD) in Paget's Disease of Bone*, 11 EUR. J. CLINICAL INVESTIGATION 29, 29-35 (1982). | |
| PTX 130 | H. I. J. Harinck et al., *Paget's Disease of Bone: Early and Late Responses to Three Different Modes of Treatment with Aminohydroxypropylidene Bisphosphonate (APD)*, 295 BRIT. MED. J. 1301, 1301-1305 (1987). | |
| PTX 131 | S. A. Khan et al., *Alendronate in the Treatment of Paget's Disease of Bone*, 20 BONE 263, 263-271 (1997). | DTX 342 |
| PTX 132 | E. Siris et al., *Comparative Study of Alendronate Versus Etidronate for the Treatment of Paget's Disease of Bone*, 81 J. CLINICAL ENDOCRINOLOGY METABOLISM 961, 961-967 (1996). | DTX 271 |
| DTX 134 | C. P. Peter et al., *Esophageal Irritation Due to Alendronate Sodium Tablets: Possible Mechanisms*, 43 DIGESTIVE DISEASES SCI. 1998, 1998-2002 (1998). | |
| PTX 164 | IMS National Prescription Audit Data, FAME Products Total Prescriptions Chart for Jan. 1995 - Sept. 2002 (unpublished data). | |
| PTX 165 | IMS National Prescription Audit Data, FAME Products New Prescriptions Chart for Jan. 1995 - Sept. 2002 (unpublished data). | |
| PTX 166 | Osteoporosis Franchise Business Group, Osteoporosis Franchise Business Group Actual Performance for Years Dec. 1995 - 2001: Year to Date as of Dec. 2001 (unpublished data). | |
| PTX 171 | Diffusion Model Estimates Predicted and Actual Cumulative New Prescriptions Chart for Sept. 1995 - Sept. 2002 (unpublished data). | |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 202 | Letter from Michelle W Kloss, Director of Regulatory Affairs, Merck & Co., Inc., to Solomon Sobel, Director, Division of Metabolism and Endocrine Drug Products, Food and Drug Administration (Oct. 30, 1996) (unpublished NDA 20-560, FOSAMAX® Alendronate Sodium Tablets, Meeting Background Package). | |
| PTX 225 | Merck Institute for Therapeutic Research, Merck Research Laboratories, Merck & Co., Inc., Reference Q-2, MRL Preclinical Report: FOSAMAX®: Esophageal Irritation Studies in Dogs, No. TT #96-038-0,-1 (submitted 1996) (unpublished). | |
| PTX 226 | Merck Institute for Therapeutic Research. Merck Research Laboratories, Merck & Co., Inc., Reference Q-3, MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs, No. TT #96-039-0 (submitted 1996) (unpublished). | |
| PTX 246 | Socrates E. Papapoulos, Curriculum Vitae of Socrates E. Papapoulos, MD. | |
| PTX 247 | M. Brian Fennerty, Curriculum Vitae of M. Brian Fennerty, MD 1, 1-29 (rev. Nov. 2002). | |
| PTX 248 | Christopher A. Vellturo, Curriculum Vitae of Christopher A. Vellturo, PhD 1, 1-9. | |
| PTX 261 | Milton Liebman, *Awakening the Silent Osteoporosis Market,* MED. MARKETING MEDIA, Apr. 2002. | |
| PTX 289 | *Clodronate; Etidronate; Pamidronate,* 1 THERAPEUTIC DRUGS at ii, iv-xi, C276-C282, E88-E93, Pl-P4 (Sir Colin Dollery ed., 1991). | |
| PTX 290 | D. L. Douglas et al., *Drug Treatment of Primary Hyperparathyroidism: Use of Clodronate Disodium,* 286 BRIT. MED. J. 587, 587-590 (1983). | |
| PTX 291 | R. G. G. Russell et al., *Diphosphonates in Paget's Disease,* LANCET 894, 894-898 (1974). | |
| PTX 292 | Socrates E. Papapoulos, *Pharmacodynamics of Bisphosphonates in Man; Implications for Treatment, in* BISPHOSPHONATES ON BONE 231, 231-245; *Treatment of Established Osteoporosis with Bisphosphonates, in* BISPHOSPHONATES ON BONE 403, 403-418 (O. L. M. Bijvoet et al. eds. 1995). | |
| PTX 293 | R. G. G. Russell, *Bisphosphonates: Pharmacology, Mechanisms of Action and Clinical Uses,* 2 OSTEOPOROSIS INT'L SUPPLEMENT S66, S66-S80 (1999). | |
| PTX 294 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE: FROM THE LABORATORY TO THE PATIENT § 3.1 *Paget's Disease* 1, 1-15 (R. G. G. Russell's edits). | |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 295 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE: FROM THE LABORATORY TO THE PATIENT § *2.5 Animal Toxicology 1,* 1-8 (R. G. G. Russell's edits). | |
| PTX 296 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE: FROM THE LABORATORY TO THE PATIENT § 3.8 *Adverse Events* 1, 1-7 (R. G. G. Russell's edits). | |
| PTX 297 | Affidavit of Dr. Graham Russell at 1- 34, *Procter & Gamble Pharmaceuticals Canada, Inc. v The Minister of Health and Genpharm, Inc.,* Federal Court of Canada - Trial Division, Court File No. T-155-02 (affidavit filed June 17, 2002). | |
| PTX 298 | D. P. O'Doherty, *Paget's Disease of Bone,* 3 CURRENT ORTHOPAEDICS 262, 262-269 (1989). | |
| PTX 2999 | New Prescriptions and Promotional Spending for FOSAMAX® Chart for Jan. 1997 - Sept. 2002 (unpublished data). | |
| PTX 300 | Merck's demonstrative exhibits | |
| | I. R. Reid, et al., *Biochemical and Radiologic Improvement in Paget's Disease of Bone Treated with Alendronate: A Randomized, Placebo-controlled Trial,* 101 AM. J. MED. 341, 341-348 (1996). | DTX 15 |
| | T. Schnitzer, et al., *Therapeutic Equivalence of Alendronate 70 mg Once-Weekly and Alendronate 10 mg Daily in the Treatment of Osteoporosis,* 12 AGING CLIN. EXPERIMENTAL RES. 1, 1-12 (2000). | DTX 19 |
| | R. G. G. Russell, Curriculum Vitae of Professor Graham Russell (May 2002). | DTX 392 |
| | J. P. Devogelaer, et al., *Oral Alendronate Induces Progressive Increases in Bone Mass of the Spine, Hip, and Total Body Over 3 Years in Postmenopausal Women With Osteoporosis,* 18 BONE 141, 141-150 (1996). | DTX 401 |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that true and correct copies of the foregoing were caused to

be served on March 28, 2003 upon the following individuals:

> **<u>BY HAND</u>**:
>
> Josy W. Ingersoll, Esquire
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
>
> **<u>BY FEDERAL EXPRESS</u>:**
>
> James Galbraith, Esquire
> Kenyon & Kenyon
> One Broadway
> New York, NY 10004

_____

Mary B. Graham