# EXHIBIT 1

**EXHIBIT 1**

**JOINT STATEMENT OF UNCONTESTED FACTS**

1.      Plaintiff Merck & Co., Inc. ("Merck") is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, Whitehouse Station, NJ 08889.

2.      Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 650 Cathill Road, Sellersville, PA.

3.      On November 30, 1999, United States Patent No. 5,994,329 ("the '329 patent") was issued.

4.      Merck is the owner of the '329 patent.

5.      On August 13, 2002, United States Patent No. 6,432,932 ("the '932 patent") was issued.

6.      Merck is the owner of the '932 patent.

7.      Teva USA has filed Abbreviated New Drug Application ("ANDA") No. 77-132, including a certification under Title 21, United States Code § 355(j)(2) with the Food and Drug Administration ("FDA") for tablets containing 35 mg of risedronate sodium.

8.      Teva stipulates for the purposes of this trial that the commercial marketing of Teva USA's proposed 35 mg risedronate sodium tablets, in accordance with ANDA No. 77-132, would infringe claims 20 and 34 of the '329 patent if those claims are valid.

9.      The date of invention for claims 20 and 34 of the '329 patent is July 22, 1997.

10.     The April and July 1996 *Lunar News* are prior art publications to the Merck patents under 35 U.S.C. § 102(a).

11.     As set forth by the Federal Circuit in *Merck & Co. v. Teva Pharmaceuticals USA, Inc.,* 395 F.3d 1364, 1372 (2005), the claim term "about" in the '329 and '932 patents should be given its ordinary meaning of "approximately."

12.     Procter & Gamble administered weekly doses of risedronate to patients on May 21, 1999.

13.     The date on which patients were first administered risedronate on a weekly dosage regimen in Procter & Gamble Study No. 1999033 is May 21, 1999.

14.     The date on which patients were first administered risedronate on a weekly dosage regimen in Procter & Gamble Study No. HMR4003E/3001 is September 23, 1999.

## STATEMENT OF FACTS THAT TEVA USA CONTENDS SHOULD BE UNCONTESTED

Teva USA contends that the following statements of fact cannot in good faith be contested:

1.     The history of bisphosphonates as a class is minimally relevant to an analysis of the obviousness of a once-weekly dose of risedronate with respect to side effects because each bisphosphonate possesses unique characteristics. *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 288 F. Supp. 2d 601, 626 (D. Del. 2003) ("*Merck I*").

2.     *Lunar News* was a quarterly newsletter distributed to approximately 15,000 to 20,000 physicians and others working in the field of osteoporosis by Lunar Corporation, a manufacturer of bone densitometry equipment used to diagnose osteoporosis. *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1368 n.5 (Fed. Cir. 2005) ("*Merck II*").

3.     The *Lunar News* articles were authored by Dr. Richard Mazess, who was the director of the Bone Mineral Laboratory at the University of Wisconsin.  Dr. Mazess established

bone densitometry as a diagnostic tool, founded the first manufacturer of bone densitometry measuring equipment (Lunar), was Lunar's first president, has participated in and designed clinical trials for osteoporosis treatment, and is widely published in the bone disease field. *Id.*

4. Dr. Mazess was a person working in the field of, or doing research on, osteoporosis, and so he is skilled in the relevant art. *Id.* at 1376.

5. Dr. Mazess was an expert in osteoporosis. *Id.*

6. The April 1996 and July 1996 *Lunar News* articles suggested the weekly dosing of bisphosphonates to improve patient compliance with the dosing regimen. *Id.* at 1368, 1375.

7. The '329 patent and both the April and July 1996 *Lunar News* articles explain the motivation for a once-weekly dose as increasing patient compliance, by making it easier to take the drug (and incur the inconvenience of the rigorous dosing regimen less frequently). *Id.* at 1373.

8. The literature, specifically the October 1996 article by De Groen published in the *New England Journal of Medicine*, taught that complications related to alendronate were due to prolonged contact of the drug with the esophagus. *Id.*; *Merck I* at 627.

9. In response to reports of adverse GI events with alendronate, Merck revised its dosing instructions for FOSAMAX® and distributed a "Dear Doctor" letter to physicians. *Merck II* at 1373.

10. After Merck sent the "Dear Doctor" letter, the reported incidence of complications with alendronate fell to almost nothing even as the number of patients being prescribed FOSAMAX® doubled by October 1996. *Id.*

11.    The '329 patent, both *Lunar News* articles, and the prevailing knowledge of those skilled in the art recognized that taking fewer pills each week could reduce the adverse GI events with alendronate.  *Id.* at 1373-74.

12.    The '329 patent provides no motivation to overcome adverse GI events beyond that provided by the April and July 1996 *Lunar News* articles.  *Id.* at 1373.

13.    The '329 patent provides no data showing the safety and tolerability of the claimed invention beyond the teachings set forth in the April and July 1996 *Lunar News* articles. *Id.* at 1374.

14.    Financial success is not significantly probative of the question of nonobviousness because others were legally barred from commercially testing the *Lunar News* ideas.  *Id.* at 1377.

15.    The July 1996 issue of *Lunar News* was not cited by the Patent Examiner during prosecution of the '329 patent, nor was it disclosed to the Patent Examiner by Merck.

16.    The July 1996 issue of *Lunar News* is more relevant than any of the references cited by the Patent Examiner during the prosecution of the '329 patent.

# EXHIBIT 2

**EXHIBIT 2**

**PLAINTIFF MERCK'S STATEMENT
OF CONTESTED ISSUES OF FACT AND LAW**

**I.    MERCK'S STATEMENT OF CONTESTED ISSUES OF FACT**

**A.    INFRINGEMENT**

1.    Whether Teva's filing of ANDA No. 77-132 for tablets containing 35 mg of risedronate sodium infringes claim 6 of the '932 patent.

**B.    INVALIDITY UNDER SECTIONS 102 AND 103**

1.    Whether the '329 patent is anticipated in light of the prior art cited by Teva.

2.    Whether the '932 patent is anticipated in light of the prior art cited by Teva.

3.    The scope and content of the prior art.

4.    The differences between the prior art and the claims of the '329 and '932 patents.

5.    The level of ordinary skill in the art at the time the invention was made.

6.    Whether there was any reason, suggestion or motivation found in the prior art directing a person of ordinary skill in the art to combine the references relied on by Teva at the time of the invention.

7.    Whether products covered by the claims of the '329 and '932 patents have been commercially successful.

8.    Whether there is a nexus between the merits of the subject matter claimed in the '329 and '932 patents and any commercial success of that subject matter.

9.    Whether the inventions claimed in the '329 and '932 patents satisfied a long-felt need in the industry.

10.    Whether others failed to make the inventions claimed in the '329 and '932 patents.

11.    Whether the inventions claimed in the '329 and '932 patents were copied by others.

12.    Whether the inventions claimed in the '329 and '932 patents achieved unexpected results.

13.    Whether the inventions claimed in the '329 and '932 patents received praise from the defendant and others in the field.

14.    Whether there is any connection between any of the above factors and the inventions claimed in the '329 and '932 patents.

15.    Whether the subject matter claimed in the '329 and '932 patents would have been obvious to one of ordinary skill in the art at the time the invention was made.

## II.    MERCK'S STATEMENT OF CONTESTED ISSUES OF LAW

### A.    INFRINGEMENT

1.    The construction of claim 6 of the '932 patent.    *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996).

2.    Whether Teva's submission of an ANDA related to 35 mg risedronate sodium tablets infringes claim 6 of the '932 patent.    35 U.S.C. § 271(e)(2); *Abbott Labs. v. Torpharm, Inc.*, 300 F.3d 1367 (Fed. Cir. 2002); *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241 (Fed. Cir.), *cert. denied*, 531 U.S. 993 (2000).

3.    Whether Teva's filing of an ANDA for 35 mg risedronate sodium tablets constitutes inducement of infringement of claim 6 of the '932 patent. 35 U.S.C. § 271; *Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418 (Fed. Cir.), *cert. denied*, 513 U.S.

995 (1994); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468-70 (Fed. Cir. 1990).

      4.      Whether Teva's filing of an ANDA for 35 mg risedronate sodium tablets constitutes contributory infringement of claim 6 of the '932 patent.  35 U.S.C. § 271; *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964).

## B.    VALIDITY

      1.      Whether Teva has shown by clear and convincing evidence that the '329 patent is anticipated by the prior art.  35 U.S.C. § 102; *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359 (Fed. Cir. 2001); *Bristol-Meyers Squibb Co. v. Ben Venue Labs.*, 246 F.3d 1368 (Fed. Cir. 2001); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339 (Fed. Cir. 2000).

      B.      Whether Teva has shown by clear and convincing evidence that the '932 patent is anticipated by the prior art.  35 U.S.C. § 102; *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359 (Fed. Cir. 2001); *Bristol-Meyers Squibb Co. v. Ben Venue Labs.*, 246 F.3d 1368 (Fed. Cir. 2001); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339 (Fed. Cir. 2000).

      C.      Whether Teva has shown by clear and convincing evidence that the '329 patent would have been obvious to one of ordinary skill in the art at the time the invention was made. 35 U.S.C. § 103(a).  *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120 (Fed. Cir. 2000); *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

D.      Whether Teva has shown by clear and convincing evidence that the '932 patent would have been obvious to one of ordinary skill in the art at the time the invention was made. 35 U.S.C. § 103(a).  *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120 (Fed. Cir. 2000); *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

*       *       *

If any statement included herein as an issue of law properly should be considered an issue of fact, it should be so considered.

## TEVA PHARMACEUTICALS USA, INC.'S STATEMENT OF CONTESTED ISSUES OF FACT AND LAW

## I.      ISSUES OF FACT REMAINING TO BE LITIGATED

The following issues of fact remain to be litigated in this matter:

### A.      INFRINGEMENT

Whether Teva Pharmaceuticals USA, Inc.'s ("Teva USA") filing of ANDA 77-132 for approval to market tablets containing 35 mg of risedronate sodium infringes U.S. Patent No. 6,432,932 ("the '932 patent").

### B.      INVALIDITY BASED ON ANTICIPATION

Whether U.S. Patent No. 5,869,471 anticipates claims 20 and 34 of U.S. Patent No. 5,994,329 ("the '329 patent").

Whether clinical trials planned and conducted by The Procter & Gamble Co. anticipate claim 6 of the '932 patent.

C.    **INVALIDITY BASED ON OBVIOUSNESS**

In deciding whether the asserted claims of the '329 and '932 patents are obvious in view of the prior art, the Court must make the following factual determinations:

1.    The scope and content of the prior art;

2.    The differences between the prior art and the inventions claimed in the '329 and '932 patents; and

3.    The level of ordinary skill in the art to which the inventions pertain.

II.    **ISSUES OF LAW REMAINING TO BE LITIGATED**

A.    **INFRINGEMENT**

Whether Teva USA's submission of ANDA 77-132 infringes the '932 patent under 35 U.S.C. § 271(e)(2).

B.    **INVALIDITY**

1.    **Invalidity under 35 U.S.C. § 102**

Whether claims 20 and 34 of the '329 patent are invalid under 35 U.S.C. § 102 because the claimed invention was described in a printed publication either more than one year before the filing of the application for the '329 patent (35 U.S.C. § 102(b)), or before the invention thereof (35 U.S.C. § 102(a)).   *In re Cruciferous Sprout Patent Litigation*, 301 F.3d 1343, 1349 (Fed. Cir. 2002); *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379-80 (Fed. Cir. 2001)*; Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed. Cir. 1991); *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985); *U-Fuel, Inc. (NV) v. Highland Tank & Mfg Co., Inc.*, 228 F. Supp. 2d 595, 607 (E.D. Pa. 2002); *In re '639 Patent Litigation*, 154 F. Supp. 2d 157, 172 (D. Mass. 2001).

Whether claim 6 of the '932 patent is invalid under 35 U.S.C. § 102 because the claimed invention was made by another in the United States before the patentee and not abandoned, suppressed, or concealed.   35 U.S.C. § 102(g); *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358 (1928); *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362 (Fed. Cir. 2001); *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F. 3d 1344, 1350 (Fed. Cir. 2001); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1177 (Fed. Cir. 1993); *Kimberly-Clark Corp. v. Procter & Gamble Distributing Co., Inc.*, 973 F.2d 911, 915 (Fed. Cir. 1992); *New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 1566 (Fed. Cir. 1990).

### 2.      Invalidity under 35 U.S.C. § 103

Whether claims 20 and 34 of the '329 patent are invalid under 35 U.S.C. § 103 because the differences between the subject matter of the claims and the prior art are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time the alleged inventions were made.   *Graham v. John Deere Co.*, 383 U.S. 1, 3 (1966); *Merck & Co. v. Teva Pharmaceuticals, USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003); *Abbott Laboratories   v. Dey, L.P.*, 287 F.3d 1097, 1106 (Fed. Cir. 2002); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Symbol Tech., Inc., v. Opticon, Inc.*, 935 F.2d 1569, 1576-77 (Fed. Cir. 1991); *In re Dillon*, 919 F.2d 688, 692 (Fed. Cir. 1990) (*en banc); In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986).

Whether claim 6 of the '932 patent is invalid under 35 U.S.C. § 103 because the differences between the subject matter of the claim and the prior art are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time the

alleged inventions were made.    *Graham*, 383 U.S. at 3; *Merck & Co.*, 395 F.3d at 1372; *Amgen, Inc.*, 314 F.3d at 1351; *Abbott Laboratories*, 287 F.3d at 1106; *In re Kotzab*, 217 F.3d at 1369; *Symbol Tech., Inc.*, 935 F.2d at 1576-77; *In re Dillon*, 919 F.2d at 692*; In re Merck & Co.*, 800 F.2d at 1097.

EXHIBIT 3A

**EXHIBIT 3A**

**PLAINTIFF'S EXHIBIT LIST AND DEFENDANT'S OBJECTIONS THERETO**
**Merck v. Teva USA, C.A. No. 04-939 (GMS)**

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 1. | Certified Copy of U.S. Patent 5,994,329 | | | Hearsay | 802 |
| 2. | Certified Copy of File History of U. S. Patent 5,994,329 | | | Hearsay | 802 |
| 3. | Certified Copy of U.S. Patent 4,621,077 | | | Relevance, hearsay | 402, 802 |
| 4. | Certified Copy of File History of U.S. Patent 4,621,077 | | | Relevance, hearsay | 402, 802 |
| 5. | 08/17/00 Kenyon & Kenyon's Patent Opinion for U.S. Patent 5,994,329 | T 007339-007473; T 007597-007599 | | Relevance, prejudicial | 402, 403 |
| 6. | 11/23/99 Merrill Lynch article re "Fosamax - once Weekly looks Good" | T 003704-003705 | | Relevance | 402 |
| 7. | 03/21/01 Handwritten Note to Krauss and Millonig re Berkman | MAZ 0001 | | Relevance | 402 |
| 8. | 02/06/02 Mazess facsimile to Krauss re Weissburg | Mazess 14 | | Relevance | 402 |
| 9. | 04/24/01 Note re retaining Mazes as a consultant in the area of bisphosphonate technology | Mazess 15 | | Relevance | 402 |
| 10. | 04/04/95 Mazess letter to Procter & Gamble re vitamin D compounds | GE 0007 | | Relevance | 402 |
| 11. | 04/1996 Lunar® News, pp. 1-44 | | | None | |
| 12. | 07/1996 Lunar® News, pp. 1-36 | | | None | |
| 13. | 12/1996 Lunar® News, pp. 1-44 | | | None | |
| 14. | 04/1997 Lunar® News, pp. 1-48 | | | None | |
| 15. | Osteoporosis Evaluation: Score Sheet by Bone Measurement Institute | Mazess 7 | | Relevance, hearsay | 402, 802 |
| 16. | 03/06/97 Mazess letter to Mautalen, M.D. | GE 0024 | | Relevance, hearsay | 402, 802 |
| 17. | 06/07/96 Mazess letter to Lindsay, M.D. re PDEXA | MK 0286436 | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | | | | hearsay | |
| 18. | 08/06/96 Mazess letter to Jeremy C. Allen | MK 0272212 -0272213 | | Relevance, hearsay | 402, 802 |
| 19. | 02/07/97 Mazess letter to Ray Gilmaritn re densitometry | MK 0334403- 0334436 | | Relevance, hearsay | 402, 802 |
| 20. | 04/14/97 Mazess facsimile to Jeremy C. Allen re Meeting at Lunar, 05/21/97 | Mazess 5 | | Relevance, hearsay | 402, 802 |
| 21. | Merck/Lunar Management Meeting, 05/21/97 – Agenda | MK 0272082 | | None | |
| 22. | 05/23/96 Mazess Letter to Stuart Silverman, M.D. re mass screening using pDEXA | MK 0272214- 0272215 | | Relevance, hearsay | 402, 802 |
| 23. | 03/13/97 Mazess facsimile to Doris Krunagel re Lunar® News report on biphosphonates | MAZ0004-0005 | | Relevance, hearsay | 402, 802 |
| 24. | 01/27/98 Mazess letter to Nils-Otto Skribeland, M.D. re alendronate | GE 0035- 0036 | | Relevance, hearsay | 402, 802 |
| 25. | 04/06/00 Pre-Product Development Meeting | T 007103- 7105 | | Relevance, hearsay | 402, 802 |
| 26. | 04/14/00 Hoenscheid memo re Product Development Meeting Minutes – 04/11/00 | T 007106 | | Relevance, hearsay | 402, 802 |
| 27. | 05/18/00 Product Development Meeting Minutes | T 007107-7108 | | Relevance, hearsay | 402, 802 |
| 28. | 07/10/00 Salsbury memo re Product Development Meetings – 06/29/00 | T 007110-7111 | | Relevance, hearsay | 402, 802 |
| 29. | 12/07/99 Steve Lonesky E – mail to Karen Arnold re Alendronate Tablets | T 001102 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 30. | 11/19/98 Ziegenfus memo to Kopp from re Alendronate | T 002470 | | Relevance, hearsay | 402, 802 |
| 31. | 10/23/98 A. Mattiuz memo to D. McNichol re Avicel 200 | T 003307 | | Relevance, hearsay | 402, 802 |
| 32. | Teva USA:  Sales Forecast Alendronate | T 002501 | | Relevance, hearsay | 402, 802 |
| 33. | Teva USA: Sales Forecast, Alendronate Tablets – 70 mg, Fosamax – Merck | T 002482-2485 | | Relevance, hearsay | 402, 802 |
| 34. | 12/13/00 Teva USA: Sales Forecast, Alendronate Tablets – 70 mg, Foxamax - Merck | T 007147 | | Relevance, hearsay | 402, 802 |
| 35. | Does response curve drawing by David Markowitz | | | Relevance, hearsay | 402, 802 |
| 36. | Page 787 from Mosby's Medical Dictionary, Fourth Edition | | | Relevance, hearsay | 402, 802 |
| 37. | Uetrecht, "Is it Possible to More Accurately Predict which Drug Candidates will cause Idiosyncratic Drug Reactions?", Current Drug Metabolism, 133-141 (2000) | | | Relevance, hearsay | 402, 802 |
| 38. | Berkowitz et al., "Gastroparesis After Lung Transplantation", Chest, 108:6, 1602-1607 (1995) | | | Relevance, hearsay | 402, 802 |
| 39. | Wolfe et al., "Gastrointestinal Toxicity of Nonsteroidal Antiinflammatory Drugs", The New England Journal of Medicine, 340:24, 1888-1899 (1999) | | | Relevance, hearsay | 402, 802 |
| 40. | 03/13/00 Hoenscheid memo re Project Review Status Report for January & February 2000 | T 007148-007150 | | Relevance, hearsay | 402, 802 |
| 41. | 08/04/00 Hoenscheid | T 007154- | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | memo re Project Review Status Reports for May, June & July 2000 | 007156 | | hearsay | |
| 42. | 05/01/00 Lee E-mail to Gailbraith and Rein re 70 mg alendronate formulation | T 007475 | | Relevance, hearsay | 402, 802 |
| 43. | 09/18/00 Regulatory Document for Review Patent Issues, with attached alendronate sodium tablets, 70 mg draft patent certification | T 007612-007613 | | Relevance, hearsay | 402, 802 |
| 44. | 03/05/01 BfArM Response Report Mutual Recognition | MK 0222353-0222359 | | Relevance, hearsay | 402, 802 |
| 45. | 02/20/98 Melton E-mail to DiCesare, Santora and Yates re Once a week Fosamax in Prevention of Osteoporosis | MK 0290886-0290887 | | Relevance, hearsay | 402, 802 |
| 46. | 07/19/96 Bissett memo to HHMC Members re Minutes of 7/19/96 HHMC Meeting | MK 0355791-0355794 | | Relevance, hearsay | 402, 802 |
| 47. | 05/20/97 Stage 1 Phase V Product Development Plan, Tactical PAC Review | MK 0158242-0158287 | | Relevance, hearsay | 402, 802 |
| 48. | Document entitled, "Alendronate 70 mg Once Weekly is Therapeutically Equivalent to Alendronate 10 mg Daily" | MK 0225375 | | Relevance, hearsay | 402, 802 |
| 49. | 03/15/96 Dear Doctor Letter | MK 0156420-0156421 | | Relevance | 402 |
| 50. | FOSAMAX® (Aendronate Sodium Tablets) Package Insert, 2000 | | | Relevance, hearsay | 402, 802 |
| 51. | Chesnut et al., | | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | "Aendronate Treatment of the Postmenopausal Osteoporotic Woman: Effect of Multiple Dosages on Bone Mass and Bone Remodeling", *The American Journal of Medicine*, 99: 144-152 (1995) | | | hearsay | |
| 52. | Frost, "Treatment of Osteporosis by Manipulation of Coherent Bone Cell Populations", *New Treatment of Osteoporosis*, 143:227-244 (1979) | | | Relevance, hearsay | 402 , 802 |
| 53. | Reitsma et al., "Kinetic Studies of Bone and Mineral Metabolism During Treatment with (3- Amino-1- Hydroxypropylidene)-1, 1- Bisphosphonate (APD) in Rats", *Calcif. Tiss. Int.* 32:145-157 (1980) | | | Relevance, hearsay | 402, 802 |
| 54. | Anderson et al., "Preliminary Observations of a Form of Coherence Therapy for Osteoporosis", *Calcif. Tissue Int.* 36:341- 343 (1984) | | | Relevance, hearsay | 402 , 802 |
| 55. | Harinck et al., "Efficacious Management with Aminobisphosphonate (APD) in Paget's Disease of Bone", *Clinical Orthopaedics and Related Research*, 217:79-98 (1987) | | | Relevance, hearsay | 402, 802 |
| 56. | Harinck et al., "Paget's disease of bone: early and | | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | late responses to three different modes of treated with aminohydroxpropylidene bisphosphonate (APD)", *British Medical Journal*, 295: 1301-1305 (1987) | | | hearsay | |
| 57. | Valkema et al., "Maintained improvement in calcium balance and bone mineral content in patients with osteoporosis treatment with the bisphosphonates APD", *Bone and Mineral*, 5: 183-192 (1989) | | | Relevance, hearsay | 402, 802 |
| 58. | Watts et al., "Intermittent Cyclical Etidronate Treatment of Postmenopausal Osteoporosis", *The New England Journal of Medicine*, 323(2): 73-79 (1990) | | | Relevance, hearsay | 402, 802 |
| 59. | Storm et al., "Effect of Intermittent Cyclical Etidronate Therapy on Bone Mass and Fracture Rate in Women with Post-menopausal Osteoporosis", *The New England Journal of Medicine*, 322(18): 1265-1271 (1990) | | | Relevance, hearsay | 402, 802 |
| 60. | Passeri et al., "Intermittent treatment with intravenous 4-amin-1-hydroxybutylidene-1, 1-bisphosphonate (AHBuBP) in the therapy of postmenopausal | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
|  | osteoporosis", *Bone and Mineral*, 15: 237-247 (1991) |  |  |  |  |
| 61. | Yamada et al., Textbook of Gastroenterology, Vol. 1, 3rd Edition, Chapter 61, pp. 1304-1325 (1999) |  |  | Relevance, hearsay | 402, 802 |
| 62. | Harris et al., "Four Year Study of Intermittent Cyclic Etidronate Treatment of Postmenopausal Osteoporosis: Three Years of Blinded Therapy Followed by One Year of Open Therapy", *American Journal of Medicine*, 95: 557-567 (1993) |  |  | Relevance, hearsay | 402, 802 |
| 63. | van Holten-Verzantvoort et al., "Palliative Pamidronate Treatment in Patients with Bone Metastases from Breast Cancer", *Journal of Clinical Oncology*, 11(3): 491-498 (1993) |  |  | Relevance, hearsay | 402, 802 |
| 64. | Thiebaud et al., "Two Years' Effectiveness of Intravenous Pamidronate (APD) Versus Oral Fluoride for Osteoporosis Occuring in the Postmenopause", *Osteoporosis Int.*, 4: 76-83 (1994) |  |  | Relevance, hearsay | 402, 802 |
| 65. | Adami et al., "Effects of Two Oral Doses of Alendronate in the Treatment of Paget's Diseaase of Bone", *Bone*, 15(4): 415-417 (1994) |  |  | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 66. | MERCK HAS WITHDRAWN THIS EXHIBIT. PLEASE SEE PTX 313. | | | | |
| 67. | Filipponi et al., "Cyclical Clodronate is Effective in Preventing Postmenopausal Bone Loss: A Comparative Study with Transcutaneous Hormone Replacement Therapy", *Journal of Bone and Mineral Research*, 10(5): 697-703 (1995) | | | Relevance, hearsay | 402, 802 |
| 68. | Liberman et al., "Effect of oral alendronate on bone mineral density and the incidence of fractures in postmenopausal osteoporosis", *The New England Journal of Medicine*, 333(22): 1437-1443 (1995) | | | None | |
| 69. | Maconi et al., "Multiple Ulcerative Esophagitis Caused by Alendronate", *American Journal of Gastroenterology*, 1889-1890 (1995) | | | Relevance, hearsay | 402, 802 |
| 70. | De Groen et al., "Esophagitis Associated with the Use of Alendronate", *The New England Journal of Medicine*, 335(14): 1016-1021 (1996) | | | None | |
| 71. | Black et al., "Randomised trial of effect of | | | None | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | alendronate at risk of fracture in women with existing vertebral fractures", *Lancet*, 348: 1535-1541 (1996) | | | | |
| 72. | Spivacow et al., "Tolerability of oral pamidronate in elderly patients with osteoporosis and other metabolic bone diseases", *Current Therapeutic Research*, 57(2): 123-130 (1996) | | | Relevance, hearsay | 402, 802 |
| 73. | Eggelmeijer et al., "Increased bone mass with pamidronate treatment in rheumatoid arthritis", *Arthritis & Rheumatism*, 39(3): 396-402 (1996) | | | Relevance, hearsay | 402, 802 |
| 74. | Nightingale SL, "From the FDA: Important Information Regarding Alendronate Adverse Reactions", *JAMA* 275(20): 1534 (1996) | | | Relevance, hearsay | 402, 802 |
| 75. | Abdelmalek et al., "Letters to the Editor, "Alendronate-Induced Ulcerative Esophagitis", *American Journal of Gastroenterology*, 91(6): 1282-1283 (1996) | | | Relevance, hearsay | 402, 802 |
| 76. | Anonymous. "Oesophageal | | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | reactions with alendronate sodium (Fosamax)", *Current Problems in Pharmacovigilance*, 22: 5-8 (1996) | | | hearsay | |
| 77. | Sorrentino et al., "Esophageal ulceration due to alendronate", *Endoscopy*, 28: 529 (1996) | | | Relevance, hearsay | 402, 802 |
| 78. | Hodsman et al., "Use of bisphosphonates in the treatment of osteoporosis", *Canadian Medical Association Journal*, 155(7): 945-948 (1996) | | | Relevance, hearsay | 402, 802 |
| 79. | Castell DO, Letter to Editor, "Pill Esophagitis" - The Case of Alendronate, *The New England Journal of Medicine*, 335(14): 1058-1059 (1996) | | | None | |
| 80. | Naylor et al., Letter to Editor, "Oesophageal stricture associated with alendronic acid", *The Lancet*, 348: 1030-1031 (1996) | | | Relevance, hearsay | 402, 802 |
| 81. | Rimmer et al., Letters to the Editor, "Improper Alendronate Administration and a Case of Pill Esophagitis", *American Journal of* | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | *Gastroenterology*, 91(12): 2648-2649 (1996) | | | | |
| 82. | Thiebaud et al., "Three Monthly Intravenous Injections of Ibandronate in the Treatment of Postmenopausal Osteporosis", *American Journal of Medicine*, 103:298-307(1997) | | | Relevance, hearsay | 402, 802 |
| 83. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 304. | | | | |
| 84. | Colina et al., "A new probable increasing cause of esophageal ulceration: Alendronate", *American Journal of Gastroenterology*, 92(4): 704-706 (1997) | | | Relevance, hearsay | 402, 802 |
| 85. | Girelli et al., "Esophagitis from alendronate" Report of two cases", *Recenti Progressi in Medicina*, 88(5) 223-225 (1997) | | | Relevance, hearsay | 402, 802 |
| 86. | Levine et al., "Esophageal stricture associated with alendronate therapy", *The American Journal of Medicine*, 102: 489-491 (1997) | | | Relevance, hearsay | 402, 802 |
| 87. | Lilley et al., "Avoiding Alendronate-Related Esophageal Irritation", | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | *American Journal of Nursing*, 97(7): 12-14 (1997) | | | | |
| 88. | Pizzani et al., "Esophagitis associated with alendronate sodium", *Virginia Medical Quarterly*, 124(3): 181-182 (1997) | | | Relevance, hearsay | 402, 802 |
| 89. | Fleisch, Herbert; Excerpts from Bisphosponates in bone disease, 1st Edition pp. 126-132, 144 (1993) | | | Relevance, hearsay | 402, 802 |
| 90. | Fleisch, Herbert; Excerpts from Bisphosphonates in Bone Disease From the Laboratory to the Patient, 2nd Edition pp. 147-154 (1995) | | | Relevance, hearsay | 402, 802 |
| 91. | Fleisch, Herbert; Excerpts from Bisphosponates in bone disease, 3rd Edition pp. 152-160 (1997) | | | Relevance, hearsay | 402, 802 |
| 92. | Fleisch, Herbert; Excerpts from Bisphosphonates in Bone Disease From the Laboratory to the Patient, 4th Edition pp. 168-177 (2000) | | | Relevance, hearsay | 402, 802 |
| 93. | Russell et al., "Clinical Pharmacology of Bisphosphonates", *In: Tumor Bone Diseases and Osteoporosis in Cancer Patients*, Ed. Body, J-J., | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Publ. Marcel Dekker, Inc. NY, 377-392 (2000) | | | | |
| 94. | Kanis et al, "Rational for the Use of Alendronate in Osteoporosis", Osteoporosis Int., 5:1-13 (1995) | | | None | |
| 95. | Harris et al., "The Effect of Short Term Treatment with Alendronate on Vertebral Density and Biochemical Markers of Bone Remodeling in Early Postmenopausal Women", J. Clin. Endo. Metab., 76(6):1399-1406 (1993) | | | None | |
| 96. | Graham DY et al., "Primary Amino-Bisphosphonates: A New Class of Gastrotoxic Drugs – Comparison of Alendronate and Aspirin", *The American Journal of Gastroenterology*, 92(8): 1322-1325 (1997) | | | Relevance, hearsay | 402, 802 |
| 97. | Kelly et al., Letter to Editor, "Incidence of gastrointestinal side effects due to alendronate is high in clinical practice", *BMJ* 315: 1235 (1997) | | | Relevance, hearsay | 402, 802 |
| 98. | Cameron RB, "Esophagitis dissecans superficialis and | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | alendronate: case report", *Gastrointestinal Endoscopy*, 46(6) 562-563 (1997) | | | | |
| 99. | Abraham et al., "Alendronate-Associated Esophagael Injury: Pathologic and Endoscopic Features", *Modern Pathology*, 12(12): 1152-1157 (1999) | | | Relevance, hearsay | 402, 802 |
| 100. | Genant et al., "Chronic Intermittent Cyclical Administration of Tiludronate in Postmenopausal Osteoporosis: Report of Two Multicenter Studies in 2316 Patients", *JBMR-IBMS Second Joint Meeting*, 23(5) Suppl. 1112 (1998) | | | Relevance, hearsay | 402, 802 |
| 101. | Graham, DY, "What the gastroenterologist should Know About the Gastrointestinal Safety Profile of Bisphosphonates", *Digestive Diseases & Sciences*, 47(8): 1665-1678 | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | (2002) | | | | |
| 102. | Lanza et al., "The Upper GI Safety and Tolerability of Oral Alendronate at a Dose of 70 mg Once-Weekly: A Placebo-Controlled Endoscopy Study", *The American Journal of Gastroenterology*, 97(1): 58-64 (2002) | | | Relevance, hearsay | 402, 802 |
| 103. | Ettinger, et al., Alendronate Use Among 812 Women: Prevalence of Gastrointestinal Compliants, Noncompliance with Patient Instructions, and Discontinuation *JMCP*, 4(5): 488-492 (1998) | | | Relevance, hearsay | 402, 802 |
| 104. | Ettinger, et al., "Clinic Visits and Hospital Admissions for Care of Acid-Related Upper Gastrointestinal Disorders in Women Using Alendronate for Osteoporosis", The American Journal of Managed Care, 4(10): | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | 1377-1382 (1998) | | | | |
| 105. | Delmas et al., "Long Term Effects of Dischloromethylene Diphosphonate in Paget's Disease of Bone", *Journal of Clinical Endocrinology and Metabolism*, 54(4): 837-844 (1982) | | | Relevance, hearsay | 402, 802 |
| 106. | Yates et al., "Intravenous Clodronate in the Treatment and Retreatment of Paget's Disease of Bone", *The Lancet*, 1474-1477 (1985) | | | Relevance, hearsay | 402, 802 |
| 107. | 09/21/00 Kenyon & Kenyon's Invoice No. 527081 | T 007623-007625 | | Relevance, hearsay | 402, 802 |
| 108. | Heynen et al., "Clinical and biological effects of low doses of (3 amino-1 hydroxypropylidene)-1, 1-bisphosphonate (APD) in Paget's disease of bone", *European Journal of Clinical Investigation*, 11:29-35 (1982) | | | Relevance, hearsay | 402, 802 |
| 109. | Harinck et al., "Paget's disease of bone: early and late responses to three | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | different modes of treatment with aminohydroxypropylidene bisphosphonate (APD)", *British Medical Journal*, 295: 1301-1305 (1987) | | | | |
| 110. | Khan et al., "Alendronate in the Treatment of Paget's Disease of Bone", *Bone*, 20(3): 263-271 (1997) | | | None | |
| 111. | Siris et al., "Comparative Study of Alendronate Versus Etidronate for the Treatment of Paget's Disease of Bone", *Journal of Clinical Endocrinology and Metabolism*, 81(3): 961-967 (1996) | | | None | |
| 112. | Cassidy et al., "Continuous versus Intermittent Acid Exposure in Production of Esophagitis in Feline Model", *Digestive Diseases and Sciences*, 37(8): 1206-1211 (1992) | | | Relevance, hearsay | 402, 802 |
| 113. | Peter et al., "Esophageal Irritation due to Alendronate Sodium Tablets: Possible Mechanisms", *Digestive Diseases and Sciences*, | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | 43(9), 1998-2002 (1998) | | | | |
| 114. | Spivacow et al., "Digestive tolerance of oral bisphosphonates in patients with osteoporosis and other medical osteopathies", *Medicina*, 57 (Suppl. 1):114-118 (1997) | | | Relevance, hearsay | 402, 802 |
| 115. | Khairi et al., "Sodium Etidronate in the Treatment of Paget's Disease of Bone", *Annals of Internal Medicine*, 87:656-663 (1977) | | | Relevance, hearsay | 402, 802 |
| 116. | Kanis et al., "Long-Term Follow-Up Observations on Treatment in Paget's Disease of Bone", *Clinical Orthopedics and Related Research*, 217:99-125 (1987) | | | Relevance, hearsay | 402, 802 |
| 117. | Peter et al., "Comparative Study of Potential for Bisphosphonates to Damage Gastric Mucosa of Rats", *Digestive Diseases and Sciences*, 43(5):1009-1015 (1998) | | | None | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 118. | Ibbertson et al., "Paget's Disease of Bone – Clinical Evaluation and Treatment with Diphosphonates", *New Zealand Journal of Medicine*, 9:31-35 (1979) | | | Relevance, hearsay | 402, 802 |
| 119. | 12/04/95 Merck letter to FDA re IND 32,033 Fosamax™ (Oral Alendronate Sodium) – Information Amendment – Clinical | MK 0188346-0188544 | | Relevance, hearsay | 402, 802 |
| 120. | 01/24/96 Merck letter to FDA re IND 32,033 Fosamax™ (Alendronate Sodium Tablets) General Correspondence Fracture Intervention Trial Update | MK 0154684-0154694 | | Relevance, hearsay | 402, 802 |
| 121. | 01/12/98 Merck letter to FDA re IND 32,033 Fosamax™ Information Amendment Pharmacology/Toxicology | MK 0382423-0382456 | | Relevance, hearsay | 402, 802 |
| 122. | 06/08/99 Merck letter to FDA re IND 32,033: Fosamax, Information Amendment – Clinical Data Analysis Plan for | MK 0170895-0170944 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Protocol 118 | | | | |
| 123. | 06/22/01 Merck letter to FDA re IND 32,033 Fosamax® Tablets Request for Meeting | MK 0341364-0341395 | | Relevance, hearsay | 402, 802 |
| 124. | Protocol (MK-217) Phase 1 Single Dose Clinical Study | MK 0080527-0080585 | | Relevance, hearsay | 402, 802 |
| 125. | 01/10/00 S. Prahalada Expert Report on the Pharmacotoxicological Documentation of Alendronate Sodium – Weekly Dosing Regimen | MK 0384834-0384875 | | Relevance, hearsay | 402, 802 |
| 126. | 02/08/94 Alendronate Sodium Expert Report on the Pharmacotoxicological Documentation | MK 0384876-0384915 | | Relevance, hearsay | 402, 802 |
| 127. | 02/16/95 Alendronate Sodium Expert Report on the Pharmacotoxicological Documentation | MK 0384916-0384946 | | Relevance, hearsay | 402, 802 |
| 128. | Alendronate Sodium Updated Expert Report on the Pharmacotoxicological Documentation | MK 0384947-0384950 | | Relevance, hearsay | 402, 802 |
| 129. | 06/28/96 Alendronate Sodium Updated Expert Report on the Pharmacotoxicological | MK 0384951-0384954 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Documentation | | | | |
| 130. | 08/28/96 Updated Expert Report on the Pharmacotoxicological Documentation of Alendronate Sodium | MK 0384955-0384959 | | Relevance, hearsay | 402, 802 |
| 131. | 11/05/97 Updated Expert Report on the Pharmacotoxicological Documentation of Alendronate Sodium | MK 0384960-0384967 | | Relevance, hearsay | 402, 802 |
| 132. | 06/23/98 Alendronate Sodium Updated Expert Report | MK 0384968-0384974 | | Relevance, hearsay | 402, 802 |
| 133. | 12/04/95 Merck letter to FDA re IND 32,033 Fosamax™ (MK-0217) (Oral Alendronate Sodium) IND 31,775: Onclast™ (MK-0217) (I.V. Alendronate Sodium) – Information Amendment – Clinical | MK 0147476-0147556 | | Relevance, hearsay | 402, 802 |
| 134. | 01/17/95 Merck letter to FDA re IND 32,033: Fosamax (Alendronate Sodium) | MK 0073319-0073345 | | Relevance, hearsay | 402, 802 |
| 135. | 02/28/95 Merck letter to | MK | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | FDA re IND 32,033: Fosamax (Alendronate Sodium) | 0073286-0073318 | | hearsay | |
| 136. | Postmenopausal Osteoporosis Recent Clinical Advances (1999) | MK 0357844-0357885 | | Relevance, hearsay | 402, 802 |
| 137. | Mosaic Study #23 Osteoporosis, (Nov. 2000) | MK 0277521-0277713 | | Relevance, hearsay | 402, 802 |
| 138. | Fosamax® Launch Dates for 5 mg, 10 mg, 35 mg, 40 mg and 70 mg | MK 0391736 | | Relevance, hearsay | 402, 802 |
| 139. | Merck's Fosamax® (Alendronate Sodium Tablets) Package Insert, pp. 1-22 from FDA's website | | | Relevance, hearsay | 402, 802 |
| 140. | Chart – Fosamax QD Total Prescriptions, October 1995 – September 2002 | | | Relevance, hearsay | 402, 802 |
| 141. | IMS Health, "Global Insight" from IMS Health's website | | | Relevance, hearsay | 402, 802 |
| 142. | Chart – Fosamax OW Total Prescriptions, November 2000 – September 2002 | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 143. | Chart – FAME Products Total Prescriptions, January 1995 – September 2002 | | | Relevance, hearsay | 402, 802 |
| 144. | Chart – FAME Products New Prescriptions, January 1995 – September 2002 | | | Relevance, hearsay | 402, 802 |
| 145. | Chart – Osteoporosis Franchise Business Group Actual Performance Year to Date as of December (1995-2001) | | | Relevance, hearsay | 402, 802 |
| 146. | IMS Data, Total Prescription for Fosamax QD (Oct. 1995-Sept. 2002) | MK 0391628-0391651 | | Relevance, hearsay | 402, 802 |
| 147. | 02/28/01 Ornskov and Barker memo to Miller re The Launch of Fosamax® Once Weekly in the US Market | MK 0282265-0282269 | | Relevance, hearsay | 402, 802 |
| 148. | 10/24/00 Document entitled "Once-Weekly Fosamax (Alendronate) Approved in US for Treatment, Prevention of Postmenopausal Osteoporosis" from FDA's website | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 149. | 05/23/00 Business Plan for Fosamax 2001-2005, USHH Osteoporosis TBG | MK 0378146-0378194 | | Relevance, hearsay | 402, 802 |
| 150. | Chart – Diffusion Model Estimates Predicted and Actual Cumulative New Prescriptions | | | Relevance, hearsay | 402, 802 |
| 151. | Chart - Fosamax® Gross Sales 1995:Q1 – 2001:Q4 | | | Relevance, hearsay | 402, 802 |
| 152. | Fosamax® Catalog Gross Sales 4Q85 – 3Q02 | MK 0391662 | | Relevance, hearsay | 402, 802 |
| 153. | Osteoporosis Franchise Business Group YTD Actual Performance December 1995 | MK 0391652-0391658 | | Relevance, hearsay | 402, 802 |
| 154. | Actonel® (risedronate sodium tablets) Package Insert from FDA's website | | | Relevance, hearsay | 402, 802 |
| 155. | Actonel® Brochure, "The race against osteoporosis is a race against fracture" | MK 0357233-0357240 | | Relevance, hearsay | 402, 802 |
| 156. | Document entitled, "Actonel CBD Fundamentals" | MK 0270177 | | Relevance, hearsay | 402, 802 |
| 157. | 05/22/02 Document entitled, "Once-weekly Actonel approved in US", from Merck's website | MK 0351676 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 158. | Document entitled, "Information for the Patient, Evista® (E-VISS-tah) Tablets, Generic name: raloxifene hydrochloride" from Lilly's website | | | Relevance, hearsay | 402, 802 |
| 159. | Information for the Patient Miacalcin® (calcitonin-salmon) Nasal Spray from Novartis website | | | Relevance, hearsay | 402, 802 |
| 160. | Chart – Physician Profile, Fosamax | MK 0355919-0355934 | | Relevance, hearsay | 402, 802 |
| 161. | Merck document entitled, "Insight into the 'At Risk' segment as compared to the Osteoporotic" segment" | MK 0369607-0369618 | | Relevance, hearsay | 402, 802 |
| 162. | 1998 IMS Health Services Manual Chapter 30: National Prescription Audit Plus, NPA Plus Terminology, p. 30-58 | | | Relevance, hearsay | 402, 802 |
| 163. | Miacalcin® brochure, "In the Treatment of patients with postmenopausal osteoporosis – One Therapy meets the needs of many" | MK 0357276-0357277 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 164. | Mahajan and Peterson, "Models for Innovation Diffusion", Number 07-048 | | | Relevance, hearsay | 402, 802 |
| 165. | Merk documents re Fosamax/Attribute Tracker | MK 0369533-0369606 | | Relevance, hearsay | 402, 802 |
| 166. | Merk document entitled, "Fosamax® Plan and Expectations 2001" | MK 0276089-0276139 | | Incomplete, relevance, hearsay | 106, 402, 802 |
| 167. | Merck document entitled, "Osteoporosis Product Attributes" | MK 0275664-0275676 | | Relevance, hearsay | 402, 802 |
| 168. | Actonel® brochure, "ActionFact Treat your PMO and GIO patients with efficacy you expect and tolerability you can trust" | MK 0391703-0391710 | | Relevance, hearsay | 402, 802 |
| 169. | Document entitled, "Worldwide 20-Year Sales Forecast of Fosamax – PMO Only – Presentation" | MK 0310263-0310310 | | Relevance, hearsay | 402, 802 |
| 170. | Document entitled, "Fosamax® Once Weekly Market Opportunity", Christine Kingsbury, April 27, 1999 | MK 0356790-0356875 | | Relevance, hearsay | 402, 802 |
| 171. | Document entitled, | MK | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | "Fosamax® Compliance Study", October, 1999 | 0356239-0356281 | | hearsay | |
| 172. | Fosamax® Promotional Spending 1995 – 3Q 2002 | MK 0391664-0391669 | | Relevance, hearsay | 402, 802 |
| 173. | MMI Custom Study, Actonel Awareness and Usage Tracking Study Post-Launch Wave 3 (August 2000) prepared for Merck & Co., Inc. | MK 0372271-0373192 | | Relevance, hearsay | 402, 802 |
| 174. | Charts – Fame Gyn Contacts (Jan. 1998 – Sept. 2002) | MK 0391681-0391682 | | Relevance, hearsay | 402, 802 |
| 175. | Fosamax Data – Total Prescriptions | MK 0391579-0391624 | | Relevance, hearsay | 402, 802 |
| 176. | Chart – TRX Share Chg | MK 0391564 | | Relevance, hearsay | 402, 802 |
| 177. | 05/17/02 License Agreement Among Merck & Co., Inc. & Procter and Gamble Co. | MK 0384694-0384707 | | None | |
| 178. | 05/17/02 License Agreement Among Merck & Co., Inc. & Procter and Gamble Co. | MK 0384708-0384726 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 179. | Merck Annual Report 2001 from Merck's website | | | Relevance, hearsay | 402, 802 |
| 180. | Merck Annual Report 2001, Financial Section, pp. 13-40 | | | Relevance, hearsay | 402, 802 |
| 181. | 10/30/96, NDA 20-560, Fosamax™ (Alendronate Sodium Tablets) Meeting Background Package | MK 0250129-0250220 | | Relevance, hearsay | 402, 802 |
| 182. | 1997 (Supplemental A) Fosamax PDR Entry | | | Relevance, hearsay | 402, 802 |
| 183. | 1997 (Supplemental B) Fosamax PDR Entry | | | Relevance, hearsay | 402, 802 |
| 184. | Eaton et al., "Chapter 2: Principles of Toxicology", Casarett and Doull's Toxicology – The Basic Science of Poisons, 5th Edition, Klaassen Ed., pp. 13-33 (1996) | | | Relevance, hearsay | 402, 802 |
| 185. | Kikendall et al., "Pill-Induced Esophageal Injury", *Digestive Diseases and Sciences*, 28:2, 174-182 (1983) | | | None | |
| 186. | Ovartlarnporn et al., "Medication-Induced | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Esophageal Injury: Report of 17 cases with Endoscopic Documentation", Am J Gastroenterol, 86(6): 748-50 (1991) | | | | |
| 187. | Bonavina et al., "Drug-induced Esphageal Strictures", Ann. Surg., pp. 173-183 (1987) | | | Relevance, hearsay | 402, 802 |
| 188. | 07/16/91 Project Team Minutes | MK 0135838-0135846 | | Relevance, hearsay | 402, 802 |
| 189. | 09/14/99 Information Disclosure Statement Under 37 CFR 1.97 (09/376,315) | MK 0385375-0385380 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 190. | 06/01/00 Interview Summary (09/376,315) | MK 0385206 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 191. | 06/07/00 Supplemental Information Disclosure Statement Under 37 CFR 1.97 (09/376,315) | MK 0385371-0385374 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 192. | 07/07/00 Office Action with attachments (09/376,315) | MK 0385196-0385205 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 193. | 08/30/00 Supplemental Information Disclosure | MK 0385356-0385359 | | Relevance, hearsay, | 402, 802, 106, 901 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Statement Under 37 CFR 1.97 (09/376,315) | | | identification, incomplete | |
| 194. | 11/02/00 Final Office Action with attachments (09/376,315) | MK 0385188-0385195 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 195. | 05/22/01 Office Action (09/376,315) | MK 0385184-0385187 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 196. | 04/16/02 Notice of Improper Request for Continued Examination (RCE) (09/376,315) | MK 0385172-0385173 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 197. | 06/05/02 Supplemental Information Disclosure Statement Under 37 CFR 1.97 with attachments (09/376,315) | MK 0391738-0391980 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 198. | 06/05/02 Response to Final Rejection (09/376,315) | MK 0385228-0385233 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 199. | 08/21/02 USPTO Notice of Recordation of Assignment Document (09/445,837) | MK 0385162-0385166 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 200. | 08/26/02 USPTO Notice of Recordation of Assignment Document (09/445,837) | MK 0385157-0385161 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 201. | 08/26/02 Information Disclosure Statement by | MK 0391210-0391212 | | Relevance, hearsay, | 402, 802, 106, 901 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Applicant (09/376,315) | | | identification, incomplete | |
| 202. | 08/27/02 Notice of Allowance and Issue Fee Due with attachments (09/376,315) | MK 0385168-0385171 | | Relevance, hearsay, identification, incomplete | 402, 802, 106, 901 |
| 203. | MRL Preclinical Report: MK 0217: Esophageal Irritation Studies in Dogs. TT #96-031-0,-1,-2 (Reference Q-1) | MK 0257353-0257374 | | Relevance, hearsay | 402, 802 |
| 204. | MRL Preclinical Report: FOSAMAX™ Esophageal Irritation Studies in Dogs. TT #96-038-0,-1 (Reference Q-2) | MK 0257375-0257390 | | Relevance, hearsay | 402, 802 |
| 205. | MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs.  TT #96-039-0 (Reference Q-3) | MK 0257391-0257405 | | Relevance, hearsay | 402, 802 |
| 206. | MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs.  TT #96-041-0 (Reference Q-4) | MK 0257406-0257420 | | Relevance, hearsay | 402, 802 |
| 207. | MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs.  TT #96-045-0 | MK 0257421-0257435 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | (Reference Q-5) | | | | |
| 208. | MRL Preclinical Report: MK-0217: Ten-Day Esophageal Irritation Study in Dogs.  TT #96-050-0 (Reference Q-6) | MK 0257436-0257450 | | Relevance, hearsay | 402, 802 |
| 209. | MRL Preclinical Report: L-689, 532 (Risendronate Sodium): Five-Day Esophageal Irritation Study in Dogs.  TT #96-047-0,-1 (Reference Q-7) | MK 0257451-0257466 | | Relevance, hearsay | 402, 802 |
| 210. | MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs.  TT #96-118-0 (Reference Q-8) | MK 0257467-0257482 | | Relevance, hearsay | 402, 802 |
| 211. | MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs.  TT #97-007-0 (Reference Q-9) | MK 0257483-0257498 | | Relevance, hearsay | 402, 802 |
| 212. | MRL Preclinical Report: MK-0217, L-689, 532, L-615, 614: Five-Week Oral Gastric Irritation Study in Rats.  TT #97-009-0 (Reference Q-10) | MK 0257499-0257620 | | Relevance, hearsay | 402, 802 |
| 213. | MRL Preclinical Report: L-767, 693, (Tiludronate | MK 0257621-0257636 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Sodium): Five-Day Esophageal Irritation Study in Dogs. TT #97-019-0 (Reference Q-11) | | | | |
| 214. | MRL Preclinical Report: MK-0217: Single-Dose Esophageal Irritation Study in Dogs With 1- and 7-Day Recovery Periods. TT #97-057-0 (Reference Q-12) | MK 0257637-0257657 | | Relevance, hearsay | 402, 802 |
| 215. | MRL Preclinical Report: MK-0217: Five-Week Esophageal Irritation Study in Dogs. TT #97-080-0 (Reference Q-13) | MK 0257658-0257672 | | Relevance, hearsay | 402, 802 |
| 216. | MRL Preclinical Report: MK-0217: Five-Week Esophageal Irritation Study in Dogs. TT #98-004-0 (Reference Q-14) | MK 2576763-0257688 | | Relevance, hearsay | 402, 802 |
| 217. | MRL Preclinical Report: MK-0217/Geranylgeraniol: Five-Day Esophageal Irritation Study in Dogs. TT #98-124-0 (Reference Q-15) | MK 0257689-0257704 | | Relevance, hearsay | 402, 802 |
| 218. | 04/19/02 Teva's Response to Merck's First Set of Interrogatories Nos. 1-11 | | | Relevance | 402 |
| 219. | 10/04/02 Teva's Response | | | Relevance | 402 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | to Merck's Second Set of Interrogatories Nos. 12-50 | | | | |
| 220. | 01/09/03 Teva's Responses to Merck's Supplemental Response to Merck's Interrogatories Nos. 34, 35, 38 and 39 | | | Relevance | 402 |
| 221. | 10/04/02 Teva's Response to Merck's First Set of Requests for Admissions Nos. 1-26 | | | Relevance | 402 |
| 222. | 10/04/02 Teva's Response to Merck's Second Set of Requests for Admissions Nos. 27-50 | | | Relevance | 402 |
| 223. | 11/04/02 Memorandum Opinion, *Merck v. Teva and Zenithi, CA Nos. 00-035-JJF and 00-052-JJF, Consolidated Action* | | | Relevance, hearsay | 402, 802 |
| 224. | 12/02/02 Final Judgment Order, *Merck v. Teva and Zenith, C.A. Nos. 00-035-JJF and 00-052-JJF, Consolidated Action* | | | Relevance, hearsay | 402, 802 |
| 225. | Merck/Lunar Management Meeting, 05/21/97 – Agenda | MK 0272085-0272086 | | None | |
| 226. | Chart – Promotion + CDP, 1995-2002 Actual | | | Relevance, hearsay | 402, 802 |
| 227. | Profit Plan 2000 | MK 0257241- | | Relevance, | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Fosamax®, September 9, 1999 | 0275281 | | hearsay | |
| 228. | Charts – Contacts | | | Relevance, hearsay | 402, 802 |
| 229. | 01/27/03 Wolfe E-mail to Counihan re once weekly expenses/marketing plan | MK 0392082-0392124 | | Incomplete, relevance, hearsay | 106, 402, 802 |
| 230. | Excerpt from Electronic Orange Book – Approved Drugs, from FDA website re Alendronate Sodium | | | Relevance, hearsay | 402, 802 |
| 231. | Administration on Aging, "Aging Internet Information Notes: Osteoporosis" | | | Relevance, hearsay | 402, 802 |
| 232. | Administration on Aging, "A Profile of Older Americans: 2001, The Older Population" | | | Relevance, hearsay | 402, 802 |
| 233. | Excerpt Merck Annual Report 2000 Fosamax Sales Approach $1.3 Billion in 2000 and Keep Climbing | | | Relevance, hearsay | 402, 802 |
| 234. | National Osteoporosis Foundation, "Osteoporosis: Bone Mass Measurement | | | Relevance, hearsay | 402, 802 |
| 235. | 07/11/01 Davies and Lewis memo to Jordan re USHH Perspectives on Fosamax and the Osteoporosis | MK 0270407-0270413 | | Incomplete, relevance, hearsay | 106, 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
|  | Market Environment: 2Q01 |  |  |  |  |
| 236. | Current Situation – Competitor Activities | MK 0290024 |  | Relevance, hearsay | 402, 802 |
| 237. | Liebman, "Awakening the Silent Osteoporosis Market", *Media Marketing & Media*, 04/2002 |  |  | Relevance, hearsay | 402, 802 |
| 238. | "Yahoo! Health Encyclopedia: Osteoporosis" |  |  | Relevance, hearsay | 402, 802 |
| 239. | National Osteoporosis Foundation, "NOF Applauds USPSTF Recommendations on BMD Tests", 09/16/02 |  |  | Relevance, hearsay | 402, 802 |
| 240. | Environment, Market Review | MK 0226830-0266836 |  | Relevance, hearsay | 402, 802 |
| 241. | "NPD Reports Treatment of Osteoporosis Is On the Rise", NPD Press Release, 11/27/00 |  |  | Relevance, hearsay | 402, 802 |
| 242. | National Osteoporosis Foundation, "New Scientific Advances in Osteoporosis Research Presented at International Meeting", 06/15/00 |  |  | Relevance, hearsay | 402, 802 |
| 243. | Merck Annual Report 2000, Financial Section, pp. 21-48 |  |  | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 244. | National Osteoporosis Foundation, "Osteoporosis: Men and Osteoporosis" | | | Relevance, hearsay | 402, 802 |
| 245. | Schorr, "Men at Risk? Osteoporosis Can Also Affect Men; Women's Drug Treatment Can Help" 08/30/02 | | | Relevance, hearsay | 402, 802 |
| 246. | Fosamax Product Workshop, April 12, 2000, Background Packet, Business Plan for Fosamax®, 2001-2005 | MK 0377509-0377533 | | Relevance, hearsay | 402, 802 |
| 247. | Jaret, "What to Tell Patients About HRT", *Hippocrates*, 14(12) (2000) | | | Relevance, hearsay | 402, 802 |
| 248. | 09/14/90 FDA letter to Eli Lilly and Co. re advertisement for Evista tablets | MK 0377035-0377042 | | Relevance, hearsay | 402, 802 |
| 249. | Damodar Gujarati, *Basic Econometrics*, 2nd Edition, (New York: McGraw-Hill), 1988, pp. 442-448 | | | Relevance, hearsay | 402, 802 |
| 250. | James Hilton, *Time Series Analysis*, (Princeton: Princeton University Press), 1994, pp. 109-112 | | | Relevance, hearsay | 402, 802 |
| 251. | May, "2001PERQ/HCI Mid-Year Advertising Spending Review: Ad Spending Plummets" | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 252. | Mahajan et al., "New Product Diffusion Models in Marketing: A Review and Directions for Research", *Journal of Marketing*, pp. 1-26 | | | Relevance, hearsay | 402, 802 |
| 253. | National Osteoporosis Foundation, "New Study Finds Costs of Treating Osteoporosis Significantly Underestimated" | | | Relevance, hearsay | 402, 802 |
| 254. | National Osteoporosis Foundation, "America's Bone Health: The State of Osteoporosis and Low Bone Mass" | | | None | |
| 255. | Simon, "Marketing Science's Pilgrimage to the Ivory Tower", Chapter 2 in Gilles Laurent, pp. 27-43 (1994) | | | Relevance, hearsay | 402, 802 |
| 256. | Sheth and Sisodia, "Revisiting Marketing's Lawlike Generalizations", Journal of the Academy of Marketing Science, 27(1): p. 76 (1999) | | | Relevance, hearsay | 402, 802 |
| 257. | Profit Plan 2001 Fosamax®, August 30, 2001 | MK 0377329-0377344 | | Relevance, hearsay | 402, 802 |
| 258. | Khoury et al., "Selection and Application of | | | Relevance, hearsay | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | Intellectual Property Valuation Methods in Portfolio Management and Value Extraction", *les Nouvelles*, 36(3): pp. 77-86 (2001) | | | | |
| 259. | McGavock et al., "Factors Affecting Royalty Rates", *les Nouvelles*, 27(2): pp. 107-116 (1992) | | | None | |
| 260. | Gross, "Actual Royalty Rates in Patient-, Know-How-and Computerprogram-License Agreements", *CASRIP Newsletter*, Vol. 413 | | | Relevance, hearsay | 402, 802 |
| 261. | Degnan et al., "A Survey of Licensed Royalties", *les Nouvelles*, 22(2): pp. 91-96 (1997) | | | None | |
| 262. | Russell, R.G.G. et al., "Clodronate; Etidronate; Pamidronate", Therapeutic Drugs, Vol. 1, Ed. C. Dollery, Publ. Churchill Livingstone (1991) | | | Relevance, hearsay | 402, 802 |
| 263. | Douglas et al., "Drug Treatment of Primary Hyperparathyroidism: use of clodronate disodium", Clinical Research, *British* | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| | *Medical Journal*, Vol. 286, pp. 587-590 (1983) | | | | |
| 264. | Russell et al., "Diphosphonates in Paget's Disease", *The Lancet*, pp. 894-898 (1974) | | | Relevance, hearsay | 402, 802 |
| 265. | Papapoulos et al., Bisphosphonates on Bone, Ch. 15, pp. 231-245; Ch. 28, pp. 403-418, Bijvoet, Fleisch, Canfield and Russell (eds.), (1995) | | | Relevance, hearsay | 402, 802 |
| 266. | Russell et al., "Bisphosphonates: Pharmacology, Mechanisms of Action and Clinical Uses", Osteoporosis Int., Suppl. 2:S66-S80, pp. 66-80 (1999) | | | Relevance, hearsay | 402, 802 |
| 267. | Dr. Russell's edits to draft of Dr. Fleisch's book, Section 3.1 Paget's disease | | | Relevance, hearsay | 402, 802 |
| 268. | Dr. Russell's edits to draft of Dr. Fleisch's book, Section 2.5 Animal toxicology | | | Relevance, hearsay | 402, 802 |
| 269. | Dr. Russell's edits to draft of Dr. Fleisch's book, Section 3.8 Adverse events | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 270. | Affidavit of Dr. Graham Russell from Canadian case *Proctor & Gamble v The Minister of Health and Genpharm.* | | | Relevance, hearsay | 402, 802 |
| 271. | O'Doherty et al., "Paget's Disease of Bone," Current Orthopaedics, pp. 262-269 (1989) | | | Relevance, hearsay | 402, 802 |
| 272. | Merck's demonstratives from trial in matter of Merck & Co., Inc. v. Teva Pharmaceuticals, USA, Inc., C. A. No. 01-048 (JJF) | | | Relevance, hearsay | 402, 802 |
| 273. | U. S. Patent No. 6,476,006 | | | Relevance, hearsay | 402, 802 |
| 274. | Teva PCT Patent Application No. WO 03-057136 | | | Relevance, hearsay | 402, 802 |
| 275. | Certified copy of U.S. Patent No. 6,432,932 | | | Hearsay | 802 |
| 276. | Certified copy of File History of U.S. Patent No. 6,432,932 | | | Hearsay | 802 |
| 277. | Certified copy of U.S. Patent No. 6,465,443 | | | Relevance, hearsay | 402, 802 |
| 278. | Certified copy of File History of U.S. Patent No. 6,465,443 | | | Relevance, hearsay | 402, 802 |
| 279. | The package insert for Risedronate Sodium Tablets 5, 30 and 35 mg from Teva's Abbreviated New Drug Application No. 77-132 | TEVA R 06314-06345 | | None | |
| 280. | The Opinion of the United States Court of Appeals for the Federal Circuit published as *Merck & Co., Inc. v. Teva Pharmaceuticals, USA,* 395 F.3d 1364 (Fed. Cir. 2005) | | | None | |
| 281. | The PCT patent application entitled "Use of Certain Methanebisphosphonic Acid Derivatives to Prevent Prosthesis Loosening and Prosthesis Migration." WO 95/30421, with Allen E. Goodship et al as listed inventors | | | None | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 282. | U.S. Patent No. 5,869,471 | | | None | |
| 283. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 11. | | | | |
| 284. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 12. | | | | |
| 285. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 13. | | | | |
| 286. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 105. | | | | |
| 287. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 106. | | | | |
| 288. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 108. | | | | |
| 289. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 56. | | | | |
| 290. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 63. | | | | |
| 291. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 69. | | | | |
| 292. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 75. | | | | |
| 293. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 77. | | | | |
| 294. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 70. | | | | |
| 295. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 79. | | | | |
| 296. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 80. | | | | |
| 297. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 81. | | | | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 298. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 84. | | | | |
| 299. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 86. | | | | |
| 300. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 85. | | | | |
| 301. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 88. | | | | |
| 302. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 87. | | | | |
| 303. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 51. | | | | |
| 304. | Blank MA, Ems BL, Gibson GW, Myers WR, Berman SK, Phipps RJ, and Smith PN. Nonclinical model for assessing gastric effects of bisphosphonates. *Digestive Diseases and Sciences* February 1997; 42(2): 281-288 | | | Relevance, hearsay | 402, 802 |
| 305. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 110. | | | | |
| 306. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 111. | | | | |
| 307. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 112. | | | | |
| 308. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 102. | | | | |
| 309. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 113. | | | | |
| 310. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 101. | | | | |
| 311. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 55. | | | | |
| 312. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 65. | | | | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 313. | Lufkin EG, Argueta R, Whitaker MD, Cameron AL, Wong VH, Egan KS, O'Fallon WM, Riggs BL. Pamidronate: an unrecognized problem in gastrointestinal tolerability. *Osteoporosis International 1994;* 4:320-322 | | | Relevance, hearsay | 402, 802 |
| 314. | Spivacow R, Roldan EJA, Zanetti D, Piccinni E, and Zanchetta JR. Digestive tolerance of oral bisphosphonates in patients with osteoporosis and other medical osteopathies. *Medicina* 1997; 57 (Supplement 1):114-118 | | | Relevance, hearsay | 402, 802 |
| 315. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 73. | | | | |
| 316. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 74. | | | | |
| 317. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 96. | | | | |
| 318. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 97. | | | | |
| 319. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 98. | | | | |
| 320. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 99. | | | | |
| 321. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 76. | | | | |
| 322. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 78. | | | | |
| 323. | Valentin-Opran A. Risedronate: Preliminary Results of a Pharmacologic Study in Pagetic Patients. *J. Bone Mineral Research* 1990; 5:s119 (suppl. 2; abstr. 182) | | | None | |
| 324. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 115. | | | | |
| 325. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 116. | | | | |
| 326. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 117. | | | | |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 327. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 118. | | | | |
| 328. | Brown JP, Kylstra JW, Bekker PJ, Axelrod DW, Siris ES, Altman RD, and Singer FR. Risedronate in Paget's disease: Preliminary Results of a Multicenter Study. *Seminars in Arthritis and Rheumatism* 1994; 23(4): 272 | | | None | |
| 329. | ACTONEL® product insert downloaded from *www.actonel.com* | | | None | |
| 330. | Frost & Sullivan, "U.S. Emerging Osteoporosis Therapeutics Markets", 2002 | PGK00014545 – PGK00014712 | | Relevance, hearsay | 402, 802 |
| 331. | Actonel (risendronate sodium tablets) Product Information http://ww.fda.gov/cder/foi/label/2004/20835slr014_actonel_lbl.pdf, pp. 25-26, last accessed March 1, 2006 | | | None | |
| 332. | Actonel Press Release: U.S. FDA Approves Actonel Plus Calcium (http://www.actonel.com/pressrelease/fda/jsp, last accessed March 1, 2006 | | | Relevance, hearsay | 402, 802 |
| 333. | Actonel (risendronate sodium tablets) Product Information_ http://ww.fda.gov/cder/foi/label/2004/20835slr014_actonel_lbl.pdf | | | Relevance, hearsay | 402, 802 |
| 334. | http://ww.imshealth.com/ims/portal/front/indexC/0,2478.6599_1825,00.htm, last accessed March 1, 2006—IMS Health Company Information | | | Relevance, hearsay | 402, 802 |
| 335. | Proprietary Data IMS Health | MK 0934996-0935004 | | Relevance, hearsay | 402, 802 |
| 336. | Presentation re: Customer Marketing Plans | PGK00024172 – PGK00024221 | | Relevance, hearsay | 402, 802 |
| 337. | Actonel Presentation "The race against osteoporosis is a race against fracture" | PGK00015641 – PGK00015645 | | Relevance, hearsay | 402, 802 |
| 338. | Chart:  Fosamax Total Prescriptions Oct. 1995 to Nov. 2005, Monthly | | | Relevance, hearsay | 402, 802 |
| 339. | http://ww.fda.gov/cder/foi/label/2005/020560s038_021575s007lbl.pdf, pp. 1, 21, last accessed February 12, 2006 | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 340. | Proprietary Data of IMS Health | MK 0934987-0935004 | | Relevance, hearsay | 402, 802 |
| 341. | http://www.prnewswire.com/cgi-bin/micro_stories.pl?ACCT=103068&TICK=PDII&STORY=/www/story/10-02-2001/0001583646&EDATE=Oct+2._2001, last accessed March 1, 2006---Investor Relations-Press Releases | | | Relevance, hearsay | 402, 802 |
| 342. | U.S. Osteoporosis Market History 08/30/00 | PGK00015235 – PGK00015240 | | Relevance, hearsay | 402, 802 |
| 343. | http://www.evista.com/understand_evista/how_to_take.jsp?reqNavId=1.2.1, last accessed March 1, 2006---"Understanding Evista" | | | Relevance, hearsay | 402, 802 |
| 344. | http://www.pharma.us.novartis.com/product/pi/pdf/miacalcin_nasal.pdf, last accessed March 1, 2006 | | | Relevance, hearsay | 402, 802 |
| 345. | "FFABME" Osteoporosis Pharmaceutical Prescriptions Total Prescriptions, January 1995-November 2005, Monthly | | | Relevance, hearsay | 402, 802 |
| 346. | http://www.fda.gov/cder/foi/label/2002/21318_forteo_lbl.pdf -- Actonel Production Information | | | Relevance, hearsay | 402, 802 |
| 347. | http://www.rxlist.com/cgi/generic3/forteo_pui.htm, last accessed March 1, 2006---Patient Information-Medication Guide | | | Relevance, hearsay | 402, 802 |
| 348. | http://ww.fda.gov/cder/foi/label/2003/21455_boniva_lbl.pdf,, last accessed February 16, 2006 | | | Relevance, hearsay | 402, 802 |
| 349. | http://www.fda.gov.cder.rdmt.ESCY05AP.htm, last accessed February 16, 2006 | | | Relevance, hearsay | 402, 802 |
| 350. | Actonel Consultancy Panel Feedback Summary Report | PGK00024547 – PGK00024560 | | Relevance, hearsay | 402, 802 |
| 351. | Actonel 2001-2014 Forecasts 03/09/2001 | PGK00004188 – PGK00004218 | | Relevance, hearsay | 402, 802 |
| 352. | 04/25/1995 Memo re: Risedronate Business Opportunity | PGK00009389 – PGK00009395 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 353. | Actonel US Launch Plan 2000 | PGK00013806 – PGK00013812 | | Relevance, hearsay | 402, 802 |
| 354. | Memo re: Risedronate Business Strategy 07/10/95 | PGK00009396 – PGK00009403 | | Relevance, hearsay | 402, 802 |
| 355. | Health care Initiative Tracking 04/16/2002 | PGK00009552 – PGK00009556 | | Relevance, hearsay | 402, 802 |
| 356. | P&G Pharmaceuticals Memo re: Actonel U.S. Business Review-Launch Results 05/00-11/00 | PGK00023999 – PGK00024003 | | Relevance, hearsay | 402, 802 |
| 357. | P&G Pharmaceuticals-Quarterly Letter-OND'00 | PGK00004115 – PGK00004119 | | Relevance, hearsay | 402, 802 |
| 358. | Actonel n the Osteoporosis Market Key Results from Ongoing Launch Tracking Research Wave 5 Physpulse ™ 08/07/2001 | PGK00015090 – PGK00015152 | | Relevance, hearsay | 402, 802 |
| 359. | Italy Meeting Fosamax 70mg effect (05/23/01) | PGK00014149 – PGK00014229 | | Relevance, hearsay | 402, 802 |
| 360. | Market Overview w/notes | PGK00013225 – PGK00013232 | | Relevance, hearsay | 402, 802 |
| 361. | Actonel 2002-2014 Forecasts 05/20/02 | PGK00017605 – PGK00017638 | | Relevance, hearsay | 402, 802 |
| 362. | Actonel Marketing Plan Agenda | PGK00013626 – PGK00013714 | | Relevance, hearsay | 402, 802 |
| 363. | P&G Aventis Slide | PGK00013453 – PGK00013526 | | Relevance, hearsay | 402, 802 |
| 364. | NABU CI Monthly Letter October 2001 10/31/2001 | PGK00009814 – PGK00009816 | | Relevance, hearsay | 402, 802 |
| 365. | License Agreement Among Merck & Co., Inc., and The P&G Company | MK 0384741-759 | | None | |
| 366. | "Pharmaceuticals – Monthly Letter", August '03, 09/04/2003 | PGK00025691 | | Relevance, hearsay | 402, 802 |
| 367. | "Pharmaceuticals – Monthly Letter", February '03, 03/05/2003 | PGK00025694 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 368. | "Pharmaceuticals – Monthly Letter", April '04, 05/05/2004, p. 1 | PGK00025437 | | Relevance, hearsay | 402, 802 |
| 369. | "Actonel 2003-2014 Forecasts", 06/17/2003 | | | Relevance, hearsay | 402, 802 |
| 370. | "Actonel Business Update: Global Product Supply Committee", 07/13/2004 | | | Relevance, hearsay | 402, 802 |
| 371. | "Actonel Business Update: Global Product Supply Committee", 07/13/2004, p. 30 | PGK0025069 | | Relevance, hearsay | 402, 802 |
| 372. | "U.S. Launch Tracking,"  05/28/2001 p.11 | PGK00025603 | | Relevance, hearsay | 402, 802 |
| 373. | Vijay Mahajan, Eitan Muller, and Yoram Wind, eds., *New-Product Diffusion Models*, Kluwer Academic Publishers, 2000 | | | None | |
| 374. | DRAFT US Professional Marketing Plan Recommendation 2001 – 2002 | PGK00015307 – PGK00015318 | | Relevance, hearsay | 402, 802 |
| 375. | http://www.pg.com/annualreports/2005/pdf/pg2005annualreport.pdf, last accessed February 14, 2006 | | | Relevance, hearsay | 402, 802 |
| 376. | Expert Report and exhibits of Dr. Socrates E. Papapoulos - 01/31/06 | | | Relevance, hearsay | 402, 802 |
| 377. | Expert Report and exhibits of Dr. Socrates E. Papapoulos on Validity – 03/01/06 | | | Relevance, hearsay | 402, 802 |
| 378. | Expert Report and exhibits of M. Brian Fennerty, M.D. – 03/01/06 | | | Relevance, hearsay | 402, 802 |
| 379. | Expert Report and exhibits of Jesse David, PhD - 04/06/06 | | | None | |
| 380. | Expert Report and exhibits of Christopher A. Vellturo, PhD – 03/01/06 | | | Relevance, hearsay | 402, 802 |
| 381. | Curriculum Vitae of M. Brian Fennerty, MD | | | Relevance, hearsay | 402, 802 |
| 382. | Curriculum Vitae of Dr. Socrates E. Papapoulos | | | Relevance, hearsay | 402, 802 |
| 383. | Curriculum Vitae of Christopher A. Vellturo, PhD | | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 384. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 90. | | | | |
| 385. | Article:  Restoring and Maintaining Bone in Osteopenic Female Rat Skeleton:  I.  Changes in Bone Mass and Structure 1992 | PDX 3 | | None | |
| 386. | Article:  Extra Cancellous Bone Induced by Combined Prostaglandin $E_2$ and Risedronate Administration is Maintained after Their Withdrawal in Older Female Rats  1995 | PDX 4 | | None | |
| 387. | Article:  Partial Maintenance of Extra Cancellous Bone Mass by Antiresorptive Agents After Discontinuation of Human Parathyroid Hormone (1-38) in Right Hindlimb Immobilized Rats 1995 | PDX 5 | | None | |
| 388. | Article:  The Bisphosphonate Alendronate (MK-217) Inhibits Bone Loss Due to Ovariectomy in Rats 1991 | PDX 6 | | None | |
| 389. | US Patent No. 5,730,715 | PDX 7 | | None | |
| 390. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 282. | | | | |
| 391. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 51. | | | | |
| 392. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 69. | | | | |
| 393. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 294. | | | | |
| 394. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 11. | | | | |
| 395. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 12. | | | | |
| 396. | 2001 Program and Abstract for the 23rd Annual Meeting of the American Society for Bone and Mineral Research 10/12-16/2001 | PDX 15 | | Relevance | 402 |
| 397. | 2001 Program and Abstract for the 23rd Annual Meeting of the American Society for Bone and Mineral Research 10/12-16/2001 | PDX 16 | | Relevance | 402 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 398. | Letter to the Editor in New England Journal of Medicine | PDX 21 | | None | |
| 399. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 79. | | | | |
| 400. | Fosamax Package Insert | PDX 23 | | Relevance, hearsay | 402, 802 |
| 401. | Physician's Desk Reference 2002 | PDX 24 | | None | |
| 402. | Provisional Application of Patent for Method of Increasing Bioavailability of Alendronate or Other Biphosphonates by Predose Administration of Alfacalcidol,  12/16/2002 | PDX 25 | | Relevance | 402 |
| 403. | Teva's ANDA 77-132 Risedronate Sodium Tablets, 5 mg, 30 mg, and 35 mg | | | None | |
| 404. | Teva's ANDA 77-132  Risedronate Sodium Tablets, 5 mg, 30 mg, and 35 mg AMENDMENT – Response to August 26, 2004 Review Letter and Addition of 35 mg Blister Package | | | None | |
| 405. | 07/20/05 Teva's Responses to Merck's First Requests for Admissions (1-27) | | | Relevance | 402 |
| 406. | 07/20/05 Teva's Responses to Merck's First Set of Interrogatories (1-36) | | | Relevance | 402 |
| 407. | 5/25/05 Teva's Response and Objections to Merck's First Set of Requests for the Production of Documents and Things (1-85) | | | Relevance | 402 |
| 408. | June 2, 2006 Transcript of Telephonic Hearing before Judge Sleet | | | Relevance | 402 |
| 409. | Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc., 288 F Supp 2d 601 (D.Del 2003) | | | Relevance | 402 |
| 410. | Teva Pharmaceuticals USA, Inc.'s Post-Trial Brief, *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, C.A. No. 01-048 (JJF), March 28, 2003 | | | Relevance | 402 |
| 411. | Teva Pharmaceuticals USA, Inc.'s Post-Trial Reply Brief, *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, C.A. No. 01-048 (JJF), April 11, 2003 | | | Relevance | 402 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 412. | Brief for Defendant-Appellant Teva Pharmaceuticals USA, Inc., *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, Appeal No. 04-1005 in the United States Court of Appeals for the Federal Circuit, December 17, 2003 | | | Relevance | 402 |
| 413. | Reply Brief for Defendant-Appellant Teva Pharmaceuticals USA, Inc., *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, Appeal No. 04-1005 in the United States Court of Appeals for the Federal Circuit, April 15, 2004 | | | Relevance | 402 |
| 414. | Defendant Teva Pharmaceuticals USA, Inc.'s Opening Brief in Support of its Motion Under Fed. R. Civ. P. 12(b)(6) to Dismiss Plaintiff Merck & Co., Inc.'s Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, C.A. No. 06-310-GMS, May 31, 2006 | | | Relevance | 402 |
| 415. | Defendant Teva Pharmaceuticals USA, Inc.'s Opening Brief in Support of its Motion Under Fed. R. Civ. P. 11(b) for Sanctions Against Counsel for Plaintiff Merck & Co., Inc., *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, C.A. No. 06-310-GMS, served June 5, 2006 | | | Relevance | 402 |
| 416. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 410. | | | | |
| 417. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 411. | | | | |
| 418. | MERCK HAS WITHDRAWN THIS EXHIBIT.  PLEASE SEE PTX 412. | | | | |
| 419. | Ltr re: 32,033 FOSAMAX information amendment | MK0188346-0188544 | | Relevance, hearsay | 402, 802 |
| 420. | FIT Trial Update | MK 0154684 | | Relevance, hearsay | 402, 802 |
| 421. | Ltr. re: Fracture Intervention Trial Update | MK 0154685-0154686 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 422. | Dept. of Health and Human Services Investigational NDA | MK 0154587-0154688 | | Relevance, hearsay | 402, 802 |
| 423. | Alendronate FIT Intervention FDA Update | MK0154689-0154693 | | Relevance, hearsay | 402, 802 |
| 424. | Ltr. Recommending Close-Out visits in vertebral deformity | MK 0154694 | | Relevance, hearsay | 402, 802 |
| 425. | Report Titled "IND 32,033, 01/12/98 FOSAMAX Pharaceutical & Toxicology" | MK 0382423-382456 | | Relevance, hearsay | 402, 802 |
| 426. | Ltr re: the IND 32,033 FOSAMAX Informational Amendment | MK 0170895-0170944 | | Relevance, hearsay | 402, 802 |
| 427. | Merck Ltr. re: Request for Meeting Concerning IND 32,033 | MK 0341364-0341395 | | Relevance, hearsay | 402, 802 |
| 428. | Ltr re: MK-217 Finalized Protocol | MK 0080527-0080643 | | Relevance, hearsay | 402, 802 |
| 429. | Expert Report re: Alendronate Sodium | MK 0384834-0383875 | | Relevance, hearsay | 402, 802 |
| 430. | Expert Report re: Alendronate Sodium | MK 0384876-384915 | | Relevance, hearsay | 402, 802 |
| 431. | Expert Report re: Alendronate Sodium | MK 0384916-0384946 | | Relevance, hearsay | 402, 802 |
| 432. | Updated Expert Report re: Alendronate Sodium | MK 0384947-038950 | | Relevance, hearsay | 402, 802 |
| 433. | Updated Expert Report re: Alendronate Sodium | MK 0384951-0384954 | | Relevance, hearsay | 402, 802 |
| 434. | Updated Expert Report re: Alendronate Sodium | MK 0384955-0384959 | | Relevance, hearsay | 402, 802 |
| 435. | Updated Expert Report re: Alendronate Sodium | MK 0384960-0384967 | | Relevance, hearsay | 402, 802 |
| 436. | Updated Expert Report re: Alendronate Sodium | MK 0384968-0384974 | | Relevance, hearsay | 402, 802 |

| Trial Exhibit No. | Description | Other Designation | Admitted | Teva USA's Objections and Basis | Rule |
|---|---|---|---|---|---|
| 437. | Ltr re: FOSAMAX ™ IND 31,775; ONCLAST ™ MK-217-Sodium and Informational Amendment | MK 0147476-0147556 | | Relevance, hearsay | 402, 802 |
| 438. | Ltr and Report IND 32,033 FOSAMAX w/attached investigational Drug Application Serial No. 238-Brief Overview | MK 0073319-0073345 | | Relevance, hearsay | 402, 802 |
| 439. | P&G royalty reports provided by P&G to Merck re: payment of royalties to Merck by P&G for sales of Actonel Once-weekly tablets | | | Relevance, hearsay | 402, 802 |
| 440. | Chart summarizing royalties paid to Merck by P&G based on segment of sales of Actonel Once-weekly tablets | PG 94411-94412 | | Relevance, hearsay | 402, 802 |
| 441. | P&G Royalty Report 04/30/06 | MK 935250 | | Relevance, hearsay | 402, 802 |
| 442. | P&G Royalty Report | MK 0935005-935011 | | Relevance, hearsay | 402, 802 |

EXHIBIT 3B

**EXHIBIT 3B**

**DEFENDANT'S TRIAL EXHIBIT LIST
AND PLAINTIFF'S OBJECTIONS THERETO**

C.A. NO. 04-939 (GMS)

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 1 | 11/30/99 | U.S. Patent 5,994,329 | | DDX 1 | N | | | | |
| 2 | 01/00 | Bone, et al., *Weekly Administration of Alendronate: Rationale and Plan for Clinical Assessment*, Clinical Therapeutics, Jan. 2000 | MK 0223114-0223128 | DDX 2 | N | | | | |
| 3 | 1993 | Gertz, et al., *Clinical Pharmacology of Alendronate Sodium*, Osteoporosis International, 1993 | | DDX 3 | N | | | | |

---

[1]     "DDX _" refers to defendant's deposition exhibits, marked in CV-01-048 (JJF); "DX _" refers to defendant's deposition exhibits marked in the instant lawsuit.

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 4 | 1997 | Daifotis & Karpf, *Summary of Safety Profile and Future Research with Alendronate*, British Journal of Rheumatology, 1997 | MK 0229494-0229497 | DDX 4 | N | | | | |
| 5 | 10/03/96 | DeGroen, et al., *Esophagitis Associated With the Use of Alendronate*; Liberman and Hirsch, *Esophagitis and Alendronate*, Letter to the Editor | MR 0047366-0047376 | DDX 5 | N | | | | |
| 6 | 10/03/96 | DeGroen, et al., *Esophagitis Associated With the Use of Alendronate*, N.E.J.M., October 1996 | | | N | | | | |
| 7 | 10/03/96 | Liberman and Hirsch, *Esophagitis and Alendronate*, N.E.J.M., Letter to the Editor, October 1996 | | | N | | | | |
| 8 | 10/03/96 | Castell, *Pill Esophagitis - The Case of Alendronate*, N.E.J.M., October 1996 | | | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 9 | 02/01/01 | Periodic Safety Update Report for: Alendronate Tablets  Report #15 , July 16, 2000 - January 15, 2001 | MK 0215615-0215648 | DDX 7 | N | | | | |
| 10 | 06/24/97 | 06/24/97 email from Daifotis to Rodan re: Weekly Dosing | MK 0217454 | DDX 9 | N | | | | |
| 11 | 10/96 | Reid, et al., *Biochemical and Radiologic Improvement in Paget's Disease of Bone Treated with Alendronate: A Randomized, Placebo-Controlled Trial* | | | N | | | | |
| 12 | 11/30/99 | U.S. Utility Patent Application for 5,994,329- FW  09/134,214 | | DDX 14 | N | | | | |
| 13 | 2000 | Schnitzer, et al., *Therapeutic Equivalence of Alendronate 70mg Once-Weekly and Alendronate 10mg Daily in the Treatment of Osteoporosis*, Aging Clin. Exp. Res, 2000 | | DDX 16 | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 14 | 04/04/01 | Manuscript Review: Emkey, R., *Two-Year Gastrointestinal Safety and Tolerability of Alendronate 70mg Once Weekly*, for presentation at October 2001 ASBMR Annual Meeting | MK 0315883-0315886 | DDX 20 | N | | | | |
| 15 | 12/29/97 | Memo from Dicesare to Fosamax Commercialization Team re: Highlights of the 12/11/97 Fosamax Commercialization Team Meeting | MR 0078646-0078652 | DDX 21 | N | | | | |
| 16 | 04/99 | Watts, et al., *The Clinical Tolerability Profile of Alendronate*, LICP Supp., April 1999 | MK 0284722-0284732 | DDX 29 | N | | | | |
| 17 | 03/15/96 | March 15, 1996 "Dear Doctor" letter from Sherwood re: Fosamax Dosing and Avoidance of Esophageal Side Effects | MK 0156420-0156421 | DDX 31 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 18 | | Draft of March "Dear Doctor" letter from Sherwood re: Fosamax: Proper Dosing and Avoidance of Esophageal Side Effects | MK 0307314-0307317 | DDX 32 | N | | | | |
| 19 | 09/03/96 | Memo from Pyron to Roberts re: Lunar News | MK 0272183-0272195 | DDX 34A | | H | | | |
| 20 | 03/13/97 | Letter from Anstice to Mazess re: Response to 02/07/97 letter | MK 0307359 | DDX 37 | N | | | | |
| 21 | 04/01/97 | Letter from Anstice to Mazess re: Merck representatives meeting with Lunar in Madison | MK 0334166-0334186 | DDX 38 | | H, C | | | |
| 22 | 05/21/97 | Agenda for May 21, 1997, Merck/Lunar management Meeting | MK 0272082 | DDX 40 | | H | | | |
| 23 | 08/29/97 | Letter from Mazess to Sherwood enclosing Lunar News | MK 0307347-0307349 | DDX 42 | | H | | | |
| 24 | 03/18/99 | Letter from Yates to Mazess re: review of draft Lunar News | MK 0286269 | DDX 45 | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 25 | | Lunar Newsletter (excerpts from December 1996, July 1996, April 1996 and April 1997 editions) | MK 0272059-0272060 | DDX 46 | N | | | | |
| 26 | 12/01/00 | Letter from Sherwood to Pyle responding to 11/20/00 letter from Pyle to Sherwood | MK 0307248-0307250 | DDX 51 | N | | | | |
| 27 | 12/10/00 | Letter from Pyle to Sherwood re: Sherwood's 12/01/00 letter | MK 0307247 | DDX 52 | N | | | | |
| 28 | 08/11/99 | Memo from Sabatelli to Daifotis et al. re: Notice of Allowance for 09/134,215 | MK 0230459 | DDX 56 | | PRIV | | | |
| 29 | 06/30/99 | Letter from Mazess to Yates re: Update Bisphosphonates report with handwritten marginalia | MK 0286265-0286266 | DDX 68 | | H | | | |
| 30 | 1991 | Seedor, et al. *The Bisphosphonate Alendronate (MK-217) Inhibits Bone Loss Due To Ovariectomy in Rats*, Bone & Min. Res., 1991 | | | | H | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 31 | 12/93 | Balena, et al., *The Effects of 2-Year Treatment with the Aminobisphosphonate Alendronate on Bone Metabolism, Bone Histomorphometry, and Bone Strength in Overlectomized Nonhuman Primates*, The Amer. Soc. For Clin. Invest. , 1993 | | DDX 78 | | H | | | |
| 32 | 1992 | Thompson, et al., *The Bisphosphonate, Alendronate, Prevents Bone Loss in Ovariectomized Baboons*, Bone & Min. Res., 1992 | | DDX 79 | | H | | | |
| 33 | 02/27/98 | Memo From DiCesare to Distribution re: Worldwide Statement of Interest: Fosamax (MK-217) Weekly Dosing | MR 0122580-0122595 | DDX 80 | N | | | | |
| 34 | 04/24/95 | PCT WO 95/30421 - Goodship | | DDX 81 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 35 | 02/02/98 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of the 01/23/98 Fosamax Commercialization Team Meeting | MK 0290889-0290895 | DDX 82 | N | | | | |
| 36 | 12/30/98 | Memo From DiCesare to Fosamax Commercialization Team re: 2/10/98 Fosamax Commercialization Team meeting | MK 0168267-0168271 | DDX 85 | N | | | | |
| 37 | 04/22/96 | Memo From DiCesare to Meeting Attendees re: Summary of 04/01/96 Fosamax Alternative Formulation Development meeting | MR 75889-75900 | DDX 88 | N | | | | |
| 38 | 06/17/96 | Memo from Katdare to Distribution List re: Alternative Dosage Forms for Alendronate Sodium | MK 267416-26718 | DDX 93 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 39 | 06/17/96 | Memo from Katdare to Luby, et al. re: Product Profile for Iontophoretic Delivery of Alendronate Sodium | MK 175200-175203 | DDX 94 | N | | | | |
| 40 | 07/01/96 | Fosamax / Onclast Project Team Meeting Minutes | MR 61310.96-61310.105 | DDX 96 | N | | | | |
| 41 | 07/07/96 | Email from Katdare to DiCesare re: Agenda Items for Alendronate Alternative Formulation Task Force | MK 175247 | DDX 97 | N | | | | |
| 42 | 07/19/96 | Memo from DiCesare to Distribution re: Fosamax Alternative Formulation Development Task Force | MK 175808-175812 | DDX 98 | N | | | | |
| 43 | 11/27/96 | Memo from Katdare to DiCesare re: Alternative Formulation Development | MK 282658-282659 | DDX 99 | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 44 | 02/07/97 | Memo From DiCesare to Meeting Attendees re: Summary of 01/13/97 Fosamax Alternative Formulation Development Task Force Meeting | MK 175642-175644 | DDX 100 | N | | | | |
| 45 | 02/06/97 | Memo from Senich to DPC Members re: New Perspective on Competitive Threat: Formulations and Dosing for Fosamax | MK 174600 | DDX 101 | N | | | | |
| 46 | 02/07/97 | Email from Katadare to DiCesare re: New Competitive Intelligence - Formulation Strategies | MK 174629 | DDX 102 | N | | | | |
| 47 | 02/18/97 | Memo From DiCesare to Fosamax Commercialization Team re: Highlights of 02/07/97 Fosamax Commercialization Team Meeting | MK 174595-174599 | DDX 104 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 48 | 02/28/97 | Memo From DiCesare to Fosamax Commercialization Team<br><br>re: Highlights of 02/24/97 Fosamax Commercialization Team Meeting | MK 158554-158558 | DDX 105 | N | | | | |
| 49 | 03/12/97 | Fosamax Alternative Formulation Development Task Force Meeting Agenda | MK 175611-175612 | DDX 106 | N | | | | |
| 50 | 05/14/97 | Email from Katdare to Distribution re: Draft #5 & 6 of the Fosamax PDP | MK 158237; 158234 | DDX 108 | N | | | | |
| 51 | 05/97 | Product Profile for Alternative Formulations/Regimens | MK 291242-291243 | DDX 109 | N | | | | |
| 52 | 02/18/98 | Memo From DiCesare to Fosamax Commercialization Team<br><br>re: Highlights of 02/05/98 Fosamax Commercialization Team Meeting | MK 159883-159888 | DDX 111 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 53 | 07/10/96 | Memo From DiCesare to Fosamax Commercialization Team<br><br>re: Highlights of 07/01/96 Fosamax Commercialization Team Meeting | MK 355787-355790 | DDX 113 | N | | | | |
| 54 | 09/30/98 | Memo From DiCesare to Fosamax Commercialization Team<br><br>re: Summary of 09/03/98 Fosamax Commercialization Team Meeting | MK 181817-181821 | DDX 114 | N | | | | |
| 55 | 09/29/97 | Email from Harning to Distribution re: Clinical Development Strategy (Draft) - CDS | MK 0196779-0196799 | DDX 116 | N | | | | |
| 56 | 01/25/96 | Memo from DiCesare to Fosamax/Onclast Project Team re: 02/01/96 Project Team Meeting | MK 0193104-0193107 | DDX 117 | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 57 | 02/13/96 | Email from Hirsch to DiCesare re: alternative formulations | MK 0175390-0175391 | DDX 118 | N | | | | |
| 58 | 07/01/96 | Fosamax/Onclast Project Team meeting Minutes | MK 0155292-0155300 | DDX 122 | N | | | | |
| 59 | 11/05/96 | Memo from DiCesare to Distribution re: Fosamax Alternative Formulation Development Task Force | MK 0175685-0175687 | DDX 125 | N | | | | |
| 60 | 03/25/97 | Fosamax Product Development Plan and Technical Review Schedule | MK 0158533-0158535 | DDX 128 | N | | | | |
| 61 | 01/13/97 | Fosamax Alternative Formulation Development Task Force Meeting | MK 0175655 | DDX 129 | N | | | | |
| 62 | 02/07/97 | Memo from DiCesare to Meeting Attendees re: Summary of 01/13/97 Fosamax Alternative Formulation Development Task Force Meeting | MK 0175633-0175635 | DDX 131 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 63 | 02/10/97 | Memo from DiCesare to Distribution re: Fosamax Alternative Formulation Development Task Force | MK 0175630-0175632 | DDX 132 | N | | | | |
| 64 | 02/13/97 | Email from Katdare to Mundt et al. re: Market Research Study for Fosamax | MK 0175645 | DDX 134 | N | | | | |
| 65 | 04/08/97 | Memo from DiCesare to Distribution re: Fosamax Alternative Formulations Development Task Force | MK 0175526-0175528 | DDX 138 | N | | | | |
| 66 | 08/19/96 | Tactical PAC Review | MK 0167597-0167649 | DDX 140 | N | | | | |
| 67 | 05/07/97 | Email from Santora to Peter re: Preclinical Study to Support 40mg Fosamax | MK 0175545 | DDX 142 | N | | | | |
| 68 | 05/20/97 | Tactical PAC Review | MK 0158308-0158328 | DDX 145 | N | | | | |
| 69 | 05/20/97 | Tactical PAC Review | MK 0158242-0158287 | DDX 146 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 70 | 06/12/97 | Email from Santora to Holland re: Bioavailability Studies for Fosamax | MK 0175446 | DDX 151 | N | | | | |
| 71 | 09/12/97 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of the 08/11/97 Fosamax Team Meeting | MK 0174854-0174857 | DDX 152 | N | | | | |
| 72 | 08/21/98 | Memo from Wolfe to Miller re: Once Weekly Pricing Considerations | MR 0343490-0343491 | DDX 156 | N | | | | |
| 73 | 11/13/96 | Fosamax Reunion a l'Agence du Medicament | MK 0282898-0282923 | DDX 214 | N | | | | |
| 74 | 04/02/96 | Memo from Peter to van Zwieten re: Fosamax - Esophageal Irritation Potential | MK 0283646 | DDX 217 | N | | | | |
| 75 | 05/22/97 | Memo from Peter to van Zwieten re: Bisphosphonates - Comparative GI Irritation Potential in Animals | MK 0267360 | DDX 228 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 76 | 03/05/98 | Memo/Letter from Kloss to Sobel-Distribution re: NDA 20-560 Fosamax (Alendronate Sodium Tablets) Meeting Request and Background Package | MR 0066673-0066711 | DDX 231 | N | | | | |
| 77 | 03/19/96 10/22/02 | NDA 20-560 Fosamax (Alendronate Sodium) Meeting Background Package on 03/19/96 | MK 0249542-0249569 | DDX 236 | N | | | | |
| 78 | 07/22/97 | Patent Application Serial No. 60/053351, July 23, 1997 | | DDX 240 | N | | | | |
| 79 | 07/23/97 | Patent Application Serial No. 60/053535, July 22, 1997 | | DDX 241 | N | | | | |
| 80 | 11/06/98 | Manuscript Review 98-ms-2926 (Yates) | MR 0029565-0029567 | DDX 245 | N | | | | |
| 81 | 01/19/00 | Publications Coordination 99-ms-3316 (Schnitzer) | MR 0041423 | DDX 248 | N | | | | |
| 82 | 01/19/00 | Publications Coordination 99-ms-3316 (Schnitzer)(redacted) | MK 0342667-0342683 | DDX 249 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 83 | 08/22/97 | Request for grant of a patent | | DDX 250 | | R | | | |
| 84 | 04/25/00 | Correspondence from the Patent Office | | DDX 251 | | R | | | |
| 85 | 07/28/97 | Memo from R. Harning to List re: Once Weekly Formulation CDP Development Meeting, July 25, 1997; Minutes | MK 0339462-0339463 | DDX 256 | N | | | | |
| 86 | 03/95 | Reddy, et al., *Alendronate Treatment of Naturally - Occurring Periodontitis in Beagle Dogs*, J. Periodontol., 1995 | | | | H | | | |
| 87 | 08/05/96 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of 08/01/96 Team Meeting | MK 0384680-0384681 | DDX 280 Santora | N | | | | |
| 88 | 09/17/96 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of 08/21/96 Team Meeting | MK 0160066-0160068 | DDX 281 Santora | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 89 | 09/30/96 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of 09/20/96 Team Meeting | MK 0160041-0160044 | DDX 282 Santora | N | | | | |
| 90 | 10/11/96 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of 10/02/96 Team Meeting | MK 0160037-060040 | DDX 283 Santora | N | | | | |
| 91 | 10/30/96 | Memo from DiCesare to Fosamax Commercialization Team re: Highlights of 10/28/96 Team Meeting | MK 0159981-0159983 | DDX 284 Santora | N | | | | |
| 92 | 12/06/96 | Tactical PAC Review | MK 0167650-0167681 | DDX 285 Santora | N | | | | |
| 93 | 04/10/97 | Email from Santora to Senich re: Updated Tables | MK 0175602-0175603 | DDX 287 | N | | | | |
| 94 | 08/13/97 | Memo from Browne to Alternative Formulation Task Force, Commercialization Team WHHM Osteoporosis Team re: Market Research | MK 0174460-0174878 | DDX 325 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 95 | 01/15/98 | Memo from WHHM Worldwide Statement of Interest re: Alendronate Once Weekly Dosing | MK 0181333-0181343 | DDX 326 | N | | | | |
| 96 | 02/28/02 | Memo From A. Miller to Osteoporosis re: The Launch of Fosamax Once Weekly in the US Market | MK 0269594-0269597 | DDX 336 | N | | | | |
| 97 | 02/12/01 | Marketing/Public Affairs Cross - Functional Team Exercise | MK 0332706-0332707 | DDX 339 | N | | | | |
| 98 | 1996 | Siris, et al., *Comparative Study of Alendronate Versus Etidronate for the Treatment of Paget's Disease of Bone*, J. Clin. Endo. Meta., 1996 | | | N | | | | |
| 99 | | Emkey, et al., *Tolerability of Alendronate: Similar Experience in Clinical Practice and in Clinical Trials* | MR 0047664-0047676 | DDX 354 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 100 | 03/99 | Letter to the Editor from A. John Yates, *The American Journal of Managed Care,* 1999 | MK 0232109-232111 | DDX 355 | N | | | | |
| 101 | 03/26/99 | Email from Freedholm to Yates, et al. re: Ettinger response to Letter to the editor | MK 0232108 | DDX 356 | N | | | | |
| 102 | 11/30/95 | Liberman, et al., *Effect of Oral Alendronate on Bone Mineral Density and the Incidence of Fractures in Postmenopausal Osteoporosis,* The New England Journal of Medicine, 1995 | | | N | | | | |
| 103 | 09/27/02 | Letter to Palmese from Rodriquez with attached page from Merck's Privilege Log (page 221) | | DDX 362 | | R | | | |
| 104 | 10/16/98 | Letter from Orloff to All Flex Study Coordinators re: Publication of Ettinger Surveys | MR 0038663-0038674 | DDX 387 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 105 | | History of the Development of Fosamax | MK 0164003-0164022 | DDX 396 | N | | | | |
| 106 | 03/18/96 | Memo from Freedholm to RIRD re: Alendronate/Consultant Agreement/ Dr. Piet DeGroen | MR 0114135 | DDX 397 | N | | | | |
| 107 | 03/12/96 | Memo from Grosser to Distribution re: Clinical Development Oversight Committee | MK 0168347-0168352 | DDX 399 | N | | | | |
| 108 | 04/08/94 | Mazess et al., *Bone Density of the Radius, Spine, and Proximal Femur in Osteoporosis*, J. Bone Min. Res., 1988 | MK 0122213-0122218 | DDX 403 | | H, Q | | | |
| 109 | | Press Release: Outcome Data Presented About Ulcer Incidence in Patients w/ Osteoporosis | MK 0292045-0292047 | DDX 422 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 110 | | Harris, et al., *The Effect of Short Term Treatment with Alendronate on Vertebral Density and Biochemical Markers of Bone Remodeling in Early Postmenopausal Women*, J. Clin. Endo. & Met.., 1993 | | | N | | | | |
| 111 | | Black, et al., *Randomized Trial of Effect of Alendronate on Risk of Fracture in Women with Existing Vertebral Fractures*, The Lancet, Dec. 1996 | | | N | | | | |
| 112 | | Khan, et al. *Alendronate in the Treatment of Paget's Disease of Bone*, Bone, 1997 | | | N | | | | |
| 113 | | Fosamax Promotional Spending 1995 3Q 2002 | MK 0391664-0391669 | DDX 441 | N | | | | |
| 114 | | Fosamax Catalog Gross Sales | MK 0391662-0391663 | DDX 443 | N | | | | |
| 115 | 09/09/99 | Profit Plan 2000 Fosamax | MK 0377605-0377645 | DDX 447 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 116 | | Business Plan for USHH Osteoporosis FBG 2002-2006 | MK 0275181-0275229 | DDX 452 | N | | | | |
| 117 | 08/30/01 | 2001 Profit Plan Fosamax | MK 0377329-0377344 | DDX 455 | N | | | | |
| 118 | 09/09/02 | 2003 Profit Plan Presentation for Fosamax | MK 0384995-0385156 | DDX 459 | N | | | | |
| 119 | 12/95 | Osteoporosis FBG YTD Actual Performance | MK 0391652-0391658 | DDX 472 | N | | | | |
| 120 | | Fosamax Discounts / Rebates 1995 - 3Q 2002 | MK 0391670-0391674 | DDX 474 | N | | | | |
| 121 | 07/11/01 | Memo from Davies/Lewis to Jordan re: USHH Perspectives on Fosamax and the Osteoporosis Market Environment: 2001 | MK 0270407-0270413 | DDX 477 | N | | | | |
| 122 | 09/03/96 | Memo from Pyron to Roberts re: Lunar News with handwritten annotations | MK 0272253 | | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 123 | 04/02/97 | Memo from Anstice to Allen and Sherwood forwarding 04/01/97 letter to Mazess from Anstice re: BMI | MK 0307357-0307358 | | N | | | | |
| 124 | 03/13/97 | Letter from Anstice to Mazess re: BMI | MK 0307359 | | N | | | | |
| 125 | | Merck & Co., Inc.'s Response to Defendant's First Set of Interrogatories | | | N | | | | |
| 126 | | Merck & Co., Inc.'s Supplemental Response to Defendant's Interrogatory No. 5 | | | N | | | | |
| 127 | | Merck & Co., Inc.'s Second Supplemental Response to Defendant's Interrogatory No. 5 | | | N | | | | |
| 128 | | 1996 (Supplement A) Fosamax PDR entry | | | N | | | | |
| 129 | | Fosamax prescribing information | | | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 130 | | October 30, 1996 Meeting Background Package | MK 250129-250220 | | N | | | | |
| 131 | | Thompson et. al., *Aminohydroxybutane Bisphosphonate Inhibits Bone Loss Due to Immobilization in Rats*, J. Bone Min. Res., 1990 | | | N | | | | |
| 132 | | Balena et al., *The Aminobisphosphonate Alendronate Inhibits Bone Loss Induced By Thyroid Hormone in the Rat Comparison Between Effects on Tibiae and Vertebrae*, Bone, 1993 | | | N | | | | |
| 133 | | Passeri, et al., *Intermittent Treatment With Intravenous 4-amino-1-hydroxybutylidene-1,1-bisphosphonate (AHBuBP) In The Therapy Of Postmenopausal Osteoporosis*, Bone and Mineral, 1991 | | | | H | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 134 | | Devogelaer, et al., *Oral Alendronate Induces Progressive Increases in Bone Mass of the Spine, Hip, and Total Body Over 3 Years in Postmenopausal Women With Osteoporosis*, Bone, 1996 | | | N | | | | |
| 135 | 01/21/03 | Decision In the High Court of Justice Chancery Division Patents Court: Teva Pharmaceutical Industries, Ltd., et al., v. Merck & Co, Inc. | | | | H, R, U | | | |
| 136 | 04/04/95 | Letter from Mazess to J. Bevan re: Licensing for Vitamin D Products | GE 0007 | PDX 21 | N | | | | |
| 137 | 04/96 | Lunar News - April '96 | | PDX 22 | N | | | | |
| 138 | 07/96 | Lunar News - July '96 | | PDX 23 | N | | | | |
| 139 | 05/15/97 | Agenda for Lunar Meeting 05/21/97 | MK 0272082 | PDX 32 | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 140 | | 01/02/03 memo from George Korenko to File re: IMS New Prescription Data | | | | H, A, R | | | |
| 141 | | National Osteoporosis Foundation, "NOF Applauds USPSTF Recommendations on BMD Tests," http://www.nof.org/news/pressreleases/uspstf_02.html | | | | H, A, R, I | | | |
| 142 | | Vijay Mahajan, Eitan Muller, Frank M. Bass, "New Product Diffusion Models in Marketing: A Review and Directions for Research," Journal of Marketing, January 1990, Volume 54, pp. 1-26 | | | | H, A, R, I | | | |
| 143 | | National Osteoporosis Foundation, "America's Bone Health: The State of Osteoporosis and Low Bone Mass," http://www.nof.org/advocacy/prevalence/index.htm | | | | H, A, R, I | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 144 | | Frank Maier, "Substitution among Successive Product Generations–An Almost Neglected Problem in Innovation Diffusion Models," presented at Industrieseminar der Universitat Mannheim. System Dynamics Konferenz, 1996 | | | | H, A, R, I | | | |
| 145 | | Herman Simon, "*Marketing Science's Pilgrimage to the Ivory Tower*," Chapter 2 in Gilles Laurent, Gary L. Lilien and Bernard Pras, Research Traditions in Marketing, (Norwell, MA Kluwer Academic Publishers), 1994, p. 34 | | | | H, A, R, I | | | |
| 146 | | Jagdish N. Sheth, Rajendra S. Sisodia, "*Revisiting Marketing's Lawlike Generalizations*," Marketing in the 21st Century, Journal of the Academy of Marketing Science, Volume 27, No. 1, pp. 75-77 | | | | H, A, R, I | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 147 | | Malcolm Wright, Clinton Upritchard, Tony Lewis, "*A Validation of the Bass New Product Diffusion Model in New Zealand*," Marketing Bulletin, 1997, Volume 8, http://marketing-bulletin.massey.ac.nz/article8/article2b.asp | | | | H, A, R, I | | | |
| 148 | | Declining Incidence of Esophagitis in Alendronate Postmarketing Surveillance | MK 0235069 | | N | | | | |
| 149 | | Slide Presentation: -  2001 DTC Market Map | MK 0290000-0290032 | | N | | | | |
| 150 | | Slide Presentation - Overview of Initiatives to Drive New Patients Into the Market and Share for Fosamax | MK 0334077-0334124 | | N | | | | |
| 151 | 04/12/00 | Fosamax Product Workshop - April 12, 2000 | MK 0377509-0377542 | | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 152 | 05/00 | Market Plan May 2000 | MK 0378195-0378231 | | N | | | | |
| 153 | 10/03/97 | Document entitled "Fosamax Once-Weekly / Twice – Weekly Dosing Program" | | | | H, A, I | | | |
| 154 | | Undated memo re: Rationale | | | | H, A, I | | | |
| 155 | 04/16/98 | Document entitled "Alendronate Once and Twice Weekly Dosing" Presentation to FDA 04/16/98 A. John Yates MD | | | | H, A, I | | | |
| 156 | | Number and Length (mm) of Macroscopic Antral Lesions (Hand written Curve | | | | M | | | |
| 157 | | Papapoulos, S., *Bisphonates,* The Aging Skeleton, Chap. 44, pps. 541-549 (1999) | | | | H, A, I, R | | | |
| 158 | | Fleisch, H, Paget's Disease, Bisphosphates In Bone Disease From Laboratory to the Patient, pps. 68-85 (1995) | | | | H, A, I, R | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 159 | 10/09/98 | Press Release – Statement on Publication of Ettinger Surveys | MK 0165968-0165972 | | | H, A, I, R | | | |
| 160 | 10/25/05 | Subpoena to Procter & Gamble Company in Merck v. Teva Litigation | | DX 1 | | H | | | |
| 161 | 08/13/02 | US Patent No. 6,432,932 | | DX 3 | N | | | | |
| 162 | 10/15/02 | US Patent No. 6,465,443 | | DX 4 | N | | | | |
| 163 | 04/01/02 | Letter from Julie Seawall to Karen Clark Re: Confidential Disclosure Agreement dated March 27th | PG 0067341 | DX 5 | | H | | | |
| 164 | 05/10/02 | Letter from Paul Matukaitis to Karen Clark Re: Bisphosphonate Patent Licenses | PG 0067394 | DX 6 | | H | | | |
| 165 | 05/17/02 | License Agreement Amng Merck &Co., Inc., Merck and Company, Incorporated and Procter & Gamble Company | PG 0057939-0057956 | DX 7 | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 166 | | Royalty payments to Merck for OAW | PG 94411-0094412 | DX 8 | N | | | | |
| 167 | 05/17/02 | License Agreement Merck &Co., Inc., Merck and Company, Incorporated and Procter & Gamble Company | PG 0057966-0057979 | DX 9 | N | | | | |
| 168 | 12/26/00 | US Patent No. 6,165,513 | | DTX 228, DX 10 C.A. #01-048JJF | N | | | | |
| 169 | | Powerpoint Presentation with handwritten notes | MK 0438852-0438857 | DX 11 | | H, U | | | |
| 170 | 03/13/98 | Email dated 3/13/98 from B. Senich to several re P&G abstract with attachment | MK 0429174-0429175 | DX 12 | N | | | | |
| 171 | 1992 | Toolan, et al., "*Effects of 4-Amino- 1Hydroxybutylidene Bisphosphonate on Bone Biomechanics in Rats*," J. Bine Min. Res., | | | | H, R | | | |
| 172 | 05/13/99 | Email dated 5/13/99 from A. Daifotis to several re P&G's risedronate rechallenge | MK 0637418 | DX 14 | | H, I, R | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 173 | 03/11/94 | Seminars in Arthritis and Rheumatism by Roy D. Eltman: Jacques P. Brown et al. "*Risedronate in Paget's Disease-Preliminary Results of a Multicenter Study*" | | DX 19 | | H, R | | | |
| 174 | 8/28/90 | Valentin-Opran, "*Risedronate: Preliminary Results of a Pharmacologic Study in Pagetic Patients*", Journal of Bone and Mineral Research 1990 Program & Abstracts | | DX 21 | N | | | | |
| 175 | 01/12/96 | Agenda- Friday, January 12,1996: Bisphosphonate Therapies For Osteoporosis Pirow J. Bekker, "*Clinical Experience with Risedronate (Including Paget's Disease and Postmenopausal Osteoporosis)*<br><br>Micheal R. McClung, The Risedronate Phase III Program | MK 0168508-0168522 | DX 22 | | H | | | |
| 176 | 10/08/97 | Arthritis & Rheumatism Abstract Supplement 1997 National Scientific Meeting (Singh) | | DX 23 | | H, R | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 177 | 09/11/97 | P&G Product News Releases: Study Results Highlight the Promise of Risedronate in Treating Postmenopausal Women with Low Bone Mass 9/11/97 | | DX 24 | | H, U, R | | | |
| 178 | 08/05/97 | Journal of Bone and Mineral Research 1997 Program & Abstracts (ASBMR 19th Annual Meeting) | | DX 25 | | H, U, R | | | |
| 179 | 03/07/05 | Lene Mortensen, et al. "*Risedronate Increases Bone Mass in an Early Postmenopausal Population: Two Years of Treatment Plus one Year of Follow-up*" | | DX 26 | | H, U, R | | | |
| 180 | 01/00/98 | D. J. Hosking, et al. "*Paget's Disease of Bone: Reduction of Disease Activity with Oral Risedronate*" | | DX 27 | | H, U, R | | | |
| 181 | 1997 | B. Clemmesen, et al., "*A 2-Year Phase II Study with 1-Year of Follow-up of Risedronate (NE-58095) in Postmenopausal Osteoporosis*" | | DX 28 | | H, U | | | |
| 182 | 02/09/99 | US Patent 5,869,471 | | DX 33 | | H, U, R | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 183 | 05/00/95 | Johnston et al., "*Risedronate Prevention of Bone Loss in Early Post-Menopausal Women*" | | DX 34 | N | | | | |
| 184 | 07/22/97 | Eastell et al., "*Risedronate Therapy Prevents Bone Loss in Glucocorticoid-Treated Rheumatoid Arthritis patients: A Three-Year Study*" | | DX 35 | | H, U | | | |
| 185 | 03/00/97 | Delmas et al., "*Bisphosphonate Risedronate Prevents Bone Loss in Women With Artificial Menopause Due to Chemotherapy of Breast Cancer: A Double Blind, Placebo-Controlled Study*" | | DX 36 | | H | | | |
| 186 | 04/00/99 | April 1997 Lunar News | | | | H | | | |
| 187 | 11/23/93 | European Patent Application 0 600 834 A1 to Goodship, entitled, "*Use of methanebisphosphonic acid derivatives for the manufacture of a medicament for fracture healing*" | | | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | ADMISSION | | RESOLUTION | | |
| 188 | 03/26/82 | Delmas PD, Chapuy MC, Vignon E, Charhon S, Briancon D, Alexandre C, Edouard C, and Meunier PJ. "*Long term effects of dichloromethylene diphosphonate in Paget's disease,*" Journal of Clinical Endocrinology and Metabolism 1982; 54(4):837-844 | | | | H | | | |
| 189 | 07/00/97 | Lilley LL and Guanci R, "*Avoiding alendronate-related esophageal irritation*" American Journal of Nursing July 1997; 97(7): 12-14. | | | | H | | | |
| 190 | 2002 | Lanza F, Sahba B, Schwartz H, Winograd S, Torosis J, Quan H, Reyes R, Musliner T, Daifotis A, and Leung A. "*The upper GI safety and tolerability of oral alendronate at a dose of 70 milligrams once-weekly: a placebo-controlled endoscopy study,*" The American Journal of Gastroenterology 2002; 97(1): 58-64. | | | N | | | | |
| 191 | | MK 0170895-0170944 | | | | H, R, I | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | ADMISSION | | RESOLUTION | | |
| 192 | | MK 0080527-0080585 | | | | C | | | |
| 193 | | MK 0384834-0384974 | | | | C | | | |
| 194 | | MK 0154684-0154694 | | | | C | | | |
| 195 | | MK 0382423-0382456 | | | | H, R, I | | | |
| 196 | | ACTONEL® Package insert | | | | M | | | |
| 197 | 3/20/96 | March 20, 1996 Meeting Background Package | MK 249542-69 | | N | | | | |
| 198 | | Tolerability of Alendronate: Similar Experience in Clinical Practice and in Clinical Trials | MR 0047664-76 | | | H, R | | | |
| 199 | 1998 | Update on Safety & Tolerability of Bisphosphonates | MK 0234350-82 | | N | | | | |
| 200 | 2000 | Bauer et al., "*Upper Gastrointestinal Tract Safety Profile of Alendronate*", Arch Inter. Med., Vol. 160 (2000) | | | | R, H | | | |
| 201 | 2000 | Lowe et al., "*Upper Gastrointestinal Toxicity of Alendronate*", Am. J. Gastroenterology, Vol. 95, No. 3 (2000) | | | | H | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 202 | 1998 | Ferrari et al., "*Esophageal Ulcer and Alendronate*," Rev. Paul Med. (1998) Vol. 116, No. 6 | | | | H, U | | | |
| 203 | 05/99 | Kaye, "*Gastric Hemorrhage and Ulceration in Hiatal Hernia SAC Associated With Alendronate*," Dig. Dis. & Sci., Vol. 44, No. 5 (1999) | | | N | | | | |
| 204 | 1998 | Ryan et al., "*Alendronate-induced Esophagitis: Case Report of a Recently Recognized Form of Severe Esophagitis with Esophageal Stricture—Radiographic Features*," Radiology, Vol. 206 (1998) | | | N | | | | |
| 205 | 04/98 | Canadian Adverse Drug Reaction Newsletter, Alendronate-induced Esophagitis | | | N | | | | |
| 206 | 1998 | Gennari and Reginster, "*Bisphosphonate and Osteoporosis Treatment in Italy*," Aging Clin. Exp. Res., Vol. 10 (4) | | | | H | | | |
| 207 | 1998 | Lanza et al., "*Effects of Alendronate on Gastric and Duodenal Mucosa*," Am. J. Gastro., Vol. 93(5) | | | N | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 208 | 2000 | Lanza et al., "*Endoscopic Comparison of Esophageal and Gastroduodenal Effects of Risedronate and Alendronate in Postmenopausal Women,*" Am. J. Gastro., Vol. 93 | | | | H, R | | | |
| 209 | 2000 | Lanza et al., "*An Endoscopic Comparison of the Effects of Alendronate and Risedronate on Upper Gastrointestinal Mucosae,*" Am. J. Gastrol., Vol. 95 | | | | H | | | |
| 210 | 5/14/96 | "*Postmarketing Surveillance Indicates Need For Better Education of Patients Taking Alendronate,*" Am. J. Health-Syst. Pharm., Vol. 53 (1996) | | | | H | | | |
| 211 | 10/98 | Ettinger et al., "*Clinic Visits and Hospital Admissions for Care of Acid-Related Upper Gastrointestinal Disorders in women Using Alendronate for Osteoporosis,*" Am. J. Man. Care, Vol. 4 | | | N | | | | |
| 212 | 10/02 | Suri et al., "*Nitrogen-containing Bisphosphonate Induced Apoptosis of Caco-2 Cells in Vitro by Inhibiting the Mevalonate Pathway: A Model of Bisphosphonate-induced Gastrointestinal Toxicity,*" Bone, Vol. 29 | | | | H, R | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 213 | 08/24/00 | Reszka et al., "*Nitrogen-Bisphosphonate Block Retinoblastoma Phosphorylation and Cell Growth by Inhibiting the Cholesterol Biosynthetic Pathway in a Kerotinocyte Model for Esophageal Irritation,*" Mol. Pharma., Vol. 59 | | | | H, R | | | |
| 214 | 1998 | Siris et al., "*Risedronate in the Treatment of Paget's Disease of Bone: An Open- Label, Multicenter Study,*" J: Bone & Min. Res., 13 :1032 (1998) | | | N | H, R | | | |
| 215 | 04/02/99 | Brown et al., "*Risedronate, a Highly Effective, Short-Term Oral Treatment for Paget's Disease: A Dose-Response Study,*" Calcif Tissue Int., 64:93-99 (1999) | | | | H, R | | | |
| 216 | 10/08/97 | Singer et al., "*A Safety Review of the Use of Risedronate in the Treatment of Paget's Disease of Bone,*" Arthritis Rheum., 40(9):S279 (1997) | | | | H, R | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 217 | 08/23/02 | 6,432,932 File Wrapper | | | | H, I | | | |
| 218 | 10/15/02 | 6,465,443 File Wrapper | | | | H, I | | | |
| 219 | 08/05/97 | Bekker et al, "*Risedronate Treatment Improves Pain Status in Patients with Paget's Disease of Bone*," J. Bone & Min. Res., 12(1):S270 (1997) | | | | H, R | | | |
| 220 | | Package insert of Risedronate Sodium Tablets 5, 30 and 35 mg from Teva's Abbreviated New Drug Application No. 77 – 132 | TEVA R 06314 – 06345 | | | H | | | |
| 221 | | The Opinion of the United States Court of Appeals for the Federal Circuit published as Merck & Co., Inc. v. Teva Pharmaceuticals, USA, 395 F.3d 1364 (Fed. Cir. 2005) | | | | H, U | | | |
| 222 | 12/00/93 | Harris et al., "*Four-Year Study of Intermittent Cyclic Etidronate Treatment of Postmenopausal Osteoporosis: Three Years of Blinded therapy Followed by One Year of Open Therapy*," Am. J. Med., Vol. 95 | | | N | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 223 | 1980 | Reitsma et al., "*Kinetic Studies of Bone and Mineral Metabolism During Treatment with (3-Amino-1-Hydroxypropylidene)-1, 1-Bisphosphonate (APD) in Rats*," Calcif. Tissue Int., 32: 145-57 (1990) | | | N | | | | |
| 224 | 1995 | Francis, "*Oral Bisphosphonates in the Treatment of Osteoporosis: A Review*," Curr. Thera. Res., Vol. 56( 9) | | | | H, R | | | |
| 225 | 1992 | Tang, L., et al., "*Restoring and Maintaining Bone in Osteopenic Female Rat Skeleton: Change in Bone Mass and Structure*," J. Bone Min. Res., 7(9): 1903 -104 (1992) | | | | R, H | | | |
| 226 | 1995 | Jee, S., et al., "*Extra Cancellous Bone Induced by Combined Prostaglandin E2  and Risedronate Administration is Maintained after Their Withdrawal in Older Female Rats*", J. Bone Min. Res. 10(6): 963-70 (1995) | | | N | H, R | | | |
| 227 | 1995 | Ma, Y., et al., "*Partial Maintenance of Extra Cancellous Bone mass by Antiresorptive Agents After Discontinuation of Human Parathyroid Hormone (1-38) in Right Hindlimb Immobilized Rats*," J. Bone Min. Res. 10(6): 963-70 (1995) | | | | H, R | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | ADMISSION | | RESOLUTION | | |
| 228 | 03/24/98 | U.S. Patent No. 5,730,715 | | | | H, R, A | | | |
| 229 | 02/09/99 | U.S. Patent No. 5,869,471 | | | | H, A, R | | | |
| 230 | 01/17/05 | 2005 PDR Information for Actonel | | | | M | | | |
| 231 | 03/13/06 | Actonel Prescribing Information | | | | M | | | |
| 232 | | http://www.fda.gov/cder/foi/label/2005/020560s038_021575s007lbl.pdf | | | | M | | | |
| 233 | | http://www.pg.com/annualreports/2005/pdf/pg2005annualreport.pdf | | | | M | | | |
| 234 | 08/15/05 | http://www.actonel.compressreleasefda.jsp | | | | H | | | |
| 235 | | http://www.fda.govcderfoilabel200321455_boniva_lbl | | | N | | | | |
| 236 | | http://www.fda.govcderfoilabel200420835slr014_actonel_lbl | | | N | | | | |
| 237 | 03/16/06 | http://www.fda.govcderrdmtESCY05AP.htm | | | N | | | | |
| 238 | 03/16/06 | http://www.imshealth.comimsportalfrontindexC0,2478,6599_1825,00.htm | | | | H | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 239 | 01/10/03 | Expert Report of Richard P. Rozek, January 10, 2003 | | | | H, R, U, I, B | | | |
| 240 | 08/25/04 | First Amended Complaint, August 25, 2004 | | | | M | | | |
| 241 | 01/28/05 | *Merck & Co. v. Teva Pharmaceuticals USA, Inc.* , 395 F.3d 1364 (2005) | | | | H, U | | | |
| 242 | 03/06/03 | *Merck & Co. v. Teva Pharmaceuticals USA, Inc.*, CV 01-048, Trial Volume Number 3,  March 6, 2003 | | | | M | | | |
| 243 | 03/07/03 | *Merck & Co. v. Teva Pharmaceuticals USA, Inc.,*  CV 01-048, Trial Volume Number 4, March 7, 2003 | | | | M | | | |
| 244 | 06/00/00 | Campbell, Margaret C. and Amna Kirmani "*Consumers' Use of Persuasion Knowledge: The  Effects of Accessibility and Cognitive Capacity* on Perceptions of an Influence Agent," Journal of Consumer Research , Vol. 27 (June 2000), No. 1., pp. 69–83. | | | | H, R, U | | | |
| 245 | 09/11/02 | Degnan, Stephen and Corwin Horton, "*A Survey of Licensed Royalties*," les Nouvelles , Volume 22, Number 2, June 1997, pp. 91–96. | | | | H, A, I, R | | | |
| 246 | 10/23/02 | Gross, Michael, "*Actual Royalty Rates in Patent-, Know-how-, and Computer program-License Agreements*," CASRIP Newsletter, Volume 413 | | | | H, A, I, R | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 247 | 09/00/01 | Khoury, Sam et. al., "*Selection and Application of Intellectual Property Valuation Methods In Portfolio Management and Value Extraction.*" *Les Nouvelles,* Volume 36, No. 3, September 2001, pp. 77–86 | | | | H, A, I, R | | | |
| 248 | 07/00/03 | Lovallo, Dan and Daniel Kahneman, "*Delusions of Success: How Optimism Undermines Executives' Decisions.*" *Harvard Business Review*, July, 2003, pp. 56–63. | | | | H, A, I, R | | | |
| 249 | 1985 | Mahajan, Vijay and Robert Peterson, "*Models for Innovation Diffusion,*" Sage University Paper Series on Quantitative Applications in the Social Sciences, Series No. 48, 1985. | | | | H, A, I, R | | | |
| 250 | 06/00/92 | McGavock, Daniel M., David Haas and Michael Patin, "*Factors Affecting Royalty Rates", Les Nouvelles*, Volume 27, Number 2, June 1992, pp. 107–116. | | | | H, A, I, R | | | |
| 251 | 12/12/04 | Mizik, Natalie and Robert Jacobson, "*Are Physicians 'Easy Marks'? Quantifying the Effects of Detailing and Sampling on New Prescriptions (04-105)*," Marketing Science Institute Working Paper Series, Issue 1 (2004), No., 04-001, pp. 129 –151. | | | | H, A, I, R | | | |
| 252 | 07/00/05 | "*Fast Facts on Osteoporosis,*" National Osteoporosis Foundation, July 2005 | | | | M | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 253 | 01/08/03 | Novavax Inc., Form 8-K, Exhibit 10.3, January 8, 2001 | | | | M | | | |
| 254 | 01/08/03 | "*Other News to Note*" Bioworld Today, Volume 14, Issue 5, January 8, 2003 | | | | M | | | |
| 255 | 2005 | P&G 2006 Annual Report | | | | M | | | |
| 256 | 04/04/06 | Results of RoyaltySource® Intellectual Property Database with Criteria "Pharmaceuticals: Bone Related." | | | | M | | | |
| 257 | 09/03/99 | Seachrist, Lisa, "Ligand, Parke-Davis in Pact on Estrogen Receptor Drugs," BIOWORLD Today, Volume 10, Issue No. 170, September 3, 1999 | | | | M | | | |
| 258 | 04/19/04 | Teva's Letter of Paragraph IV Certification, April 19, 2004 | | | | H, R, I | | | |
| 259 | 06/26/95 | "Unigene in Chinese pharmaceutical venture," Reuters News, June 26, 1995 | | | | M | | | |
| 260 | 03/10/06 | www.evista.com/include/print_page.jsp?content=/content_files/understanevista/chototake.jsp,accessed March 10, 2006. | | | | M | | | |
| 261 | | www.fda.gov/medwatch/SAFETY/2005/MAY_PI/Actonel_PI.pdf | | | | M | | | |
| 262 | | www.nof.org/advocacy/prevalence/index.htm, accessed April 4, 2006 | | | | M | | | |
| 263 | | www.pharma.us.novartis.com/product/pi/pdf/miacalcin_nasal.pdf. | | | | M | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 264 | 10/02/01 | www.prnewswire.com/cgi-bin/micro_stories.pl?ACCT=103068&TICK=PDII&STORY= | | | | M | | | |
| 265 | 03/10/06 | www.rxlist.com/cgi/generic3/forteo_pi.htm, accessed March 10, 2006. | | | | M | | | |
| 266 | 04/01/05 | Merck's Initial Disclosure | | | N | | | | |
| 267 | 07/06/05 | Merck's response to Teva's first set of interrogatories | | | N | | | | |
| 268 | 08/18/05 | Subpoena to Custodian of Records, Procter & Gamble Co | | | N | | | | |
| 269 | 10/25/05 | Subpoena to the Procter & Gamble Company | | | N | | | | |
| 270 | 10/26/05 | Merck's Supplemental Response to Teva's first set of Interrogatories | | | N | | | | |
| 271 | 11/15/05 | Merck's Supplemental Response to Teva's 1st Set of Interrogatories | | | N | | | | |
| 272 | 12/07/05 | Merck's Supplemental Responses to Defendant's 1st set of Interrogatories (Nos. 4, 5, 8, and 9). | | | N | | | | |
| 273 | | E-mail from Matukaitis, P. Re Bisphosphonate Agreements | MK 0384760-0384762 | 278D | | H | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 274 | 1/25/88 | Know-How License Agreement b/w Merck & Gentili | MR 0075922-0075942 | 279D | | R | | | |
| 275 | 4/1/02 | Letter from Seawall to Clark re: Confidential Agreement | MK 0384829-0384830 | 280D | | H | | | |
| 276 | 3/27/02 | Confidential Disclosure Statement | MK 0384828 | 281D | N | | | | |
| 277 | 5/17/02 | License Agreement w/ Merck & Procter & Gamble | MK0384694-0384707 | 282D | N | | | | |
| 278 | 12/26/00 | U.S. patent 6,165,513, Dansereau et al. | | 283D | N | | | | |
| 279 | 5/17/02 | License Agreement w/ Merck & Procter & Gamble | MK0384708-0384726 | 284D | N | | | | |
| 280 | 11/01/01 | Fosamax Esophageal Studies from Dr. Srinivasa Prahalada | MK0285294 | 285D | N | | | | |
| 281 | | Administration on Aging, "Aging of Older Americans:2001. The Older Population." http://www.aoa.dhhs.gov/aoa/stats/profile/2001/1.html | | | | H, A, R | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 282 | | "NPD Reports Treatment of Osteoporosis is on the Rise: Over-The-Counter Medications Gain Share of the Market, "http://www.ipsos-npd.com/about/news/o1_1127.html | | | | H, A, R, I | | | |
| 283 | | Curriculum Vitae of Sunil Wimalawansa | | | | H, R, I | | | |
| 284 | | Curriculum Vitae of David Markowitz | | | | H, R, I | | | |
| 285 | | Curriculum Vitae of Dr. Jesse David | | | | H, R, I | | | |
| 286 | 05/12/99 | | PG 0100320-0100322 | | | H, R | | | |
| 287 | 03/24/99 | | PG 0100545-0100589 | | | H, R | | | |
| 288 | 08/20/99 | | PG 0097409-0097451 | | | H, R | | | |
| 289 | 08/30/02 | | PG 0100622-0100630 | | | H, R | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | | Comments | Admitted | Date |
| 290 | 12/10/99 | | PG 0155043-0155309 | | | H, R | | | | |
| 291 | 08/20/99 | | PG 0154471-0154694 | | | H, R | | | | |
| 292 | 05/17/02 | | MK 0384694 - 0384707 | | N | | | | | |
| 293 | 05/17/02 | | MK 038474 - 0384759 | | | M | | | | |
| 294 | | | MK 0934987-0935030 | | N | | | | | |
| 295 | 01/31/06 | | MK 0935206 - 0935249 | | | C | | | | |
| 296 | 06/30/03 | | PG 0002596-0002607 | | | C | | | | |
| 297 | 06/30/02 | | PG 0003293-0003303 | | | C | | | | |
| 298 | | | PG 0013982-0014148 | | | C | | | | |
| 299 | 03/21/01 | | PG 0014815-0015234 | | | C | | | | |
| 300 | | | PG 0019320-0019327 | | | I, H, R | | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 301 | | | PG 0021965-0021976 | | | C | | | |
| 302 | | | PG 0037533 | | | I, R, H | | | |
| 303 | | | PG 0037910-0037918 | | | R, H, I | | | |
| 304 | | | PG 0070481-0070505 | | | R, H, I | | | |
| 305 | | | PG 0078565-0080800 | | | C | | | |
| 306 | | | PG    0094159-0094161 | DX 65 | | I, H | | | |
| 307 | | | PG 0094411-0094415 | DX 61 & 62 | | C | | | |
| 308 | | | PG 0094698-0094705 | | | I, H, R | | | |
| 309 | | | PG 0095041-0096069 | | | I, H, R | | | |
| 310 | | | PG 0187876-0187889 | | | C | | | |
| 311 | | | PGK00000001-0000124 | | | C | | | |
| 312 | | | PGK00000175-0000336 | | | C | | | |
| 313 | | | PGK00002413-0002618 | | | C | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 314 | | | PGK00004117 | | | H, I, R | | | |
| 315 | | | PGK00004120-0004150 | | | I, H, R | | | |
| 316 | | | PGK00004191-0004191 | | | I, H, R | | | |
| 317 | | | PGK00004193-0004194 | | | I, H, R | | | |
| 318 | | | PGK00004209 | | | I, H, R | | | |
| 319 | | | PGK00009090-0009108 | | | I, H, R | | | |
| 320 | | | PGK00009240-0009341 | | | I, H, R | | | |
| 321 | | | PGK00009353-0009363 | | | I, H, R | | | |
| 322 | | | PGK00009371-0009382 | | | I, H, R | | | |
| 323 | | | PGK00009389-0009411 | | | C | | | |
| 324 | | | PGK00009555-0009556 | | | I, H, R | | | |
| 325 | | | PGK00009577-0009631 | | | H, R | | | |
| 326 | | | PGK00009814 | | | I, H, R | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | ADMISSION | | RESOLUTION | | |
| 327 | | | PGK00010051-0010057 | | | C | | | |
| 328 | | | PGK00010310-0010357 | | | C | | | |
| 329 | | | PGK00010466-0010643 | | | C | | | |
| 330 | | | PGK00013225 | | | I, H, R | | | |
| 331 | | | PGK00013237-0013403 | | | C | | | |
| 332 | | | PGK00013453-0013605 | | | C | | | |
| 333 | | | PGK00013626-0013714 | | | I, H | | | |
| 334 | | | PGK00013728-0013772 | | | C | | | |
| 335 | | | PGK00013799-0013805 | | | I, H | | | |
| 336 | | | PGK00013808 | | | H, I, R | | | |
| 337 | | | PGK00013812-0013817 | | | H, I | | | |
| 338 | | | PGK00013909-0013952 | | | H | | | |
| 339 | | | PGK00013982-0014148 | | | C | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 340 | | | PGK00014152 | | | H, I | | | |
| 341 | | | PGK00014173 | | | H, I | | | |
| 342 | | | PGK00014175 | | | H, I | | | |
| 343 | | | PGK00014205 | | | H, I | | | |
| 344 | | | PGK00014545-0014712 | | | H, I | | | |
| 345 | | | PGK00014716-0015235 | | | C | | | |
| 346 | | | PGK00015307 | | | H, I | | | |
| 347 | | | PGK00015481-0015541 | | | H, I | | | |
| 348 | | | PGK00015644 | | N | | | | |
| 349 | | | PGK00015646-0015648 | | | H, I | | | |
| 350 | | | PGK00017189-0017638 | | | C | | | |
| 351 | | | PGK00018158-0018162 | | | H, I | | | |
| 352 | | | PGK00022286-0022321 | | | C | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date |
| 353 | | | PGK00022843-0022940 | | | C | | | |
| 354 | | | PGK00022858-00864 | | | H, R, I | | | |
| 355 | | | PGK00022865-00868 | | | H, R, I | | | |
| 356 | | | PGK00022939-0022942 | | | H, R, I | | | |
| 357 | | | PGK00022944-0022947 | | | H, R, I | | | |
| 358 | | | PGK00023057-0023064 | | | H, R, I | | | |
| 359 | | | PGK00023163-0023168 | | | H, R, I | | | |
| 360 | | | PGK00023172-0023175 | | | H, R, I | | | |
| 361 | | | PGK00023317-0023322 | | | H, I | | | |
| 362 | | | PGK00023326-0023328 | | | H, I | | | |
| 363 | | | PGK00023422-0023424 | | | H, I | | | |
| 364 | | | PGK00023470-0023471 | | | H, I | | | |
| 365 | | | PGK00023488-0023496 | | | H, I | | | |

| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | ADMISSION | | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Comments | Admitted | Date | |
|---|---|---|---|---|---|---|---|---|---|---|
| 366 | | | PGK00023532-0023534 | | | H, I | | | | |
| 367 | | | PGK00023537 | | | H, I | | | | |
| 368 | | | PGK00023627-0023631 | | | H | | | | |
| 369 | | | PGK00023999 | | | H | | | | |
| 370 | | | PGK00024184 | | | H, I | | | | |
| 371 | | | PGK00024548 | | | H, I | | | | |
| 372 | | | PGK00024552-0024553 | | | H, I | | | | |
| 373 | | | PGK00025040-0025069 | | | H, I | | | | |
| 374 | | Letter from Vinita Ferrera to A. Pfeffer, April 24, 2006 | | | | H, R | | | | |
| 375 | | Demonstratives | | | | M | | | | |
| 376 | 3/04/03 | *Merck & Co. v. Teva Pharmaceuticals USA, Inc.,* CV 01-048, Trial Volume Number 1, March 4, 2003 | | | | M | | | | |

| | | | | | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| DTX # | Date of Doc. | Description | Bates Range | Depo. Ex. No.[1] | No Obj | Obj Basis | Comments | Admitted | Date |
| 377 | 3/05/03 | *Merck & Co. v. Teva Pharmaceuticals USA, Inc.,* CV 01-048, Trial Volume Number 2, March 5, 2003 | | | | M | | | |
| 378 | 08/1997 | McClung, et al., "*Risedronate Increases BMD at the Hip, Spine, and Radius in Postmenopausal Women With Low Bone Mass,*" J. Bone & Min. Res. 12(1): S169 (1997) | | | | H, R | | | |
| 379 | 1995 | *Pharmacokinetics: Regulatory, Industrial, and Academic Perspectives*, Chapter 12 (Peter G. Welling & Francis L. S. Tse eds., 2nd ed. 1995) | | | | H, R | | | |
| 380 | | PCT/US98/14796 | | | | R | | | |
| 381 | | | PG0100603-PG0100805 | | | H, R | | | |
| 382 | | | PG0097402-PG0097637 | | | H, R | | | |
| 383 | | US Patent No. 5,583,122 | | | | H, R | | | |
| 384 | 2006 | FDA Orange Book, 26th Ed., pp. 3-311 | | | | A, H, I | | | |

Key to Plaintiff Merck's above specific objections:

A    =    Authenticity (Fed. R. Evid. 901)

B    =    Best Evidence Rule (Fed. R. Evid. 1002-1004)

C    =    Improper compilation of separate documents. Merck reserves the right to further
          object to any specific document in the compilation Teva proposes to use.

H    =    Hearsay (Fed. R. Evid. 801, 802)

I    =    Incompleteness. The submitted exhibit appears to be an incomplete document and/or is missing pages.

M    = A copy of the exhibit was not provided by Teva, or Teva failed to sufficiently describe the document.  Merck reserves the right to
          object to the exhibit after obtaining a copy,  reviewing a physical exhibit, or receiving a sufficient description from Teva.

N    =    No objection, provided that the exhibit is introduced and authenticated by the appropriate sponsoring witness.

Priv = Merck has requested the return of this privileged document which was inadvertently produced.

Q    =    Not qualified opinion, conclusion, or summary (Fed. R. Evid. 702, 703); lack of foundation for opinion, conclusion, or summary

R    =    Relevance (Fed. R. Evid. 401, 402)

S    =    Inadmissible as compromise and offers to compromise (Fed. R. Evid. 408)

U    =    Unfair prejudice, confusion, waste of time, cumulative (Fed. R. Evid. 403)

Withdrawn = Teva has withdrawn the exhibit.

EXHIBIT 3C

**EXHIBIT 3C**

**JOINT EXHIBIT LIST**
**Merck v. Teva USA, C.A. No. 04-939 (GMS)**

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX001 | DTX001 PTX001 | 11/30/1999 | Certified Copy of U.S. Patent 5,994,329 | | DDX 1 | None | Hearsay (802) |
| JTX002 | DTX223 PTX053 | 1/1/1980 | Reitsma et al., "Kinetic Studies of Bone and Mineral Metabolism During Treatment with (3-Amino-1-Hydroxypropylidene)-1, 1-Bisphosphonate (APD) in Rats", *Calcif. Tiss. Int.* 32:145-157 (1980) | | | None | Relevance (402), Hearsay (802) |
| JTX003 | DTX006 PTX393 | 10/3/1996 | DeGroen, et al., *Esophagitis Associated With the Use of Alendronate*, N.E.J.M., October 1996 | PDX 11 | | None | None |
| JTX004 | DTX117 PTX257 | 8/30/2001 | Profit Plan 2001 Fosamax®, August 30, 2001 | MK 0377329-0377344 | DDX 455 | None | Relevance (402), Hearsay (802) |
| JTX005 | DTX121 PTX235 | 7/11/2001 | Memo from Davies/Lewis to Jordan re: USHH Perspectives on Fosamax and the Osteoporosis Market Environment: 2001 | MK 0270407-0270413 | DDX 477 | None | Incompleteness (106), Relevance (402), Hearsay (802) |
| JTX006 | DTX136 PTX010 | 4/4/1995 | Letter from Mazess to J. Bevan re: Licensing for Vitamin D Products | GE 0007 | PDX 21 | None | Relevance (402) |
| JTX007 | DTX151 PTX246 | 4/12/2000 | Fosamax Product Workshop, April 12, 2000, Background Packet, Business Plan for Fosamax®, 2001-2005 | MK0377509-0377533 | | None | Relevance (402), Hearsay (802) |
| JTX008 | DTX166 PTX440 | | Chart summarizing royalties paid to Merck by P&G based on segment of sales of Actonel Once-weekly tablets | PG 94411-0094412 | DX 8 | None | Relevance (402), Hearsay (802) |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX009 | DTX174 PTX323 | 8/28/1990 | Valentin-Opran A. Risedronate: Preliminary Results of a Pharmacologic Study in Pagetic Patients. *J. Bone Mineral Research* 1990; 5:s119 (suppl. 2; abstr. 182) | | DX 21 | None | None |
| JTX0010 | DTX182 DTX229 PTX390 PTX282 | 2/9/1999 | U.S. Patent No. 5,869,471 | PDX 8 | DX 33 | Relevance (402), Unfair Prejudice (403), Hearsay (802) Authenticity (901) | None |
| JTX0011 | DTX186 PTX014 | 04/00/1997 | April 1997 Lunar® News, pp. 1-48 | | | Hearsay (802) | None |
| JTX0012 | DTX190 PTX102 | 1/1/2002 | Lanza F, Sahba B, Schwartz H, Winograd S, Torosis J, Quan H, Reyes R, Musliner T, Daifotis A, and Leung A. "*The upper GI safety and tolerability of oral alendronate at a dose of 70 milligrams once-weekly: a placebo-controlled endoscopy study,*" The American Journal of Gastroenterology 2002; 97(1): 58-64. | | | None | Relevance (402), Hearsay (802) |
| JTX0013 | DTX196 PTX329 | | ACTONEL® product insert downloaded from www.actonel.com | | | A copy of the exhibit was not provided by Teva, or Teva failed to sufficiently describe the document. Merck reserves the right to object to the exhibit after obtaining a copy, reviewing a physical exhibit, or receiving a sufficient description from Teva | None |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0014 | DTX217 PTX276 | 8/23/2002 | Certified copy of File History of U.S. Patent No. 6,432,932 | | | Incompleteness (106), Hearsay (802) | Hearsay (802) |
| JTX0015 | DTX218 PTX278 | 10/15/2002 | Certified copy of File History of U.S. Patent No. 6,465,443 | | | Incompleteness (106), Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0016 | DTX220 PTX279 | | Package insert of Risedronate Sodium Tablets 5, 30 and 35 mg from Teva's Abbreviated New Drug Application No. 77–132 | TEVA R 06314–06345 | | Hearsay (802) | None |
| JTX0017 | DTX228 PTX389 | 3/24/1998 | U.S. Patent No. 5,730,715 | PDX 7 | | Relevance (402), Hearsay (802), Authenticity (901) | None |
| JTX0018 | DTX346 PTX374 | | DRAFT US Professional Marketing Plan Recommendation 2001 – 2002 | PGK00015307–PGK00015318 | | Incompleteness (106), Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0019 | DTX326 PTX364 | 10/31/2001 | NABU CI Monthly Letter October 2001 10/31/2001 | PGK00009814–PGK00009816 | | Incomplete (106), Relevance (402), Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0020 | DTX332 PTX363 | | P&G Aventis Slide | PGK00013453-0013605 | | Improper compilation of separate documents. Merck reserves the right to further object to any specific document in the compilation Teva Proposes to use | Relevance (402), Hearsay (802) |
| JTX0021 | DTX333 PTX362 | | Actonel Marketing Plan Agenda | PGK00013626-0013714 | | Incompleteness (106), Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0022 | DTX137 PTX394 | 4/1/1996 | Article in Lunar News: 04/1996 | PDX 12 | PDX 22 | None | None |
| JTX0023 | DTX138 PTX395 | 7/1/1996 | Article in Lunar News: 07/1996 | PDX 13 | PDX 23 | None | None |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0024 | DTX098 PTX111 PTX306 | 1/1/1996 | Siris E, Weinstein RS, Altman R, Conte JM, Favus M, Lombardi A, Lyles K, McIlwain H, Murphy WA, Reda C, Rude R, Seton M, Tiegs R, Thompson D, Tucci JR, Yates AJ, and Zimering M. Comparative study of alendronate versus etidronate for the treatment of Paget's disease of bone. *Journal of Clinical Endocrinology and Metabolism* 1996; 81(3): 961-967 | | | None | None |
| JTX0025 | DTX188 PTX105 | 3/26/1982 | Delmas PD, Chapuy MC, Vignon E, Charhon S, Briancon D, Alexandre C, Edouard C, and Meunier PJ. "*Long term effects of dichloromethylene diphosphonate in Paget's disease,*" Journal of Clinical Endocrinology and Metabolism 1982; 54(4):837-844 | | | Hearsay (802) | Relevance (402) Hearsay (802) |
| JTX0026 | DTX281 PTX232 | | Administration on Aging, "Aging of Older Americans:2001. The Older Population." http://www.aoa.dhhs.gov/aoa/stats/profile/2001/1.html | | | Relevance (402), Hearsay (802), Authenticity (901) | Relevance (402), Hearsay (802) |
| JTX0027 | DTX221 PTX280 | | The Opinion of the United States Court of Appeals for the Federal Circuit published as *Merck & Co., Inc. v. Teva Pharmaceuticals, USA*, 395 F.3d 1364 (Fed. Cir. 2005) | | | Unfair Prejudice (403), Hearsay (802) | None |
| JTX0028 | DTX162 PTX277 | 10/15/2002 | Certified copy of U.S. Patent No. 6,465,443 | | DX 4 | None | Relevance (402) Hearsay (802) |
| JTX0029 | DTX314 PTX357 | | P&G Pharmaceuticals-Quarterly Letter-OND'00 | PGK00004115-19 (Teva-PKGK00004117 only) | | Incomplete (106), Relevance (402) Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0030 | DTX344 PTX330 | 1/1/2002 | Frost & Sullivan, "U.S. Emerging Osteoporosis Therapeutics Markets", 2002 | PGK00014545-0014712 | | Incompleteness (106), Hearsay (802) | Relevance (402), Hearsay (802) |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0031 | DTX330 PTX360 | | Market Overview w/notes | PGK00013225–PGK00013232 (Teva PGK0013225 only) | | Incompleteness (106), Relevance (402), Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0032 | DTX282 PTX241 | 11/27/2000 | "NPD Reports Treatment of Osteoporosis is on the Rise: Over-The-Counter Medications Gain Share of the Market, "http://www.ipsos-npd.com/about/news/o1_1127.html | | | Incompleteness (106), Relevance (402) Hearsay (802) Authenticity (901) | Relevance (402), Hearsay (802) |
| JTX0033 | DTX161 PTX275 | 8/13/2002 | Certified copy of U.S. Patent No. 6,432,932 | | DX 3 | None | Hearsay (802) |
| JTX0034 | DTX22 PTX21 | | Merck/Lunar Management Meeting, 05/21/97–Agenda | MK 0272082 | | Hearsay (802) | None |
| JTX0035 | DTX69 PTX47 | | 05/20/97 Stage 1 Phase V Product Development Plan, Tactical PAC Review | MK 0158242-0158287 | | None | Relevance (402), Hearsay (802) |
| JTX0036 | DTX17 PTX49 | | 03/15/96 Dear Doctor Letter | MK 0156420-0156421 | | None | Relevance (402) |
| JTX0037 | DTX133 PTX60 | | Passeri et al., "Intermittent treatment with intravenous 4-amin-1-hydroxybutylidene-1, 1-bisphosphonate (AHBuBP) in the therapy of postmenopausal osteoporosis", *Bone and Mineral*, 15: 237-247 (1991) | | | Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0038 | DTX222 PTX62 | | Harris et al., "Four Year Study of Intermittent Cyclic Etidronate Treatment of Postmenopausal Osteoporosis: Three Years of Blinded Therapy Followed by One Year of Open Therapy", *American Journal of Medicine*, 95: 557-567 (1993) | | | None | Relevance (402), Hearsay (802) |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0039 | DTX102 PTX68 | | Liberman et al., "Effect of oral alendronate on bone mineral density and the incidence of fractures in postmenopausal osteoporosis", *The New England Journal of Medicine*, 333(22): 1437- 1443 (1995) | | | None | None |
| JTX0040 | DTX111 PTX71 | | Black et al., "Randomised trial of effect of alendronate at risk of fracture in women with existing vertebral fractures", *Lancet*, 348: 1535-1541 (1996) | | | None | None |
| JTX0041 | DTX189 PTX87 | | Lilley et al., "Avoiding Alendronate-Related Esophageal Irritation", *American Journal of Nursing*, 97(7): 12-14 (1997) | | | Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0042 | DTX110 PTX95 | | Harris et al., "The Effect of Short Term Treatment with Alendronate on Vertebral Density and Biochemical Markers of Bone Remodeling in Early Postmenopausal Women", J. Clin. Endo. Metab., 76(6):1399-1406 (1993) | | | None | None |
| JTX0043 | DTX211 PTX104 | | Ettinger, et al., "Clinic Visits and Hospital Admissions for Care of Acid-Related Upper Gastrointestinal Disorders in Women Using Alendronate for Osteoporosis", The American Journal of Managed Care, 4(10): 1377-1382 (1998) | | | None | Relevance (402), Hearsay (802) |
| JTX0044 | DTX112 PTX110 | | Khan et al., "Alendronate in the Treatment of Paget's Disease of Bone", *Bone*, 20(3): 263-271 (1997) | | | None | None |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0045 | DTX194 PTX120 | | 01/24/96 Merck letter to FDA re IND 32,033 Fosamax™ (Alendronate Sodium Tablets) General Correspondence Fracture Intervention Trial Update | MK 0154684-0154694 | | Improper compilation of separate documents. Merck reserves the right to further object to any specific document in the compilation Teva proposes to use | Relevance (402), Hearsay (802) |
| JTX0046 | DTX195 PTX121 | | 01/12/98 Merck letter to FDA re IND 32,033 Fosamax™ Information Amendment Pharmacology/Toxicology | MK 0382423-0382456 | | Relevance (402), Hearsay (802), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0047 | DTX191 PTX122 | | 06/08/99 Merck letter to FDA re IND 32,033: Fosamax, Information Amendment – Clinical Data Analysis Plan for Protocol 118 | MK 0170895-0170944 | | Relevance (402), Hearsay (802), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0048 | DTX192 PTX124 | | Protocol (MK-217) Phase 1 Single Dose Clinical Study | MK 0080527-0080585 | | Improper compilation of separate documents. Merck reserves the right to further object to any specific document in the compilation Teva proposes to use | Relevance (402), Hearsay (802) |
| JTX0049 | DTX119 PTX153 | | Osteoporosis Franchise Business Group YTD Actual Performance December 1995 | MK 0391652-0391658 | | Hearsay (802), Authenticity (901), Incompleteness (106), | Relevance (402), Hearsay (802) |
| JTX0050 | DTX249 PTX164 | | Mahajan and Peterson, "Models for Innovation Diffusion", Number 07-048 | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0051 | DTX113 PTX172 | | Fosamax® Promotional Spending 1995 – 3Q 2002 | MK 0391664-0391669 | | None | Relevance (402), Hearsay (802) |
| JTX0052 | DTX277 PTX177 | | 05/17/02 License Agreement Among Merck & Co., Inc. & Procter and Gamble Co. | MK 0384694-0384707 | | None | None |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0053 | DTX130 PTX 181 | | 10/30/96, NDA 20-560, Fosamax™ (Alendronate Sodium Tablets) Meeting Background Package | MK 0250129-0250220 | | None | Relevance (402), Hearsay (802) |
| JTX0054 | DTX 141 PTX 239 | | National Osteoporosis Foundation, "NOF Applauds USPSTF Recommendations on BMD Tests", 09/16/02 | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0055 | DTX142 PTX252 | | Mahajan et al., "New Product Diffusion Models in Marketing: A Review and Directions for Research", *Journal of Marketing*, pp. 1-26 | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0056 | DTX143 PTX254 | | National Osteoporosis Foundation, "America's Bone Health: The State of Osteoporosis and Low Bone Mass" | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0057 | DTX247 PTX258 | | Khoury et al., "Selection and Application of Intellectual Property Valuation Methods in Portfolio Management and Value Extraction", *les Nouvelles*, 36(3): pp. 77-86 (2001) | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0058 | DTX250 PTX259 | | McGavock et al., "Factors Affecting Royalty Rates", *les Nouvelles*, 27(2): pp. 107-116 (1992) | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |
| JTX0059 | DTX246 PTX260 | | Gross, "Actual Royalty Rates in Patient-, Know- How-and Computerprogram-License Agreements", *CASRIP Newsletter*, Vol. 413 | | | Relevance (402), Hearsay (802), Authenticity (901), Incompleteness (106) | Relevance (402), Hearsay (802) |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0060 | DTX245 PTX261 | | Degnan et al., "A Survey of Licensed Royalties", *les Nouvelles*, 22(2): pp. 91-96 (1997) | | | A copy of the exhibit was not provided by Teva, or Teva failed to sufficiently describe the document. Merck reserves the right to object to the exhibit after obtaining a copy, reviewing a physical exhibit, or receiving a sufficient description from Teva | Relevance (402), Hearsay (802) |
| JTX0061 | DTX34 PTX281 | | The PCT patent application entitled "Use of Certain Methanebisphosphonic Acid Derivatives to Prevent Prosthesis Loosening and Prosthesis Migration." WO 95/30421, with Allen E. Goodship et al as listed inventors | | | None | None |
| JTX0062 | DTX188 PTX286 | | Delmas PD, Chapuy MC, Vignon E, Charhon S, Briancon D, Alexandre C, Edouard C, and Meunier PJ. Long term effects of dichloromethylene diphosphonate in Paget's disease. *Journal of Clinical Endocrinology and Metabolism* 1982; 54(4):837-844 | | | Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0063 | DTX8 PTX295 | | Castell DO. Letter to Editor, "'Pill Esophagitis' - The Case of Alendronate." *The New England Journal of Medicine* 1996; 335(14):1058-1059 | | | None | None |
| JTX0064 | DTX112 PTX305 | | Khan SA, Vasikaran S, McCloskey EV, Benton MNC, Rogers S, Coulton L, Orgee J, Coombes G, and Kanis JA. Alendronate in the treatment of Paget's disease of bone. *Bone* 1997; 20(3):263-271 | | | None | None |

| Joint Ex. No. | Trial Exhibit No. | Date | Description | Bates Range/Other Designation | Depo Ex. No. | Merck Objections | Teva Objections |
|---|---|---|---|---|---|---|---|
| JTX0065 | DTX293 PTX365 | | License Agreement Among Merck & Co., Inc., and The P&G Company | MK 0384741-759 | | A copy of the exhibit was not provided by Teva, or Teva failed to sufficiently describe the document. Merck reserves the right to object to the exhibit after obtaining a copy, reviewing a physical exhibit, or receiving a sufficient description from Teva | None |
| JTX0066 | DTX373 PTX370 | | "Actonel Business Update: Global Product Supply Committee", 07/13/2004 | PGK00025040-0025069 | | Incompleteness (106), Hearsay (802) | Relevance (402), Hearsay (802) |
| JTX0067 | DTX195 PTX425 | | Report Titled "IND 32,033, 01/12/98 FOSAMAX Pharmaceutical & Toxicology" | MK 0382423-382456 | | Hearsay (802), Relevance (402), Incompleteness (106) | Relevance (402), Hearsay (802) |

529800

10

EXHIBIT 4

**EXHIBIT 4**

**MERCK'S WITNESS LIST**

The following is a list of the names and addresses of witnesses Merck may call to testify in person or by deposition and a brief summary of the proposed opinion testimony from Merck's expert witnesses.

I.    **MERCK'S LIST OF WITNESSES**

Karen F. Clark
685 Clinton Springs Avenue
Cincinnati, OH

Anastasia G. Daifotis
Merck & Co., Inc.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Gerard Devlin
Merck & Co., Inc.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Elizabeth DiCesare
Merck & Co., Inc.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Paul Drake
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889

M. Brian Fennerty
Oregon Health & Science University
3181 S W Sam Jackson Park Road, L102
Portland, OR 97239

Laurence Hirsch
760 Frederick Ct.
Wyckoff, MN 07481

Ashok Katdare
957 Windsor Road
Highland Park, IL 60035

Patrick Magri
Merck & Co., Inc.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Socrates E. Papapoulos
Javastraat 64
2585 AR The Hague
The Netherlands

Chennekatu Peter
1518 Cherry Lake Way
Heathrow, FL 32746

Arthur C. Santora, II
Merck & Co., Inc.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Louis Sherwood
1241 Forest Hill Drive
Lower Gwynedd, PA 19002

Christopher A. Vellturo
Analysis Group / Economics
111 Huntington Avenue
Tenth Floor
Boston, MA 02199

Ashley John Yates
Merck & Co., Inc.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Moshe Flashner-Barak
Hefetz Mordechai 15
Petach Tikva, Israel

Itzhak E. Lerner
Wolfson 32
Petach Tikva, Israel

Vered Rosenberger
Ms. Landau 3
Givat Masuah, Jerusalem, Israel

Merck reserves the right to call any witnesses identified in Teva's witness list.

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-939 (GMS) |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**TEVA PHARMACEUTICALS USA, INC.'S WITNESS LIST**

Pursuant to the Court's April 7, 2006 Scheduling Order and Local Rule 16.4 (d)

(7), defendant Teva Pharmaceuticals USA, Inc. ("Teva USA"), submits the following list of

witnesses that it may call at trial:

      **A.**    **Fact witnesses that may be called live or by deposition:**

Robert Beckman
3476 Timber Lane
Cross Plains, WI

Peter Browne
72 Seney Dr.
Bernardsville, N.J.

Karen F. Clark
685 Clinton Springs Avenue
Cincinnati, OH

Anastasia Daifotis
240 Watchung Fork
Westfield, N.J.

Gerard M. Devlin, Jr.
2301 Cenrose Cir.
Westwood, N.J.

Elizabeth DiCesare
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, N.J.

Paul J. Drake
14 Walnut Cir.
Basking Ridge, N.J.

Lawrence J. Hirsch
760 Frederick Court
Wyckoff, N.J.

Ashok Katdare
957 Windsor Road
Highland Park, IL

Richard B. Mazess, Ph.D.
3534 Blackhawk Drive
Madison, WI

John Orloff
9 Shadow Drive
West Windsor, N.J.

Chennekatu Peter
1518 Cherry Lake Way
Heathrow, FL

Anthony D. Sabatelli
77 Jefferson Avenue, Unit 16
Rahway, N.J.

Arthur C. Santora, II
154 Oakwood Road
Watchung, N.J.

Louis M. Sherwood
1241 Forest Hill Drive
Lower Gwynedd, PA

David Weissburg
4213 Winnequah Drive
Monona, WI

Ashley John Yates
740 St. Mary's Road
Libertyville, IL

Procter & Gamble Custodian of Records/30(b)(6) Witness
One Procter & Gamble Plaza
Cincinnati, OH

**B.    Expert witnesses that will testify on behalf of Teva USA:**

Dr. Sunil Wimalawansa
661 Darmody Avenue
North Brunswick, N.J.

Dr. David D. Markowitz
538 Millwood Road
Mt. Kisco, N.Y.

Jesse David, Ph.D.
1166 Avenue of the Americas
New York, N.Y.

# EXHIBIT 6

## EXHIBIT 6

## MERCK'S BRIEF STATEMENT OF ITS EXPERT WITNESSES' TESTIMONY

The qualifications and expected testimony of the following expert witnesses is outlined in their expert reports and depositions, which are incorporated by reference.

       1.     M. Brian Fennerty

Dr. Fennerty is a Professor of Medicine and Section Chief of the Division of Gastroenterology at the Oregon Health & Science University (OHSU) in Portland, Oregon, At OHSU, Dr. Fennerty teaches students, residents, fellows and practicing physicians on a daily basis in all aspects of gastroenterology with an emphasis on the esophagus and stomach. Dr. Fennerty's experience is detailed in his curriculum vitae attached to his expert report. Dr. Fennerty is expected to testify on the topics of: diseases and conditions of the esophagus, the treatment of patients with orally administered bisphosphonates, adverse events associated with oral administration of bisphosphonates, the state of the art in July 1997 regarding oral dosing of bisphosphonates, and tolerability and safety concerns regarding treatment of esophageal conditions with oral bisphosphonates. The details of Dr. Fennerty's expected testimony are outlined in his expert report.

       2.     Socrates E. Papapoulos

Dr. Papapoulos is a Professor of Medicine, Consultant Physician and Director of Bone and Mineral Research, Department of Endocrinology and Metabolic Diseases, University of Leiden Medical Centre in The Netherlands. Dr. Papapoulos's qualifications, academic training, and experience in the medical field of calcium and bone metabolism are detailed in his curriculum vitae attached to his expert report. Dr. Papapoulos will testify that the use of Teva's 35 mg tablets as set out in Teva's ANDA infringes claims of the '329 patent and the '932 patent. In addition, he will offer testimony regarding the state of the art of bisphosphonates as

of July 1997 and will address the validity of the '329 and '932 patents in view of the prior art references raised by Teva.   Dr. Papapoulos may also provide tutorials at trial relating to the general background of bone and mineral metabolism, bone diseases, and the use of drugs including bisphosphonates in the treatment of diseases of bone and mineral metabolism.   The details of Dr. Papapoulos's expected testimony are outlined in his expert reports.

      3.      Christopher A. Vellturo

     Dr. Vellturo is the founder and president of Quantitative Economic Solutions, LLC, an economic consulting firm.   Dr. Vellturo holds a Ph.D. in Economic from the Massachusetts Institute of Technology, and his fields of specialization include industrial organization and econometrics.   Dr. Vellturo has extensive experience in the valuation of intellectual property and in the assessment of economic injury/damages as a result of patent infringement, in the pharmaceutical industry and other areas.   Dr. Vellturo's qualifications and experience are detailed in his curriculum vitae attached to his expert report.   Dr. Vellturo will offer testimony regarding the commercial success of P&G's once-weekly Actonel® product, and the extent to which the commercial success of once-weekly Actonel® is causally linked to the patented claims asserted by Merck in the   patents in suit.   Dr. Vellturo will testify that total sales of Actonel® increased considerably as a result of the introduction of once-weekly Actonel®, and that the perceived superior attributes of the once-weekly dosing regimen compared to the once-daily dosing regimen are the primary factors behind the increase in total Actonel® sales.   The details of Dr. Vellturo's expected testimony are outlined in his expert report.

# EXHIBIT 7

**EXHIBIT 7**

**TEVA PHARMACEUTICALS USA, INC.'S STATEMENT OF THE TESTIMONY
AND QUALIFICATIONS OF ITS EXPERT WITNESSES**

1.     **Dr. Sunil Wimalawansa**

Dr. Wimalawansa is Director of the Regional Osteoporosis Center, Chief of the

Division of Endocrinology and Metabolism, and Professor of Physiology and Pharmacology at

Robert Wood Johnson Medical School in New Jersey.    Dr. Wimalawansa is an active clinician

specializing in the diagnosis and management of patients with metabolic bone diseases,

particularly osteoporosis.    Dr. Wimalawansa's full qualifications and experience are detailed in

his expert report and his curriculum vitae attached to his report.

Dr. Wimalawansa is expected to testify regarding the state of osteoporosis

treatment with bisphosphonates as of July 1997 and September 1999.    Dr. Wimalawansa will

also testify in accordance with the opinions set forth in his report that the asserted claims of U.S.

Patent Nos. 5,994,329 and 6,432,932 are invalid in view of the state of treatment with

bisphosphonates during this time frame.    He may also respond to testimony presented on behalf

of Merck.

2.     **Dr. David D. Markowitz**

Dr. Markowitz is Associate Clinical Director of Gastroenterology and Assistant

Professor in Clinical Medicine at Columbia University, New York, N.Y.    In addition to his

active clinical practice in gastroenterology, Dr. Markowitz trains medical students, interns, and

residents in the evaluation and treatment of upper gastrointestinal disorders.    Dr. Markowitz's

specialty within the field of gastroenterology is in esophageal disorders.    He lectures physicians

as well as medical students, residents, and interns regarding endoscopic and functional

evaluation of the esophagus, and is the Director of the Esophageal Motility Lab at Columbia University.   Dr. Markowitz's full qualifications and experience are provided in his expert report and his curriculum vitae attached to his report.

Dr. Markowitz is expected to testify about the pathogenesis, treatment, and incidence of gastrointestinal diseases, particularly diseases of the esophagus.   Dr. Markowitz will also testify regarding the opinions set forth in his report, and may also respond to testimony presented on behalf of Merck.

3.     **Jesse David, Ph.D.**

Jesse David is the Vice President of National Economic Research Associates, Inc., an economic research firm in New York, N.Y.   Dr. David earned a Ph.D. in Economics from Stanford University, and he specializes in the economics of intellectual property and the valuation of patents in particular.   Dr. David's full qualifications and experience are provided in his expert report and his curriculum vitae attached to his report.

Dr. David is expected to testify regarding the apparent commercial success of Procter & Gamble's Once-Weekly ACTONEL[®] product and the existence of any nexus between the apparent commercial success of ACTONEL[®] to the invention claimed in U.S. Patent Nos. 5,994,329 and 6,432,932.   Dr. David may also testify about the adequacy of Christopher Vellturo's determination of the commercial success of ACTONEL[®].   Dr. David may also respond to testimony presented on behalf of Merck.

# EXHIBIT 8

<u>MERCK & CO., INC.'S AFFIRMATIVE DEPOSITION DESIGNATIONS AND TEVA
PHARMACEUTICALS USA, INC'S OBJECTIONS THERETO</u>

**A** =    argumentative (Rule 611(a))
**C** =    compound question (Rule 611)
**D** =    asked and answered
**E** =    calls for expert opinion from a lay witness or from an individual that has not been identified as
            an expert in this action (Rule 701)
**H** =    hearsay (Rule 801/802)
**I** =    incomplete (answer w/o a question or question w/o an answer)
**L** =    lack of personal knowledge (Rule 602)
**M** =    leading question (Rule 611(c))
**O** =    includes objection from attorney at deposition or attorney colloquy
**N** =    lack of foundation (Rule 611(a))
**NA** =   not admissible
**Priv** = privileged
**R** =    relevancy (lack of) (Rule 401/402)
**U** =    unfairly prejudicial (Rule 403)
**V** =    vague or ambiguous (Rule 611 (a))

    1.    <u>From the Deposition of Gerard Devlin</u>

        Page 6, Line 19 - Page 7, Line 3
        Page 142, Line 4 - Page 143, Line 5
        Page 149, Line 6 - Page 149, Line 23

    2.    <u>From the Deposition of Elizabeth DiCesare</u>

        Page 7, Line 9 - Page 9, Line 6
        Page 72, Line 23 - Page 73, Line 11        (O)

        Page 105, Line 18 - Page 105, Line 23
        Page 273, Line 7 - Page 276, Line 7        (N)
        Page 356, Line 3 - Page 356, Line 22       (N)
        Page 361, Line 9 - Page 362, Line 6       (N, O)

    3.    <u>From the Deposition of Paul Drake</u>

        Page 8, Line 3 - Page 8, Line 11
        Page 51, Line 23 - Page 52, Line 19       (N)
        Page 75, Line 15 - Page 76, Line 6
        Page 77, Line 9 - Page 77, Line 14

    4.    <u>From the Deposition of James Galbraith</u>

        Page 24, Line 24 - Page 25, Line 24       (R)

Page 31, Line 2 - Page 31, Line 18          (R)
Page 47, Line 8 - Page 47, Line 21          (R)
Page 50, Line 24 - Page 51, Line 10         (R, N, L)
Page 56, Line 15 - Page 56, Line 19         (R, I)
Page 60, Line 10 - Page 61, Line 8          (R)
Page 77, Line 8 - Page 77, Line 13          (R, L, N)
Page 77, Line 15 - Page 79, Line 15         (R, L, N)
Page 98, Line 17 - Page 98, Line 21         (R)
Page 98, Line 23 - Page 99, Line 8          (R, L, N)
Page 99, Line 10 - Page 99, Line 15         (R)
Page 99, Line 17 - Page 99, Line 25         (R, M, L, N)
Page 100, Line 6 - Page 100, Line 10        (R)
Page 108, Line 25 - Page 109, Line 14       (R, M, A, N)
Page 109, Line 16 - Page 110, Line 19       (R)
Page 110, Line 21 - Page 113, Line 9        (R, M, A, N)
Page 113, Line 11 -Page 113, Line 21        (R, A, N)
Page 113, Line 23 - Page 115, Line 21       (R, A, N)
Page 115, Line 23 - Page 116, Line 11       (R, A, N)
Page 116, Line 13 - Page 116, Line 17       (R, A, N)
Page 116, Line 19 - Page 117, Line 19       (R, A, L)
Page 117, Line 21 - Page 118, Line 9        (R, L, M, E)
Page 118, Line 11 -Page 118, Line 15        (R, L, M, E)
Page 118, Line 17 - Page 119, Line 5        (R, E)
Page 127, Line 5 - Page 127, Line 15        (R)
Page 127, Line 17 - Page 127, Line 25       (R, N)
Page 131, Line 2 - Page 131, Line 22        (R, N, M, V)
Page 131, Line 24 - Page 132, Line 8        (R, N, A, V)
Page 132, Line 10 - Page 132, Line 11
Page 157, Line 19 - Page 158, Line 2        (R, N, M, V)
Page 158, Line 4 - Page 158, Line 13        (R, N, M, A)
Page 158, Line 15 - Page 159, Line 3        (R, N, A)
Page 159, Line 5 - Page 160, Line 4         (R, N, M, A)
Page 160, Line 6 - Page 160, Line 13        (R, N, A)
Page 160, Line 17 - Page 161, Line 25       (R, N, A)
Page 162, Line 3 - Page 163, Line 8         (R, N, A)
Page 163, Line 10 - Page 163, Line 12       (R, N, A)
Page 163, Line 14 - Page 163, Line 22
Page 200, Line 7 - Page 200, Line 12        (R, N, A, I)
Page 200, Line 24 - Page 201, Line 24
Page 208, Line 13 - Page 210, Line 3        (R, N, P, I)
Page 210, Line 6 - Page 210, Line 15        (R)


5.    From the Deposition of Marc Goshko

Page 10, Line 13 - Page 11, Line 14         (R, M)
Page 24, Line 25 - Page 25, Line 12         (R)
Page 41, Line 10 - Page 42, Line 12         (R, I)

Page 47, Line 10 - Page 47, Line 18          (R, L)

6.     <u>From the Deposition of Laurence Hirsch</u>

Page 8, Line 4 - Page 8, Line 15
Page 9, Line 7 - Page 10, Line 21
Page 11, Line 4 - Page 11, Line 13
Page 22, Line 11 - Page 23, Line 25
Page 25, Line 25 - Page 26, Line 20
Page 31, Line 19 - Page 32, Line 17
Page 33, Line 20 - Page 34, Line 6
Page 38, Line 6 - Page 38, Line 17
Page 38, Line 21 - Page 43, Line 25
Page 54, Line 16 - Page 55, Line 15
Page 55, Line 24 - Page 60, Line 19
Page 75, Line 10 - Page 76, Line 8
Page 76, Line 15 - Page 76, Line 22
Page 80, Line 6 - Page 82, Line 4
Page 92, Line 11 - Page 92, Line 21
Page 93, Line 20 - Page 94, Line 8
Page 96, Line 20 - Page 97, Line 8
Page 97, Line 16 - Page 98, Line 4
Page 101, Line 7 - Page 102, Line 4
Page 107, Line 15 - Page 107, Line 24
Page 108, Line 8 - Page 108, Line 17
Page 109, Line 7 - Page 110, Line 3
Page 111, Line 6 - Page 111, Line 20
Page 114, Line 6 - Page 115, Line 2
Page 116, Line 2 - Page 116, Line 21
Page 122, Line 12 - Page 124, Line 12
Page 124, Line 22 - Page 125, Line 8
Page 129, Line 20 - Page 130, Line 13
Page 133, Line 25 - Page 134, Line 16
Page 142, Line 9 - Page 142, Line 23
Page 148, Line 2 - Page 148, Line 23
Page 152, Line 13 - Page 152, Line 25
Page 154, Line 2 - Page 155, Line 3
Page 167, Line 20 - Page 167, Line 25
Page 183, Line 15 - Page 184, Line 20

7.     <u>From the Deposition of Deborah Jaskot</u>

Page 6, Line 11 - Page 6, Line 24
Page 7, Line 6 - Page 7, Line 8
Page 12, Line 10 -- Page 13, Line 3
Page 15, Line 17 - Page 16, Line 3          (R)
Page 16, Line 9 - Page 16, Line 19          (R)
Page 33, Line 4 - Page 34, Line 19          (N, R, M)

Page 34, Line 22 - Page 35, Line 3          (N, R)
Page 35, Line 8 - Page 35, Line 9
Page 40, Line 6 - Page 40, Line 8          (N, M)
Page 40, Line 11 - Page 42, Line 3          (M, R)
Page 42, Line 6 -- Page 42, Line 19          (M, R)
Page 42, Line 22 - Page 43, Line 12          (M, R)
Page 51, Line 17 - Page 52, Line 2          (M, R)
Page 53, Line 6 - Page 53, Line 10          (M, R, N)
Page 54, Line 16 - Page 54, Line 18          (N, R)
Page 54, Line 21 - Page 57, Line 5          (R, D)
Page 57, Line 8 - Page 58, Line 3          (R)
Page 58, Line 24 - Page 60, Line 9          (M, R)
Page 60, Line 21 - Page 61, Line 19          (M, R)
Page 63, Line 10 - Page 63, Line 13          (V, R)
Page 64, Line 22 - Page 64, Line 25          (M, V)
Page 65, Line 3 - Page 65, Line 8          (V)
Page 65, Line 10 - Page 65, Line 18          (R)
Page 65, Line 21 - Page 66, Line 10          (M, R)
Page 67, Line 5 - Page 68, Line 5          (M, E)
Page 68, Line 7 - Page 68, Line 25          (R)
Page 69, Line 4 - Page 69, Line 24          (M, R)
Page 70, Line 3 - Page 70, Line 8          (R, N, I)
Page 70, Line 11 - Page 70, Line 17          (I, E, M, R)
Page 70, Line 20
Page 71, Line 13 - Page 71, Line 14          (D)
Page 71, Line 17 - Page 73, Line 12          (M, R)
Page 73, Line 16 - Page 74, Line 8          (M, L, R)
Page 74, Line 10 - Page 75, Line 24          (M, R, V)
Page 76, Line 3 - Page 76, Line 9          (M, R)
Page 86, Line 2 - Page 86, Line 5
Page 87, Line 5 - Page 87, Line 17          (M, N, R)
Page 87, Line 20 - Page 88, Line 8          (M, R)
Page 88, Line I 1 - Page 88, Line 12          (R)
Page 93, Line 4 - Page 93, Line 14          (R)
Page 94, Line 21 - Page 96, Line 8          (N, R)
Page 96, Line I 1 - Page 97, Line 8          (M, R)
Page 99, Line 21 - Page 100, Line 21          (R)
Page 101, Line 7 - Page 101, Line 13          (R)
Page 103, Line 3 - Page 103, Line 25          (M, R)
Page 105, Line 16 - Page 105, Line 19          (R)
Page 109, Line 14 - Page 110, Line 9          (R)
Page 111, Line 22 - Page 112, Line 6          (R)
Page 113, Line 14 - Page 114, Line 9          (R)
Page 115, Line 5 - Page 115, Line 10          (R, A)
Page 115, Line 13 - Page 115, Line 20          (R, N)
Page 115, Line 23 - Page 116, Line 2          (R, N)
Page 116, Line 15 - Page 116, Line 21          (R, N, M)
Page 116, Line 24 - Page 117, Line 22          (M, R)

Page 117, Line 25 - Page 118, Line 11    (A, R)
Page 118, Line 14 - Page 118, Line 18    (R)
Page 121, Line 20 - Page 121, Line 24    (M, R)
Page 122, Line 1 - Page 122, Line 5    (R, N)
Page 122, Line 7 - Page 122, Line 13    (R)
Page 122, Line 15 - Page 123, Line 17    (M, R)
Page 124, Line 8 - Page 124, Line 13    (N, R)
Page 124, Line 16 - Page 125, Line 2    (R, L)
Page 126, Line 24 - Page 127, Line 2    (M, R)
Page 127, Line 5 - Page 127, Line 7    (R)
Page 131, Line 23 - Page 132, Line 4    (R, N)
Page 132, Line 7 - Page 132, Line 12    (R)
Page 133, Line 23 - Page 134, Line 11    (R)
Page 134, Line 25 - Page 135, Line 12    (N, R)
Page 135, Line 15 - Page 136, Line 4    (R, A)
Page 136, Line 7 - Page 136, Line 9    (R, L)
Page 136, Line 24 - Page 138, Line 18    (R, M, L, N)
Page 138, Line 21 - Page 138, Line 22    (R)
Page 147, Line 24 - Page 148, Line 25    (R)
Page 149, Line 4
Page 150, Line 7 - Page 150, Line 9    (R)
Page 153, Line 10 -Page 153, Line 14    (R)

8.    From the Deposition of Ashok Katdare

Page 6, Line 3 - Page 6, Line 7
Page 8, Line 4 - Page 10, Line 13    (R)
Page 12, Line 11 - Page 13, Line 7    (R)
Page 14, Line 1 - Page 14, Line 23    (R)
Page 15, Line 11 - Page 15, Line 22
Page 17, Line 9 - Page 18, Line 20    (N)
Page 20, Line 14 - Page 20, Line 17    (R, N, L)
Page 21, Line 9 - Page 22, Line 16    (R)
Page 22, Line 24 - Page 23, Line 20    (R)
Page 24, Line 21 - Page 25, Line 5    (R)
Page 25, Line 16 - Page 28, Line 4    (R)
Page 30, Line 19 - Page 32, Line 22
Page 52, Line 23 - Page 53, Line 7    (I, A)
Page 78, Line 11 - Page 79, Line 11    (R, I, A)
Page 81, Line 24 - Page 82, Line 5
Page 85, Line 23 - Page 86, Line 16    (R)
Page 87, Line 6 - Page 89, Line 1
Page 141, Line 2 -Page 141, Line 18    (V)
Page 144, Line 21 - Page 146, Line 18    (R)
Page 152, Line 21 - Page 154, Line 9
Page 155, Line 13 - Page 156, Line 21
Page 163, Line 14 - Page 164, Line 6    (R, L)
Page 171, Line 13 - Page 172, Line 19

9.  From the Deposition of Patrick Magri

     Page 6, Line 4 - Page 6, Line 6
     Page 6, Line 10 -- Page 6, Line 14
     Page 17, Line 16 - Page 17, Line 25
     Page 20, Line 13 - Page 20, Line 20
     Page 68, Line 21 - Page 69, Line 10
     Page 69, Line 23 - Page 70, Line 7
     Page 72, Line 24 - Page 73, Line 9
     Page 73, Line 17 - Page 74, Line 6
     Page 105, Line 7 - Page 105, Line 25
     Page 106, Line 13 - Page 106, Line 22

10. From the Deposition of Richard Mazess

     Page 5, Line 22 - Page 5, Line 24
     Page 9, Line 15 - Page 10, Line 6          (O)
     Page 68, Line 23 - Page 70, Line 1         (O)
     Page 175, Line 23 - Page 181, Line 7       (O)

11. From the Deposition of Chris Pelloni

     Page 5, Line 22 - Page 6, Line 8           (R)
     Page 11, Line 13 - Page 11, Line 22
     Page 13, Line 22 - Page 15, Line 20        (R, A)
     Page 16, Line 17 - Page 17, Line 11        (R, I, H, L)
     Page 18, Line 8 - Page 18, Line 14         (R)
     Page 18, Line 23 - Page 19, Line 3         (R)
     Page 19, Line 7 - Page 19, Line 25
     Page 29, Line 16 - Page 30, Line 15        (R)
     Page 31, Line 2 - Page 31, Line 5          (R)
     Page 31, Line 13 - Page 31, Line 20        (R)
     Page 31, Line 22 - Page 32, Line 4         (R)
     Page 32, Line 9 - Page 32, Line 13         (R, N, V)
     Page 32, Line 19 - Page 34, Line 25        (R, N, M)
     Page 35, Line 3 - Page 35, Line 20         (R, N, M)
     Page 35, Line 22 - Page 36, Line 17        (R, N, M)
     Page 37, Line 17 - Page 37, Line 22        (R)
     Page 45, Line 3 - Page 46, Line 12         (R, N)
     Page 49, Line 3 - Page 49, Line 12         (R, N, I, V)
     Page 49, Line 14 - Page 50, Line 9         (R, V, N)
     Page 51, Line 20 - Page 52, Line 14        (R, A, V)
     Page 53, Line 21 - Page 54, Line 22        (R, V, N, M)
     Page 55, Line 3 - Page 55, Line 11         (R, V, N)
     Page 55, Line 23 - Page 56, Line 9         (R)
     Page 60, Line 3 - Page 60, Line 10         (R, V, N, M)
     Page 60, Line 23 - Page 60, Line 25        (R)

Page 61, Line 3
Page 66, Line 7 - Page 66, Line 25    (R)
Page 71, Line 3 - Page 71, Line 9    (R, N)
Page 71, Line 14 - Page 72, Line 18    (R, N)
Page 72, Line 20 - Page 72, Line 25    (R, N, M)
Page 73, Line 3 Page 73, Line 8    (R, N)
Page 73, Line 17 - Page 74, Line 6    (R, N)
Page 74, Line 9 Page 74, Line 19    (R, L, N, D)
Page 74, Line 21 - Page 75, Line 3    (R, N, V)
Page 75, Line 5 -- Page 75, Line 9    (R, V)
Page 76, Line 15 - Page 76, Line 21    (R)
Page 77, Line 16 - Page 77, Line 25    (R)
Page 78, Line 5 - Page 78, Line 8    (R, N)
Page 78, Line 10 - Page 78, Line 12    (R)
Page 81, Line 13 -- Page 81, Line 20    (R, C, V)
Page 81, Line 25 - Page 83, Line 20    (R)
Page 87, Line 20 - Page 88, Line 5    (R)
Page 89, Line 8 - Page 89, Line 16    (R)
Page 113, Line 22 - Page 113, Line 23    (R)
Page 114, Line 2 - Page 114, Line 7    (R, V)
Page 114, Line 9 - Page 114, Line 11    (R)
Page 116, Line 21 - Page 117, Line 9    (R, N)
Page 117, Line 21 - Page 117, Line 25    (R, I, N)
Page 118, Line 5 - Page 118, Line 8    (R, N)
Page 118, Line 10 - Page 118, Line 16    (R, A, N)
Page 118, Line 20 - Page 118, Line 21
Page 123, Line 23 - Page 124, Line 25    (R, L)
Page 126, Line 5 - Page 126, Line 6    (R, N, L)
Page 126, Line 8 - Page 126, Line 12    (R, L)
Page 126, Line 21 - Page 127, Line 11    (R, N)
Page 127, Line 13 - Page 128, Line 15    (R)
Page 136, Line 11 - Page 136, Line 14    (R, N)
Page 136, Line 16 - Page 136, Line 18    (R)

12.    <u>From the Deposition of Chennekatu Peter</u>

Page 6, Line 7 - Page 8, Line 8
Page 60, Line 13 - Page 62, Line 1
Page 62, Line 11 - Page 62, Line 25
Page 120, Line 1 - Page 120, Line 9
Page 120, Line 19 - Page 120, Line 25    (I)
Page 126, Line 25 - Page 127, Line 19
Page 134, Line 18 - Page 135, Line 10
Page 147, Line 16 - Page 148, Line 1
Page 151, Line 12 -Page 151, Line 18    (I)
Page 242, Line 3 - Page 242, Line 12
Page 256, Line 8 - Page 257, Line 17    (I)

13.    <u>From the Deposition of Louis Sherwood</u>

      Page 5, Line 23 - Page 6, Line 24
      Page 105, Line 13 - Page 105, Line 20
      Page 109, Line 20 - Page 110, Line 12      (R, V)
      Page 144, Line 18 - Page 148, Line 11      (R)

14.    <u>From the Deposition of Sunil Wimalawansa</u>

      Page 4, Line 18 - Page 5, Line 5      (NA)
      Page 6, Line 5 - Page 7, Line 5      (NA)
      Page 7, Line 7 - Page 8, Line 4      (NA)
      Page 13, Line 20 - Page 15, Line      (NA)
      Page 16, Line 16 - Page 16, Line 25      (NA)
      Page 21, Line 10 - Page 21, Line 11      (NA)
      Page 21, Line 13 - Page 22, Line 19      (NA)
      Page 22, Line 24 - Page 23, Line 19      (NA)
      Page 23, Line 21 - Page 24, Line 13      (NA)
      Page 24, Line 17 - Page 25, Line 8      (NA)
      Page 25, Line 10      (NA)
      Page 76, Line 7 - Page 76, Line 17      (NA)
      Page 76, Line 20 - Page 76, Line 2      2(NA)
      Page  76, Line 24 - Page 77, Line 3      (NA)
      Page 77, Line 7 - Page 77, Line 17      (NA)
      Page 77, Line 19 - Page 77, Line 24      (NA)
      Page 78, Line 3 - Page 78, Line 7      (NA)
      Page 78, Line 9 - Page 78, Line 17      (NA)
      Page 81, Line 23 - Page 83, Line 24      (NA)
      Page 84, Line 1 - Page 84, Line 8      (NA)
      Page 104, Line 6 - Page 104, Line 24      (NA)
      Page 105, Line 2 - Page 105, Line 5      (NA)
      Page 105, Line 8 - Page 106, Line 2      (NA)
      Page 106, Line 4 - Page 107, Line 7      (NA)
      Page 107, Line 9 - Page 107, Line 11      (NA)
      Page 114, Line 4 - Page 116, Line 4      (NA)
      Page 116, Line 6 - Page 118, Line 20      (NA)
      Page 118, Line 23 - Page 119, Line 13      (NA)
      Page 121, Line 15 - Page 121, Line 18      (NA)
      Page  121, Line 21 - Page 122, Line 3      (NA)
      Page 122, Line 6 - Page 123, Line 13      (NA)
      Page 125, Line 2 - Page 125, Line 4      (NA)
      Page 125, Line 19 - Page 128, Line 13      (NA)
      Page 128, Line 16 - Page 128, Line 24      (NA)
      Page 129, Line 20 - Page 130, Line 10      (NA)
      Page 130, Line 12 - Page 130, Line 13      (NA)
      Page 130, Line 15 - Page 130, Line 17      (NA)
      Page 134, Line 7 - Page 135, Line 9      (NA)

v

15. <u>From the Deposition of David Markowitz</u>

    Page 6, Line 14 – Page 134, Line 24      (NA)

16. <u>From the Deposition of Karen Clark</u>

    Page 6, Lines 13 – 22
    Page 9, Lines 7 - 23
    Page 51, Lines 9 – 13          (N)
    Page 52, Line 25 – Page 56, Line 14    (O)
    Page 59, Lines 4-7
    Page 82, Line 19 – Page 83, Line 6    (I, R, M)

17. <u>From the Deposition of Jesse David</u>

    This deposition has not yet occurred.

# EXHIBIT 8

## TEVA PHARMACEUTICALS USA, INC.'S
## DEPOSITION COUNTER-DESIGNATIONS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| MERCK & CO., INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-939 (GMS) |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## TEVA PHARMACEUTICALS USA, INC.'S DEPOSITION COUNTER-DESIGNATIONS

1.    From the deposition of James Galbraith, January 24, 2003:

Page 6, line 9 through Page 7, line 24
Page 15, line 24 through Page 16, line 19
Page 21, line 24 through Page 24, line 23
Page 26, line 16 through Page 27, line 19
Page 29, line 15 through line 23
Page 31, line 19 through Page 33, line 6
Page 36, line 22 through Page 37, line 15
Page 47, line 22 through Page 48, line 7
Page 49, line 3 through line 13
Page 50, line 2 through line 12
Page 54, line 2 through Page 55, line 21
Page 56, line 20 through Page 58, line 6
Page 58, line 23 through Page 59, line 9
Page 71, line 10 through line 25
Page 77, line 14
Page 81, line 8 through Page 82, line 7
Page 98, line 22
Page 99, line 9
Page 99, line 16
Page 100, line 2
Page 100, line 11 through Page 101, line 8
Page 104, line 16 through Page 105, line 9
Page 107, line 18 through Page 108, line 24
Page 109, line 15
Page 110, line 20
Page 113, line 10

Page 113, line 22
Page 115, line 22
Page 116, line 12
Page 116, line 18
Page 118, line 10
Page 118, line 16
Page 121, line 10 through Page 122, line 8
Page 123, line 19 through Page 125, line 7
Page 127, line 16
Page 128, line 2 through line 7
Page 128, line 22 through Page 130, line 16
Page 131, line 23
Page 132, line 9
Page 132, line 12 through Page 136, line 3
Page 142, line 20 through Page 143, line 10
Page 152, line 24 through Page 153, line 12
Page 158, line 3
Page 158, line 14
Page 159, line 4
Page 160, line 5
Page 160, line 14 through line 16
Page 162, line 2
Page 163, line 9
Page 163, line 13
Page 163, line 23 through Page 165, line 3
Page 170, line 18 through Page 171, line 9
Page 180, line 21 through Page 185, line 5
Page 188, line 23 through Page 192, line 8
Page 193, line 7 through Page 194, line 12
Page 200, line 13 through line 18
Page 201, line 25 through Page 206, line 9
Page 207, line 11 through Page 208, line 12
Page 210, line 4 through line 5
Page 218, line 11 through Page 219, line 8
Page 226, line 18 through Page 228, line 20


        2.        From the deposition of Marc Goshko, January 21, 2003:

Page 8, line 15 through Page 10, line 12
Page 11, line 15 through Page 12, line 11
Page 12, line 22 through Page 13, line 19
Page 14, line 5 through line 13
Page 14, line 25 through Page 15, line 24
Page 18, line 7 through Page 19, line 8
Page 20, line 20 through Page 22, line 13

Page 22, line 23 through Page 23, line 14
Page 25, line 13 through Page 26, line 15
Page 27, line 23 through Page 31, line 20
Page 32, line 11 through line 15
Page 32, line 23 through Page 33, line 6
Page 35, line 10 through Page 36, line 25
Page 38, line 8 through line 13
Page 40, line 24 through Page 41 line 9
Page 43, line 6 through Page 47, line 9
Page 55, line 19 through Page 56, line 16
Page 57, line 21 through Page 58, line 20
Page 59, line 22 through Page 60, line 18
Page 68, line 7 through Page 69, line 11
Page 72, line 3 through line 11
Page 73, line 3 through Page 74, line 21
Page 79, line 2 through line 16
Page 81, line 11 through Page 82, line 9
Page 95, line 7 through line 17
Page 101, line 8 through line 15
Page 106, line 2 through Page 107, line 8
Page 114, line 12 through line 22
Page 122, line 11 through Page 123, line 13
Page 139, line 10 through Page 140, line 3
Page 141, line 18 through Page 142, line 2


3.      From the Deposition of Deborah Jaskot, September 6, 2002:

Page 13, line 11 through Page 14, line 3
Page 14, line 21 through Page 15, line 16
Page 16, line 4 through line 8
Page 16, line 20 through Page 17, line 2
Page 34, line 20 through line 21
Page 35, line 4 through line 7
Page 40, line 9 through line 10
Page 47, line 6 through Page 48, line 8
Page 52, line 3 through Page 53, line 5
Page 53, line 11 through Page 54, line 15
Page 58, line 4 through line 14
Page 60, line 10 through line 13
Page 61, line 10 through line 16
Page 62, line 4 through line 16
Page 63, line 14 through line 21
Page 65, line 9
Page 65, line 19 through line 20
Page 66, line 11 through line 15
Page 66, line 23 through Page 67, line 4

Page 68, line 6
Page 69, line 2 through line 3
Page 69, line 25 through Page 70, line 2
Page 70, line 9 through line 10
Page 70, line 18 through line 19
Page 70, line 21 through Page 71, line 12
Page 71, line 15 through line 16
Page 73, line 13 through line 15
Page 74, line 9
Page 75, line 25 through Page 76, line 2
Page 86, line 6 through Page 87, line 4
Page 87, line 18 through line 19
Page 90, line 12 through Page 91, line 19
Page 93, line 15 through line 25
Page 94, line 10 through line 20
Page 96, line 9 through line 10
Page 97, line 9 through line 19
Page 98, line 6 through line 11
Page 101, line 14 through Page 102, line 2
Page 104, line 2 through line 11
Page 114, line 10 through Page 115, line 4
Page 115, line 11 through line 12
Page 115, line 21 through line 22
Page 116, line 22 through line 23
Page 117, line 23 through line 24
Page 118, line 12 through line 13
Page 118, line 19 through Page 119, line 11
Page 120, line 19 through Page 121, line 5
Page 121, line 25
Page 122, line 6
Page 122, line 14
Page 123, line 18 through Page 124, line 7
Page 124, line 14 through line 15
Page 125, line 19 through line 23
Page 127, line 3 through line 4
Page 132, line 5 through line 6
Page 132, line 16 through line 23
Page 133, line 6 through line 17
Page 135, line 13 through line 14
Page 136, line 5 through line 6
Page 136, line 10 through line 23
Page 138, line 19 through line 20
Page 138, line 23 through Page 140, line 5
Page 141, line 20 through line 22
Page 142, line 21 through Page 143, line 13
Page 147, line 2 through line 23

Page 149, line 2 through line 3
Page 150, line 10 through line 22
Page151, line 2 through line 14
Page 154, line 19 through line 25


      4.      From the Deposition of Ashok Katdare, Ph.D., August 22, 2002:

Page 146, line 19 through Page 147, line 19


      5.      From the deposition of Christopher Pelloni, October 23, 2002:

Page 11, Line 23 through Page 12, Line 9
Page 13, Line 5 through Page 13, Line 13
Page 17, Line 12, through Page 17, Line 13
Page 18, Line 15 through Page 18, Line 19
Page 19, Line 4 through Page 19, Line 6
Page 20, Line 2 through Page 22, Line 18
Page 23, Line 18 through Page 26, Line 2
Page 27, Line 22 through Page 28, Line 11
Page 31, Line 6 through Page 31, Line 12
Page 31, Line 21
Page 32, Line 5 through Page 32, Line 8
Page 32, Line 14 through Page 32, Line 16
Page 35, Line 2
Page 35, Line 21
Page 37, Line 23 through Page 39, Line 23
Page 42, Line 11 through Page 42, Line 16
Page 48, Line 24 through Page 49, Line 2
Page 49, Line 13
Page 50, Line 10 through Page 51, Line 19
Page 52, Line 15 through Page 52, Line 22
Page 54, Line 23 through Page 55, Line 2
Page 59, Line 10 through Page 59, Line 15
Page 61, Line 2
Page 61, Line 24 through Page 62, Line 4
Page 67, Line 2 through Page 67, Line 10
Page 71, Line 10 through Page 71, Line 13
Page 72, Line 19
Page 73, Line 2
Page 73, Line 9 through Page 73, Line 16
Page 74, Line 7 through Page 74, Line 8
Page 74, Line 20
Page 75, Line 4
Page 78, Line 2 through Page 78, Line 4

Page 78, Line 9
Page 78, Line 13 through Page 78, Line 24
Page 81, Line 3 through Page 81, Line 6
Page 81, Line 21
Page 83, Line 21 through Page 83, Line 25
Page 88, Line 6 through Page 88, Line 7
Page 88, Line 15 through Page 89, Line 7
Page 91, Line 8 through Page 92, Line 14
Page 113, Line 5 through Page 113, Line 21
Page 113, Line 24 through Page 113, Line 25
Page 114, Line 8
Page 114, Line 12 through Page 114, Line 14
Page 116, Line 8 through Page 116, Line 20
Page 117, Line 10 through Page 117, Line 14
Page 118, Line 2 through Page 118, Line 4
Page 118, Line 9
Page 118, Line 17 through Page 118, Line 18
Page 120, Line 5 through Page 120, Line 11
Page 124, Line 25 through Page 125, Line 16
Page 126, Line 7
Page 126, Line 13 through Page 126, Line 20
Page 127, Line 12
Page 131, Line 20 through Page 131, Line 24
Page 136, Line 15
Page 136, Line 19 through Page 137, Line 6
Page 138, Line 14 through Page 138, Line 18

      6.     From the deposition of Karen Clark, December 21, 2005:

Page 57, Line 16 through  Page 59, Line 10
Page 59,  Line 17 through Page 59, Line 18

EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-939 (GMS) |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | **CONFIDENTIAL SUBJECT TO** |
| | ) | **PROTECTIVE ORDER** |
| Defendant. | ) | |

## TEVA PHARMACEUTICALS USA, INC.'S
## AFFIRMATIVE DEPOSITION DESIGNATIONS

Teva Pharmaceuticals USA, Inc. ("Teva USA") respectfully submits the attached

Deposition Designations in accordance with the Court's Scheduling Order entered on April 6,

2006.  Teva USA reserves the right to amend and supplement these designations as necessary,

and to use portions of depositions designated by Merck & Co., Inc.

Respectfully submitted,

June 28, 2006

_____
Josy W. Ingersoll (#1088)
YOUNG CONAWAY STARGATT
    & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672

OF COUNSEL
James Galbraith
Maria Luisa Palmese
A. Antony Pfeffer
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Attorneys for defendant Teva
Pharmaceuticals USA, Inc.

1.      From the deposition of Robert Beckman, July 23, 2002:

Page 5, Line 8 through Page 8, Line 3
Page 19, Line 12 through Page 19, Line 23
Page 20, Line 6 through  Page 21, Line 10
Page 32, Line 7 through  Page 35, Line 23
Page 41, Line 21 through Page 43, Line 3

2.      From the deposition of Peter Browne, September 18, 2002:

Page 1, Line 1 through Page 8, Line 8
Page 8, Line 12 through Page 13, Line 24
Page 14, Line 3 through Page 20, Line 21
Page 20, Line 25 through Page 21, Line 11
Page 21, Line 16 through Page 21, Line 25
Page 22, Line 4 through Page 23, Line 14
Page 24, Line 1 through Page 24, Line 13
Page 24, Line 16 through Page 24, Line 19
Page 24, Line 22 through Page 30, Line 17
Page 30, Line 21 through Page 32, Line 2
Page 32, Line 5 through Page 33, Line 11
Page 33, Line 14 through Page 38, Line 17
Page 38, Line 20 through Page 43, Line 25
Page 44, Line 3 through Page 44, Line 12
Page 44, Line 15 through Page 45, Line 1
Page 45, Line 16 through Page 45, Line 23
Page 46, Line 1 through Page 46, Line 9
Page 46, Line 18 through Page 46, Line 20
Page 46, Line 23 through Page 47, Line 16
Page 47, Line 18 through Page 48, Line 20
Page 48, Line 23 through Page 51, Line 14
Page 51, Line 20 through Page 55, Line 6
Page 55, Line 9 through Page 56, Line 1
Page 56, Line 11 through Page 56, Line 18
Page 56, Line 23 through Page 56, Line 24
Page 57, Line 1 through Page 57, Line 16
Page 57, Line 18 through Page 59, Line 9
Page 59, Line 14 through Page 62, Line 3
Page 62, Line 6 through Page 62, Line 7
Page 62, Line 11 through Page 65, Line 8
Page 65, Line 11
Page 65, Line 14 through Page 66, Line 14
Page 66, Line 19 through Page 67, Line 10
Page 67, Line 23 through Page 82, Line 25

3.      From the deposition of Karen F. Clark, December 21, 2005:

Page 5, Line 11 through Page 6, Line 5
Page 6, Line 13 through Page 7, Line 2
Page 7, Line 5 through  Page 7, Line 18
Page 7, Line 20 through Page 7, Line 22
Page 7, Line 25 through Page 8, Line 9
Page 8, Line 12 through Page 8, Line 13
Page 8, Line 16 through Page 9, Line 2
Page 9, Line 7 through Page 9, Line 23
Page 10, Line 24 through Page 11, Line 20
Page 11, Line 24 through Page 12, Line 2
Page 12, Line 7 through Page 12, Line 8
Page 12, Line 23 through Page 12, Line 24
Page 13, Line 2 through Page 13, Line 18
Page 14, Line 3 through Page 14, Line 14
Page 14, Line 16 through Page 14, Line 25
Page 15, Line 7 through Page 15, Line 12
Page 16, Line 12 through Page 16, Line 13
Page 16, Line 20 through Page 17, Line 6
Page 17, Line 14 through Page 18, Line 4
Page 18, Line 6 through Page 18, Line 10
Page 19, Line 15 through Page 20, Line 9
Page 20, Line 21 through Page 21, Line 9
Page 21, Line 24 through Page 22, Line 9
Page 22, Line 13 through Page 22, Line 19
Page 22, Line 22 through Page 23, Line 6
Page 24, Line 8 through Page 25, Line 11
Page 25, Line 22 through Page 25, Line 25
Page 26, Line 14 through Page 26, Line 20
Page 26, Line 23 through Page 27, Line 2
Page 27, Line 16 through Page 29, Line 17
Page 29, Line 19 through Page 30, Line 2
Page 30, Line 4 through Page 30, Line 12
Page 30, Line 14 through Page 31, Line 2
Page 31, Line 4 through Page 32, Line 24
Page 33, Line 25 through Page 35, Line 22
Page 36, Line 18 through Page 36, Line 22
Page 36, Line 24 through Page 37, Line 9
Page 38, Line 4 through Page 38, Line 12
Page 38, Line 16 through Page 39, Line 10
Page 40, Line 17 through Page 40, Line 25
Page 41, Line 4 through Page 41, Line 5
Page 41, Line 14 through Page 42, Line 16
Page 42, Line 18 through Page 42, Line 24
Page 43, Line 6 through Page 43, Line 8
Page 43, Line 14 through Page 43, Line 18
Page 44, Line 8 through Page 45, Line 16

Page 45, Line 18 through Page 45, Line 24
Page 46, Line 17 through Page 47, Line 23
Page 48, Line 4 through Page 48, Line 7
Page 49, Line 5 through Page 49, Line 14
Page 49, Line 16 through Page 49, Line 21
Page 50, Line 5 through Page 50, Line 8
Page 50, Line 10 through Page 50, Line 17
Page 50, Line 20 through Page 51, Line 13
Page 52, Line 3 through Page 52, Line 5
Page 52, Line 25 through Page 53, Line 6
Page 53, Line 16 through Page 53, Line 19
Page 54, Line 18 through Page 54, Line 25
Page 55, Line 13 through Page 55, Line 18
Page 56, Line 5 through Page 56, Line 14
Page 56, Line 25 through Page 57, Line 15
Page 59, Line 19 through Page 59, Line 24
Page 60, Line 2 through Page 60, Line 7
Page 60, Line 9 through Page 90, Line 25
Page 61, Line 18 through Page 62, Line 11
Page 63, Line 9 through Page 63, Line 16
Page 63, Line 18 through Page 63, Line 24
Page 64, Line 2 through Page 64, Line 2
Page 64, Line 13 through Page 64, Line 17
Page 65, Line 2 through Page 65, Line 22
Page 65, Line 24 through Page 66, Line 3
Page 66, Line 8 through Page 66, Line 14
Page 66, Line 25 through Page 67, Line 6
Page 69, Line 2 through Page 69, Line 6
Page 72, Line 2 through Page 72, Line 7
Page 72, Line 12 through Page 72, Line 15
Page 73, Line 2 through Page 75, Line 3
Page 75, Line 10 through Page 75, Line 23
Page 75, Line 25 through Page 76, Line 8
Page 78, Line 23 through Page 80, Line 12
Page 80, Line 14 through Page 80, Line 21
Page 81, Line 10 through Page 81, Line 16

4.      From the deposition of Anastasia Daifotis, June 19, 2002

Page 7, Line 6 through Page 9, Line 10
Page 8, Line 1 through Page 9, Line 10
Page 12, Line 4  through Page 13, Line 8
Page 17, Line 19 through Page 18, Line 7
Page 28, Line 3 through Page 29,Line 9
Page 30, Line 20 through Page 31, Line 19
Page 33, Line 6 through Page 33, Line 18
Page 35, Line 5 through Page 41, Line 24

Page 42, Line 16 through Page 43, Line 12
Page 48, Line 17 through Page 49, Line 6
Page 50, Line 8 through Page 54, Line 8
Page 69, Line 21 through Page 75, Line 2
Page 77, Line 23 through Page 86, Line 19
Page 87, Line 1 through Page 90, Line 17
Page 92, Line 13 through Page 93, Line 23
Page 96, Line 5 through Page 97, Line 4
Page 108, Line 24 through Page 109, Line 3
Page 109, Line 8 through Page 111, Line 9
Page 111, Line 15 through Page 115, Line 4
Page 118, Line 3 through Page 118, Line 4
Page 119, Line 5 through Page 124, Line 8
Page 129, Line 22 through Page 130, Line 4
Page 135, Line 17 through Page 135, Line 23
Page 137, Line 21 through Page 138, Line 3
Page 139, Line 12 through Page 143, Line 21
Page 150, Line 16 through Page 152, Line 12
Page 154, Line 16 through Page 163, Line 5
Page 166, Line 12 through Page 173, Line 23
Page 181, Line 12 through Page 181, Line 15
Page 185, Line 10 through Page 190, Line 9
Page 193, Line 21 through Page 194, Line 2

     5.       From the deposition of Anastasia Daifotis, June 20, 2002

Page 200, Line 8 through Page 207, Line 13
Page 244, Line 15 through Page 244, Line 20
Page 244, Line 25 through Page 247, Line 13
Page 250, Line 10 through Page 253, Line 9
Page 254, Line 5 through Page 255, Line 3
Page 262, Line 18 through Page 272, Line 14
Page 272, Line 25 through Page 276, Line 3
Page 276, Line 9 through Page 287, Line 6
Page 287, Line 11 through Page 292, Line 22
Page 314, Line 1 through Page 329, Line 2
Page 329, Line 16 through Page 333, Line 25
Page 338, Line 11 through Page 341, Line 22
Page 342, Line 7 through Page 344, Line 10
Page 347, Line 13 through Page 358, Line 22
Page 369, Line 7 through Page 370, Line 2
Page 371, Line 21 through Page 373, Line 14
Page 373, Line 21 through Page 375, Line 19
Page 401, Line 16 through Page 405, Line 23
Page 422, Line 13 through Page 423, Line 18
Page 450, Line 19 through Page 460, Line 5
Page 461, Line 12 through Page 461, Line 13

Page 463, Line 7 through Page 467,  Line 4
Page 476, Line 3 through Page 476,  Line 4
Page 476, Line 11 through Page 483, Line 5
Page 491, Line 13 through  Page 491, Line 14
Page 491, Line 20 through Page 491, Line 25
Page 500, Line 8 through Page 507, Line 23
Page 508, Line 7 through Page 518, Line 8

      6.      From the deposition of Gerard Devlin, September 13, 2002:

Page 6, Line 5 through Page 7, Line 11
Page 38, Line 24 through Page 40, Line 4
Page 40, Line 8 through Page 42, Line 2
Page 42, Line 9 through Page 46, Line 8
Page 46, Line 11 through Page 48, Line 23
Page 49, Line 5 through Page 49, Line 11
Page 50, Line 5 through Page 50, Line 11
Page 50, Line 15 through Page 50, Line 18
Page 51, Line 3 through Page 50, Line 12
Page 51, Line 16 through Page 52, Line 9
Page 52, Line 22 through Page 53, Line 3
Page 53, Line 7 through  Page 53, Line 19
Page 54, Line 7 through Page 55, Line 11
Page 57, Line 6 through Page 59, Line 3
Page 59, Line 7 through  Page 59, Line 10
Page 59, Line 16 through Page 60, Line 24
Page 61, Line 8 through Page 62, Line 3
Page 62, Line 19 through Page 64, Line 6
Page 66 Line 16 through Page 69, Line 13
Page 69, Line 22 through Page 72, Line 2
Page 72, Line 16 through Page 81, Line 14
Page 81, Line 21 through Page 82, Line 2
Page 82, Line 19 through Page 83, Line 9
Page 85, Line 20 through Page 86, Line 23
Page 88, Line 14 through Page 88, Line 18
Page 88, Line 21 through Page 89, Line 5
Page 90, Line 5 through Page 93, Line 20
Page 94, Line 6 through Page 94, Line 12
Page 94, Line 21 through Page 95, Line 15
Page 95, Line 18 through Page 95, Line 22
Page 97, Line 18 through Page 100, Line 4
Page 101, Line 8 through Page 101, Line 11
Page 101, Line 14 through Page 102, Line 2
Page 104, Line 3 through Page 105,  Line 13
Page 107, Line 5 through Page 107, Line 10
Page 107, Line 24 through Page 108, Line 16
Page 115, Line 25 through Page 118, Line 9

Page 130, Line 4 through Page 131,  Line 15
Page 134, Line 14 through Page 136, Line 19
Page 136, Line 24 through Page 137, Line 24
Page 138, Line 4 through Page 142,  Line 9
Page 142, Line 16 through Page 146, Line 9
Page 146, Line 25 through Page 148, Line 5
Page 148, Line 25 through Page 149, Line 5
Page 149, Line 12 through Page 153, Line 6
Page 153, Line 16 through Page 154, Line 5
Page 154, Line 16 through Page 157, Line 6
Page 159, Line 18 through Page 159, Line 22
Page 160, Line 3 through Page 161,  Line 5
Page 161, Line 9 through Page 164,  Line 2

      7.      From the deposition of Elizabeth DiCesare, August 28, 2002:

Page 5, Line 22 through Page 23, Line 15
Page 23, Line 19 through Page 31, Line 7
Page 32, Line 14 through Page 34, Line 14
Page 34, Line 23 through Page 39, Line 4
Page 39, Line 7 through Page 41, Line 21
Page 41, Line 25 through Page 42, Line 11
Page 42, Line 15 through Line 22
Page 42, Line 24 through Page 43, Line 2
Page 43, Line 17 through Line 21
Page 43, Line 25 through Page 44, Line 7
Page 44, Line 15 through Page 45, Line 19
Page 45, Line 21 through Page 51, Line 5
Page 51, Line 9 through Page 52, Line 8
Page 52, Line 12 through Line 25
Page 53, Line 11, through Page 54, Line 4
Page 54, Line 10 through Page 70, Line 21
Page 70, Line 25 through Page 73, Line 2
Page 73, Line 12 through Page 77, Line 24
Page 78, Line 3 through Page 81, Line 20
Page 81, Line 23 through Page 83, Line 15
Page 84, Line 1 through Page 87, Line 7
Page 87, Line 11 through Page 89, Line 14
Page 89, Line 16 through Page 95, Line 9
Page 96, Line 9 through Page 99, Line 23
Page 100, Line 3 through Page 100, Line 6
Page 101, Line 6 through Page 103, Line 8
Page 103, Line 17 through Page 105, Line 4
Page 106, Line 13 through Page 109, Line 9
Page 109, Line 13 through Page 111, Line 22
Page 112, Line 1 through Page 112, Line 13
Page 112, Line 15 through Page 112, Line 22

Page 112, Line 24 through Page 113, Line 4
Page 113, Line 6 through Line 17
Page 113, Line 24 through Page 120, Line 18
Page 120, Line 21 through Page 121, Line 18
Page 123, Line 14 through Page 124, Line 3
Page 125, Line 10 through Line 21
Page 125, Line 24 through Page 126, Line 3
Page 126, Line 6 through Page 127, Line 5
Page 127, Line 10 through Line 16
Page 128, Line 7 through Page 128, Line 9
Page 128, Line 12 through Page, Line 15
Page 128, Line 20 through Page 128, Line 22
Page 128, Line 25
Page 129, Line 13 through Page 130, Line 2
Page 130, Line 13 through Line 25
Page 131, Line 5 through Page 146, Line 22
Page 147, Line 21 through Page 152, Line 16
Page 154, Line 3 through Line 7
Page 154, Line 14 through Page 159, Line 25
Page 160, Line 15 through Page 163, Line 8
Page 163, Line 11
Page 163, Line 18 through Page 163, Line 22
Page 164, Line 1 through Page 170, Line 21
Page 170, Line 25 through Page 181, Line 11
Page 181, Line 19 through Page 186, Line 17
Page 186, Line 25 through Page 189, Line 2
Page 189, Line 6 through Page 191, Line 16
Page 191, Line 20 through Page 194, Line 20
Page 194, Line 24 through Page 196, Line 10
Page 196, Line 14 through Page 204, Line 21
Page 205, Line 15 through Page 206, Line 7
Page 206, Line 13 through Line 18
Page 206, Line 21
Page 207, Line 13 through Page 210, Line 2
Page 210, Line 7 through Page 218, Line 15
Page 218, Line 21 through Page 227, Line 22
Page 228, Line 3 through Page 229, Line 23

       8.     From the deposition of Elizabeth DiCesare, August 29, 2002:

Page 239, Line 19 through Page 240, Line 16
Page 240, Line 19 through Page 243, Line 10
Page 243, Line 14 through Page 244, Line 11
Page 245, Line 8 through Page 254, Line 15
Page 254, Line 19 through Page 256, Line 12
Page 256, Line 15 through Page 260, Line 5

Page 260, Line 9 through Page 271, Line 25
Page 272, Line 5 through Line 12
Page 272, Line 16 through Page 274, Line 8
Page 274, Line 12 through Page 276, Line 17
Page 276, Line 20 through Page 279, Line 3
Page 279, Line 7
Page 279, Line 17 through Page 285, Line 9
Page 285, Line 13 through Page 286, Line 4
Page 286, Line 6 through Page 297, Line 9
Page 297, Line 14 through Page 299, Line 25
Page 300, Line 6 through Line 13
Page 300, Line 21 through Page 303, Line 9
Page 303, Line 13 through Line 20
Page 303, Line 23 through Page 308, Line 4
Page 308, Line 10 through Line 18
Page 309, Line 8 through Page 310, Line 23
Page 311, Line 10 through Page 312, Line 15
Page 312, Line 18 through Page 313, Line 9
Page 313, Line 13 through Page 316, Line 9
Page 316, Line 23 through Line 25
Page 317, Line 15 through Page 319, Line 13
Page 319, Line 15 through Line 21
Page 319, Line 25 through Page 320, Line 15
Page 320, Line 18 through Page 322, Line 15
Page 322, Line 22
Page 323, Line 10 through Page 325, Line 5
Page 325, Line 12 through Line 15
Page 325, Line 17 through Line 21
Page 325, Line 24 through Page 326, Line 4
Page 326, Line 12 through Line 18
Page 326, Line 23 through Page 327, Line 6
Page 327, Line 11 through Page 328, Line 9
Page 328, Line 14 through Line 25
Page 329, Line 5 through Line 24
Page 330, Line 5 through Line 21
Page 331, Line 6 through Line 10
Page 331, Line 16 through Page 332, Line 3
Page 332, Line 9 through Line 24
Page 333, Line 5 through Line 7
Page 333, Line 9 through Page 334, Line 12
Page 334, Line 18 through Page 335, Line 11
Page 335, Line 14 through Line 19
Page 335, Line 23 through Page 336, Line 2
Page 336, Line 7 through Page 337, Line 3
Page 337, Line 8 through Line 15
Page 337, Line 18 through Page 340, Line 6

Page 340, Line 9 through Line 20
Page 340, Line 23 through Page 341, Line 10
Page 341, Line 14 through Page 342, Line 22
Page 342, Line 25 through Page 343, Line 22
Page 344, Line 2 through Line 15
Page 344, Line 20 through Page 345, Line 4
Page 348, Line 5 through Page 350, Line 24
Page 351, Line 4 through Line 23
Page 352, Line 6 through Page 355, Line 2
Page 355, Line 8 through Line 16
Page 357, Line 5 through Line 22
Page 358, Line 10 through Line 17
Page 360, Line 13 through Page 361, Line 8

      9.     From the deposition of Paul Drake, November 15, 2002:

Page 1, Line 1 through Page 44, Line 7
Page 44, Line 11 through Page 51, Line 4
Page 51, Line 9 through Page 61, Line 14
Page 62, Line 7 through Page 63, Line 23
Page 64, Line 15 through Page 81, Line 8
Page 81, Line 14 through Page 84, Line 8
Page 84, Line 12 through Page 87, Line 9
Page 87, Line 12 through Page 97, Line 7
Page 98, Line 2 through Page 103, Line 18
Page 104, Line 8 through Page 105, Line 25

      10.    From the deposition of Lawrence Hirsch, October 22, 2002:

Page 1, Line 1 through Page 6, Line 9
Page 8, Line 4 through Page 12, Line 9
Page 13, Line 22 through Page 15, Line 11
Page 18 Line 23 through Page 30, Line 24
Page 31, Line 5 through Page 32, Line 7
Page 32, Line 10 through Page 37, Line 5
Page 37, Line 12 through Page 37, Line 22
Page 37, Line 25 through Page 53, Line 20
Page 53, Line 23 through Page 54, Line 3
Page 54, Line 5 through Page 60, Line 19
Page 61, Line 7 through Page 70, Line 11
Page 70, Line 19 through Page 84, Line 12
Page 86, Line 23 through Page 87, Line 24
Page 88, Line 4 through Page 88, Line 6
Page 88, Line 9 through Page 88, Line 18
Page 89, Line 2 through Page 91, Line 14
Page 91, Line 17 through Page 99, Line 15
Page 101, Line 7 through Page 105, Line 17

Page 106, Line 3 through Page 108, Line 20
Page 109, Line 1 through Page 117, Line 13
Page 117, Line 16 through Page 128, Line 24
Page 129, Line 20 through Page 130, Line 19
Page 133, Line 20 through Page 134, Line 16
Page 138, Line 4 through Page 140, Line 21
Page 141, Line 3 through Page 146, Line 17
Page 147, Line 11 though Page 152, Line 18
Page 155, Line 4 through Page 156, Line 5
Page 156, Line 15 through Page 158, Line 13
Page 159, Line 4 through Page 159, Line 7
Page 159, Line 10 through Page 160, Line 14
Page 161, Line 10 through Page 171, Line 21
Page 171, Line 24 through Page 171, Line 25
Page 172, line 9 through Page 175, line 10
Page 177, Line 3 through Page 193, Line 24
Page 203, Line 25 through Page 206, Line 9

    11.     From the deposition of Ashok Katdare, August 22, 2002:

Page 5, Line 21 through Page 6, Line 10
Page 7, Line 8 through Line 10
Page 7, Line 14 through Page 14, Line 8
Page 15, Line 10 through Line 22
Page 17, Line 9 through Page 18, Line 20
Page 20, Line 14 through Page 21, Line 15
Page 22, Line 6 through Line 18
Page 22, Line 22 through Page 23, Line 8
Page 23, Line 21 through Page 24, Line 6
Page 24, Line 12 through Page 25, Line 6
Page 26, Line 9 through Page 29, Line 9
Page 29, Line 14 through Page 31, Line 6
Page 32, Line 1 through Line 11
Page 32, Line 23 through Page 33, Line 5
Page 33, Line 14 through Page 34, Line 7
Page 35, Line 22 through Page 39, Line 14
Page 41, Line 7 through Page 42, Line 18
Page 43, Line 3 through Page 49, Line 3
Page 49, Line 7 through Line 21
Page 50, Line 19 through Page 52, Line 22
Page 53, Line 8 through Page 54, Line 10
Page 54, Line 23 through page 67, Line 11
Page 68, Line 3 through Line 5
Page 69, Line 6 through Page 70, Line 8
Page 74, Line 1 through Line 24
Page 76, Line 23 through Page 77, Line 8

Page 78, Line 6 through Page 82, Line 9
Page 82, Line 18 through Line 22
Page 84, Line 1 through Line 21
Page 85, Line 5 through Page 87, Line 15
Page 88, Line 15 through Line 20
Page 90, Line 8 through Page 93, Line 13
Page 94, Line 16 through Page 95, Line 24
Page 99, Line 5 through Line 9
Page 99, Line 12 through Page 101, Line 1
Page 101, Line 14 through Page 102, Line 10
Page 102, Line 13 through Page 109, Line 10
Page 110, Line 7 through Line 16
Page 110, Line 23 through Line 24
Page 111, Line 4 through Line 7
Page 112, Line 4 through Page 114, Line 2
Page 114, Line 6 through Line 10
Page 114, Line 22 through Page 115, Line 1
Page 115, Line 4 through Line 12
Page 115, Line 15 through Page 118, Line 11
Page 118, Line 15 through Page 119, Line 14
Page 119, Line 24 through Page 120, Line 24
Page 121, Line 4 through Line 16
Page 121, Line 20 through Page 122, Line 3
Page 122, Line 7 through Page 123, Line 7
Page 123, Line 10 through Line 18
Page 123, Line 21 through Page 124, Line 11
Page 124, Line 23 through Page 129, Line 9
Page 130, Line 9 through Page 132, Line 6
Page 133, Line 1 through Line 4
Page 133, Line 10 through 19
Page 133, Line 22
Page 134, Line 12 through Line 15
Page 134, Line 23 through Page 136, Line 9
Page 137, Line 18 through Page 140, Line 9
Page 140, Line 15 through Page 141, Line 1
Page 142, Line 10 through Line 20
Page 145, Line 15 through Page 146, Line 14
Page 151, Line 5 through Page 153, Line 5
Page 154, Line 10 through Page 155, Line 12
Page 156, Line 22 through Page 157, Line 1
Page 158, Line 19 through Page 159, Line 8
Page 159, Line 12 through Line 14
Page 161, Line 10 through Page 162, Line 17
Page 173, Line 11 through Page 174, Line 4
Page 177, Line 13 through Page 179, Line 22
Page 180, Line 1 through Page 182, Line 10

Page 182, Line 12 through Line 13

     12.     From the deposition of Richard B. Mazess, September 17, 2002:

Page 5, Line 22 through Page 6, Line 3
Page 8, Line 8 through Line 12
Page 12, Line 25 through Page 13, Line 7
Page 14, Line 2 through Line 8
Page 16, Line 3 through Line 6
Page 18, Line 5 through Line 8
Page 18, Line 21 through Page 19, Line 6
Page 22, Line 20 through Page 23, Line 8
Page 26, Line 22 through Page 28, Line 12
Page 30, Line 5 through Page 31, Line 25
Page 32, Line 3 through Page 35, Line 7
Page 35, Line 12 through Page 37, Line 8
Page 37, Line 15 through Page 39, Line 13
Page 39, Line 17 through Page 42, Line 10
Page 42, Line 22 through Page 43, Line 25
Page 51, Line 6 through Page 52, Line 11
Page 52, Line 18 through 56, Line 11
Page 58, Line 5 through Line 15
Page 59, Line 1 through Page 62, Line 25
Page 64, Line 1 through Page 66, Line 18
Page 67, Line 8 through Page 69, Line 21
Page 70, Line 2 through Page 71, Line 13
Page 73, Line 9 through Line 12
Page 73, Line 23 through Page 74, Line 12
Page 74, Line 16 through Page 75, Line 9
Page 77, Line 4 through Page 81, Line 11
Page 81, Line 19 through Page 82, Line 17
Page 83, Line 8 through Page 84, Line 21
Page 87, Line 3 through Line 5
Page 87, Line 24 through Page 88, Line 13
Page 89, Line 7 through Page 90, Line 18
Page 91, Line 1 through Page 92, Line 3
Page 114, Line 25 through Page 116, Line 3
Page 116, Line 19 through Page 121, Line 5
Page 121, Line 15 through Page 123, Line 15
Page 123, Line 22 through Page 126, Line 15
Page 128, Line 8 through Page 129, Line 19
Page 132, Line 19 through 133, Line 7
Page 135, Line 14 through Line 20
Page 141, Line 17 through Page 142, Line 18
Page 143, Line 6 through Line 14
Page 144, Line 4 through Line 17
Page 151, Line 9 through Line 21

Page 153, Line 15 through Page 154, Line 6
Page 155, Line 22 through Page 157, Line 8
Page 167, Line 25 through Page 172, Line 11
Page 173, Line 10 through Line 21
Page 175, Line 23 through Page 180, Line 3
Page 189, Line 19 through Page 191, Line 8
Page 193, Line 16 through Page 195, Line 2
Page 203, Line 24 through Page 206, Line 9
Page 208, Line 20 through Page 209, Line 4.

       13.     From the deposition of John Orloff, October 10, 2002:

Page 1, Line 1 through Page 12, Line 8
Page 12, Line 11 through Page 19, Line 18
Page 20, Line 6 through Page 21, Line 12
Page 21, Line 16 through Page 21, Line 19
Page 22, Line 3 through Page 22, Line 7
Page 22, Line 10 through Page 22, Line 18
Page 22, Line 21 through Page 22, Line 25
Page 23, Line 3 through Page 23, Line 7
Page 23, Line 11 through Page 24, Line 13
Page 24, Line 16 through Page 25, Line 6
Page 25, Line 9 through Page 25, Line 18
Page 25, Line 20 through Page 26, Line 23
Page 27, Line 2 through Page 27, Line 14
Page 27, Line 19 through Page 29, Line 11
Page 29, Line 14 through Page 29, Line 17
Page 30, Line 5 through Page 32, Line 9
Page 32, Line 12 through Page 34, Line 8
Page 34, Line 18 through Page 34, Line 22
Page 34, Line 25 through Page 35, Line 17
Page 35, Line 21 through Page 38, Line 13
Page 38, Line 16 through Page 40, Line 12
Page 40, Line 15 through Page 41, Line 21
Page 41, Line 25 through Page 45, Line 9
Page 45, Line 13 through Page 45, Line 23
Page 45, Line 25 through Page 46, Line 12
Page 46, Line 14 through Page 47, Line 23
Page 48, Line 3 through Page 49, Line 2
Page 49, Line 5 through Page 53, Line 2
Page 53, Line 4 through Page 53, Line 22
Page 54, Line 2 through Page 58, Line 16
Page 58, Line 23 through Page 68, Line 6
Page 68, Line 9 through Page 69, Line 20
Page 69, Line 24 through Page 73, Line 12
Page 73, Line 15 through Page 74, Line 16

Page 75, Line 4 through Page 80, Line 10
Page 80, Line 15 through Page 80, Line 18
Page 80, Line 21 through Page 81, Line 9
Page 81, Line 11 through Page 82, Line 9
Page 82, Line 12 through Page 83, Line 15
Page 83, Line 18 through Page 84, Line 5
Page 84, Line 9 through Page 90, Line 17
Page 90, Line 19 through Page 91, Line 12
Page 91, Line 19 through Page 94, Line 20
Page 94, Line 22 through Page 95, Line 17
Page 95, Line 19 through Page 98, Line 18
Page 98, Line 20 through Page 99, Line 10
Page 99, Line 13 through Page 100, Line 3
Page 100, Line 5 through Page 101, Line 13
Page 101, Line 16 through Page 102, Line 15
Page 102, Line 19 through Page 102, Line 25
Page 103, Line 10 through Page 103, Line 13
Page 103, Line 16 through Page 104, Line 10
Page 104, Line 20 through Page 107, Line 4
Page 107, Line 8 through Page 109, Line 5
Page 109, Line 7 through Page 111, Line 17
Page 111, Line 24 through Page 112, Line 13
Page 112, Line 18 through Page 112, Line 24
Page 113, Line 3 through Page 113, Line 5
Page 113, Line 8 through Page 113, Line 12
Page 114, Line 2 through Page 115, Line 2
Page 115, Line 5 through Page 117, Line 16
Page 117, Line 20
Page 118, Line 11 through Page 121, Line 10
Page 121, Line 12 through Page 122, Line 16
Page 122, Line 18 through Page 123, Line 12
Page 123, Line 16 through Page 124, Line 4
Page 124, Line 9 through Page 125, Line 6
Page 125, Line 11 through Page 128, Line 10
Page 129, Line 9 through Page 129, Line 13
Page 129, Line 16 through Page 129, Line 23
Page 130, Line 2 through Page 131, Line 25
Page 132, Line 4 through Page 134, Line 19
Page 136, Line 1 through Page 136, Line 25
Page 139, Line 1 through Page 139, Line 25


14.     From the deposition of Chennekatu Peter, August 28, 2002:

Page 1, Line 1 through Page 2, Line 25
Page 5, Line 23 through Page 5, Line 25
Page 6, Line 3 through Page 15, Line 5

Page 16, Line 2 through Page 17, Line 7
Page 17, Line 16 through Page 18, Line 21
Page 19, Line 2 through Page 19, Line 3
Page 19, Line 5 through Page 20, Line 22
Page 20, Line 24 through Page 20, Line 25
Page 21, Line 8 through Page 21, Line 9
Page 21, Line 11 through Page 24, Line 9
Page 24, Line 11 through Page 24, Line 15
Page 24, Line 17 through Page 30, Line 5
Page 30, Line 7
Page 30, Line 9 through Page 30, Line 19
Page 30, Line 21 through Page 31, Line 5
Page 31, Line 7 through Page 32, Line 1
Page 32, Line 3
Page 32, Line 6 through Page 33, Line 2
Page 33, Line 4 through Page 34, Line 24
Page 35, Line 1 through Page 36, Line 17
Page 36, Line 19
Page 36, Line 21 through Page 37, Line 19
Page 37, Line 21 through Page 39, Line 24
Page 40, Line 9 through Page 41, Line 5
Page 41, Line 7 through Page 42, Line 4
Page 42, Line 12 through 43, Line 9
Page 43, Line 16 through Page 43, Line 22
Page 43, Line 24 through Page 45, Line 3
Page 45, Line 9 through Page 45, Line 11
Page 45, Line 13 through Page 46, Line 12
Page 46, Line 14 through Page50, Line 17
Page 50, Line 20 through Page 50, Line 25
Page 51, Line 2 through Page 52, Line 14
Page 52, Line 17
Page 52, Line 19 through Page 52, Line 20
Page 52, Line 22 through Page 52, Line 23
Page 53, Line 1 through Page 53, Line 2
Page 53, Line 5 through Page 63, Line 5
Page 63, Line 19 through Page 64, Line 25
Page 65, Line 7 through Page 65, Line 11
Page 65, Line 13 through Page 65, Line 15
Page 65, Line 17 through Page 68, Line 15
Page 68, Line 21 through Page 68, Line 25
Page 69, Line 11 through Page 70, Line 17
Page 70, Line 19 through Page 71, Line 14
Page 71, Line 16 through Page 71, Line 24
Page 72, Line 8 through Page 72, Line 13
Page 72, Line 15
Page 72, Line 22 through Page 73, Line 25

Page 74, Line 6 through Page 76, Line 2
Page 76, Line 4 through Page 76, Line 7
Page 76, Line 9 through Page 76, Line 10
Page 76, Line 12 through Page 76, Line 16
Page 76, Line 18 through Page 77, Line 13
Page 77, Line 16 through Page 77, Line 18
Page 77, Line 20 through Page 79, Line 24
Page 80, Line 4 through Page 80, Line 22
Page 80, Line 25 through Page 81, Line 7
Page 81, Line 17 through Page 82, Line 4
Page 82, Line 10 through Page 83, Line 4
Page 83, Line9 through Page 83, Line 21
Page 83, Line 24 through Page 84, Line 2
Page 84, Line 4 through Page 84, Line 15
Page 84, Line 17 through Page 84, Line 23
Page 84, Line 25 through Page 85, Line 3
Page 85, Line 5
Page 85, Line 7 through Page 86, Line 12
Page 86, Line 20 through Page 87, Line 1
Page 87, Line 13 through Page 87, Line 15
Page 87, Line 24 through Page 88, Line 6
Page 88, Line 12 through Page 88, Line 20
Page 88, Line 24 through Page 89, Line 3
Page 89, Line 5 through Page 89, Line 8
Page 89, Line 11 through Page 89, Line 13
Page 89, Line 15 through Page 89, Line 25
Page 90, Line 4 through Page 97, Line 2
Page 97, Line 4
Page 97, Line 7 through Page 103, Line 2
Page 103, Line 6 through Page 103, Line 10
Page 103, Line 12 through Page 103, Line 16
Page 103, Line 19
Page 103, Line 21 through Page 111, Line 2
Page 111, Line 10 through Page 111, Line 16
Page 111, Line 18 through Page 111, Line 25
Page 112, Line 6 through Page 112, Line 13
Page 112, Line 15 through Page 113, Line 6
Page 113, Line 8 through Page 113, Line 20
Page 113, Line 22 through Page 114, Line 24
Page 115, Line 1 through Page 115, Line 9
Page 115, Line 11 through Page 117, Line 7
Page 117, Line 9 through Page 117, Line 12
Page 117, Line 14 through Page 117, Line 15
Page 117, Line 17 through Page 117, Line 24
Page 118, Line 1 through Page 118, Line 6
Page 118, Line 8 through Page 118, Line 9

Page 118, Line 11 through Page 119, Line 2
Page 119, Line 5 through Page 119, Line 9
Page 119, Line 11 through Page 119, Line 12
Page 119, Line 14 through Page 119, Line 16
Page 119, Line 18 through Page 119, Line 19
Page 119, Line 22 through Page 119, Line 24
Page 120, Line 1 through Page 120, Line 11
Page 120, Line 16 through Page 120, Line 17
Page 120, Line 19 through Page 121, Line 12
Page 121, Line 25 through Page 122, Line 1
Page 122, Line 3 through Page 122, Line 13
Page 123, Line 1 through Page 123, Line 9
Page 123, Line 11
Page 123, Line 13 through Page 124, Line 5
Page 124, Line 7 through Page 124, Line 10
Page 124, Line 12 through Page 126, Line 11
Page 126, Line 13
Page 126, Line 15 through Page 126, Line 18
Page 126, Line 20 through Page 126, Line 21
Page 126, Line 23 through Page 127, Line 1
Page 127, Line 4
Page 127, Line 6 through Page 127, Line 19
Page 127, Line 22 through Page 128, Line 2
Page 128, Line 4 through Page 128, Line 22
Page 129, Line 1 through Page 129, Line 17
Page 129, Line 20 through Page 129, Line 1
Page 130, Line 3 through Page 130, Line 12
Page 130, Line 14 through Page 132, Line 1
Page 132, Line 3 through Page 132, Line 4
Page 132, Line 6 through Page 132, Line 11
Page 132, Line 13 through Page 132, Line 18
Page 132, Line 20 through Page 132, Line 22
Page 133, Line 6 through Page 133, Line 11
Page 133, Line 13 through Page 135, Line 16
Page 135, Line 18 through Page 135, Line 20
Page 135, Line 22 through Page 137, Line 23
Page 138, Line 1 through Page 138, Line 2
Page 138, Line 4 through Page 139, Line 10
Page 139, Line 12 through Page 139, Line 13
Page 139, Line 15 through Page 139, Line 25
Page 140, Line 12 through Page 142, Line 10
Page 142, Line 12 through Page 144, Line 22
Page 145, Line 5 through Page 149, Line 14
Page 149, Line 16 through Page 151, Line 18
Page 152, Line 1 through Page 152, Line 5
Page 152, Line 7 through Page 152, Line 8

Page 152, Line 10 through Page 153, Line 17
Page 153, Line 19 through Page 155, Line 23
Page 155, Line 25 through page 156, Line 9
Page 156, Line 11 through Page 156, Line 20
Page 156, Line 22 through Page 157, Line 1
Page 157, Line 3 through Page 157, Line 14
Page 157, Line 16 through Page 157, Line 17
Page 157, Line 19 through Page 157, Line 22
Page 157, Line 24 through Page 158, Line 3
Page 158, Line 5 through Page 158, Line 25
Page 159, Line 2 through Page 159, Line 4
Page 159, Line 6 through Page 160, Line 4
Page 160, Line 6 through Page 160, Line 9
Page 160, Line 18 through Page 161, Line 8
Page 161, Line 12 through Page 161, Line 14
Page 161, Line 16 through page 162, Line 2
Page 162, Line 4 through Page 163, Line 25
Page 164, Line 17 through Page 165, Line 11
Page 165, Line 17 through Page 165, Line 18
Page 165, Line 20 through Page 165, Line 25
Page 166, Line 14 through Page 168, Line 22
Page 168, Line 24 through Page 171, Line 7
Page 171, Line 9 through Page 171, Line 14
Page 171, Line 19 through Page 172, Line 14
Page 172, Line 16 through Page 174, Line 13
Page 175, Line 5 through Page 175, Line 15
Page 175, Line 19 through Page 175, Line 23
Page 175, Line 25 through Page 176, Line 1
Page 176, Line 3 through Page 176, Line 19
Page 176, Line 21 through Page 180, Line 21
Page 180, Line 23 through Page 184, Line 2
Page 184, Line 4
Page 184, Line 6 through Page 185, Line 20
Page 185, Line 22 through Page 185, Line 23
Page 185, Line 25 through Page 186, Line 8
Page 186, Line 10 through Page 188, Line 2
Page 188, Line 4
Page 188, Line 6 through Page 188, Line 17
Page 189, Line 1 through Page 190, Line 19


15.     From the deposition of Chennekatu Peter, August 29, 2002:

Page 195, Line 6 through Page 195, Line 20
Page 195, Line 24
Page 196, Line 1 through Page 196, Line 14
Page 196, Line 16 through Page 196, Line 19

Page 196, Line 21
Page 196, Line 23 through Page 197, Line 1
Page 197, Line 3 through Page 198, Line 8
Page 198, Line 10
Page 198, Line 12 through Page 199, Line 20
Page 199, Line 22
Page 199, Line 24
Page 200, Line 1
Page 200, Line 3 through Page 201, Line 18
Page 201, Line 20 through Page 202, Line 5
Page 202, Line 9 through Page 202, Line 11
Page 202, Line 13 through Page 204, Line 3
Page 204, Line 5 through Page 206, Line 2
Page 206, Line 9 through Page 206, Line 23
Page 206, Line 25 through Page 207, Line 1
Page 207, Line 3 through Page 209, Line 16
Page 209, Line 18
Page 209, Line 20 through Page 209, Line 22
Page 209, Line 24 through Page 210, Line 5
Page 210, Line 7 through Page 213, Line 4
Page 213, Line 6 through Page 217, Line 21
Page 217, Line 23 through Page 217, Line 24
Page 218, Line 1 through Page 221, Line 21
Page 221, Line 23 through Page 223, Line 16
Page 223, Line 18 through Page 227, Line 8
Page 227, Line 10 through Page 227, Line 14
Page 227, Line 18 through Page 228, Line 5
Page 228, Line 7
Page 228, Line 9
Page 228, Line 11
Page 228, Line 13 through Page 228, Line 14
Page 228, Line 19 through Page 228, Line 20
Page 228, Line 22 through Page 228, Line 24
Page 229, Line 16 through Page 233, Line 7
Page 233, Line 9 through Page 233, Line 10
Page 233, Line 12 through Page 233, Line 15
Page 233, Line 17
Page 233, Line 19 through Page 234, Line 11
Page 234, Line 13 through Page 234, Line 14
Page 234, Line 16 through Page 234, Line 20
Page 234, Line 22 through Page 235, Line 3
Page 235, Line 5 through Page 235, Line 14
Page 235, Line 16 through Page 235, Line 20
Page 235, Line 22 through Page 235, Line 23
Page 235, Line 25
Page 236, Line 11 through Page 239, Line 4

Page 240, Line 3 through Page 247, Line 2
Page 247, Line 4
Page 247, Line 6 through Page 247, Line 12
Page 247, Line 14 through Page 247, Line 22
Page 247, Line 25 through Page 248, Line 2
Page 248, Line 4 through Page 249, Line 3
Page 249, Line 5 through Page 250, Line 11
Page 250, Line 13 through Page 250, Line 21
Page 251, Line 11 through Page 256, Line 4
Page 256, Line 6 through Page 256, Line 9
Page 256, Line 11 through Page 258, Line 6
Page 258, Line 8
Page 258, Line 10 through Page 258, Line 25
Page 259, Line 2
Page 259, Line 4 through Page 261, Line 25
Page 262, Line 2 through Page 262, Line 5
Page 262, Line 7 through Page 264, Line 14
Page 264, Line 16


      16.      From the deposition of Anthony D. Sabatelli, July 12, 2002:

Page 7, Line 14 through Page 26, Line 4
Page 26, Line 12 through Page 27, Line 1
Page 27, Line 12 through Page38, Line 9
Page 38, Line 14 through Page 39, Line 18
Page 39, Line 24 through Page 40, Line 19
Page 41, Line 8 through Page 45, Line 5
Page 45, Line 10 through Page 46, Line 13
Page 46, Line 15 through Page 52, Line 20
Page 53, Line 1 through Line 11
Page 53, Line 18 through Page 58, Line 14
Page 58, Line 24 through Page 68, Line 6
Page 68, Line 19 through Line 25
Page 69, Line 5 through Line 9
Page 69, Line 20 through Page 72, Line 17
Page 72, Line 25 through Page 74, Line 12
Page 74, Line 16 through Page 76, Line 17
Page 76, Line 21 through Page 77, Line 11
Page 78, Line 6 through Page 82, Line 15
Page 82, Line 23 through Page 84, Line 2
Page 84, Line 9 through Page 87, Line 4
Page 87, Line 11 through Page 88, Line 13
Page 88, Line 15 through Page 93, Line 14
Page 93, Line 17 through Page 94, Line 11
Page 94, Line 13 through Page 96, Line 14
Page 97, Line 1 through Page 100, Line 15

Page 100, Line 18 through Page 101, Line 16
Page 101, Line 23
Page 102, Line 3 through Page 103, Line 24
Page 104, Line 11 through Page107, Line 20
Page 108, Line 20 through Page112, Line 17
Page 112, Line 20 through Page 113, Line 3
Page 113 Line 8 through Line 20
Page 115, Line 13 through Page 118, Line 15
Page 118, Line 22 through Line 23
Page 119, Line 1 through Page 121, Line 12
Page 121, Line 16 through 122, Line 15
Page 122, Line 19 through Page126, Line 8
Page 127, Line 23 through Page 128, Line 17
Page 129, Line 3 through Page 130, Line 11
Page 130, Line 15 through Page131, Line 7
Page 131, Line 15 through Page 133, Line 9
Page134, Line 12 through Line 14
Page 135, Line 9 through Line 21
Page 136, Line 7 through Line 18
Page 136, Line 21 through Page138, Line 20
Page 138, Line 23 through Page 139, Line 12
Page 139, Line 15 through Page141, Line 20
Page 142, Line 1 through Page 143, Line 9
Page 145, Line 25 through Page 146, Line 8
Page 149, Line 10 through Page 150, Line 13
Page 150, Line 22 through Page 153, Line 18
Page 154, Line 1 through Line 24
Page 155, Line 1 through Line 23
Page 155, Line 25 through Page 156, Line 3
Page 156, Line 7 through Page 157, Line 2
Page 157, Line 5 through Line 7
Page 157, Line 13 through Line 25
Page 162, Line 1 through Page 163, Line 2
Page 163, Line 15 through Line 18
Page 164, Line 1 through Line 16
Page 164, Line 19 through Line 21
Page 165, Line 12 through Line 18
Page 165, Line 21 through Page 168, Line 24
Page 169, Line 2 through Line 9
Page 170, Line 12 through Page 172, Line 4
Page 173, Line 19 through Page174, Line 10
Page 174, Line 23 through Page 175, Line 17
Page 176, Line 3 through Line 12
Page 176, Line 14 through Page 177, Line 3
Page 177, Line 8 through Line 24
Page 178, Line 9 through Line 16

Page 178, Line 20 through Line 23
Page 179, Line 2 through Page 179, Line 6
Page 180, Line 6 through Line 16
Page 181, Line 1
Page 181, Line 22 through Page 182, Line 1
Page 182, Line 25 through Page 185, Line 14
Page 185, Line 17 through Page 187, Line 16
Page 188, Line 2 through Page190, Line 14
Page 191, Line 8 through Page 193, Line 22
Page 194, Line 24 through Page 196, Line 20
Page 198, Line 9 through Page 199, Line 4
Page 200, Line 20 through Page 201, Line 21
Page 203, Line 20 through Page 204, Line 2

      17.     From Day 2 of the deposition of Anthony Sabatelli, September 5, 2002:

Page 213, Line 19 through Page 214, Line 17
Page 214, Line 21 through Page 218, Line 24
Page 219, Line 18 through Line 25
Page 220, Line 4 through Page 228, Line 19
Page 228, Line 22 through Page 231, Line 8
Page 231, Line 19 through Page 233, Line 3
Page 233, Line 23 through Line 25
Page 234, Line 4 through Page 240, Line 8
Page 241, Line 20 through Page 257, Line 7
Page 257, Line 24 through Page 259, Line 24
Page 260, Line 21 through Page 263, Line 25
Page 264, Line 8 through Line 17
Page 264, Line 20 through Page 269, Line 24
Page 270, Line 21 through Page 274, Line 24
Page 275, Line 7 through Page 278, Line 6
Page 279, Line 5 through Page 283, Line 23
Page 284, Line 23 through Page 301, Line 7
Page 302, Line 3 through Page 307, Line 23
Page 308, Line 7 through Page 309, Line 4
Page 309, Line 18 through Page 310, Line 6
Page 310, Line 11 through Page 311, Line 11
Page 312, Line 6 through Page 314, Line 11
Page 314, Line 19 through Page 316, Line 4
Page 316, Line 11 through Page 319, Line 17
Page 320, Line 7 through Page 323, Line 4
Page 324, Line 15 through Page 326, Line 22
Page 327, Line 2 through Page 328, Line 19
Page 329, Line 2 through Page 333, Line 24
Page 334, Line 3 through Page 340, Line 21
Page 348, Line 8 through Line 19

Page 350, Line 3 through Page 351, Line 15
Page 353, Line 4 through Page 354, Line 22
Page 361, Line 20 through Page 362, Line 24
Page 363, Line 20 through Page 367, Line 5
Page 368, Line 2 through Page 369, Line 12
Page 370, Line 4 through Page 374, Line 2
Page 375, Line 5 through Line 20
Page 375, Line 22 through Page 377, Line 16
Page 377, Line 22 through Page 387, Line 9
Page 387, Line 14 through Page 391, Line 5
Page 391, Line 15 through Line 25
Page 392, Line 17 through Page 397, Line 3

18.    From the deposition of Arthur C. Santora, II, September 17, 2002:

Page 1, Line 1 through Page 47, Line 6
Page 47, Line 15 through Page 47, Line 20
Page 48, Line 4 through Page 53, Line 3
Page 53, Line 9 through Page 58, Line 19
Page 59, Line 8 through Page 61, Line 21
Page 62, Line 3 through Page 64, Line 19
Page 64, Line 22 through Page 64, Line 23
Page 65, Line 2 through Page 66, Line 3
Page 66, Line 7 through Page 67, Line 25
Page 68, Line 3
Page 68, Line 7 through Page 68, Line 13
Page 68, Line 16 through Page 69, Line 18
Page 70, Line 22 through Page 72, Line 19
Page 74, Line 3 through Page 74, Line 6
Page 74, Line 11 through Pave 77, Line 3
Page 77, Line 15 through Page 79, Line 4
Page 91, Line 4 through Page 95, Line 6
Page 96, Line 19 through Page 103, Line 8
Page 103, Line 11 through Page 105, Line 9
Page 105, Line 22 through Page 108, Line 5
Page 108, Line 10 through Page 110, Line 7
Page 110, Line 11 through Page 110, Line 14
Page 111, Line 23 through Page 115, Line 2
Page 115, Line 24 through Page 118, Line 12
Page 119, Line 8 through Page 121, Line 11
Page 121, Line 17 through Page 124, Line 23
Page 126, Line 2 through Page 127, Line 7
Page 127, Line 15 through Page 136, Line 21
Page 141, Line 22 through Page 148, Line 25
Page 150, Line 7 through Page 178, Line 22
Page 179, Line 3 through Page 179, Line 9
Page 179, Line 14 through Page 179, Line 23

Page 179, Line 25
Page 180, Line 5 through Page 181, Line 25
Page 182, Line 4 through Page 182, Line 7
Page 182, Line 12 through Page 182, Line 23
Page 183, Line 9 through Page 186, Line 22
Page 187, Line 18 through Page 190, Line 7
Page 191, Line 16 through Page 191, Line 23
Page 192, Line 2 through Page 194, Line 20
Page 199, Line 9 through Page 200, Line 7
Page 200, Line 18 through Page 212, Line 24
Page 213, Line 2
Page 213, Line 5 through Page 223, Line 4
Page 223, Line 18 through Page 228, Line 15
Page 229, Line 4 through Page 230, Line 20
Page 231, Line 8 through Page 232, Line 12
Page 233, Line 1 through Page 250, Line 10
Page 251, Line 1 through Page 251, Line 25
Page 253, Line 1 through Page 253, Line 25

19.     From the deposition of Arthur C. Santora, II, September 18, 2002:

Page 254, Line 1 through Page 278, Line 9
Page 279, Line 1 through Page 286, Line 5
Page 286, Line 21 through Page 287, Line 13
Page 287, Line 16 through Page 289, Line 22
Page 290, Line 8 through Page 292, Line 25
Page 293, Line 5 through Page 294, Line 19
Page 295, Line 17 through Page 303, Line 14
Page 303, Line 19 through Page 303, Line 22
Page 304, Line 9 through Page 304, Line 19
Page 304, Line 24 through Page 305, Line 4
Page 307, Line 9 through Page 307, Line 11
Page 307, Line 16 through Page 307, Line 25
Page 308, Line 5 through Page 308, Line 14
Page 308, Line 19 through Page 309, Line 17
Page 309, Line 21 through Page 310, Line 6
Page 310, Line 10 through Page 310, Line 12
Page 310, Line 16 through Page 310, Line 25
Page 311, Line 7 through Page 311, Line 10
Page 311, Line 15 through Page 311, Line 23
Page 312, Line 5 through Page 312, Line 11
Page 312, Line 15 through Page 312, Line 18
Page 313, Line 6 through Page 313, Line 10
Page 316, Line 21 through Page 319, Line 25
Page 320, Line 19 through Page 320, Line 22
Page 320, Line 24 through Page 322, Line 4

Page 322, Line 7 through Page 325, Line 21
Page 326, Line 14 through Page 327, Line 9
Page 327, Line 12 through Page 327, Line 21
Page 327, Line 24 through Page 329, Line 11
Page 329, Line 25 through Page 330, Line 15
Page 332, Line 18 through Page 334, Line 11
Page 335, Line7 through Page 338, Line 6
Page 338, Line 20 through Page 346, Line 13
Page 347, Line 2 through Page 347, Line 10
Page 347, Line 20 through Page 348, Line 19
Page 349, Line 15 through Page 358, Line 7
Page 358, Line 14 through Page 359, Line 19
Page 360, Line 13 through age 386, Line 7
Page 386, Line 14 through Page 387, Line 23
Page 388, Line 2 through Page 388, Line 12
Page 388, Line 18 through Page 404, Line 20
Page 406, Line 7 through Page 445, Line 20
Page 445, Line 23 through Page 450, Line 4
Page 450, Line 24 through Page 476, Line 7
Page 476, Line 10 through Page 476, Line 17
Page 476, Line 20 through Page 476, Line 21
Page 476, Line 23 through Page 477, Line 2
Page 477, Line 5 through Page 477, Line 15
Page 478, Line 9 through Page 478, Line 16
Page 478, Line 19 through Page 479, Line 5
Page 479, Line 8 through Page 479, Line 20
Page 479, Line 22
Page 481, Line 1 through Page 481, Line 25
Page 483, Line 1 through Page 483, Line 25

20.    From the deposition of Louis M. Sherwood, June 26, 2002:

Page 1, Line 1 through Page 7, Line 5
Page 7, Line 12 through Page 9, Line 6
Page 9, Line 12 through Page 12, Line 7
Page 12, Line 9 through Page 12, Line 16
Page 12, Line 18 through Page 13, Line 4
Page 13, Line 13 through Page 13, Line 18
Page 13, Line 22 through Page 14, Line 16
Page 14, Line 19 through Page 15, Line 20
Page 15, Line 23 through Page 16, Line 3
Page 16, Line 6 through Page 17, Line 8
Page 17, Line 16 through Page 18, Line 14
Page 18, Line 20 through Page 18, Line 22
Page 19, Line 19 through Page 23, Line 12
Page 23, Line 15 through Page 24, Line 3
Page 24, Line 6 through Page 24, Line 13

Page 24, Line 16 through Page 24, Line 18
Page 24, Line 22 through Page 25, Line 17
Page 25, Line 23 through Page 26, Line 28
Page 26, Line 12 through Page 26, Line 22
Page 26, Line 25 through Page 27, Line 22
Page 27, Line 25 through Page 28, Line 10
Page 28, Line 17 through Page 29, Line 8
Page 29, Line 10 through Page 29, Line 19
Page 29, Line 24 through Page 32, Line 8
Page 32, Line 11 through Page 32, Line 12
Page 32, Line 15 through Page 32, Line 20
Page 32, Line 23
Page 32, Line 25 through Page 33, Line 3
Page 33, Line 6 through Page 33, Line 9
Page 33, Line 13 through Page 34, Line 23
Page 34, Line 25 through Page 35, Line 20
Page 35, Line 23 through Page 37, Line 4
Page 37, Line 11 through Page 39, Line 16
Page 39, Line 19 through Page 39, Line 25
Page 40, Line 4 through Page 40, Line 14
Page 40, Line 17 through Page 40, Line 18
Page 40, Line 22 through Page 41, Line 16
Page 42, Line 3 through Page 42, Line 6
Page 42, Line 9 through Page 44, Line 16
Page 44, Line 19 through Page 44, Line 23
Page 45, Line 2 through Page 45, Line 15
Page 46, Line 15 through Page 47, Line 3
Page 47, Line 6 through Page 48, Line 23
Page 49, Line 2 through Page 49, Line 12
Page 49, Line 20 through Page 49, Line 25
Page 50, Line 2 through Page 50, Line 22
Page 51, Line 6 through Page 52, Line 11
Page 52, Line 15 through Page 52, Line 20
Page 53, Line 14 through Page 54, Line 17
Page 54, Line 20 through Page 55, Line 2
Page 55, Line 5 through Page 56, Line 3
Page 56, Line 6 through Page 56, Line 16
Page 56, Line 22 through Page 58, Line 18
Page 58, Line 21 through Page 65, Line 11
Page 65, Line 14 through Page 68, Line 18
Page 68, Line 21 through Page 73, Line 10
Page 73, Line 18 through Page 74, Line 18
Page 74, Line 23 through Page 75, Line 14
Page 75, Line 17 through Page 75, Line 25
Page 76, Line 4 through Page 76, Line 13
Page 76, Line 24 through Page 78, Line 6

Page 78, Line 8 through Page 78, Line 19
Page 79, Line 3 through Page 79, Line 8
Page 79, Line 12 through Page 80, Line 8
Page 80, Line 11
Page 80, Line 18 through Page 83, Line 25
Page 84, Line 5 through Page 84, Line 8
Page 84, Line 11 through Page 85, Line 6
Page 86, Line 21 through Page 88, Line 7
Page 88, Line 11 through Page 88, Line 16
Page 89, Line 4 through Page 89, Line 6
Page 89, Line 16 through Page 89, Line 25
Page 90, Line 5 through Page 91, Line 12
Page 91, Line 24 through Page 92, Line 12
Page 92, Line 15 through Page 93, Line 2
Page 94, Line 20 through Page 96, Line 11
Page 96, Line 14 through Page 98, Line 22
Page 100, Line 2 through Page 100, Line 8
Page 100, Line 12 through Page 102, Line 5
Page 102, Line 13 through Page 102, Line 19
Page 103, Line 19 through Page 104, Line 14
Page 104, Line 17 through Page 104, Line 21
Page 105, Line 13 through Page 105, Line 22
Page 105, Line 24 through Page 106, Line 19
Page 107, Line 3 through Page 107, Line 6
Page 107, Line 9 through Page 107, Line 12
Page 108, Line 3 through Page 108, Line 9
Page 108, Line 16 through Page 109, Line 7
Page 109, Line 12 through Page 110, Line 12
Page 110, Line 19 through Page 112, Line 2
Page 112, Line 18 through Page 113, Line 19
Page 113, Line 22 through Page 115, Line 13
Page 115, Line 16 through Page 117, Line 21
Page 117, Line 24 through Page 118, Line 11
Page 118, Line 14 through Page 118, Line 18
Page 118, Line 23 through Page 118, Line 25
Page 119, Line 3 through Page 120, Line 11
Page 120, Line 14 through Page 121, Line 24
Page 122, Line 3 through Page 123, Line 19
Page 124, Line 4 through Page 124, Line 19
Page 124, Line 22 through 125, Line 8
Page 125, Line 10 through Page 125, Line 23
Page 125, Line 25 through Page 126, Line 21
Page 126, Line 21 through Page 127, Line 10
Page 127, Line 13 through Page 127, Line 24
Page 128, Line 3 through Page 128, Line 12
Page 128, Line 15 through Page 128, Line 19

Page 128, Line 21 through Page 129, Line 3
Page 129, Line 6 through Page 130, Line 4
Page 130, Line 17 through Page 132, Line 8
Page 132, Line 14 through Page 132, Line 23
Page 133, Line 3 through Page 135, Line 9
Page 135, Line 13 through Page 136, Line 5
Page 136, Line 17 through Page 141, Line 15
Page 141, Line 18 through Page 142, Line 8
Page 142, Line 11 through Page 142, Line 16
Page 142, Line 19 through Page 143, Line 7
Page 143, Line 10 through Page 143, Line 16
Page 143, Line 19 through Page 143, Line 21
Page 143, Line 24
Page 144, Line 2 through Page 146, Line 2
Page 146, Line 4 through Page 147, Line 17
Page 147, Line 20 through Page 152, Line 18
Page 152, Line 21 through Page 155, Line 5
Page 155, Line 8 through Page 155, Line 24
Page 156, Line 3 through Page 156, Line 18
Page 156, Line 20 through Page 157, Line 3
Page 157, Line 7 through Page 158, Line 23
Page 159, Line 2 through Page 159, Line 7
Page 159, Line 10 through Page 159, Line 12
Page 159, Line 14 through Page 159, Line 23
Page 160, Line 6 through Page 160, Line 8
Page 160, Line 19 through Page 165, Line 13
Page 165, Line 24 through Page 166, Line 3
Page 166, Line 3 through Page 167, Line 18
Page 167, Line 21 through Page 169, Line 7
Page 169, Line 10 through Page 169, Line 17
Page 169, Line 25 through Page 170, Line 2
Page 170, Line 5
Page 170, Line 13 through Page 170, Line 19
Page 170, Line 22
Page 171, Line 9 through Page 173, Line 20
Page 173, Line 23 through Page 176, Line 20
Page 177, Line 4 through Page 177, Line 13
Page 177, Line 19 through Page 179, Line 24
Page 180, Line 3 through Page 180, Line 11
Page 180, Line 14 through Page 204, Line 13
Page 204, Line 18 through Page 205, Line 2
Page 205, Line 13 through Page 205, Line 17
Page 205, Line 22 through Page 208, Line 17
Page 209, Line 7 through Page 209, Line 16
Page 209, Line 19 through Page 210, Line 13
Page 210, Line 16 through Page 211, Line 16

Page 211, Line 19 through Page 212, Line 4
Page 212, Line 7 through Page 212, Line 14
Page 212, Line 17 through Page 212, Line 24
Page 213, Line 3 through Page 213, Line 6
Page 213, Line 9 through Page 213, Line 13
Page 214, Line 2 through Page 214, Line 12
Page 214, Line 16 through Page 215, Line 9
Page 215, Line 11 through Page 216, Line 23
Page 217, Line 2 through Page 218, Line 4
Page 218, Line 7 through Page 223, Line 7
Page 223, Line 23 through Page 225, Line 24
Page 226, Line 3 through Page 231, Line 22
Page 231, Line 25 through Page 233, Line 11
Page 233, Line 14 through Page 235, Line 8
Page 235, Line 11 through Page 237, Line 19
Page 237, Line 22 through Page 238, Line 2
Page 238, Line 5 through Page 238, Line 15
Page 238, Line 18 through Page 239, Line 2
Page 239, Line 5 through Page 239, Line 13
Page 239, Line 21 through Page 240, Line 3
Page 243, Line 1 through Page 244, Line 25

21.    From the deposition of David Weissburg, August 14, 2002:

Page 1, Line 1 through Page 5, Line 17
Page 5, Line 23 through Page 6, Line 13
Page 6, Line 23 through Page 8, Line 15
Page 8, Line 20 through Page 13, Line 12
Page 13, Line 15
Page 13, Line 17 through Page 15, Line 16
Page 15, Line 21 through Page 15, Line 24
Page 16, Line 5 through Page 17, Line 14
Page 17, Line 17 through Page 18, Line 7
Page 18, Line 13 through Page 19, Line 5
Page 19, Line 12 through Page 20, Line 6
Page 20, Line 9 through Page 26, Line 22
Page 26, Line 25
Page 27, Line 2 through Page 27, Line 12
Page 27, Line 15 through Page 29, Line 22
Page 29, Line 24 through Page 32, Line 6
Page 32, Line 10 through Page 33, Line 14
Page 33, Line 17 through Page 33, Line 24
Page 34, Line 1 through Page 34, Line 3
Page 34, Line 6 through Page 34, Line 12
Page 34, Line 14 through Page 34, Line 19
Page 34, Line 24 through Page 35, Line 9
Page 35, Line 14 through Page 36, Line 11

Page 36, Line 15 through Page 37, Line 22
Page 38, Line 9 through Page 38, Line 17
Page 38, Line 20 through Page 39, Line 6
Page 39, Line 11 through Page 39, Line 17
Page 39, Line 20 through Page 39, Line 24
Page 40, Line 1 though Page 40, Line 15
Page 40, Line 20 through Page 40, Line 22
Page 40, Line 25
Page 41, Line 2 through Page 42, Line 20
Page 42, Line 23 through Page 43, Line 4
Page 43, Line 6 through Page 43, Line 19
Page 43, Line 22
Page 43, Line 24 through Page 43, Line 25
Page 44, Line 3
Page 44, Line 5 through Page 44, Line 16
Page 59, Line 20 through Page 61, Line 1
Page 63, Line 22 through Page 64, Line 15
Page 69, Line 8 through Page 69, Line 19
Page 74, Line 1 through Page 75, Line 25
.

    22.    From the deposition of John Yates, January 18, 2006:

Page 3, Line 14 through Page 3, Line 16
Page 4, Line 6  through Page 4, Line 12
Page 5, Line 15 through Page 5, Line 20
Page 7, Line 5  through Page 7, Line 11
Page 9, Line 23 through Page 10, Line 1
Page 10, Line 5 through Page 12, Line 10
Page 13, Line 22 through Page 14, Line 9
Page 14, Line 19 through Page 19, Line 16
Page 19, Line 19 through Page 20, Line 6
Page 27, Line 6 through Page 28, Line 7
Page 28, Line 15 through Page 30,Line 14
Page 31, Line 1 through Page 32, Line 10
Page 32, Line 21 through Page 33, Line 8
Page 34, Line 1 through Page 34, Line 4
Page 34, Line 8 through Page 34, Line 15
Page 34, Line 19 through Page 36, Line 22
Page 37, Line 2 through Page 39 Line 2
Page 39, Line 6 through Page 41, Line 8
Page 41, Line 12 through Page 44, Line 3
Page 44  Line 9 through Page 44, Line 16
Page 44, Line 18 through Page 45, Line 11
Page 48, Line 5 through Page 48, Line 19

    23.    From the deposition of John Yates, September 11, 2002:

Page 1, Line 1 through Page 8, Line 22
Page 10, Line 8 through Page14, Line 5
Page 15, Line 13 through Page 19, Line 15
Page 24, Line 1 through Page 48, Line 19
Page 48, Line 24 through Page 50, Line 3
Page 50, Line 12 through Page 53, Line 9
Page 53, Line 16 through Page 57, Line 3
Page 64, Line 24 through Page 65, Line 16
Page 71, Line 22 through Page 73, Line 9
Page 74, Line 7 through Page 74, Line 21
Page 79, Line 21 through Page 81, Line 8
Page 86, Line 12 through Page 86, Line 16
Page 94, Line 13, through Page 95, Line 4
Page 95, Line 19 through Page 95, Line 23
Page 102, Line 7 through Page 103, Line 6
Page 106, Line 14 through Page 107, Line 3
Page 113, Line 10 through Page 113, Line 24
Page 118, Line 19 through Page 119, Line 5
Page 120, Line 5 through Page 120 Line 10
Page 124, Line 3 through Page 124, Line 13
Page 127, Line  9 through Page 128, Line 20
Page 130, Line 10 through Page 133, Line 20
Page 134, Line 10 through Page 134, Line 24
Page 136, Line 3 through Page 138, Line 7
Page 141, Line 5 through Page 142, Line 8
Page 142, Line 22 through Page 142, Line 24
Page 147, Line10 through Page 148, Line 18
Page 151, Line 5 through Page 151, Line 25
Page 152, Line 19 through Page 161, Line 3
Page 162, Line 2 through Page 163, Line 10
Page 163, Line 19 through Page 164, Line 3
Page 175, Line 20 through Page 188, Line 4
Page 188, Line 29 through Page 194, Line 7
Page 195, Line 18 through Page 196, Line 13
Page 199, Line 8 through Page 200, Line 10
Page 201, Line 6 through Page 203, Line 12
Page 205, Line 21 through Page 206, Line 17
Page 208, Line 15 through Page 213, Line 12
Page 216, Line 18 through Page 217, Line 21

24.     From the deposition of John Yates, October 3, 2002:

Page 1, Line 1 through Page 2, Line 25
Page 8, Line 11 through Page 16, Line 20
Page 17, Line 13 through Page 21, Line 5
Page 25, Line 15 through Page 30, Line 33

Page 34, Line 7 through Page 35, Line 20
Page 36, Line 23 through Page 44, Line 5
Page 44, Line 14 through Page 51, Line 17
Page 54, Line 25 through Page 61, Line 23
Page 62, Line 16 through Page 68, Line 9
Page 73, Line 3 through Page 76, Line 3
Page 78, Line 22 through Page 80, Line 4
Page 81, Line 3 through Page 82, Line 23
Page 83, Line 25 through Page 92, Line 9
Page 92, Line 22 through Page 100, Line 13
Page 101, Line 22 through Page 101, Line 25
Page 102, Line 5 through Page 102, Line 11
Page 105, Line 9 through Page 105, Line 15
Page 106 Line 24 through Page 107, Line 2
Page 116, Line 14 through Page 124, Line 3
Page 129, Line 14 through Page 130, Line 3
Page 130, Line 8 through Page 130, Line 13
Page 130, Line 22 through Page 138, Line 15
Page 138, Line 21 through Page 139, Line 8
Page 139, Line 12 through Page 140, Line 19
Page 140, Line 21 through Page 145, Line 8
Page 145, Line 13 through Page 147, Line 10
Page 147, Line 16 through Page 147, Line 22
Page 148, Line 10 through Page 155, Line 11
Page 157, Line 14 through Page 159, Line 23
Page 160, Line 10 through Page 162, Line 4
Page 166, Line 3 through Page 166, Line 13
Page 169, Line 5 through Page 169, Line 23
Page 170, Line 4 through Page 170, Line 14
Page 175, Line 6 through Page 190, Line 1
Page 190, Line 5 through Page 192, Line 12
Page 192, Line 20 through Page 206, Line 7
Page 206, Line 24 through Page 209, Line 3
Page 209, Line 18 through Page 223, Line 5
Page 223, Line 12 through Page 226, Line 14
Page 226, Line 19 through Page 227, Line 2
Page 227, Line 6 through Page 227, Line 13
Page 227, Line 16 through Page 230, Line 11
Page 230, Line 17 through Page 233, Line 10
Page 233, Line 14 through Page 239, Line 14
Page 240, Line 7 through Page 240, Line 9
Page 240 Line 21 through Page 245, Line 12

# EXHIBIT 9

## MERCK'S OBJECTIONS AND COUNTER-DESIGNATIONS TO TEVA'S AFFIRMATIVE DEPOSITION DESIGNATIONS

**EXHIBIT 9**

**MERCK'S OBJECTIONS AND COUNTER DESIGNATIONS
TO TEVA'S AFFIRMATIVE DEPOSITION DESIGNATIONS**

**A** =        argumentative (Rule 611(a))
**C** =        compound question (Rule 611)
**D** =        asked and answered
**E** =        calls for expert opinion from a lay witness or from an individual that has not been
             identified as an expert in this action (Rule 701)
**H** =        hearsay (Rule 801/802)
**I** =        incomplete (answer w/o a question or question w/o an answer)
**L** =        lack of personal knowledge (Rule 602)
**M** =        leading question (Rule 611(c))
**O** =        includes objection from attorney at deposition or attorney colloquy
**N** =        lack of foundation (Rule 611(a))
**Priv** =     privileged
**R** =        relevancy (lack of) (Rule 401/402)
**U** =        unfairly prejudicial (Rule 403)
**V** =        vague or ambiguous (Rule 611 (a))

From the deposition of Robert Beckman, July 23, 2002:

| Page | Line | - | Page | Line | Obj |
|------|------|---|------|------|-----|
| 5 | 8 | | 8 | 3 | |
| 19 | 12 | | 19 | 23 | |
| 20 | 6 | | 21 | 10 | H |
| 32 | 7 | | 35 | 23 | L,E |
| 41 | 21 | | 43 | 3 | C |

Counter Designations: none

From the deposition of Peter Browne, September 18, 2002:

## 1. Peter Browne (9/18/02)

Objections:

>              Page 45, Line 8 - Page 46, Line 17 (L)
>              Page 47, Line 11 - Page 47, Line 20 (L)
>              Page 54, Line 10 - Page 56, Line 12 (L)
>              Page 56, Line 13 - Page 57, Line 1 (R)
>              Page 60, Line 2 - Page 61, Line 21 (L)
>              Page 66, Line 13 - Page 66, Line 14 (I)

Counter Designations: none

From the deposition of Karen F. Clark, December 21, 2005:

| **Page** | **Line** | **-** | **Page** | **Line** | **Obj.** |
|---|---|---|---|---|---|
| 5 | 11 | | 6 | 5 | |
| 6 | 13 | | 7 | 2 | |
| 7 | 5 | | 7 | 18 | |
| 7 | 20 | | 7 | 22 | O |
| 7 | 25 | | 8 | 9 | |
| 8 | 12 | | 8 | 13 | |
| 8 | 16 | | 9 | 2 | |
| 9 | 7 | | 9 | 23 | |
| 10 | 24 | | 11 | 20 | |
| 11 | 24 | | 12 | 2 | |
| 12 | 7 | | 12 | 8 | |
| 12 | 23 | | 12 | 24 | |
| 13 | 2 | | 13 | 18 | H, L |
| 14 | 3 | | 14 | 14 | H, L |
| 14 | 16 | | 14 | 25 | H, L |
| 15 | 7 | | 15 | 12 | H, L |
| 16 | 12 | | 16 | 13 | |
| 16 | 20 | | 17 | 6 | H |
| 17 | 14 | | 18 | 4 | |
| 18 | 6 | | 18 | 10 | |
| 19 | 15 | | 20 | 9 | |
| 20 | 21 | | 21 | 9 | |
| 21 | 24 | | 22 | 9 | N |
| 22 | 13 | | 22 | 19 | R |
| 22 | 22 | | 23 | 6 | O, R, I |
| 24 | 8 | | 25 | 11 | H |
| 25 | 22 | | 25 | 25 | R |
| 26 | 14 | | 26 | 20 | |
| 26 | 23 | | 27 | 2 | |
| 27 | 16 | | 29 | 17 | H, N, L |
| 29 | 19 | | 30 | 2 | V |
| 30 | 4 | | 30 | 12 | V, C |
| 30 | 14 | | 31 | 2 | V |
| 31 | 4 | | 32 | 24 | H |
| 33 | 25 | | 35 | 22 | H |
| 36 | 18 | | 36 | 22 | C |
| 36 | 24 | | 37 | 9 | |
| 38 | 4 | | 38 | 12 | H, V |
| 38 | 16 | | 39 | 10 | H |
| 40 | 17 | | 40 | 25 | |
| 41 | 4 | | 41 | 5 | |
| 41 | 14 | | 42 | 16 | H, V |

| Page | Line | - | Page | Line | Obj. |
|------|------|---|------|------|------|
| 42 | 18 | | 42 | 24 | H |
| 43 | 6 | | 43 | 8 | H |
| 43 | 14 | | 43 | 18 | |
| 44 | 8 | | 45 | 16 | H, C, V |
| 45 | 18 | | 45 | 24 | H |
| 46 | 17 | | 47 | 23 | I |
| 48 | 4 | | 48 | 7 | |
| 49 | 5 | | 49 | 14 | H |
| 49 | 16 | | 49 | 21 | H |
| 50 | 5 | | 50 | 8 | V |
| 50 | 10 | | 50 | 17 | |
| 50 | 20 | | 51 | 13 | |
| 52 | 3 | | 52 | 5 | |
| 52 | 25 | | 53 | 6 | |
| 53 | 16 | | 53 | 19 | |
| 54 | 18 | | 54 | 25 | |
| 55 | 13 | | 55 | 18 | |
| 56 | 5 | | 56 | 14 | H |
| 56 | 25 | | 57 | 15 | |
| 59 | 19 | | 59 | 24 | V, C |
| 60 | 2 | | 60 | 7 | V, C |
| 60 | 9 | | 90 | 25 | H |
| 61 | 18 | | 62 | 11 | I, C, V |
| 63 | 9 | | 63 | 16 | C, V |
| 63 | 18 | | 63 | 24 | C, V |
| 64 | 2 | | 64 | 2 | |
| 64 | 13 | | 64 | 17 | N, L |
| 65 | 2 | | 65 | 22 | N, L |
| 65 | 24 | | 66 | 3 | |
| 66 | 8 | | 66 | 14 | C, V |
| 66 | 25 | | 67 | 6 | L, N |
| 69 | 2 | | 69 | 6 | |
| 72 | 2 | | 72 | 7 | C, V |
| 72 | 12 | | 72 | 15 | |
| 73 | 2 | | 75 | 3 | O, C, V, L |
| 75 | 10 | | 75 | 23 | O, R. V, C |
| 75 | 25 | | 76 | 8 | |
| 78 | 23 | | 80 | 12 | H, C, V |
| 80 | 14 | | 80 | 21 | |
| 81 | 10 | | 81 | 16 | H |

Counter Designations:

| Page | Line | - | Page | Line |
|------|------|---|------|------|
| 11 | 18 | | 23 | |
| 17 | 7 | | 13 | |
| 20 | 21 | | 22 | 2 |
| 35 | 23 | | 36 | 17 |
| 46 | 24 | | 47 | 20 |
| 48 | 8 | | 49 | 4 |
| 57 | 21 | | 59 | 7 |

From the deposition of Anastasia Daifotis, June 19-20, 2002

| Page | Line | - | Page | Line | Obj |
|------|------|---|------|------|-----|
| 7 | 6 | | 9 | 10 | R |
| 8 | 1 | | 9 | 10 | R |
| 12 | 4 | | 13 | 8 | R |
| 17 | 19 | | 18 | 7 | R |
| 28 | 3 | | 29 | 9 | R |
| 30 | 20 | | 31 | 19 | R |
| 33 | 6 | | 33 | 18 | R |
| 35 | 5 | | 41 | 24 | R |
| 42 | 16 | | 43 | 12 | R |
| 48 | 17 | | 49 | 6 | R |
| 50 | 8 | | 54 | 8 | R |
| 69 | 21 | | 75 | 2 | |
| 77 | 23 | | 86 | 19 | |
| 87 | 1 | | 90 | 17 | |
| 92 | 13 | | 93 | 23 | H, N |
| 96 | 5 | | 97 | 4 | |
| 108 | 24 | | 109 | 3 | |
| 109 | 8 | | 111 | 9 | |
| 111 | 15 | | 115 | 4 | |
| 118 | 3 | | 118 | 4 | |
| 119 | 5 | | 124 | 8 | |
| 129 | 22 | | 130 | 4 | |
| 135 | 17 | | 135 | 23 | |
| 137 | 21 | | 138 | 3 | |
| 139 | 12 | | 143 | 21 | R |
| 150 | 16 | | 152 | 12 | |
| 154 | 16 | | 163 | 5 | H, N |
| 166 | 12 | | 173 | 23 | |
| 181 | 12 | | 181 | 15 | |

| **Page** | **Line** | **-** | **Page** | **Line** | **Obj** |
|----------|----------|-------|----------|----------|---------|
| 185 | 10 | | 190 | 9 | N |
| 193 | 21 | | 194 | 2 | |
| 200 | 8 | | 207 | 13 | |
| 244 | 15 | | 244 | 20 | |
| 244 | 25 | | 247 | 13 | H |
| 250 | 10 | | 253 | 9 | H, Priv. |
| 254 | 5 | | 255 | 3 | |
| 262 | 18 | | 272 | 14 | E |
| 272 | 25 | | 276 | 3 | E |
| 276 | 9 | | 287 | 6 | H, E, L, N |
| 287 | 11 | | 292 | 22 | L |
| 314 | 1 | | 329 | 2 | R |
| 329 | 16 | | 333 | 25 | R |
| 338 | 11 | | 341 | 22 | |
| 342 | 7 | | 344 | 10 | L |
| 347 | 13 | | 358 | 22 | R, L, N |
| 369 | 7 | | 370 | 2 | |
| 371 | 21 | | 373 | 14 | |
| 373 | 21 | | 375 | 19 | |
| 401 | 16 | | 405 | 23 | |
| 422 | 13 | | 423 | 18 | L, N |
| 450 | 19 | | 460 | 5 | |
| 461 | 12 | | 461 | 13 | |
| 463 | 7 | | 467 | 4 | N |
| 476 | 3 | | 476 | 4 | H, L, N |
| 476 | 11 | | 483 | 5 | |
| 491 | 13 | | 491 | 14 | R |
| 491 | 20 | | 491 | 25 | R |
| 500 | 8 | | 507 | 23 | R |
| 508 | 7 | | 518 | 8 | |

Counter Designations:

| **Page** | **Line** | **-** | **Page** | **Line** |
|----------|----------|-------|----------|----------|
| 97 | 4 | | 98 | 20 |
| 124 | 9 | | 125 | 4 |
| 134 | 23 | | 135 | 16 |
| 136 | 24 | | 137 | 20 |
| 152 | 13 | | 154 | 15 |
| 163 | 6 | | 164 | 6 |

| Page | Line | - | Page | Line |
|------|------|---|------|------|
| 293 | 14 | | 294 | 15 |
| 370 | 3 | | 370 | 22 |

From the deposition of Gerard Devlin, September 13, 2002:

| Page | Line | - | Page | Line | Obj. |
|------|------|---|------|------|------|
| 6 | 5 | | 7 | 11 | |
| 38 | 24 | | 40 | 4 | L, N |
| 40 | 8 | | 42 | 2 | L, H |
| 42 | 9 | | 46 | 8 | H, L, N |
| 46 | 11 | | 48 | 23 | H, L |
| 49 | 5 | | 49 | 11 | |
| 50 | 5 | | 50 | 11 | |
| 50 | 15 | | 50 | 18 | |
| 51 | 3 | | 50 | 12 | M |
| 51 | 16 | | 52 | 9 | E |
| 52 | 22 | | 53 | 3 | |
| 53 | 7 | | 53 | 19 | |
| 54 | 7 | | 55 | 11 | I |
| 57 | 6 | | 59 | 3 | I, H |
| 59 | 7 | | 59 | 10 | |
| 59 | 16 | | 60 | 24 | |
| 61 | 8 | | 62 | 3 | H |
| 62 | 19 | | 64 | 6 | H |
| 66 | 16 | | 69 | 13 | H |
| 69 | 22 | | 72 | 2 | H |
| 72 | 16 | | 81 | 14 | H, C |
| 81 | 21 | | 82 | 2 | H, L |
| 82 | 19 | | 83 | 9 | H, L |
| 85 | 20 | | 86 | 23 | H, L |
| 88 | 14 | | 88 | 18 | R, V |
| 88 | 21 | | 89 | 5 | R, V |
| 90 | 5 | | 93 | 20 | R, V |
| 94 | 6 | | 94 | 12 | |
| 94 | 21 | | 95 | 15 | L |
| 95 | 18 | | 95 | 22 | V |
| 97 | 18 | | 100 | 4 | V, R, E, N, L |
| 101 | 8 | | 101 | 11 | V |
| 101 | 14 | | 102 | 2 | V, H, L, N |
| 104 | 3 | | 105 | 13 | V, L |

| Page | Line | - | Page | Line | Obj. |
|------|------|---|------|------|------|
| 107 | 5 | | 107 | 10 | V, N |
| 107 | 24 | | 108 | 16 | V, N |
| 115 | 25 | | 118 | 9 | I, V, N, E |
| 130 | 4 | | 131 | 15 | I, V, N |
| 134 | 14 | | 136 | 19 | V, N, H |
| 136 | 24 | | 137 | 24 | V, N |
| 138 | 4 | | 142 | 9 | V, N, H, D |
| 142 | 16 | | 146 | 9 | V, N |
| 146 | 25 | | 148 | 5 | L, N |
| 148 | 25 | | 149 | 5 | |
| 149 | 12 | | 153 | 6 | V, L, N |
| 153 | 16 | | 154 | 5 | V, L |
| 154 | 16 | | 157 | 6 | V, N |
| 159 | 18 | | 159 | 22 | L, N, V |
| 160 | 3 | | 161 | 5 | L, N, V |
| 161 | 9 | | 164 | 2 | L, N, V |

Counter Designations:

| Page | Line | - | Page | Line |
|------|------|---|------|------|
| 40 | 5 | | 40 | 7 |
| 46 | 9 | | 46 | 10 |
| 59 | 5 | | 59 | 6 |
| 95 | 16 | | 95 | 17 |
| 101 | 12 | | 101 | 13 |
| 107 | 11 | | 107 | 23 |
| 148 | 6 | | 148 | 24 |
| 159 | 23 | | 160 | 2 |
| 161 | 6 | | 161 | 8 |

## 2. Elizabeth DiCesare (8/28/02 & 88/29/02)

Objections:

> Page 53, Line 11 - Page 54, Line 4 (L)
> Page 54, Line 10 - Page 54, Line 17 (L)
> Page 74, Line 12 - Page 74, Line 16 (L)
> Page 75, Line 14 - Page 77, Line 24 (R)
> Page 78, Line 3 - Page 81, Line 20 (R)
> Page 84, Line 2 - Page 84, Line 23 (R)

*Page 98, Line 18 - Page 98, Line 20 (O)*
*Page 124, Line 1 - Page 124, Line 3 (I)*
*Page 127, Line 13 - Page 127, Line 16 (I)*
*Page 129, Line 13 - Page 130, Line 2 (R)*
*Page 130, Line 13 - Page 130, Line 25 (L)*
*Page 131, Line 5 - Page 131, Line 8 (L)*
*Page 134, Line 13 - Page [34, Line 18 (L)*
*Page 181, Line 2 - Page 181, Line 8 (O)*
*Page 184, Line 22 - Page [85, Line 3 (O)*
*Page 335, Line 17 - Page 335, Line 19 (N)*
*Page 335, Line 23 (N)*

Counter Designations:

*Page 43, Line 3 - Page 43, Line 9*
*Page 73, Line 3 - Page 73, Line 5*
*Page 73, Line 8 - Page 73, Line 11*
*Page 95, Line 10 - Page 95, Line 19*
*Page 95, Line 23 - Page 96, Line 8*
*Page 100, Line 19 - Page 101, Line 5*
*Page 105, Line 6 - Page 105, Line 8*
*Page 105, Line 12*
*Page 146, Line 23 - Page 147, Line 20*
*Page 153, Line 10 - Page 153, Line 12*
*Page 205, Line 2 - Page 205, Line 14*
*Page 244, Line 12 - Page 244, Line 17*
*Page 335, Line 20 - Page 335, Line 22*
*Page 357, Line 23 - Page 357, Line 25*
*Page 358, Line 5 - Page 358, Line 9*
*Page 358, Line 18 - Page 358, Line 25*
*Page 361, Line 9 - Page 361, Line 17*
*Page 361, Line 20 - Page 362, Line 6*

### 3. Paul Drake (11/15/02)

Objections:

*Page 1, Line 1 - Page 5, Line 23 (O)*
*Page 43, Line 24 - Page 44, Line 7 (V)*
*Page 44, Line 11 (V)*
*Page 51, Line 2 - Page 51, Line 4 (N)*
*Page 51, Line 9 (N)*
*Page 54, Line 10 - Page 54, Line 18 (H)*
*Page 62, Line 23 - Page 63, Line 2 (L)*
*Page 73, Line 10 - Page 73, Line 13 (L)*
*Page 81, Line 4 - Page 84, Line 8 (L)*

Page 81, Line 14 - Page 81, Line 22 (L)
Page 84, Line 3 - Page 84, Line 8 (N)
Page 84, Line 12 (N)
Page 99, Line 6 - Page 99, Line 9 (L)
Page 104, Line 8 - Page 105, Line 25 (O)

Counter Designations:

Page 44, Line 8
Page 51, Line 5 - Page 51, Line 6
Page 81, Line 9 - Page 81, Line 12
Page 84, Line 9 - Page 84, Line 10
Page 87, Line 10 - Page 87, Line 11

### 4.  Laurence Hirsch (10/22/02)

Objections:

Page 1, Line 1 - Page 5, Line 13 (R, 0)
Page 108, Line 18 - Page 108, Line 20 (V, A, E)
Page 128, Line 10 - Page 128, Line 12 (L)
Page 144, Line 18 - Page 146, Line 17 (R)
Page 147, Line 10 - Page 147, Line 21 (R)
Page 164, Line 11 - Page 165, Line 9 (R)
Page 180, Line 6 - Page 182, Line 8 (R)
Page 184, Line 21 - Page 186, Line 2 (R)
Page 186, Line 3 - Page 193, Line 9 (R, U)
Page 193, Line 10 - Page 193, Line 24 (R)

Counter Designations:

Page 108, Line 21 - Page 108, Line 25
Page 175, Line 11 - Page 175, Line 20

### 5.  Ashok Katdare (8/22/02)

Objections:

Page 7, Line 8 - Page 7, Line 10 (R)
Page 7, Line 14 - Page 8, Line 3 (R)
Page 26, Line 9 - Page 26, Line 10 (I)
Page 46, Line 14 - Page 46, Line 22 (L)
Page 49, Line 1- Page 49, Line 3 (L)
Page 49, Line 7 - Page 49, Line 11 (L)
Page 59, Line 12 - Page 61, Line 16 (L)
Page 76, Line 23 - Page 77, Line 8 (R)

Page 78, Line 5 - Page 80, Line 8 (R)
Page 82, Line 18 - Page 82, Line 22 (0, L)
Page 84, Line 1 - Page 84, Line 16 (L)
Page 91, Line 13 - Page 92, Line 3 (R)
Page 103, Line 3 - Page 103, Line 22 (R, L)
Page 106, Line 13 - Page 107, Line 7 (H)
Page 108, Line 10 - Page 108, Line 22 (L)
Page 110, Line 7 - Page 110, Line 16 (L)
Page 110, Line 23 - Page 110, Line 24 (L)
Page 111, Line 4 - Page 111, Line 7 (L)
Page 112, Line 4 - Page 113, Line 2 (L)
Page 113, Line 22 - Page 114, Line 2 (L)
Page 114, Line 6 - Page 114, Line 10 (L)
Page 114, Line 22 - Page 115, Line 1 (L)
Page 115, Line 4 - Page 115, Line 12 (L)
Page 115, Line 15 - Page 115, Line 21 (L)
Page 120, Line 21 - Page 120, Line 24 (L)
Page 121, Line 4 - Page 121, Line 5 (L)
Page 121, Line 15 - Page 121, Line 16 (L)
Page 121, Line 20 - Page 121, Line 21 (L)
Page 121, Line 23 - Page 122, Line 3 (L)
Page 122, Line 7 - Page 122, Line 10 (L)
Page 133, Line 1 - Page 133, Line 4 (L)
Page 133, Line 10 - Page 133, Line 19 (L)
Page 133, Line 22 (L)
Page 134, Line 23 - Page 136, Line 1 (L)
Page 136, Line 2 - Page 136, Line 9 (R, I)
Page 151, Line 4 - Page 152, Line 20 (L)
Page 154, Line 10 - Page 154, Line 16 (L)
Page 177, Line 13 - Page 177, Line 15 (O)
Page 179, Line 7 - Page 179, Line 20 (R)
Page 179, Line 21 - Page 179, Line 22 (L)
Page 180, Line 1 - Page 181, Line 18 (L)

Counter Designations:

Page 40, Line 5 - Page 40, Line 9
Page 49, Line 4 - Page 49, Line 6
Page 49, Line 22 - Page 49, Line 23
Page 52, Line 23 - Page 53, Line 7
Page 68, Line 6 - Page 68, Line 9
Page 82, Line 10 - Page 82, Line 14
Page 82, Line 23 - Page 83, Line 4
Page 101, Line 2 - Page 101, Line 13
Page 111, Line 1 - Page 111, Line 2
Page 115, Line 2
Page 115, Line 13 - Page 115, Line 14

-10-

Page 121, Line 1 - Page 121, Line 3
Page 121, Line 17 - Page 121, Line 19
Page 122, Line 4
Page 133, Line 23 - Page 134, Line 2
Page 134, Line 5 - Page 134, Line 11
Page 179, Line 23

### 6. Richard Mazess (9/17/02)

Objections:

Page 26, Line 22 - Page 26, Line 28 (R) (E)
Page 58, Line 7 - Page 58, Line 8 (O)
Page 61, Line 10 - Page 6l, Line 11 (O)
Page 64, Line 5 - Page 64, Line 7 (O)
Page 69, Line 4 - Page 69, Line 5 (O)
Page 73, Line 9 - Page 73, Line 12 (O)
Page 77, Line 22 - Page 77, Line 23 (O)
Page 79, Line 2 - Page 79, Line 3 (O)
Page 80, Line 7 - Page 80, Line 8 (O)
Page 81, Line 22 - Page 81, Line 23 (O)
Page 82, Line 16 - Page 82, Line 17 (O)
Page 123, Line 13 - Page 123, Line 15 (I)
Page 155, Line 22 - Page 156, Line 1 (I)
Page 169, Line 23 - Page 169, Line 24 (O)
Page 177, Line 7 - Page 177, Line 8 (O)

Counter Designations:

Page 9, Line 15 - Page 9, Line 16
Page 9, Line 19 - Page 10, Line 6
Page 10, Line 23 - Page 12, Line 24
Page 14, Line 9 - Page 15, Line 11
Page 16, Line 7 - Page 18, Line 4
Page 32, Line 1 - Page 32, Line 2
Page 35, Line 8 - Page 35, line 11
Page 37, Line 9 - Page 37, Line 14
Page 56, Line 12 - Page 56, Line 17
Page 66, Line 19 - Page 66, Line 24
Page 69, Line 22 - Page 70, Line 1
Page 71, Line 14 - Page 73, Line 7
Page 85, Line 16 - Page 86, Line 11
Page 86, Line 14 - Page 86, Line 19
Page 87, Line 6 - Page 87, Line 9
Page 87, Line 14 - Page 87, Line 23
Page 88, Line 14 - Page 88, Line 21

Page 90, Line 19 - Page 91, Line 1
Page 92, Line 4 - Page 92, Line 6
Page 93, Line 6 - Page 95, Line 7
Page 95, Line 10 - Page 95, Line 19
Page 113, Line 1 - Page 113, Line 3
Page 126, Line 16 - Page 128, Line 7
Page 133, Line 12 - Page 134, Line 12
Page 135, Line 7 - Page 135, Line 13
Page 135, Line 21 - Page 136, Line 21
Page 143, Line 15 - Page 144, Line 3
Page 154, Line 7 - Page 155, Line 21
Page 157, Line 9 - Page 157, Line 11
Page 172, Line 12 - Page 172, Line 13
Page 172, Line 16 - Page 173, Line 8
Page 173, Line 22 - Page 175, Line 22
Page 180, Line 4 - Page 181, Line 7
Page 187, Line 7 - Page 189, Line 18
Page 195, Line 3 - Page 199, Line 9
Page 206, Line 17 - Page 208, Line 19

## 7. John Orloff (10/10/02)

Objections:

Page 21, Line 11 - Page 21, Line 16 (L)
Page 23, Line 6 - Page 23, Line 12 (N)
Page 24, Line 10 - Page 25, Line 15 (V)
Page 26, Line 22 - Page 27, Line 4 (V)
Page 29, Line 8 - 29, Line 17 (V, C)
Page 32, Line 8 - Page 32, Line 16 (V)
Page 34, Line 18 - Page 35, Line 6 (V)
Page 35, Line 14 - Page 35, Line 25 (C, V)
Page 40, Line 11 - Page 40, Line 15 (V)
Page 41, Line 21 - Page 42, Line 9 (V)
Page 45, Line 7 - Page 45, Line 13 (V)
Page 45, Line 20 - Page 46, Line 2 (V)
Page 46, Line 11 - Page 46, Line 14 (L, V)
Page 52, Line 24 - Page 53, Line 10 (V)
Page 80, Line 15 - Page 81, Line 3 (C)
Page 81, Line 4 - Page 81, Line 12 (V, M)
Page 83, Line 14 - Page 83, Line 19 (L)
Page 84, Line 2 - Page 84, Line 11 (L)
Page 90, Line 13 - Page 90, Line 23 (V)
Page 91, Line 5 - Page 91, Line 22 (V)
Page 94, Line 14 - Page 95, Line 3 (V)
Page 95, Line 16 - Page 95, Line 22 (V)

Page 99, Line 9 - Page 99, Line 23 (V)
Page 101, Line 12 - Page 101, Line 22 (L)
Page 102, Line 12 - Page 102, Line 20 (H, L)
Page 107, Line 2 - Page 107, Line 8 (V, L)
Page 109, Line 4 - Page 109, Line 7 (V)
Page 121, Line 9 - Page 121, Line 12 (L)
Page 122, Line 15 - Page 122, Line 20 (V)
Page 123, Line 11 - Page 123, Line 18 (C)
Page 124, Line 3 - Page 124, Line 8 (I)
Page 125, Line 5 - Page 125, Line 13 (V)
Page 129, Line 9 - Page 130, Line 6 (V, C)
Page 131, Line 24 - Page 132, Line 7 (V)

Counter Designations:

Page 19, Line 19 - Page 20, Line 2
Page 21, Line 13 - Page 21, Line 15
Page 22, Line 8 - Page 22, Line 9
Page 22, Line 19 - Page 22, Line 20
Page 23, Line 2
Page 23, Line 8 - Page 23, Line 9
Page 24, Line 14 - Page 24, Line 15
Page 25, Line 7 - Page 25, Line 8
Page 25, Line 19
Page 26, Line 24 - Page 26, Line 25
Page 29, Line 12 - Page 29, Line 13
Page 29, Line 18 - Page 30, Line 4
Page 32, Line 10 - Page 32, line 11
Page 34, Line 23 - Page 34, Line 24
Page 35, Line 18 - Page 35, Line 20
Page 40, Line 13 - Page 40, Line 14
Page 41, Line 22 - Page 41, Line 24
Page 45, Line 10 - Page 45, Line 12
Page 45, Line 24
Page 46, Line 13
Page 47, Line 24
Page 53, Line 3
Page 58, Line 17 - Page 58, Line 20
Page 80, Line 19 - Page 80, Line 20
Page 81, Line 10
Page 83, Line 16 - Page 83, Line 17
Page 84, Line 6 - Page 84, Line 8
Page 90, Line 18
Page 91, Line 13 - Page 91, Line 15
Page 94, Line 21
Page 95, Line 18
Page 98, Line 19

-13-

Page 99, Line 11 - Page 99, Line 12
Page 100, Line 4
Page 101, Line 14 - Page 101, Line 15
Page 102, Line 16 - Page 102, Line 18
Page 107, Line 5 - Page 107, Line 7
Page 109, Line 6
Page 113, Line 13 - Page 113, Line 25
Page 121, Line 11
Page 122, Line 17
Page 123, Line 13 - Page 123, Line 15
Page 124, Line 5 - Page 124, Line 8
Page 125, Line 7 - Page 125, Line 8
Page 129, Line 14 - Page 129, Line 15
Page 129, Line 24 - Page 129, Line 25
Page 132, Line 2 - Page 132, Line 3

## 8. Chennekatu Peter (8/28/02 & 8/29/02)

Objections:

Page 1, Line 1 - Page 2, Line 25 (O)
Page 5, Line 23 - Page 5, Line 25 (O)
Page 12, Line 16 - Page 15, Line 5 (R)
Page 16, Line 2 - Page 17, Line 7 (R)
Page 18, Line 20 - Page 18, Line 21 (V)
Page 19, Line 2 - Page 19, Line 3 (V)
Page 19, Line 5 - Page 20, Line 22 (R)
Page 21, Line 11 - Page 24, Line 9 (R)
Page 24, Line 8 - Page 24, Line 9 (V)
Page 24, Line 11 - Page 24, Line 15 (V)
Page 24, Line 17 - Page 30, Line 5 (R)
Page 30, Line 5 (N)
Page 30, Line 7 (N)
Page 36, Line 16 - Page 36, Line 17 (L) (N)
Page 36, Line 19 (L) (N)
Page 37, Line 14 - Page 37, Line 19 (R)
Page 37, Line 21 - Page 39, Line 24 (R)
Page 45, Line 1 - Page 45, Line 3 (V)
Page 45, Line 9 - Page 45, Line 11 (V)
Page 46, Line 6 - Page 46, Line 12 (R)
Page 46, Line 14 - Page 48, Line 4 (R)
Page 50, Line 15 - Page 50, Line 17 (U)
Page 50, Line 20 - Page 50, Line 25 (U)
Page 52, Line 19 - Page 52, Line 20 (U) (V)
Page 52, Line 22 - Page 52, Line 23 (U) (V)
Page 68, Line 12 - Page 68, Line 15 (E)

Page 68, Line 22 - Page 68, Line 25 (E)
Page 75, Line 24 - Page 76, Line 2 (L)
Page 76, Line 4 - Page 76, Line 7 (L)
Page 76, Line 9 - Page 76, Line 10 (V) (U)
Page 76, Line 12 - Page 76, Line 16 (V) (U)
Page 77, Line 9 - Page 77, Line 13 (U)
Page 77, Line 16 - Page 77, Line 18 (U)
Page 83, Line 18 - Page 83, Line 21 (U)
Page 83, Line 24 - Page 84, Line 2 (U)
Page 117, Line 4 - Page 117, Line 7 (A) (U)
Page 117, Line 9 - Page 117, Line 12 (A) (U)
Page 117, Line 14 - Page 1, 17, Line 15 (A) (U) (V)
Page 117, Line 17 - Page 117, Line 24 (A) (U) (V)
Page 119, Line 11 - Page 119, Line 12 (V)
Page 119, Line 14 - Page 119, Line 16 (V)
Page 123, Line 1 - Page 123, Line 9 (I)
Page 126, Line 25 - Page 127, Line 1 (U)
Page 127, Line 4 (U)
Page 129, Line 20 - Page 129, Line 1 (I)
Page 156, Line 25 - Page 157, Line 1 (N)
Page 157, Line 3 - Page 157, Line 14 (N)
Page 160, Line 6 - Page 160, Line 9 (L)
Page 160, Line 18 - Page 161, Line 9 (L)
Page 185, Line 5 - Page 185, Line 14 (L)
Page 185, Line 19 - Page 185, Line 20 (V) (A) (U)
Page 185, Line 22 - Page 185, Line 23 (V) (A) (U)
Page 189, Line 1- Page 190, Line 19 (O)
Page 198, Line 5 - Page 198, Line 8 (A) (U) (L)
Page 198, Line 10 (A) (U) (L)
Page 198, Line 18 - Page 199, Line 20 (L)
Page 199, Line 22 (L)
Page 209, Line 22 (V)
Page 209, Line 24 (V)
Page 217, Line 18 - Page 217, Line 20 (V)
Page 217, Line 23 - Page 217, Line 24 (V)
Page 221, Line 7 - Page 221, Line 8 (V)
Page 228, Line 9 (L)
Page 228, Line 11 (L)
Page 233, Line 4 - Page 233, Line 7 (A) (U) (V)
Page 233, Line 9 - Page 233, Line 10 (A) (U) (V)
Page 235, Line 13 - Page 235, Line 14 (A) (U) (M)
Page 235, Line 16 - Page 235, Line 20 (A) (U) (M)
Page 247, Line 18 - Page 247, Line 21 (A) (U) (M)
Page 247, Line 25 - Page 248, Line 2 (A) (U) (M)
Page 258, Line 22 - Page 258, Line 25 (V) (R)
Page 259, Line 2 (V) (R)

Counter Designations:

        Page 18, Line 23 - Page 18, Line 25
        Page 24, Line 10 Page 30, Line 6
        Page 36, Line 18 Page 45, Line 4
        Page 50, Line 18 - Page 50, Line 19
        Page 52, Line 21
        Page 68, Line 16 - Page 68, Line 19
        Page 76, Line 3 Page 76, Line 11
        Page 77, Line 14 - Page 77, Line 15
        Page 83, Line 22 - Page 83, Line 23
        Page 117, Line 8 Page 117, Line 16
        Page 119, Line 13
        Page 127, Line 2 - Page 127, Line 3
        Page 150, Line 15 - Page 151, Line 18
        Page 155, Line 24 Page 157, Line 2
        Page 160, Line 16 - Page 160, Line 17
        Page 166, Line 2 - Page 166, Line 10
        Page 180, Line 23 - Page 181, Line 18
        Page 185, Line 21 Page 198, Line 9
        Page 199, Line 21
        Page 201, Line 5 - Page 201, Line 9
        Page 209, Line 23 Page 217, Line 22
        Page 228, Line 6 Page 228, Line 10
        Page 233, Line 8
        Page 235, Line 15
        Page 247, Line 23 - Page 247, Line 24
        Page 259, Line 1
        Page 262, Line 2

## 9. Anthony Sabatelli (7/12/02 & 9/5/02)

Objections:

        Page 103, Line 20 - Page 103, Line 24 (O)
        Page 112, Line 21 - Page 113, Line 3 (E)
        Page 113, Line 8 - Page 113, Line 20 (E)
        Page 139, Line 4 - Page 139, Line 12 (A) (C) (V) (U)
        Page 139, Line 15 - Page 140, Line 3 (A) (C) (V) (U)
        Page 170, Line 12 - Page 172, Line 4 (O)
        Page 174, Line 23 - Page 175, Line 17 (O)
        Page 326, Line 17 - Page 326, Line 22 (A) (U)
        Page 327, Line 2 - Page 327, Line 4 (A) (U)
        Page 333, Line 22 - Page 333, Line 24 (N)
        Page 334, Line 3 - Page 334, Line 5 (N)
        Page 375, Line 5 - Page 375, Line 20 (N) (C)

Page 375, Line 22 - Page 376, Line 3 (N) (C)

Counter Designations:

Page 107, Line 21 - Page 108, Line 10
Page 113, Line 4
Page 139, Line 13 - Page 139, Line 14
Page 144, Line 12 - Page 145, Line 7
Page 146, Line 9 - Page 146, Line 21
Page 153, Line 19 - Page 153, Line 25
Page 190, Line 15 - Page 190, Line 21
Page 196, Line 21 - Page 197, Line 10
Page 231, Line 9 - Page 231, Line 18
Page 319, Line 18 - Page 320, Line 6
Page 326, Line 23 - Page 326, Line 25
Page 333, Line 25 - Page 334, Line 2
Page 342, Line 21 - Page 344, Line 24
Page 345, Line 8 - Page 347, Line 14
Page 362, Line 25 - Page 363, Line 10
Page 375, Line 22

## 10. Arthur Santora (9/17/02 & 9/18/02)

Objections:

Page 64, Line 18 - Page 64, Line 19 (E)
Page 64, Line 22 - Page 64, Line 23 (E)
Page 65, Line 2 - Page 65, Line 7 (E)
Page 66, Line 2 - Page 66, Line 3 (E) (M)
Page 66, Line 7 - Page 66, Line 8 (E) (M)
Page 66, Line 9 - Page 67, Line 10 (E)
Page 158, Line 3 - Page 159, Line 5 (L)
Page 160, Line 24 - Page 161, Line 20 (L)
Page 190, Line 3 - Page 190, Line 7 (I)
Page 234, Line 19 - Page 235, Line 7 (R)
Page 246, Line 20 - Page 247, Line 12 (L)
Page 319, Line 21 - Page 319, Line 25 (I)

Counter Designations:

Page 64, Line 20 - Page 64, Line 21
Page 64, Line 24
Page 66, Line 4 - Page 66, Line 6
Page 68, Line 4 - Page 68, Line 5
Page 68, Line 14 - Page 68, Line 15
Page 69, Line 19 - Page 70, Line 21
Page 72, Line 20 - Page 73, Line 14

Page 73, Line 17 - Page 74, Line 2
Page 77, Line 4 - Page 77, Line 5
Page 77, Line 12 - Page 77, Line 14
Page 79, Line 17 - Page 83, Line 4
Page 84, Line 11 - Page 85, Line 21
Page 90, Line 5 - Page 90, Line 18
Page 103, Line 9
Page 110, Line 8 - Page 110, Line 9
Page 110, Line 15 - Page 111, Line 22
Page 115, Line 3 - Page 115, Line 23
Page 118, Line 13 - Page 119, Line 7
Page 124, Line 24 - Page 125, Line 25
Page 127, Line 8 - Page 127, Line 14
Page 136, Line 22 - Page 141, Line 3
Page 138, Line 20 - Page 141, Line 3
Page 141, Line 9 Page 141, Line 21
Page 178, Line 23 - Page 179, Line 2
Page 182, Line 24
Page 190, Line 17 - Page 191, Line 15

## 11. Louis Sherwood (7/26/02)

Objections:

Page 25, Line 14 - Page 25, Line 17 (L)
Page 25, Line 23 - Page 26, Line 8 (L)
Page 26, Line 12 - Page 26, Line 22 (L)
Page 26, Line 25 - Page 27, Line 11 (L)
Page 44, Line 3 - Page 44, Line 5 (I)
Page 69, Line 5 - Page 69, Line 25 (I)
Page 74, Line 17 - Page 74, Line 18 (I)
Page 88, Line 4 - Page 88, Line 7 (I)
Page 98, Line 20 - Page 98, Line 22 (I)
Page 100, Line 2 - Page 100, Line 3 (I)
Page 117, Line 19 - Page 117, Line 21 (L)
Page 117, Line 24 - Page 118, Line 11 (L)
Page 118, Line 14 - Page 118, Line 18 (L)
Page 118, Line 23 - Page 118, Line 25 (L)
Page 119, Line 3 - Page 119, Line 4 (L)
Page 121, Line 7 - Page 121, Line 24 (L)
Page 122, Line 3 - Page 122, Line 20 (L)
Page 124, Line 15 - Page 124, Line 19 (L)
Page 124, Line 22 - Page 125, Line 8 (L)
Page 125, Line 10 (L)
Page 165, Line 24 - Page 166, Line 3 (L)
Page 166, Line 3 - Page 166, Line 20 (L)

Counter Designations:

> Page 13, Line 19 - Page 13, Line 21
> Page 17, Line 9 - Page 17, Line 15
> Page 40, Line 12 - Page 41, Line 16
> Page 42, Line 21 - Page 43, Line 18
> Page 44, Line 13 - Page 44, Line 16
> Page 44, Line 19 - Page 44, Line 21
> Page 45, Line 2 - Page 45, Line 9
> Page 46, Line 15 - Page 47, Line 3
> Page 47, Line 6 - Page 47, Line 18
> Page 49, Line 13 - Page 49, Line 19
> Page 52, Line 21 - Page 52, Line 24
> Page 70, Line 1 - Page 73, Line 2
> Page 73, Line 18 - Page 74, Line 2
> Page 80, Line 24 - Page 81, Line 15
> Page 100, Line 9 - Page 100, Line 11
> Page 154, Line 23 - Page 155, Line 5
> Page 155, Line 8 - Page 155, Line 24
> Page 156, Line 3 - Page 156, Line 18
> Page 156, Line 20 - Page 157, Line 3
> Page 157, Line 10 - Page 158, Line 13

## 12. David Weissburg (8/14/02)

Objections:

> Page 15, Line 14 - Page 15, Line 16 (I)
> Page 15, Line 21 - Page 15, Line 24 (I)
> Page 32, Line 5 - Page 32, Line 6 (I)
> Page 37, Line 20 - Page 37, Line 22 (I)
> Page 40, Line 14 - Page 40, Line 15 (I)

Counter Designations:

> Page 51, Line 22 - Page 53, Line 7
> Page 61, Line 2 - Page 61, Line 3
> Page 61, Line 6 - Page 61, Line 10
> Page 62, Line 10 - Page 62, Line 17
> Page 64, Line 16 - Page 64, Line 18
> Page 64, Line 20 - Page 65, Line 4
> Page 65, Line 9 - Page 65, Line 20
> Page 69, Line 20 - Page 70, Line 8
> Page 72, Line 9 - Page 72, Line 23

From the deposition of John Yates, January 18, 2006:

| **Page** | **Line** | - | **Page** | **Line** | **Obj.** |
|---|---|---|---|---|---|
| 3 | 14 | | 3 | 16 | |
| 4 | 6 | | 4 | 12 | |
| 5 | 15 | | 5 | 20 | |
| 7 | 5 | | 7 | 11 | |
| 9 | 23 | | 10 | 1 | O |
| 10 | 5 | | 12 | 10 | |
| 13 | 22 | | 14 | 9 | |
| 14 | 19 | | 19 | 16 | |
| 19 | 19 | | 20 | 6 | |
| 27 | 6 | | 28 | 7 | |
| 28 | 15 | | 30 | 14 | |
| 31 | 1 | | 32 | 10 | |
| 32 | 21 | | 33 | 8 | |
| 34 | 1 | | 34 | 4 | |
| 34 | 8 | | 34 | 15 | L. N |
| 34 | 19 | | 36 | 22 | |
| 37 | 2 | | 39 | 2 | |
| 39 | 6 | | 41 | 8 | |
| 41 | 12 | | 44 | 3 | |
| 44 | 9 | | 44 | 16 | O |
| 44 | 18 | | 45 | 11 | O |
| 48 | 5 | | 48 | 19 | O |

Counter Designations:

| **Page** | **Line** | - | **Page** | **Line** |
|---|---|---|---|---|
| 33 | 9 | | 33 | 24 |

**13.**

**14. John Yates (9/11/02)**

Objections:

        Page 18, Line 3 - Page 18, Line 9 (R)
        Page 46, Line 21 - Page 47, Line 7 (R)
        Page 113, Line 10 - Page 113, Line 24 (E)
        Page 124, Line 3 - Page 124, Line 13 (E)
        Page 134, Line 22 - Page 134, Line 24 (I)

Counter Designations:

        Page 14, Line 6 - Page 15, Line 12

Page 19, Line 16 - Page 20, Line 6
Page 21, Line 14 - Page 22, Line 22
Page 57, Line 4 - Page 61, Line 7
Page 64, Line 11 - Page 64, Line 19
Page 65, Line 17 - Page 70, Line 8
Page 73, Line 10 - Page 74, Line 6
Page 74, Line 22 - Page 75, Line 22
Page 78, Line 16 - Page 79, Line 20
Page 81, Line 13 - Page 83, Line 11
Page 84, Line 8 - Page 85, Line 21
Page 86, Line 17 - Page 90, Line 17
Page 91, Line 14 - Page 94, Line 7
Page 96, Line 10 - Page 96, Line 14
Page 97, Line 2 - Page 97, Line 16
Page 98, Line 10 - Page 100, Line 3
Page 100, Line 14 - Page 102, Line 6
Page 103, Line 7 - Page 103, Line 22
Page 106, Line 7 - Page 106, Line 13
Page 107, Line 4 - Page 108, Line 16
Page 109, Line 22 - Page 111, Line 8
Page 111, Line 18 - Page 113, Line 9
Page 115, Line 3 - Page 117, Line 4
Page 120, Line 11- Page 120, Line 25
Page 122, Line 16 - Page 123, Line 13
Page 124, Line 14 - Page 126, Line 15
Page 129, Line 13 - Page 131, Line 7
Page 138, Line 16 - Page 141, Line 4
Page 142, Line 9 - Page 142, Line 21
Page 142, Line 25 - Page 144, Line 24
Page 145, Line 12 - Page 145, Line 23
Page 148, Line 19 - Page 151, Line 4
Page 152, Line 2 - Page 152, Line 18
Page 163, Line 11 - Page 163, Line 18
Page 164, Line 4 - Page 166, Line 15
Page 167, Line 24 - Page 175, Line 11
Page 188, Line 14 - Page 188, Line 16
Page 194, Line 8 - Page 195, Line 17
Page 196, Line 14 - Page 196, Line 25
Page 198, Line 18 - Page 198, Line 22
Page 200, Line 11- Page 201, Line 5
Page 203, Line 13 - Page 204, Line 17
Page 205, Line 5 - Page 205, Line 17
Page 213, Line 13 - Page 215, Line 7
Page 216, Line 7 - Page 216, Line 17

### 15. John Yates (10/3/02)

Objections:

> Page 8, Line 11 - Page 8, line 12 (I)
> Page 16, Line 17 - Page 16, Line 20 (I)
> Page 197, Line 9 - Page 198, Line 10 (R)

Counter Designations:

> Page 16, Line 23 - Page 17, Line 5
> Page 21, Line 17 - Page 22, Line 12
> Page 22, Line 21 - Page 23, Line 6
> Page 24, Line 23 - Page 25, Line 14
> Page 30, Line 24 - Page 33, Line 2
> Page 53, Line 17 - Page 54, Line 24
> Page 61, Line 24 - Page 62, Line 7
> Page 69, Line 11 - Page 70, Line 13
> Page 80, Line 5 - Page 81, Line 2
> Page 82, Line 24 - Page 83, Line 13
> Page 100, Line 14 - Page 100, Line 17
> Page 101, Line 17 - Page 101, Line 21
> Page 102, Line 12 - Page 103, Line 20
> Page 105, Line 20 - Page 106, Line 23
> Page 107, Line 3 - Page 107, Line 19
> Page 108, Line 20 - Page 112, Line 16
> Page 113, Line 9 - Page 114, Line 12
> Page 115, Line 16 - Page 116, Line 13
> Page 124, Line 4 - Page 124, Line 25
> Page 126, Line 8 - Page 127, Line 14
> Page 155, Line 12 - Page 157, Line 9
> Page 159, Line 24 - Page 160, Line 9
> Page 162, Line 5 - Page 163, Line 2
> Page 166, Line 14 - Page 169, Line 4
> Page 170, Line 23 - Page 172, Line 8
> Page 172, Line 12 - Page 172, Line 19
> Page 173, Line 17 - Page 175, Line 5
> Page 209, Line 4 - Page 209, Line 17
> Page 223, Line 6 - Page 223, Line 9
> Page 226, Line 15 - Page 226, Line 16
> Page 239, Line 15 - Page 240, Line 6
> Page 240, Line 10 - Page 240, Line 20

EXHIBIT 10

## MERCK'S PRETRIAL PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW[1]

1.      Plaintiff Merck & Co., Inc. ("Merck") is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, Whitehouse Station, NJ 08889.

2.      Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 650 Cathill Road, Sellersville, PA 18960.

3.      On November 30, 1999, United States Patent No. 5,994,329 (the "'329 patent") was duly and legally issued to Anastasia G. Daifotis, Arthur C. Santora II, and A. John Yates for a METHOD FOR INHIBITING BONE RESORPTION.  Merck filed the application for the '329 patent on July 22, 1997.

4.      Claims 20 and 34 of the '329 patent are being asserted against Teva in this case.

5.      Claim 20 of the '329 patent, rewritten into independent form, claims:

>       A method for treating osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.

6.      Claim 34 of the '329 patent, rewritten into independent form, claims:

>       A method for preventing osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.

---

[1]   To the extent that any proposed finding of fact is deemed to be an issue of law, it should be so considered, and to the extent that any proposed conclusion of law is deemed to be an issue of fact, it should be so considered.

7.      The '329 patent is set to expire on August 14, 2018.

8.      Merck is the owner of the '329 patent. The '329 patent covers once-weekly ACTONEL® tablets for the treatment and prevention of osteoporosis.

9.      On August 13, 2002, United States Patent No. 6,432,932 (the "'932 patent") was duly and legally issued to Anastasia G. Daifotis, Arthur C. Santora II, and A. John Yates for a METHOD FOR INHIBITING BONE RESORPTION.  Merck filed the application for the '932 patent on September 2, 1999, and that application claims priority from an earlier patent application filed on July 22, 1997.

10.     Claim 6 of the '932 patent is being asserted against Teva in this case.

11.     Claim 6 of the '932 patent, rewritten into independent form, claims:

> A method for treating or preventing osteoporosis in a human, said method comprising orally administering to said mammal a pharmaceutically effective amount of about 35 mg of risedronate monosodium hemi-pentahydrate as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing.

12.     The '932 patent is set to expire on August 14, 2018.

13.     Merck is the owner of the '932 patent. The '932 patent covers once-weekly ACTONEL® tablets for the treatment and prevention of osteoporosis.

14.     Teva filed ANDA No. 77-132 seeking approval to market generic copies of ACTONEL® once-weekly tablets that contain 35 mg of risedronate sodium[2] before the expiration of the '329 and '932 patents.

## II.     TEVA'S ANDA NO. 77-132 INFRINGES CLAIMS 20 AND 34 OF THE '329 PATENT AND CLAIM 6 OF THE '932 PATENT

15.     Under 35 U.S.C. § 271(e)(2), it is an act of infringement to file an ANDA under Section 505(j) of the Federal Food, Drug and Cosmetic Act for a drug claimed in a patent or the use

---

[2] ACTONEL® tablets contain risedronate monosodium hemi-pentahydrate.

of which is claimed in a patent for the purpose of bringing the drug to market before expiration of that patent. *Glaxo v. Novopharm. Ltd.*, 101 F.3d 1562, 1569 (Fed. Cir. 1997).  Courts have recognized that such infringement is "artificial," as the accused infringer hasn't yet brought its product to market. The Court thus determines whether the drug's use would infringe the patent, if it were approved.  *Id.*

16.    Teva has stipulated to infringement of claims of the '329 patent.  Specifically, Teva has stipulated that that the marketing of 35 mg risedronate sodium in accordance with ANDA No. 77-132 would infringe claims 20 and 34 of the '329 patent under 35 U.S.C. § 271(e)(2).

17.    Although Teva has not conceded infringement of claims of the '932 patent, Teva's marketing of 35 mg risedronate sodium in accordance with ANDA No. 77-132 would infringe claim 6 of the '932 patent under 35 U.S.C. § 271(e)(2).

## III.    THE PERSON OF ORDINARY SKILL IN THE ART

18.    The claims of the '329 and '932 patents were not written for laymen, but for "persons experienced in the field of the invention." *E.g.. Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999).

19.    One of skill in art of the '329 and '932 patents is someone with an M.D. or Ph.D. degree, perhaps both, and working in the field of osteoporosis.  Such a person would be familiar with the literature and background of bisphosphonates in osteoporosis.

## IV.    DEFENDANT HAS NOT OVERCOME THE STATUTORY PRESUMPTION OF PATENT INVALIDITY

20.    Once issued, patents are presumed to be valid, and the burden of establishing invalidity of a patent claim rests solely on the party asserting such invalidity. *See* 35 U.S.C. § 282. The burden of establishing the invalidity of a claim rests solely on the party asserting invalidity. *See* 35 U.S.C. § 282.  The burden is constant, never shifts, and must convince the court of invalidity by

clear and convincing evidence. *E.g., Nupla Corp. v. IXL Mfg. Co.,* 114 F.3d 191, 192-93 (Fed. Cir. 1997). In this case, Teva has failed to establish the invalidity of claims 20 and 34 of the '329 patent and claim 6 of the '932 patent by clear and convincing evidence.

## V.    CLAIMS 20 AND 34 OF THE '329 PATENT AND CLAIM 6 OF THE '932 PATENT ARE NOT ANTICIPATED BY THE PRIOR ART

21.    For anticipation, every element of the claimed invention must be identically shown within the confines of a single reference, arranged as in the claim under review. *E.g., Crown Operations International, Ltd. v. Solutia Inc.*, 789 F.3d 1367, 1375 (Fed. Cir. 2002).

22.    Although a reference can anticipate a claim if its disclosure or a particular claim element is inherent rather than express, there must be no difference between the claimed invention and the reference disclosed, as viewed by a person of ordinary skill in the field of the invention. *See Standard Havens Prod., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991) (affirming denial of JNOV because reference did not anticipate). If even one claim element is missing from a reference, the claim is not "anticipated" by that reference. *Id.*

23.    Claims 20 and 34 of the '329 patent and claim 6 of the '932 patent are not anticipated by the prior art under 35 U.S.C. § 102.

24.    United States Patent No. 5,869,471 (the "'471 patent") fails to disclose every element of claims 20 and 34 of the '329 patent. The '471 patent therefore does not anticipate claims 20 and 34 of the '329 patent.

25.    The Procter & Gamble Co.'s clinical trials pertaining to risedronate fail to anticipate claim 6 of the '932 patent because the clinical trials did not occur before the July 22, 1997, priority date for the '932 patent.

26.    A prior art disclosure cannot anticipate if it does not enable one of skill in the art to make and use the claimed invention. *E.g., PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558,

1566 (Fed. Cir. 1996). Prior art references must enable in order to anticipate because otherwise they fail to place the allegedly disclosed matter in the possession of the public. *Akzo N.V. v. US ITC*, 808 F.2d 1471 (Fed. Cir. 1986).

## VI.    CLAIMS 20 AND 34 OF THE '329 PATENT AND CLAIM 6 OF THE '932 PATENT ARE NOT OBVIOUS IN LIGHT OF THE PRIOR ART

27.    Obviousness is a question of law based upon underlying factual determinations. *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1071 (Fed. Cir. 1994).

28.    When the inquiry turns to obviousness under 35 U.S.C. § 103, the disclosure must again be assessed to determine whether the methods were obvious under all circumstances without employing hindsight. *E.g., Custom Accessories, Inc. v. Jeffrey Allan Indus., Inc.,* 807 F.2d 955, 960 (Fed. Cir. 1986).  It is in this exercise that the Court can avail itself of secondary indicia of nonobviousness such as commercial success and failure of others to assist in reaching a conclusion. *Id.*

29.    In an obviousness determination, the following factual inquires should be considered: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; (4) objective considerations, such as commercial success, long felt need, failure of others, and copying.  *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684 (1966).

30.    It is critical in an obviousness analysis to view the patentability of claims while "casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field." *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *abrogated on other grounds by In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).

31.     In 1996 and 1997, there was an expectation by clinicians in the bisphosphonates field that risedronate sodium would not be well tolerated at a 35 mg dose.  At this time, those of skill in the art would not have used 35 mg doses of risedronate sodium because of the clear expectation that the safety and tolerability profile for such high doses would have been unacceptable in osteoporosis.

32.     In July 1997, it was well known that the oral administration of bisphosphonates caused dose-related gastrointestinal side effects.  In July 1997, any suggestion to give 35 mg doses of risedronate sodium, a potentially irritating compound, to patients contradicted the understanding of those of skill in the art.

33.     Rank speculation about a therapeutic method fails to enable when those skilled in the art would not consider such method as safe and tolerable by patients.  Guesswork without performance that does not show to a skilled physician the performance of the method does not place anything new in the possession of the public. *See, Crow Operations Int'l., Ltd. v. Solutia, Inc.*, 289 F. 3d 1367, 1375 (Fed. Cir. 2002).

34.     The development of a therapy for disease requires the drug to be safe and well tolerated by the patient.  Based on the knowledge in the field, no reasonable clinician would have increased the dose of risedronate sodium given to patients.  The suggestions in the prior art, including the April 1996 and July 1996 Lunar News, did not address the widely expected and recognized concerns associated with the dose-related gastrointestinal side effects of bisphosphonates.  The Lunar News does not even address risedronate.

35.     The development of a therapy for disease requires the drug to be safe and well tolerated by the patient.  Merck's beagle experiments provided surprising insight that higher weekly oral doses of bisphosphonates, including risedronate sodium, could be at least as safe and tolerable as much smaller daily doses.

36.    Based upon the underlying fact determinations, claims 20 and 34 of the '329 patent and claim 6 of the '932 patent are not obvious under 35 U.S.C. § 103.

## VII.    ONCE-WEEKLY ACTONEL® TABLETS ARE COMMERCIALLY SUCCESSFUL AND THEREFORE NOT OBVIOUS OVER THE PRIOR ART

37.    Courts must take objective indicia of nonobviousness, also known as "secondary considerations," into account before a conclusion on obviousness is reached. *Glaverbel Societe Anonyme v. Northlake Marketing*, 35 F.3d 1550, 1555 (Fed. Cir. 1995); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986).    Secondary considerations include the commercial success of a product embodying the patented invention and the copying of the invention by others. *In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir 1994).    Chief Judge Markey of the Federal Circuit has remarked: "evidence of secondary considerations may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-9 (Fed. Cir. 1983); *see also Pro-Mold and Tool Co. v. Great Lakes Plastic Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996).

38.    Claims 20 and 34 of the '329 patent and claim 6 of the '932 patent claims once-weekly dosing regimens for risedronate sodium, for the prevention and treatment of osteoporosis. ACTONEL® once-weekly risedronate sodium tablets embody the invention of claims 20 and 34 of the '329 patent and claim 6 of the '932 patent '329 patent and are part of the ACTONEL® franchise.

39.    Once-weekly ACTONEL® tablets were first offered for sale in June 2002.    Prior to the introduction of the once-weekly dosing regimen for ACTONEL® tablets, daily risedronate sodium therapy was available.

40.    Teva is free to market risedronate sodium for the treatment and prevention of osteoporosis as of January 2007.

41.     Teva affirmatively decided to file an ANDA and to go forward with a costly and time-consuming litigation all in the hopes that it could freely copy the once-weekly dosing regimen of the '329 and '932 patents.

42.     From its introduction in May 2000 until June 2002, sales and prescription volumes for the daily ACTONEL® product had been increasing at a constant trend.  Immediately upon the introduction of the once-weekly dosing regimen, a seminal and fundamental shift upward is seen in this trend.

43.     The only comparable fundamental shift is seen in the prescription volume trends of the FOSAMAX® franchise, which also embodies the inventions claimed by the '329 patent.  The dramatic shift only occurs within the FOSAMAX® and ACTONEL® franchises, and is attributable to the introduction of the once-weekly dosing regimens.

44.     This fundamental increase in the prescription volume for ACTONEL® tablets indicates a virtually immediate adoption of the once-weekly dosing regimen by both patients and physicians.

45.     The fundamental increase in ACTONEL® brand sales and prescription volumes due to the introduction of the once-weekly dosing regimen and is testimony to the commercial success of the regimen claimed in the '329 and '932 patents.

46.     The marketplace often measures the significance of an invention better than a courtroom.  *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991).  Secondary considerations such as commercial success "illuminate the technological and commercial environment of the inventor, and aid in understanding the state of the art at the time the invention was made." *Id*.

47.     The commercial success of the once-weekly ACTONEL® tablets and Teva's continued fight to copy these tablets is clear and weighty evidence of the nonobviousness of the invention of the once-weekly dosing regimen.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

Mary B. Graham (#2256)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*ATTORNEYS FOR PLAINTIFF*
*MERCK & CO., INC.*

OF COUNSEL:

John F. Lynch
Nicolas G. Barzoukas
HOWREY SIMON ARNOLD
& WHITE LLP
750 Bering Drive
Houston, TX 77057-2198
Telephone: 713.787.1400

Paul D. Matukaitis
MERCK & CO., INC.
One Merek Drive
Whitehouse Station, NJ 08889-0100

Edward W. Murray
Gerard M. Devlin, Jr.
126 East Lincoln Ave., RY28-320
Rahway, NJ 07065

Dated:  March 28, 2003

# APPENDIX

## PLAINTIFF'S TRIAL EXHIBIT LIST
## AND CORRESPONDING DEFENDANT'S TRIAL EXHIBITS
### Merck v. Teva, C.A. No. 01-048 (JJF)

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 1 | U.S. Patent No. 5,994,329 (issued Nov. 30, 1999) (certified copy). | DTX 2 |
| PTX 28 | LUNAR CORP., LUNAR NEWS 1-44 (Apr. 1996). | DTX 417 |
| PTX 29 | LUNAR CORP., LUNAR NEWS 1-36 (Jul. 1996). | DTX 418 |
| PTX 30 | LUNAR CORP., LUNAR NEWS 1-44 (Dec. 1996). | |
| PTX 31 | LUNAR CORP., LUNAR NEWS 1-48 (Apr. 1997). | |
| PTX 67 | Letter from Louis M. Shewood, Senior Vice President of Medical and Scientific Affairs, U.S. Human Health, Merck & Co., Inc., to Doctors (Mar. 15, 1996). | DTX 34 |
| PTX 68 | MERCK & CO., INC., FOSAMAX® (ALENDRONATE SODIUM TABLETS),PACKAGE INSERT NO. 7957019 (Issued Jan. 2001). | |
| PTX 69 | Charles H. Chesnut et al., *Alendronate Treatment of the Postmenopausal Osteoporotic Woman: Effect of Multiple Dosages on Bone Mass and Bone Remodelin*g, 99 AM. J. MED. 144, 144-152 (1995). | DTX 14 |
| PTX 77 | H. I. J. Harinck et al., *Paget's Disease of Bone: Early and Late Responses to Three Different Modes of Treatment with Aminohydroxypropylidene Bisphosphonate* (*APD*), 295 BRIT. MED. J. 1301, 1301-1305 (1987). | |
| PTX 83 | Steven T. Harris et al., *Four-Year Study of Intermittent Cyclic Etidronate Treatment of Postmenopausal Osteoporosis: Three Years of Blinded Therapy Followed by One Year of Open Therapy*, 95 AM. J. MED. 557, 557-567 (1993). | |
| PTX 84 | A. T. M. van Holten-Verzantvoort et al., *Palliative Pamidronate Treatment in Patients with Bone Metastases from Breast Cancer*, 11 J. CLINICAL ONCOLOGY 491, 491-498 (1993). | |
| PTX 86 | S. Adami et al., *Effects of Two Oral Doses of Alendronate in the Treatment of Paget's Disease of Bone*, 15 BONE 415, 415-417 (1994). | |
| PTX 87 | E. G. Lufkin et al., *Pamidronate: An Unrecognized Problem in Gastrointestinal Tolerability*, 4 OSTEOPOROSIS INT'L 320, 320-322 (1994). | |
| PTX 89 | U. A. Liberman et al., *Effects of Oral Alendronate on Bone Mineral Density and the Incidence of Fractures in Postmenopausal Osteoporosis*, 333 NEW ENG. J. MED. 1437, 1437-1443 (1995). | DTX 276 |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 90 | G. Maconi & G. Bianchi Porro, *Multiple Ulcerative Esophagitis Caused by Alendronate*, 90 AM. J. GASTROENTEROLOGY 1889, 1889-1890 (1995). | |
| PTX 91 | P. C. De Groen et al., *Esophagitis Associated with the Use of Alendronate*, 335 NEW ENG. J. MED. 1016, 1016-1021 (1996). | DTX 6 |
| PTX 92 | D. M. Black et al., *Randomised Trial of Effect of Alendronate on Risk of Fracture in Women with Existing Vertebral Fractures*, 348 LANCET 1535, 1535-1541 (1996). | DTX 341 |
| PTX 96 | M. F. Abdelmalek & D. D. Douglas, *Letters to the Editor: Alendronate-Induced Ulcerative Esophagitis*, 91 AM. J. GASTROENTEROLOGY 1282, 1282-1283 (1996). | |
| PTX 98 | Sorrentino et al., *Esophageal Ulceration Due to Alendronate*, 28 ENDOSCOPY 529 (1996). | DTX 404 |
| PTX 100 | D. O. Castell, *Editorials: "Pill Esophagitis" – The Case of Alendronate*, 335 NEW ENG. J. MED. 1058, 1058-1059 (1996). | DTX 8 |
| PTX 101 | G. Naylor & M. H. Davies, *Letter to Editor: Oesophageal Stricture Associated with Alendronic Acid*, 348 LANCET 1030, 1030-1031 (1996). | |
| PTX 102 | D. E. Rimmer & D. E. Rawls, *Letters to the Editor, Improper Alendronate Administration and a Case of Pill Esophagitis*, 91 AM. J. GASTROENTEROLOGY 2648, 2648-2649 (1996). | |
| PTX 104 | M. A. Blank et al., *Nonclinical Model for Assessing Gastric Effects of Bisphosphonates*, 42 DIGESTIVE DISEASES SCI. 281, 281-288 (1997). | |
| PTX 105 | R. E. Colina et al., *A New Probable Increasing Cause of Esophageal Ulceration: Alendronate*, 92 AM. J. GASTROENTEROLOGY 704, 704-706 (1997). | |
| PTX 106 | C. M. Girelli et al., *Esophagitis from Alendronate: Report of Two Cases*, 88 RECENTI PROGRESSI MEDICINA 223, 223-225 (trans. Sl Int'l. Inc. 2003) (1997). | |
| PTX 107 | J. Levine & D. Nelson, *Esophageal Stricture Associated with Alendronate Therapy,* 102 AM. J. MED. 489, 489-491 (1997). | |
| PTX 109 | E. Pizzani & G. Valenzuela, *Esophagitis Associated with Alendronate Sodium*, 124 VA. MED. Q. 181, 181-182 (1997). | |
| PTX 110 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT 3-6, 126-132, 144 (1st ed. 1993). | |
| PTX 111 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT 5-8, 147-154 (2d ed. 1995). | |
| PTX 112 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT 152-160 (3d ed. 1997). | |
| PTX 113 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE FROM THE LABORATORY TO THE PATIENT, at v – ix, 168-177 (4th ed. 2000). | |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 114 | R. Graham Russell et al., *Clinical Pharmacology of Bisphosphonates in,* TUMOR BONE DISEASES AND OSTEOPOROSIS IN CANCER PATIENTS 377, 377-392 (Jean-Jacques Body ed., 2000). | |
| PTX 115 | J. A. Kanis et al., *Rationale for the Use of Alendronate in Osteoporsis,* 5 OSTEOPOROSIS INT'L 1, 1-13 (1995). | |
| PTX 116 | S. T. Harris et al., *The Effect of Short Term Treatment with Alendronate on Vertebral Density and Biochemical Markers of Bone Remodeling in Early Postmenopausal Women,* 76 J. CLINICAL ENDOCRINOLOGY METABOLISM, 1399, 1399-1406 (1993). | DTX 340 |
| PTX 124 | Bruce Ettinger, et al., *Alendronate Use Among 812 Women: Prevalence of Gastrointestinal Complaints, Noncompliance with Patient Instructions, and Discontinuation,* 4 J. MANAGED CARE PHARMACY 488, 488-492 (1998). | |
| PTX 127 | A. J. P. Yates et al., *Intravenous Clodronate in the Treatment and Retreatment of Paget's Disease of Bone,* LANCET 1474, 1474-1477 (1985). | |
| PTX 129 | G. Heynen et al., *Clinical and Biological Effects of Low Doses of (3 Amino-1 Hydroxypropylidene)-1, 1-Bisphosphonate (APD) in Paget's Disease of Bone,* 11 EUR. J. CLINICAL INVESTIGATION 29, 29-35 (1982). | |
| PTX 130 | H. I. J. Harinck et al., *Paget's Disease of Bone: Early and Late Responses to Three Different Modes of Treatment with Aminohydroxypropylidene Bisphosphonate (APD),* 295 BRIT. MED. J. 1301, 1301-1305 (1987). | |
| PTX 131 | S. A. Khan et al., *Alendronate in the Treatment of Paget's Disease of Bone,* 20 BONE 263, 263-271 (1997). | DTX 342 |
| PTX 132 | E. Siris et al., *Comparative Study of Alendronate Versus Etidronate for the Treatment of Paget's Disease of Bone,* 81 J. CLINICAL ENDOCRINOLOGY METABOLISM 961, 961-967 (1996). | DTX 271 |
| DTX 134 | C. P. Peter et al., *Esophageal Irritation Due to Alendronate Sodium Tablets: Possible Mechanisms,* 43 DIGESTIVE DISEASES SCI. 1998, 1998-2002 (1998). | |
| PTX 164 | IMS National Prescription Audit Data, FAME Products Total Prescriptions Chart for Jan. 1995 - Sept. 2002 (unpublished data). | |
| PTX 165 | IMS National Prescription Audit Data, FAME Products New Prescriptions Chart for Jan. 1995 - Sept. 2002 (unpublished data). | |
| PTX 166 | Osteoporosis Franchise Business Group, Osteoporosis Franchise Business Group Actual Performance for Years Dec. 1995 - 2001: Year to Date as of Dec. 2001 (unpublished data). | |
| PTX 171 | Diffusion Model Estimates Predicted and Actual Cumulative New Prescriptions Chart for Sept. 1995 - Sept. 2002 (unpublished data). | |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 202 | Letter from Michelle W Kloss, Director of Regulatory Affairs, Merck & Co., Inc., to Solomon Sobel, Director, Division of Metabolism and Endocrine Drug Products, Food and Drug Administration (Oct. 30, 1996) (unpublished NDA 20-560, FOSAMAX® Alendronate Sodium Tablets, Meeting Background Package). | |
| PTX 225 | Merck Institute for Therapeutic Research, Merck Research Laboratories, Merck & Co., Inc., Reference Q-2, MRL Preclinical Report: FOSAMAX®: Esophageal Irritation Studies in Dogs, No. TT #96-038-0,-1 (submitted 1996) (unpublished). | |
| PTX 226 | Merck Institute for Therapeutic Research. Merck Research Laboratories, Merck & Co., Inc., Reference Q-3, MRL Preclinical Report: MK-0217: Five-Day Esophageal Irritation Study in Dogs, No. TT #96-039-0 (submitted 1996) (unpublished). | |
| PTX 246 | Socrates E. Papapoulos, Curriculum Vitae of Socrates E. Papapoulos, MD. | |
| PTX 247 | M. Brian Fennerty, Curriculum Vitae of M. Brian Fennerty, MD 1, 1-29 (rev. Nov. 2002). | |
| PTX 248 | Christopher A. Vellturo, Curriculum Vitae of Christopher A. Vellturo, PhD 1, 1-9. | |
| PTX 261 | Milton Liebman, *Awakening the Silent Osteoporosis Market*, MED. MARKETING MEDIA, Apr. 2002. | |
| PTX 289 | *Clodronate; Etidronate; Pamidronate,* 1 THERAPEUTIC DRUGS at ii, iv-xi, C276-C282, E88-E93, Pl-P4 (Sir Colin Dollery ed., 1991). | |
| PTX 290 | D. L. Douglas et al., *Drug Treatment of Primary Hyperparathyroidism: Use of Clodronate Disodium,* 286 BRIT. MED. J. 587, 587-590 (1983). | |
| PTX 291 | R. G. G. Russell et al., *Diphosphonates in Paget's Disease,* LANCET 894, 894-898 (1974). | |
| PTX 292 | Socrates E. Papapoulos, *Pharmacodynamics of Bisphosphonates in Man; Implications for Treatment, in* BISPHOSPHONATES ON BONE 231, 231-245; *Treatment of Established Osteoporosis with Bisphosphonates, in* BISPHOSPHONATES ON BONE 403, 403-418 (O. L. M. Bijvoet et al. eds. 1995). | |
| PTX 293 | R. G. G. Russell, *Bisphosphonates: Pharmacology, Mechanisms of Action and Clinical Uses,* 2 OSTEOPOROSIS INT'L SUPPLEMENT S66, S66-S80 (1999). | |
| PTX 294 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE: FROM THE LABORATORY TO THE PATIENT § 3.1 *Paget's Disease* 1, 1-15 (R. G. G. Russell's edits). | |

| Merck's Trial Exhibit No. | Description | Teva's Trial Exhibit No. |
|---|---|---|
| PTX 295 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE: FROM THE LABORATORY TO THE PATIENT § *2.5 Animal Toxicology 1,* 1-8 (R. G. G. Russell's edits). | |
| PTX 296 | HERBERT FLEISCH, BISPHOSPONATES IN BONE DISEASE: FROM THE LABORATORY TO THE PATIENT § 3.8 *Adverse Events* 1, 1-7 (R. G. G. Russell's edits). | |
| PTX 297 | Affidavit of Dr. Graham Russell at 1- 34, *Procter & Gamble Pharmaceuticals Canada, Inc. v The Minister of Health and Genpharm, Inc.,* Federal Court of Canada - Trial Division, Court File No. T-155-02 (affidavit filed June 17, 2002). | |
| PTX 298 | D. P. O'Doherty, *Paget's Disease of Bone,* 3 CURRENT ORTHOPAEDICS 262, 262-269 (1989). | |
| PTX 2999 | New Prescriptions and Promotional Spending for FOSAMAX® Chart for Jan. 1997 - Sept. 2002 (unpublished data). | |
| PTX 300 | Merck's demonstrative exhibits | |
| | I. R. Reid, et al., *Biochemical and Radiologic Improvement in Paget's Disease of Bone Treated with Alendronate: A Randomized, Placebo-controlled Trial,* 101 AM. J. MED. 341, 341-348 (1996). | DTX 15 |
| | T. Schnitzer, et al., *Therapeutic Equivalence of Alendronate 70 mg Once-Weekly and Alendronate 10 mg Daily in the Treatment of Osteoporosis,* 12 AGING CLIN. EXPERIMENTAL RES. 1, 1-12 (2000). | DTX 19 |
| | R. G. G. Russell, Curriculum Vitae of Professor Graham Russell (May 2002). | DTX 392 |
| | J. P. Devogelaer, et al., *Oral Alendronate Induces Progressive Increases in Bone Mass of the Spine, Hip, and Total Body Over 3 Years in Postmenopausal Women With Osteoporosis,* 18 BONE 141, 141-150 (1996). | DTX 401 |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that true and correct copies of the foregoing were caused to

be served on March 28, 2003 upon the following individuals:

> **<u>BY HAND</u>**:
>
> Josy W. Ingersoll, Esquire
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
>
> **<u>BY FEDERAL EXPRESS</u>:**
>
> James Galbraith, Esquire
> Kenyon & Kenyon
> One Broadway
> New York, NY 10004

_____
Mary B. Graham

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

MERCK & CO., INC.,              )
                        )
       Plaintiff,         )
                        )
          v.           )
                        )     Civil Action No. 04-939 (GMS)
                        )
TEVA PHARMACEUTICALS USA, INC.   )
                        )
       Defendant.       )

**TEVA PHARMACEUTICALS USA, INC.'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

## I.      BACKGROUND

1.      Plaintiff Merck & Co., Inc. ("Merck") is a corporation incorporated under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, Whitehouse Station, NJ 08889. *Joint Statement of Uncontested Facts* at ¶ 1.

2.      Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 650 Cathill Road, Sellersville, PA. *Joint Statement of Uncontested Facts* at ¶ 2.

3.      On November 30, 1999, United States Patent No. 5,994,329 ("the '329 patent") was issued. *Joint Statement of Uncontested Facts* at ¶ 3.

4.      Merck is the owner of the '329 patent. *Joint Statement of Uncontested Facts* at ¶ 4.

5.      On August 13, 2002, United States Patent No. 6,432,932 ("the '932 patent") was issued. *Joint Statement of Uncontested Facts* at ¶ 5.

6.      Merck is the owner of the '932 patent. *Joint Statement of Uncontested Facts* at ¶ 6.

7.      Teva USA has filed Abbreviated New Drug Application ("ANDA") No. 77-132, including a certification under Title 21, United States Code § 355(j)(2) with the Food and Drug Administration ("FDA") for tablets containing 35 mg of risedronate sodium. *Joint Statement of Uncontested Facts* at ¶ 7.

8.      Teva stipulates for the purposes of this trial that the commercial marketing of Teva USA's proposed 35 mg risedronate sodium tablets, in accordance with ANDA No. 77-132, would infringe claims 20 and 34 of the '329 patent if those claims are valid. *Joint Statement of Uncontested Facts* at ¶ 8.

9.      Merck stipulates that the date of invention for claims 20 and 24 of the '329 patent is July 22, 1997. *Joint Statement of Uncontested Facts* at ¶ 9; *see also .Merck & Co. v. Teva Pharmaceuticals USA, Inc.,* ("*Merck II*") 395 F.3d 1364, 1366 (Fed. Cir. 2005); *Merck & Co. v. Teva Pharmaceuticals USA, Inc.* ("*Merck I*") 288 F. Supp. 2d 601, 606 (D. Del. 2003).

10.     As set forth by the Federal Circuit in *Merck II*, the claim term "about" in the '329 and '932 patents should be given its ordinary meaning of  "approximately." *Merck II* at 1372; *Joint Statement of Uncontested Facts* at ¶ 11.

11.     As set forth in *Merck II*, claims 23 and 37 of the '329 patent, directed to the weekly dosing of the bisphosphonate alendronate for the treatment and prevention of osteoporosis, are obvious in light of the prior art. *Merck II* at 1373.

### A.    Bone Biology and the Mechanism of Action of Risedronate

12.    Bone is the tissue that provides mechanical support to the body, enabling us to move around.  Bone is made up of a protein matrix, which is overlaid with mineral to give bone its hardness.  Two primary types of cells act in the maintenance of bone: i) osteoclasts, which break down bone, and ii) osteoblasts, which build new bone.

13.    The process of bone destruction and reformation is known as bone "remodeling."  In the normal bone remodeling process, osteoclasts attach to the bone surface, become activated, and erode away the bone material beneath them, leaving a defect in the bone structure.  The destruction of bone by osteoclasts is called bone "resorption."  Osteoblasts attach to the eroded surface of the defect created by the osteoclasts, lay down new bone, and then become quiescent.  In the normal healthy adult the remodeling process is balanced, *i.e.*, the same amount of bone is destroyed and built.

14.    In osteoporosis, bone destruction and formation are no longer balanced and bone is destroyed faster than it is replaced. Osteoporosis therefore can lead to bone that is thinner, weaker, more fragile, and porous.

15.    Osteoporosis is a serious, costly disease.  Osteoporosis patients include those who have lost bone mass but have no other clinical signs; such people are diagnosed with laboratory tests such as x-rays or bone density measurements.  Other osteoporosis patients, however, may be diagnosed after suffering a wrist or hip fracture, which is often the first sign of bone weakness.  Osteoporosis of the spine, and the resulting fractures of the vertebrae, results in stooping or bending of the back, and loss of stature.  In frail patients, hip fractures resulting from osteoporosis may be disabling,

leading to a decreased quality of life. Hip fractures leave some patients bed ridden, and can lead to increased mortality.

16.     Osteoporosis is treated primarily by inhibiting bone resorption — thus restoring the balance between bone destruction and bone formation. Risedronate treats osteoporosis by blocking the bone destroying effects of osteoclasts and thereby inhibiting bone resorption. A small portion of the ingested drug makes its way and adheres to the bone surface, where it resides until it is taken up by osteoclasts. The risedronate then inhibits the osteoclasts from resorbing bone. This process was well understood when Merck filed the '329 patent application in July 1997.

17.     Paget's disease is another common bone disease characterized by increased bone resorption. In Paget's disease, increased bone remodeling occurs in localized areas of the skeleton. Patients with Paget's disease also exhibit a spectrum of clinical problems, but Paget's disease is often diagnosed in patients without symptoms during routine blood tests or x-ray examinations, and treatment is often encouraged even in these asymptomatic patients. Depending on the site of involvement, if Paget's disease is not detected and treated early it can lead to increases in bone size, fractures, and deformity, potentially resulting in other complications. Like osteoporosis, Paget's disease is treated by inhibiting bone resorption with risedronate.

18.     The biological characteristics of bisphosphonates, including risedronate, require patients to follow a set of complicated and inconvenient dosing instructions. Because risedronate is bound up by metal ions (e.g., calcium) in food and beverages, patients are instructed to take the product upon arising in the morning, with plain water, a half an hour before eating. Because bisphosphonates were recognized to be potential

irritants to the esophagus, patients were instructed to take the product with a full glass of

water and to sit or stand upright for at least one-half hour after taking the medication.

The latter instruction insured that the tablets would enter the stomach efficiently, without

being held up in the esophagus and potentially causing irritation.  Patients, especially the

very elderly, found these instructions to be inconvenient and difficult to adhere to on a

daily basis, sometimes to the point of causing discontinuation of the medication.

### B.    The '329 Patent

19.    The '329 patent issued from U.S. Application No. 09/134,214 ("the '214

application"), filed August 14, 1998.  The '214 application is a continuation of

PCT/US98/14796, filed July 17, 1998, and claims priority to U.S. Provisional

Application Nos. 60/053,535, filed July 23, 1997 and 60/053,351, filed July 22, 1997.  As

noted above, Merck stipulates that the invention date of the subject matter of the '329

patent is July 22, 1997.  *Supra* at ¶ 9.

20.    The '329 patent discloses less frequent than daily administration of

bisphosphonates, including risedronate, to inhibit bone resorption.  The specification of

the '329 patent focuses primarily on the use of alendronate on a less frequent than daily

basis.  Claims 20 and 34, the claims asserted by Merck in this action, relate specifically to

the treatment and prevention of osteoporosis through the less frequent than daily

administration of risedronate.  These claims are dependent from several others and are

summarized as follows:

> 20.    A method for treating osteoporosis in a mammal in need thereof
> comprising orally administering to said mammal a pharmaceutically effective
> amount of a bisphosphonate chosen from the group consisting of risedronate,
> pharmaceutically acceptable salts or esters thereof, and mixtures thereof, as a unit
> dosage according to a continuous schedule having a dosing interval selected from

the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.

34.    A method for preventing osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of a bisphosphonate chosen from the group consisting of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof, as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.

The only difference between the two claims is that Claim 20 is directed to the "treatment" and Claim 34 is directed to the "prevention" of osteoporosis. Thus, the idea behind the asserted claims is straight-forward. Instead of taking a daily dose of risedronate to treat and prevent osteoporosis, risedronate could be taken once or twice a week, every other week, or twice a month.

21.    Although the asserted claims relate to the administration of risedronate on a less-frequent-than-daily basis for the management of osteoporosis in mammals, there are no data in the '329 patent relating to the administration of risedronate to mammals on a less-than-daily basis. As discussed below, the reason for this is that persons of skill in the art knew that the administration of risedronate on a less frequent than daily basis would be effective to treat and prevent osteoporosis without testing it. Thus, there are no data or examples demonstrating the efficacy of the claimed methods at treating or preventing osteoporosis.

22.    The only data provided in the patent are from a series of experiments on the esophagi of a few beagle dogs. In these experiments, eight beagles were anaesthetized, laid on their sides, and their esophagi were filled with various acidic solutions of bisphosphonates, including risedronate and alendronate. They were then killed and their esophagi examined for signs of irritation. Although Merck now leans

heavily on the results seen in these eight Beagles, those results do not include any data relating to less-than-daily administration of risedronate, instead providing less-than-daily administration data only for alendronate.

23.    The '329 patent specification recognizes that the inconvenience of the dosing regimen for bisphosphonate provides motivation to administer bisphosphonates such as risedronate less frequently, and proposes the invention as a solution to that problem:

> [B]ecause bisphosphonates should be taken on an empty stomach followed by fasting and maintenance of an upright posture for at least 30 minutes, many patients find daily dosing to be burdensome.  These factors can therefore interfere with patient compliance, and in severe cases even require cessation of treatment.  ('329 patent at col. 2, line 67-col. 3, line 6).

>                *                *                *

> From a patient lifestyle standpoint, the methods of the present invention would also be more convenient than daily or cyclic dosing regimens. Patients would be subjected less frequently to the inconvenience of having to take the drug on an empty stomach and having to fast for at least 30 minutes after dosing.  ('329 patent at col. 4, lines 14-19).

24.    Although the '329 patent contains no data from the administration of bisphosphonates to humans according to the claimed schedule, the '329 patent specification states without qualification that the disclosed invention surprisingly results in fewer adverse gastrointestinal side effects:

> [T]hat the administration of a bisphosphonate at a high relative dosage at a low relative dosing frequency causes *less* adverse gastrointestinal effects, particularly esophageal effects, compared to the administration of a low relative dosage at a high relative dosing frequency.

('329 patent at col. 3, line 64-col. 4, line 2) (emphasis added).  However, there is no evidence that the weekly, or any other less frequent than daily, administration

7

of risedronate or any other bisphosphonate provides a clinically significant safety advantage compared to the daily administration of risedronate. In fact, Merck has never conducted a study that could demonstrate such an advantage.

### C.    The '932 Patent

25.    The '932 patent issued from U.S. Application No. 09/688,659 ("the '659 application"), filed September 2, 1999. The '329 patent and the '932 patent claim priority to PCT/US98/14796, filed July 17, 1998, and to U.S. Provisional Application No. 60/053,351 ("the '351 application"), filed July 22, 1997. While the '329 patent is a continuation of PCT/US98/14796, the '932 patent is a continuation-in-part of PCT/US98/14796.

26.    As a continuation-in-part of PCT/US98/14796, the specification of the '932 patent contains new matter not disclosed in PCT/US98/14796 or the '329 patent. The '932 patent disclosed for the first time dosage information for the once-weekly dosing of risedronate; specifically, it disclosed weekly dosing with a range of 7 mg to about 100 mg of risedronate, and 35, 40, 45, and 50 mg weekly dosages.

27.    Claim 6 of the '932 patent, rewritten in independent form, reads as follows:

> 6.    A method for treating or preventing osteoporosis in a mammal, said method comprising orally administering to said mammal about 35 mg, on an acid active basis, of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof as a unit dosage according to a continuous schedule having a once-weekly dosing interval.

28.    Claim 6 calls for the administration of seven times the known daily dose of risedronate for the treatment and prevention of osteoporosis.

29.    The '351 application, filed July 22, 1997, does not provide written description support for the limitation of Claim 6 of a 35 mg dose of risedronate.

Accordingly, Claim 6 of the '932 patent is not entitled to a priority date of July 22, 1997.

Thus, the effective priority date and invention date for Claim 6 of the '932 patent is no

earlier than September 2, 1999, the date of filing of the '659 application.

## II.     PROPOSED FINDINGS OF FACT ON ANTICIPATION

### A.     U.S. Patent No. 5,869,471 Anticipates Claims 20 and 34 of the '329 Patent

30.     U.S. Patent No. 5,869,471 ("the '471 patent") disclosed the oral

administration of a pharmaceutically effective amount of risedronate on a weekly basis

for the treatment of rheumatoid arthritis in humans.  The method of the '471 patent

includes the administration of a non-steroidal anti-inflammatory drug ("NSAID") to treat

the inflammation at the bone joint and the administration of a bisphosphonate, including

risedronate specifically, to treat the osteoporosis resulting from rheumatoid arthritis.

31.     The '471 patent discloses dosing intervals for the bisphosphonate ranging

from once daily to once every sixty days.  For example, the once-weekly administration

of risedronate is specifically disclosed in Example B of the '471 patent.  In treating

rheumatoid arthritis with a weekly administration of oral risedronate, the method

disclosed in the '471 patent results in the treatment and prevention of osteoporosis in

mammals in need thereof.

32.     The '471 patent thus discloses every element of Claims 20 and 34 of the

'329 patent.

33.     A person who followed the teaching of the '471 patent and administered a

weekly dose of risedronate would be safely and effectively treating and preventing

osteoporosis in mammals in need thereof.

34.     The '471 patent anticipates Claims 20 and 34 of the '329 patent.

**B.    Clinical Studies Conducted by the Procter & Gamble Company Anticipate Claim 6 of the '932 Patent**

35.    The Procter & Gamble Company ("P&G") designed and proposed to the FDA clinical trials involving the oral administration of a weekly dose of 35 mg of risedronate for the treatment and prevention of osteoporosis.  P&G submitted the proposals for Study Nos. 1999033 and HMR4000E/3001 to the FDA in January 1999, and began orally administering 35 mg doses of risedronate to postmenopausal women on a weekly dosing regimen on May 21, 1999.

36.    P&G's clinical trials were planned and launched before September 2, 1999, the filing date of the continuation-in-part application that led to the '932 patent.

37.    P&G's activities disclose every element of Claim 6 of the '932 patent.

38.    A person of ordinary skill in the art who followed P&G's activities and administered a weekly dose of 35 mg of risedronate to post-menopausal women would be safely and effectively treating and preventing osteoporosis in mammals in need thereof.

39.    P&G's activities anticipate Claim 6 of the '932 patent.

**III.    PROPOSED CONCLUSIONS OF LAW ON ANTICIPATION**

40.    Because a patent is presumed valid (35 U.S.C. § 282), Teva has the burden of proving that the asserted claims are invalid by clear and convincing evidence.  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1374 (Fed. Cir. 2001); *Atlas Powder Co.* v. *IRECO Inc.,* 190 F.3d 1342, 1347 (Fed. Cir. 1999).  Neither U.S. Patent No. 5,869,471 nor information regarding P&G's activities was before the USPTO during the prosecution of the '329 and '932 patents.  The fact that this prior art was not before the Examiner makes the presumption of validity associated with the '329 and '932

patents more easily overcome because no deference is due to the USPTO with respect to evidence that it did not consider. *Structural Rubber Products Co. v. Park Rubber Co.,* 749 F.2d 707, 714 (Fed. Cir. 1984) ("Deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider."); *EWP Corp. v. Reliance Universal Inc.,* 755 F.2d 898, 905 (Fed. Cir. 1985); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358-60 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821 (1984).

### A.    Anticipation under 35 U.S.C. § 102 (b)

41.    To be patentable, an invention must be new.  Under 35 U.S.C. § 102 (b), a person is not entitled to a patent if the claimed invention was ". . . described in a printed publication" more than one year before the application for patent was filed.  The novelty requirement ensures that the public is not deprived of information that is already within the public domain.  If the invention is not new, it is said to be anticipated.  A prior art reference anticipates a claimed invention if it discloses every limitation of the claim, either expressly or inherently.  *Karsten Mfg. Corp. v. Cleveland Golf Co.,* 242 F.3d 1376, 1383 (Fed. Cir. 2001); *Atlas Powder Co.,* 190 F.3d at 1346; *Ciba-Geigy Corp. v. Alza Corp.,* 864 F. Supp. 429, 434-35 (D.N.J. 1994), *aff'd in pertinent part,* 68 F.3d 487 (Fed. Cir. 1995).  Anticipation is a question of fact.  *In re Graves,* 69 F.3d 1147, 1151 (Fed. Cir. 1995).

42.    Claim 20 of the '329 patent claims a method for treating osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of a bisphosphonate chosen from the group consisting of risedronate, pharmaceutically acceptable salts or esters thereof, and

mixtures thereof, as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.  Claim 34 of the '329 patent claims a method for preventing osteoporosis in a mammal in need thereof comprising orally administering to said mammal a pharmaceutically effective amount of a bisphosphonate chosen from the group consisting of risedronate, pharmaceutically acceptable salts or esters thereof, and mixtures thereof, as a unit dosage according to a continuous schedule having a dosing interval selected from the group consisting of once-weekly dosing, twice-weekly dosing, biweekly dosing, and twice-monthly dosing.  The only difference between the two claims is that claim 20 is directed to "treating" osteoporosis and claim 34 is directed to "preventing" osteoporosis.

43.    U.S. Patent No. 5,869,471 is a printed publication that was published more than one year before the earliest asserted filing date of July 22, 1997 of the '329 and '932 patents.  Accordingly, the '471 patent is prior art to the '329 and '932 patents.  35 U.S.C. § 102 (b).

44.    The '471 patent discloses the oral administration of a pharmaceutically effective amount of risedronate on a weekly basis for the treatment of rheumatoid arthritis in humans.  In treating rheumatoid arthritis in humans with a weekly administration of risedronate, the method disclosed in the '471 patent results in the treatment and prevention of osteoporosis in mammals in need thereof.

45.    The '471 patent discloses every limitation of Claims 20 and 34 of the '329 patent, and therefore anticipates these claims.

46. Claims 20 and 34 of the '329 patent do not require that the once-weekly administration of alendronate meet any standard of safety or tolerability for patients. Nevertheless, even if the claims contained such a limitation, it would inherently be met by the disclosure of the '471 patent. *In re Cruciferous Sprout Patent Litigation,* 301 F.3d 1343, 1349-50 (Fed. Cir. 2002), *cert. denied,* 155 L.Ed.2d 227 (2003); *Atlas Powder,* 190 F.3d at 1347; *Titanium Metals Corp.* v. *Banner,* 778 F.2d 775, 782 (Fed. Cir. 1985); *U-Fuel, Inc. (NV) v. Highland Tank* & *Mfg. Co.,* 228 F. Supp. 597, 607 (E.D. Pa. 2002).

47. Merck contends that a person of ordinary skill in the art would have rejected the teachings of higher once-weekly doses of bisphosphonates for osteoporosis because of an expectation of increased gastrointestinal side effects. While Merck's defense is baseless, it has no bearing on the issue of anticipation in any event. The concept of "teaching away" from an invention is inapplicable to an anticipation analysis and the Court should not consider it. *Bristol- Myers Squibb Co.,* 246 F.3d at 1378; *Celeritas Technologies* v. *Rockwell Int'l Corp.,* 150 F.3d 1354, 1361 (Fed. Cir.1998).

### B.    Anticipation under 35 U.S.C. § 102 (g)

48. Under 35 U.S.C. § 102 (g), a person is not entitled to a patent on an invention if the claimed invention was made by another in the United States before the applicant and not abandoned, suppressed, or concealed.  35 U.S.C. § 102 (g)(2); *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358 (1928); *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362 (Fed. Cir. 2001); *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001); *Kimberly-Clark Corp. v. Procter & Gamble Distributing Co., Inc.*, 973 F.2d 911, 915 (Fed. Cir. 1992); *New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 1566 (Fed. Cir. 1990).  An

issued patent may be anticipated under 35 U.S.C. § 102 (g)(2) by the prior conception

and reduction to practice by another of the patentee's invention. *Texas Instruments, Inc.*

*v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1177 (Fed. Cir. 1993). Prior invention may

be shown in either of two ways: a challenger may show (1) that it reduced the invention

to practice before the patentee, or (2) that it was the first to conceive the invention and

then exercised reasonable diligence in reducing the invention to practice. *Mycogen*

*Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001).

49.     P&G orally administered weekly 35 mg doses of risedronate to

postmenopausal women in clinical trials that were planned and conducted before

September 2, 1999, the filing date of the continuation-in-part application that led to the

'932 patent. P&G designed and proposed to the FDA in January 1999 clinical trials

involving the weekly dosing of 35 mg of risedronate for the treatment and prevention of

osteoporosis. P&G then first administered a 35 mg dose of risedronate to

postmenopausal patients on a weekly dosing regimen in Study No. 1999033 on May 21,

1999. P&G continued the administration of 35 mg of risedronate weekly for the

treatment of osteoporosis in Study HMR4000E/3001.

50.     P&G's activities demonstrate the conception and reduction to practice as

of May 21, 1999 of the invention claimed in Claim 6 of the '932 patent of orally

administering about 35 mg of risedronate on a once-weekly dosing schedule to treat or

prevent osteoporosis. P&G's activities were not abandoned, suppressed or concealed.

P&G promptly sought and received FDA approval for a once-weekly 35 mg dose of

risedronate on May 17, 2002, and launched their product in June 2002. Claim 6 of the

'932 patent is therefore anticipated by P&G's activities under 35 U.S.C. § 102 (g)(2).

### IV.     PROPOSED FINDINGS OF FACT ON OBVIOUSNESS

#### A.     The Level of Ordinary Skill in the Art

51.     The person of ordinary skill in the art, at the time of the inventions of the '329 and '932 patents, was a scientist with an M.D. and/or Ph.D. degree, or the equivalent, working in the field of and doing research on osteoporosis. Such a person would also be familiar with the publications and technical literature in the field of bisphosphonates and osteoporosis.

#### B.     The Prior Art Taught the Weekly Administration of Risedronate for the Treatment and Prevention of Osteoporosis

52.     The prior art disclosed the weekly oral administration of risedronate to humans to inhibit bone resorption, thus treating and preventing osteoporosis. Thus, the prior art explicitly discloses the invention claimed in the '329 patent.

#### 1.     The '471 Patent

53.     Well before Merck's invention date of July 22, 1997, the '471 patent disclosed the oral administration of a pharmaceutically effective amount of risedronate on a weekly basis for the treatment of rheumatoid arthritis in humans. In treating rheumatoid arthritis with a weekly administration of risedronate, the method disclosed in the '471 patent concomitantly results in the treatment and prevention of osteoporosis in mammals.

#### 2.     PCT Application WO95/30421

54.     PCT Application WO95/30421 to Goodship *et al.*, published November 16, 1995, disclosed the use of bisphosphonates to inhibit bone resorption. Goodship discloses the oral administration of risedronate on a weekly basis at a dosage that

corresponds to that used in treatment of bone diseases, such as Paget's disease or osteoporosis. *See* Goodship at 6-7.

### 3. The Lunar News

55. The once-weekly administration of bisphosphonates for the management of osteoporosis was disclosed in a publication called *Lunar News* in 1996. The April and July 1996 *Lunar News* articles are prior art publications to the Merck patents under 35 U.S.C. § 102 (a). *Joint Statement of Uncontested Facts at ¶ 10.*

56. *Lunar News* was a periodical distributed approximately quarterly by Lunar Corporation, a Wisconsin-based company involved in the manufacture of "bone densitometers." Bone densitometers — devices that allow accurate, quantitative measurement of the amount of bone a patient has — form the basis for the diagnosis and clinical management of many osteoporotic patients. Lunar Corporation was founded and led by Dr. Richard Mazess, a Professor Emeritus at the University of Wisconsin with a Ph.D. in physical anthropology, and a research background in medical physics and physiology.

57. In 1996, Lunar Corporation and Dr. Mazess were recognized leaders in the bone densitometry field. Dr. Mazess developed some of the first bone densitometers and is credited with making bone densitometry available for widespread use in the management of osteoporosis. In 1996 Dr. Mazess was President and CEO of Lunar, and was the author of the articles appearing in *Lunar News*.

58. Dr. Mazess was a person working in the field of, or doing research on, osteoporosis, and he is skilled in the relevant art. *Merck II at* 1376.

59.     Each issue of the *Lunar News* was distributed to 15-20,000 physicians and others working in the field of osteoporosis.  *Id.* at 1368 n.5.

60.     Copies of the *Lunar News* were received at and circulated within Merck, including to Dr. Yates, the principal inventor of the '329 patent.  The *Lunar News* provided review articles on various topics related to bone disease and osteoporosis.  The publication provided exhaustive reviews of the literature on various topics; the bibliographies of each edition included hundreds of articles.  The *Lunar News* was recognized as a valuable resource in terms of providing current references in the pre-internet era.

61.     The April and July 1996 *Lunar News* articles are prior art publications to the Merck patents under 35 U.S.C. § 102 (a).  *Joint Statement of Uncontested Facts at ¶ 10.*

### a.     April 1996 *Lunar News*

62.     In a section entitled "Update: Bisphosphonate," the April 1996 edition of the *Lunar News* discloses once-weekly dosing of bisphosphonates.  The April 1996 edition discusses the difficulties of the dosing regimen of bisphosphonates, alendronate in particular, and then proposes once-weekly dosing of bisphosphonates as a solution:

> One of the difficulties with alendronate is its low oral bioavailability. When taken with water in a fasting state, only about 0.8% of the oral dose is bioavailable.  Even coffee or juice reduces this by 60%, and a meal reduces it by >85%.  Alendronate must be taken, after an overnight fast, 30-60 minutes before breakfast.  Subjects should remain seated or standing; a very small group of patients have reported some upper gastrointestinal distress if this is not done.  This regime may be difficult for the elderly to maintain chronically.  *An intermittent treatment program (for example, once per week, or one week every three months), with higher oral dosing, needs to be tested.*

(April 1996 *Lunar News* at 31) (citations omitted) (emphasis added).

63.     A person of skill in the art in 1996 reading this passage would have understood the phrase "needs to be tested" to mean that a once-weekly bisphosphonate dosing regimen should be examined in a clinical trial so that it could be approved for use in patients.  Such clinical trial testing is a step that must be carried out for every drug, regardless of the state of knowledge or any expectation of success beforehand.

### b.     July 1996 *Lunar News*

64.     In July 1996, Lunar published another issue of the *Lunar News* disclosing weekly dosing of bisphosphonates, this time with express dosages for the bisphosphonate alendronate.  The July 1996 *Lunar News* discussed the problem of the inconvenience of the bisphosphonate dosing regimen, and again presented once-weekly dosing as a solution:

> The limited bioavailability of alendronate (0.8%) requires that it be taken on an empty stomach upon awakening with a full glass of water (not tea, coffee, or juice), and the patient must remain upright for 30 to 60 minutes. A few elderly women can tolerate this regime for a only [sic] week or two.
>
> *            *            *
>
> *The difficulties with oral bisphosphonates may favor their episodic (once/week), or cyclical (one week each month) administration*.  Even oral alendronate potentially could be given in a 40 or 80 mg dose once/week to avoid dosing problems and reduce costs.

(July 1996 *Lunar News* at 23 (citations omitted) (emphasis added)).

65.     The April 1996 and July 1996 *Lunar News* articles suggested the weekly dosing of bisphosphonates.  *Merck II* at 1368, 1375.

66.     By July 1997 the bisphosphonate risedronate was known by those of ordinary skill in the art to be effective in inhibiting bone resorption, even when administered on a weekly basis, and had already been administered on a weekly basis to

treat and prevent osteoporosis associated with rheumatoid arthritis.  The '471 patent and Goodship disclose the weekly oral administration of risedronate to humans to inhibit bone resorption, thus treating and preventing osteoporosis.  By that time risedronate had also been disclosed to be effective in treating and preventing osteoporosis  The *Lunar News* teaches the use of orally administered weekly dosing of bisphosphonates in the treatment and prevention of osteoporosis.  Thus, one of ordinary skill in the art would have considered the teachings of the *Lunar News* articles to apply to risedronate.

67.    By September 1999, a person of ordinary skill in the art would have also known that the weekly dose of risedronate for the treatment and prevention of osteoporosis would be seven times the daily dose of 5 mg that was under consideration for approval by the FDA.  Therefore, one of ordinary skill in the art would have known in 1999 that the effective weekly dose of risedronate would be 35 mg.

68.    A person of ordinary skill would also have have predicted that the weekly dosing of risedronate taught in the '471 patent, Goodship, and the *Lunar News* articles to be effective in the treatment and prevention of osteoporosis as of July 1997.  The biological properties of risedronate were well known long before 1997, and pre-clinical studies had demonstrated to persons skilled in the art that risedronate would exhibit a sustained response on bone resorption without the need for daily dosing.  For this reason, the person of skill in the art had a reasonable basis to believe that the proposed weekly regimen would be effective.

### C.    There Are No Differences Between the Prior Art and the Claimed Inventions

69.    The prior art in this case discloses the weekly administration of oral risedronate for the treatment and prevention of osteoporosis in mammals in need thereof;

there is no difference between the teachings of the '471 patent, Goodship, and the *Lunar News* articles and the claimed invention. Nevertheless, additional prior art available in 1997 supplies any differences between the alleged inventions and the '471 patent, Goodship, and the *Lunar News*.

<blockquote>

**1.      The Prior Art Demonstrated that a Less-Than-Daily Dosing Regimen of Risedronate Would Effectively Inhibit Bone Resorption**

</blockquote>

70.      Tang *et al.*, J. Bone Min. Res. 7(9): 1093-104 (1992) disclosed that the twice-weekly administration of risedronate was effective in preventing bone loss after bone restoration was achieved using an anabolic agent, prostaglandin E2 (PGE2). *See id.* at 1100-01.

71.      Jee *et al.*, J. Bone Min. Res. 10 (6): 963-70 (1995) demonstrated that risedronate continued to inhibit bone resorption even after treatment with risedronate was discontinued. In Jee, a group of rats was treated with a combination of anabolic agent and risedronate twice-weekly for 60 days, followed by 60 days without the combination treatment. The study results demonstrated that risedronate continued to inhibit bone resorption in the rats even after cessation of treatment with risedronate. *See id.* at 969.

72.      Ma *et al*., J. Bone Min. Res. 10 (6): 1726-34, 1726 (1995) disclosed that risedronate was a superior agent for inhibiting bone resorption due to the compound's long term retention in bone: "risedronate at the dose level employed [i.e. twice weekly] is far superior to 17 beta-estradiol or calcitonin because of its long retention in bone . . ."

73.      U.S. Patent No. 5,730,715, entitled *Method for the Iontophoretic Administration of Bisphosphonates* disclosed on June 14, 1996 that the administration of bisphosphonates such as risedronate at higher than daily doses in less frequent intervals

would be effective in inhibiting bone resorption due to their long retention time in bone. (Col. 2, lines 38-44).

74.    Seedor *et al.*, J. Bone Min. Res. 6 (4), 339-46, 340 (1991) disclosed that the bone resorption effect of bisphosphonates such as risedronate depended on the total dose administered rather than the dosing frequency.

75.    These publications disclose that risedronate would effectively inhibit bone resorption, and thus would treat and prevent osteoporosis, when administered on a less-than-daily dosing regimen.

2.    **Persons of Skill In the Art Would Have Known that the Weekly Dose Should Be About Seven Times the Daily Dose**

76.    It is undisputed that risedronate is taken up in the bone after administration, and it resides in the bone for a very long time.  In fact, John Yates, one of the claimed inventors of the subject matter of the Merck patents, has acknowledged the long residence time of bisphosphonates, including risedronate.  *See Yates Tr.* at 15:18-16:2.  Seedor *et al.* also taught that it is the total dose of bisphosphonate administered over time, and not the frequency of dosing, that determines a bisphosphonate's effect on bone resorption.  Based on this information, a person of skill in the art as of July 1997 would have known that the weekly dose of risedronate should be about seven times the daily dose.

D.    **A Motivation Existed to Employ Once-Weekly Dosing**

77.    The dosing difficulties of bisphosphonates were well-known to persons skilled in the art.  Patients taking bisphosphonates were required to take the drug before eating, with a full glass of water, and were told to remain upright for half an hour.  This regimen was highly inconvenient, and was responsible for some patients discontinuing

treatment with bisphosphonates, and for others failing to follow the dosing instructions. Any dosing regimen that could reduce the inconvenience would have been welcomed.

78.    Both the April and July 1996 *Lunar News* articles explain the motivation for a once-weekly dose as increasing patient compliance, by making it easier to take the drug (and incur the inconvenience of the rigorous dosing regimen less frequently). *Merck II* at 1373.  Thus, the prior art provided the motivation to make the claimed invention.

### E.    The Prior Art Taught That the Administration of Larger Doses of Risedronate Were Safely Tolerated

79.    A study by Valentin-Opran disclosed as early as 1990 that daily doses of 10 to 30 mg of risedronate were well-tolerated.

80.    The '471 patent disclosed that the following doses of risedronate were administered without any negative effects or safety concerns: 60 mg daily (Col. 50, line 44); 210 mg weekly (Col. 50 lines 50-51); 35 mg daily (Col. 50, lines 63-64); 105 mg (Col. 51, lines 5-6) weekly; and other dose sizes.  The '471 patent thus confirmed in 1992 the safety of administering doses of risedronate as high as 210 mg once a week to human subjects.

81.    Studies by Brown and Bekker in 1994 and 1996, respectively, also demonstrated that risedronate was well-tolerated with no significant side effects when administered at 30 mg daily.

82.    A daily 30 mg dose of risedronate was also approved by the FDA and marketed by P&G for the treatment of Paget's Disease in September 1998.

83.     The safety of a 30 mg daily dose of risedronate was thus established at least a year before Merck first disclosed a 35 mg dose in the filing of the continuation-in-part application that lead to the '932 patent.

> **F.      Physicians Would Not Have Been Deterred From Administering a Less Frequent Than Daily Dose of Risedronate**
>
> **1.      Risedronate Was Not Associated With Adverse Gastrointestinal Events**

84.     No deterrent existed in the prior art to discourage a person of ordinary skill in the art from following the teachings of the '471 patent, Goodship, and the *Lunar News* and administering risedronate once-weekly at about seven times the daily dose. No significant adverse events were reported or associated with the use of risedronate at any dose studied as of mid-1997.  In fact, the study results published as of 1997 demonstrated that the incidence of adverse events experienced in risedronate treatment groups is similar to the rates seen in placebo groups.

85.     Risedronate's tolerability was confirmed by other studies as of 1999, before the application leading to the '932 patent was filed.

86.     Physicians in both mid 1997 and in 1999 would not have expected that a biweekly 17.5 mg dose or a weekly 35 mg dose of risedronate for the treatment or prevention of osteoporosis would cause a significant increase in the incidence or severity of gastrointestinal or esophageal side effects compared with a smaller daily dose of risedronate.

2.     **The Rare Severe Adverse Events Associated with Alendronate Would Not Have Been a Deterrent to the Less Frequent Than Daily Dosing of Risedronate**

87.     Merck does not contend that the prior art did not teach the weekly administration of bisphosphonates, including risedronate, for the treatment and prevention of osteoporosis.  Instead, Merck contends that a person of ordinary skill in the art would have rejected the teachings of higher less frequent than daily doses of bisphosphonates, including risedronate, for osteoporosis because of an expectation of increased gastrointestinal side effects.  Merck, however has no data to support this contention.  It relies instead on data from other bisphosphonates, including alendronate, which, for the reasons below, does not support Merck's contention.

88.     After Merck launched alendronate in 1995, it became aware of the occurrence of certain esophageal side effects of alendronate that were perceived to be of an increased severity compared to the gastrointestinal side effects seen in Merck's phase III clinical trials with that drug.  In its clinical trials, Merck had observed an incidence of upper gastrointestinal side effects, including esophageal side effects, in patients taking alendronate sodium that was not significantly different from the incidence in patients taking placebo.  The adverse events of the more severe type reported in 1996 were not seen in Merck's clinical trials.

89.     The more severe gastrointestinal adverse events reported after Merck launched alendronate were all related to esophageal injury and occurred in a very small percentage of the patients taking the drug.  In fact, De Groen et al. reported in October 1996 in the *New England Journal of Medicine* that only 51 such cases had been seen in 475,000 patients taking the drug world wide (approximately 1 out of every 10,000 patients).  In a March 1996 presentation to the FDA addressing the issue, Merck stated

24

that the number of severe cases reported to that time was in fact lower than the number of such cases expected in the same population over the same time regardless of their medications.  Additionally, the cases of esophagitis were for the most part reversible with proper treatment.

90.    Merck investigated the case reports and determined that the esophagitis case reports were associated primarily with tablets "sticking" in the esophagus because patients failed to follow the dosing instructions (*i.e.*, so-called "pill esophagitis"), in contrast to non-specific side effects, to which Merck did not assign a specific cause. Merck reported these conclusions to the FDA in March and October of 1996.  The literature, specifically the article by De Groen, taught that complications related to alendronate were due to prolonged contact of the drug with the esophagus.  *Merck II* at 1373.

91.    Merck responded to the issue by re-emphasizing the dosing instructions. In March 1996, Merck sent out a  "Dear Doctor" letter (*id.*), informing physicians about the "infrequent" cases of esophagitis, stating that in a "large majority" of the cases patients appeared not to have complied with the dosing instructions, and advocating "strict compliance" with those instructions.  In addition, Merck's sales representatives reemphasized the importance of the dosing instructions in meetings with doctors.  Merck took no other actions to deal with the issue of esophagitis associated with alendronate.

92.    After Merck sent the "Dear Doctor" letter, the reported incidence of complications with alendronate fell to almost nothing even as the number of patients prescribed the drug doubled by October 1996.  *Id.*

93.    The low incidence of these esophageal effects and the description of the cases led gastroenterologists to conclude at the time, as Merck had, that the likely cause of the reports was "pill esophagitis."

94.    In July 1997, there was no expectation that administering a higher once-weekly dose of alendronate  would be associated with a greater incidence or severity of esophagitis.  Merck could not determine a dose-response relationship between the administration of alendronate and the severe esophagitis cases because the cases were so rare.

95.    In July 1997  there was no reason for concern among physicians that risedronate, if properly administered, would cause esophageal injury through a pill esophagitis mechanism.  No significant adverse events or esophageal injury had been reported for risedronate.  Moreover, because the incidences of severe esophageal adverse events occurring with alendronate were attributed to improper dosing, physicians would not have been deterred from administering a 35 mg once-weekly dose of risedronate on this basis.  In addition, there was a perception among physicians that risedronate was better tolerated and safer than alendronate.

96.    In fact, once-weekly administration would have been expected to decrease the incidence of severe esophagitis cases because it would (1) improve patient compliance with the dosing instructions, which were intended to ensure safe passage of the drug to the stomach, and (2) decrease the frequency of administration, thereby decreasing the chances of a tablet "sticking" in the esophagus.

### 3.    Chesnut Would Not Have Been a Deterrent to Once-Weekly Dosing of Risedronate

97.    Merck relies on a publication by Chesnut *et al.* to support the claim that there would have been a deterrent to less frequent than daily dosing of risedronate.  The results of Chesnut, standing alone, would not have deterred a person of ordinary skill in the art from following the teachings of the '471 patent, Goodship, and the *Lunar News* articles and administering a less frequent than daily oral dose of risedronate for the treatment and prevention of osteoporosis.  Viewing Chesnut within the framework of all the pertinent information in July 1997 reinforces that conclusion.  The Chesnut study thus represents the only clinical data on which Merck's fear defense rests.

98.    Chesnut *et al.* reported in 1995 that seven out of 63 post-menopausal osteoporotic women taking 40 mg alendronate per day dropped out of a study because of mild gastrointestinal adverse effects, compared with smaller percentages of dropouts in the groups taking lower dosages of alendronate daily.  The side effects described in Chesnut were mild and non-specific, and not severe or serious like those described in the case reports.

99.    Chesnut discussed only the gastrointestinal side effects associated with alendronate, not risedronate; in addition, Chesnut relates to daily dosing, not weekly dosing.  Moreover, Chesnut drew no conclusion regarding the statistical significance of these results.  In fact, the Chesnut data demonstrates that 90 percent of postmenopausal osteoporotic patients tolerated a larger 40 mg dose daily dose of alendronate.  Furthermore, the paper fails to provide adequate information to compare the characteristics of the patients in the alendronate-treated groups, nor does it provide details regarding the patients who dropped out or complained of problems.

100. The results reported in Chesnut have not been supported by other researchers.

101. Chesnut's reported discontinuation rate for patients taking 40 mg of *alendronate daily* would not have deterred a person of skill in the art from administering a 35 mg of *risedronate weekly* to treat and prevent osteoporosis.

102. Prior to any litigation involving the once-weekly administration of bisphophonates, Merck's position was that the Chesnut data supported the safety of Merck's proposed weekly doses of alendronate. In a 1998 presentation to the FDA, Merck cited the Chesnut data as a part of the evidence that weekly dosing of bisphosphonates for treatment and prevention of osteoporosis should be "very well tolerated." In that presentation, Merck characterized the Chesnut data as demonstrating that "90% of postmenopausal patients with osteoporosis remained on alendronate treatment at 40 mg daily for one year."

### 4. Experience with Other Prior Art Bisphosphonates also Would Not Have Deterred Less Frequent Than Daily Dosing of Risedronate

103. Evidence of dose-related gastrointestinal effects with other bisphosphonates would also not have deterred less frequent than daily dosing of risedronate.

104. By July 1997, there was a substantial amount of data available from pre-clinical trials on the use and tolerability of risedronate. This data consistently found that at every daily dose risedronate had been found to be "well tolerated."

105. Further, a general prejudice existed against inferring expectations regarding one bisphosphonate from the results observed with a different bisphosphonate.

In 1999, Merck's expert Dr. Papapoulos wrote that because of differences in their mechanisms of action, as well as their pharmacological and toxicological profiles, results from one bisphosphonate cannot be extrapolated to the whole class:

> Differences also exist in their pharmacological and toxicological profiles, as well as in their mechanism of action. It is, therefore important that the specific properties of every individual bisphosphonate be determined and that results obtained with one bisphosphonate not be extrapolated readily to the whole class.

(Papapoulos, S., *Bisphosphonates,* The Aging Skeleton, Chap. 44, pp. 541-549 (1999)). This applies to alendronate as well as other bisphosphonates.

106.    A person of ordinary skill in the art would not ignore the preclinical data for risedronate, and rely on reports relating to other compounds that had never been approved for use in osteoporosis in the U.S. The side effects seen with the other prior art bisphosphonates were different in both type and associated dose. For example, the primary side effects seen with etidronate and clodronate were associated with the lower gastrointestinal tract (e.g., diarrhea), not the upper gastrointestinal tract (e.g., nausea and heartburn), which Merck focused on in this case. Also, the effects observed with the prior art bisphosphonates were seen at much larger doses than the doses used with risedronate.

      **5.**      **Merck's reliance on data from Paget's patients demonstrates that the Paget's experience is relevant to the expected tolerability of once-weekly bisphosphonate therapy**

107.    The data from Paget's studies demonstrates that 30 mg of risedronate daily was well-tolerated, providing compelling evidence as of July 1997 that a once-weekly dose of 35 mg of risedronate would be well-tolerated.

108.    Merck relied on data from Paget's patients when evaluating the safety of weekly dosing of alendronate. As of May 20, 1997, in an internal "Tactical PAC" review seeking management approval to proceed with a once-weekly dosing program for alendronate, Merck's scientists relied on Paget's data to support the expected tolerability of the once-weekly dosing regimen. Merck stated that the Paget's data supported the safety of the proposed once-weekly alendronate regimen:

> There is human safety data available on these higher doses. The largest experience is derived from the Paget's Disease studies including data on over 150 patients randomized to receive 3-6 months of daily treatment with alendronate 40 or 80 mg. This data is supplemented by short term clinical pharmacology studies with doses up to 100 mg. In all theses (*sic*) studies, *the 40 and 80 mg doses were well tolerated even when given on a daily basis*, although daily treatment with alendronate 40 mg was associated with a moderate increase in upper GI adverse events in the Phase II study of treatment of osteoporosis (Protocol 026).

(emphasis added). In view of the Paget's data, Merck's scientists did not regard the tolerability of weekly dosing as a significant concern, stating that higher once-weekly dosing would be "unlikely to have a greater potential to induce upper GI irritation."

109.    Similarly, in a March 1998 submission to the FDA, Merck maintained the position taken internally in 1997 that the data from Paget's disease studies provided an expectation that a once-weekly dose would be well-tolerated:

> Experience in Paget's disease (up to 80 mg alendronate for 6 months) suggests that dosing regimens of either 35 or 70 mg weekly, and 35 twice-weekly should be well-tolerated.

(MR 0066697).

110.    Elsewhere, Merck drew both on the Paget's data and the data from

Chesnut in concluding that a once-weekly dose should be well-tolerated:

> Oral doses of alendronate up to 80 mg daily for up to six months have been well-tolerated in patients with Paget's disease, and approximately 90% of postmenopausal patients with osteoporosis remained on alendronate treatment at 40 mg daily for one year.  Thus, alendronate dosing regimens of either 35 or 70 mg weekly, and 35 twice-weekly should be well-tolerated.

(MR 0066688).

111.    Slides for the FDA presentation held a few weeks later reiterated that

"Evidence for Safety" was found in the Paget's studies where patients were treated with

"80 mg/day for 3 to 6 months in 42 patients with good tolerability…"  (DTX 155 at 6).

The same slide notes that there had been "[f]ew reports of UGI [upper gastrointestinal]

AEs [adverse events] from marketed use of 40 mg."  (Id.).

112.    In 2000, all three of the inventors listed on the '329 patent authored a

publication setting out the rationale for once-weekly alendronate in osteoporosis.  Under

the heading "Safety and Tolerability Studies in Humans," the inventors again cited the

Paget's data as providing an expectation that a once-weekly dosing regimen would be

tolerated by osteoporotic patients:

> Convincing human tolerability data for a higher dose of alendronate came from clinical trials of alendronate in the treatment of Paget's disease.  Treatment with 40 mg alendronate daily for up to 1 year was associated with tolerability profiles comparable to those of the control agent (placebo or etidronate), and no patient discontinued alendronate treatment due to a serious drug-related adverse event.

(MK 0223123).  As support for that proposition, the inventors cited the Paget's disease

studies relied upon here by Teva, i.e., the studies by Siris, Reid, and Khan.

113.    Documents prepared by Merck's scientists, primarily the inventors on the

'329 patent, demonstrate that the Paget's experience is relevant to the question of the

31

expected tolerability of less frequent than daily therapy. The Paget's data indicates that less frequent than daily doses of risedronate should be well-tolerated.

### G.      There Is No Evidence of "Unexpected Results"

114.    The '329 patent states that the once-weekly dosing regimen provides "less gastrointestinal effects" than daily dosing. However, this alleged advantage is not supported by scientific evidence. Since the gastrointestinal effects of 5 mg daily risedronate are comparable to placebo, the assertion that the once-weekly regimen could demonstrate "less" effects is not logical. Both Merck's and Teva's experts testify that no clinically significant difference exists between daily and weekly regimens in terms of gastrointestinal effects. Merck can not make a safety claim for less frequent than daily dosing over once-daily dosing of risedronate, and has never conducted a study that would support such a claim.

115.    The assertion in the patent is also not supported by the literature based on actual clinical practice, which demonstrates that risedronate is well tolerated and does not lead to significant adverse gastrointestinal effects when dosed either at a low relative dosage at a high relative dosing frequency or at a high relative dosage at a low relative dosing frequency. Further, there is no data in the patent comparing the teachings of the prior art to the claimed twice-weekly, bi-weekly, and twice monthly dosing of risedronate.

116.    The only data that Merck alleges it had that was not possessed by people of skill in the art in July 1997 are the results of its dog studies. However, this data does not relate to the less frequent than daily dosing of risedronate. Furthermore, the evidence demonstrates that the Merck dog studies are not even relevant to the clinical

administration of alendronate, or any bisphosphonate including risedronate, to patients. In the particular dog studies relied on by Merck, the dogs were anaesthetized and then administered a solution of a bisphosphonate (alendronate, risedronate, or tiludronate) while lying down. The solution was then allowed to remain in the esophagus for 30 minutes. This dosing scenario bears no relationship whatsoever to the clinical experience of dosing bisphosphonates generally, or risedronate in particular. In the clinical scenario, risedronate is not administered to patients as a solution, but as a tablet.

117.    Patients do not take risedronate, or any bisphoshonate, orally while anaesthetized and supine, and the drug is never deliberately allowed to remain in contact with the esophagus for an extended period. Merck's own instructions for dosing of its bisphosphonate alendronate (to take the pill while upright, with a full glass of water, and remain upright thereafter) are designed to facilitate rapid passage of the tablet through the esophagus. The Merck scientist who carried out the beagle studies has testified that the studies assumed that a patient would not follow the dosing instructions and that Merck's dog studies were not designed to simulate clinical experience.

118.    Furthermore, the experimental model makes predictions that are completely inconsistent with actual observations, and so no valid conclusions can be drawn from it. The Merck dog study suggests that daily dosing with alendronate will consistently result in severe esophageal damage, yet Merck's clinical studies show that in actual patients who took the drug on a daily basis and followed the dosing instructions, the incidence of mild nonspecific gastrointestinal adverse esophageal events was no greater than for placebo, and the incidence of severe side effects was extremely low. The Merck scientist who performed the studies presented as Example 1 confirmed

33

that clinical predictions could not be made from the dog data.  In any event, Merck's dog studies do not provide any data to support the conclusion that the twice-weekly dosing of bisphosphonates results in a lower incidence of esophageal side effects.

119.    Notwithstanding the flawed methodology of the Merck dog studies, they contain no data on the gastrointestinal effects of less-than-daily administration of risedronate.

### H.    There Is No Connection Between Any "Commercial Success" of Weekly ACTONEL® and the Claimed Inventions

#### 1.    Dr. Vellturo's Diffusion Model Is Flawed

120.    Merck's expert, Dr. Vellturo, provided a report in which he provides his opinion that the introduction of ACTONEL® OaW increased the sales of all ACTONEL® products by approximately a factor of three as of the end of 2005.  Dr. Vellturo's calculations, however, suffer from a number of critical problems, rendering them unreliable as a basis for assessing the incremental benefits attained by P&G as a result of introducing ACTONEL® OaW.

121.    Dr.  Vellturo uses a "diffusion model" to analyze the success of ACTONEL®.  A diffusion model is designed to measure the spread of an innovation through a specific social system.  The authors of the paper on which Dr. Vellturo based his diffusion model caution against its use as a forecasting tool, the very use for which Dr. Vellturo employed it.  The adoption of a new technology may follow an S-shaped diffusion curve across its entire life cycle; however, the use of a diffusion model to predict when adoption will accelerate or where it will terminate is likely to lead to erroneous conclusions.  Thus, the type of approach taken by Dr. Vellturo, even if implemented properly, cannot be relied upon to generate reasonable estimates of the

future sales of a product based on a limited history of data early in the life cycle of that product.

122.    Furthermore, in order for a diffusion model to be effective in modeling the spread of an innovation, certain restrictive, underlying assumptions must describe the innovation to be modeled, none of which apply to ACTONEL®.  The use of a diffusion model to analyze ACTONEL® is inappropriate because several of the key assumptions underlying the use of a diffusion model are not met.

123.    In a diffusion model, the number of potential adopters must not increase or decrease over time. This factor is not met with an analysis of the potential adopters of ACTONEL®.  The number and percentage of Americans with low bone mass is continually increasing; a study by the National Osteoporosis Foundation in 2002 projected that the prevalence of osteoporosis and low bone mass would increase by about 2.3 percent annually through 2010.  The authors of the paper describing the diffusion model used by Dr. Vellturo discuss this type of situation and state that it may result in incorrect forecasts: "if the fundamental diffusion model were applied to a diffusion process that is dynamic, incorrect parameter estimates and/or incorrect forecasts may result to the extent that [the number of potential users] fluctuates."

124.    Dr. Vellturo's model is also fundamentally flawed because he used the wrong data to generate it.  As a surrogate for "adopters," Dr. Vellturo estimated the values for a variable he called "net new prescriptions."  This variable is not used by industry and values for this cannot be found directly in the documents that Dr. Vellturo references.  Instead he estimates the values for this variable using an untested methodology.  Dr. Vellturo uses these estimates to further calculate an estimate of the

number of adopters at each point in time, which he calls "cumulative net new prescriptions."

125.    In fact, under Dr. Vellturo's methodology of estimating these values, "cumulative net new prescriptions" is more appropriately a measure of the number of *users* of ACTONEL®, rather than the number of *adopters*, since a person who discontinues use of the product would cause Dr. Vellturo's measure of "cumulative net new prescriptions" to decline, when in fact the actual number of adopters had not changed.  The fact that Dr. Vellturo's measure of "cumulative net new prescriptions" declines in eight of the last ten months of data indicates this problem with his measure of adopters. In a diffusion model, the number of adopters cannot decrease.  Therefore, the assumption that Dr. Vellturo's analysis is unreliable because the data relied upon does not represent the number of adopters.

126.    The diffusion model of the type used by Dr. Vellturo assumes that the impact of within-firm and external influences on the sales of a product are constant throughout the period.  Therefore, to the extent that actual influences change over time, a basic diffusion model will provide an inaccurate representation of the market.  The model fails to account for the fact that upon the introduction of ACTONEL® OaW, P&G and its partner, Sanofi-Aventis, increased their promotional spending significantly.  In the three fiscal years subsequent to launch, they increased detailing and marketing spending by 5 percent, 19 percent, and 24 percent, respectively adoption of ACTONEL®.  Dr. Vellturo's model does not account for this change in the factors influencing adoption of ACTONEL®.

127.     Dr. Vellturo's model depends on the nature of the innovation remaining static over time.  During the period upon which he bases his forecasts, Dr. Vellturo includes prescriptions for both the 30-mg and 5-mg formulations of ACTONEL®.  However, as recognized by Dr. Vellturo, during this period the 30-mg formulation began to be used increasingly off-label for treatment and prevention of osteoporosis, rather than for its originally intended purpose of treating Paget's disease.  During the 12 months prior to the introduction of ACTONEL® OaW, total prescriptions for the 30-mg version of ACTONEL® increased by about 300 percent, presumably due to the increasing off-label use.  Thus, the adoption estimated by Dr. Vellturo is that of a combination of five uses (the treatment of Paget's disease, the once-a-day treatment of osteoporosis, the once-a-day prevention of osteoporosis, the once-a-week treatment of osteoporosis, and the once-a-week prevention of osteoporosis), which change in relative importance during the sample period.

128.     Dr. Vellturo's model gives nonsensical results.  Dr. Vellturo's model purports to show that, but-for the introduction of ACTONEL® OaW in June 2002, sales of ACTONEL® new users would have essentially halted within months, gaining only 15 percent additional "cumulative net new prescriptions" through the end of 2005.  Thus, Dr. Vellturo's model is based on the assumption that ACTONEL® had essentially reached the end of its adoption curve only two years after it was first introduced.  This result is arbitrary and contrary to the basic trend in the data.

### 2. Rather than Establishing the "Importance" of the Once-Weekly Patents, Merck's License to P&G Demonstrates that the Patents Are Not an Important Component of ACTONEL®'s Success.

129.    Under the terms of a license to the once-weekly patents granted by Merck to P&G, P&G agreed to pay Merck a two percent royalty. A royalty rate of 2 percent in the pharmaceutical industry generally falls toward the low end of typical rates, which range from 10-15% to 2-5%. Merck's willingness to license a direct competitor at such a low rate implies that the parties believe the Merck patents are *not* an important component of ACTONEL®'s success.

130.    In fact, Merck's FOSAMAX® and P&G's ACTONEL® are direct competitors. Merck has suffered significant reduction in profit from FOSAMAX® sales due to the introduction of ACTONEL® OaW—despite the royalty revenue from P&G. Merck's lost profits have likely exceeded its royalty revenue from the P&G license by a factor of more than ten to one. Had both parties believed that the Merck patents were valid and would be infringed by P&G, then the negotiation between them would likely have yielded a royalty rate substantially higher than 2 percent.

131.    Given this result, which was anticipated by the industry, it is clear that had Merck believed that withholding a license from P&G could have prohibited P&G from entering the market, it would have done so. Alternatively, if Merck had believed the techniques claimed by the Merck patents contributed any substantial part of the value of ACTONEL® OaW, it could have demanded a royalty much higher than 2 percent of net sales from P&G.

132.    Through December 2005, P&G had generated about $2.1 billion in net revenues from sales of ACTONEL® OaW.  Absent these sales, Merck's profits would likely have been at least $1 billion greater.  In contrast, Merck's license to P&G for the Merck patents has generated only about $40 million in royalties.  Thus, rather than confirming the "commercial importance" of the Merck patents, Merck's license of these patents to a known competitor at a royalty rate of only 2 percent indicates that they were not an important component of the success of ACTONEL®.

## V.    PROPOSED CONCLUSIONS OF LAW ON OBVIOUSNESS

### A.    The Legal Standards for Obviousness

133.    The patent laws (35 U.S.C. § 100 *et seq.*) prohibit an inventor from obtaining a patent on an invention that would have been obvious to a person of ordinary skill in the art at the time the invention was made.  This prohibition is set forth in §103 (a) of the patent statute, which provides:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in § 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

134.    Because a patent is presumed valid, 35 U.S.C.§ 282, a *prima facie* case of obviousness under 35 U.S.C. § 103 must be established by clear and convincing evidence by the party asserting invalidity.  *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358-60 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821 (1984); *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1459 (Fed.Cir. 1984); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983).  Thus, Teva must prove that the asserted claims of the '329 and '932 patents are invalid under § 103 by clear and convincing evidence.

135.    The determination of whether an invention would have been obvious under 35 U.S.C. § 103 is a question of law, but this determination is decided based on underlying facts. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *In re Berg*, 320 F.3d 1310, 1312 (Fed. Cir. 2003); *Sibia Neurosciences, Inc. v. Cadus Pharma. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000). The factual findings that underlie a determination of obviousness are: 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; and 3) the differences between the claimed subject matter and the prior art. *Ryko Mfg*. Co. *v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894 (Fed. Cir. 1984).

136.    The question of obviousness is whether the prior art, taken as a whole, provided some teaching, suggestion or incentive that would have rendered the claimed invention obvious to a person of ordinary skill in the art. *In re Napier*, 55 F.3d 610 (Fed. Cir. 1995) (stating the test for obviousness as whether the prior art "would have rendered the claimed invention obvious to one of ordinary skill in the art"); *Brown and Williamson Tobacco Co. v. Philip Morris, Inc.*, 229 F.3d 1120, 1124 (Fed. Cir. 2000); *In re Mayne*,104 F.3d 1339, 1341 (Fed. Cir. 1997). When obviousness is based on a single prior art reference, there must be some suggestion or motivation to modify the teachings of that reference to produce the claimed invention. *B.F. Goodrich Co. v. Aircraft Braking Systems Corp*.7, 2 F.3d 1577, 1582-83 (Fed. Cir. 1996); *Nursery Supplies, Inc. v. Lerio Corp.,* 45 U.S.P.Q.2d (BNA) 1332, 1334 (M.D. Pa. 1997) ("This suggestion or motivation to modify need not be expressly stated" in the prior art reference); *see also Milliken Research Corp. v. Dan River, Inc.*, 739 F.2d 587,602 (Fed. Cir. 1984*); In re*

*Bozek*, 416 F.2d 1385, 1390 (C.C.P.A. 1969) (the suggestion may come from "common sense of the person of ordinary skill in the art.").

137.    An obviousness determination under § 103 requires an evaluation of prior art references with respect to the claimed invention. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 766 F.2d 281, 294 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986); *Lear Siegler; Inc. v. Aeroquip Corp.*, 733 F.2d 881,890 (Fed. Cir. 1984). Relevant prior art includes that which is "reasonably pertinent to the particular problem with which the inventor was involved." *Stratoflex.*, 713 F.2d at 1535 (quoting *In re Wood*, 599 F.2d 1032, 1036 (C.C.P.A. 1979); *In re GPAC, Inc.*, 57 F.3d 1573, 1577 (Fed. Cir. 1995); *In re Dillon*, 919 F.2d 688, 694 (Fed. Cir. 1990), *cert. denied* 500 U.S. 904 (1991).

> **B.    The Inventions of Claims 20 and 34 of the '329 Patent and Claim 6 of the '932 Patent Are Invalid Under 35 U.S.C. § 103 Because the Inventions Would Have Been Obvious to a Person of Skill in the Art at the Time the Inventions Were Made**

138.    Claims 20 and 34 of the '329 patent and Claim 6 of the '932 patent are invalid under § 103 because the claimed inventions would have been obvious to a person of ordinary skill in the art prior to July 22, 1997, the invention date Merck alleges in this case. Claim 6 of the '932 patent would also have been obvious to a person of ordinary skill in the art as of September 2, 1999, when the continuation-in-part application that lead to the '932 patent was filed.

> **1.    The Claimed Inventions Were Obvious**

139.    There is no dispute regarding the facts demonstrating that the less frequent than daily dosing of risedronate was obvious in July 1997. The prior art to the '329 patent disclosed the less frequent than daily, and in particular the weekly, administration

of bisphosphonates and taught a motivation to administer them this way, e.g. convenience. It was known at the time that because of risedronate's biological properties, the weekly administration of risedronate would be effective to inhibit bone resorption as well as to treat and prevent osteoporosis. In fact, this had already been done . Furthermore, the person of skill in the art in July 1997 would have known that the effective weekly dose of risedronate would be seven times the daily dose.

140.    Moreover, a person of skill in the art would have expected less frequent than daily administration of risedronate to be well-tolerated. *In re Longi,* 759 F.2d 887, 897 (Fed. Cir. 1985) ("Only a reasonable expectation of success, not absolute predictability is necessary for a conclusion of obviousness."); *see also In re Merck & Co., Inc.,* 800 F.2d 1091, 1097 (Fed. Cir. 1986). Obviousness does not require absolute predictability. *In re Lamberti,* 545 F.2d 717, 750 (C.C.P.A. 1976).

141.    Thus, the subject matter of Claims 20 and 34 of the '329 patent and Claim 6 of the '932 patent would have been obvious to a person of ordinary skill in the art at the time of invention.

## 2.    Unexpected Results Are Irrelevant Here, and Are Not Present In Any Event

142.    Because the invention of the asserted claims would have been obvious, and because the prior art disclosed the principal advantage of the invention — enhanced convenience and compliance — whether or not the invention provided other advantages not disclosed in the prior art is irrelevant. By virtue of the disclosures of the prior art, including the *Lunar News*, the '471 patent, and Goodship, the public was in possession of the invention; Merck cannot take it away by alleging that it provided other benefits. *In re Wiseman,* 596 F.2d 1019, 1023 (C.C.P.A. 1979).

143.    Even if such undisclosed advantages were relevant, however, Merck would have the burden of establishing their existence, which it can not do.  *In re Woodruff,* 919 F.2d 1575, 1578 (Fed. Cir. 1990); *In re Inland Steel Co.,* 265 F.3d 1354,1365 (Fed. Cir. 2001); *In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003).  "It is well settled that unexpected results must be established by factual evidence.  Mere arguments or conclusory statements in the specification do not suffice" to establish patentability.  *In re DeBlauwe,* 736 F.2d 699, 705 (Fed. Cir. 1984); *see also Inland Steel,* 265 F.3d at 1366; *In re Mayne,* 104 F.3d 1339, 1343 (Fed. Cir. 1997).  When applicant asserts that an invention achieves "unexpected (*i.e.*, superior) results, those results must logically be shown as superior *compared* to the results achieved with other articles." *DeBlauwe,* 736 F.2d at 705.  An applicant that relies on comparative tests to rebut a case of obviousness must compare his claimed invention to the closest prior art.  *Id.*

144.    Although the patent specification states that the dosing regimen provides "less gastrointestinal effects," an advantage Merck touts as "unexpected," this alleged advantage is not supported by scientific evidence.  *See e.g., DeBlauwe,* 736 F.2d at 705.

145.    No clinically significant difference exists between the daily and weekly regimens in terms of gastrointestinal effects, and Merck has never conducted a study that would support such a difference.  Merck's dog studies do not support any difference in the side effect profiles of daily versus less frequent than daily risedronate treatment.  First, Merck's dog studies are not relevant to the actual clinical administration of risedronate.  Second, the studies do not provide any data relating to less frequent than daily treatment with risedronate from which a comparison of daily versus weekly treatment could be made.

### 3.    Commercial Success Is Not Probative In This Case

146.    Commercial success can be relevant to an obviousness inquiry when it demonstrates that there was sufficient financial incentive for someone to try and solve the problem or long felt need in the market. *Minnesota Mining & Mfg. Co. v. Research Medical Inc.,* 679 F. Supp. 1037, 1154 (D. Utah 1987) ("Commercial success is considered relevant to lack of obviousness on the rationale that competitors would have been economically motivated to make the invention sooner if it had been truly obvious."); *Cosden Oil & Chem. Co. v. American Hoechst Co.*, 543 F. Supp. 522,5 41 (D. Del. 1982) ("The probative value of commercial success evidence, however, depends in large part on whether, given the surrounding circumstances, it will support an inference that the market potential was sufficiently strong to motivate others who must have tried and failed to solve the problem.  Here, we know there were no failures of others."); *Chicago Rawhide Mfg. Co. v. Crane Packing Co.*, 523 F.2d 452,459 (7th Cir. 1975), *cert. denied*, 423 U.S.1091 (1976).

147.    The alleged commercial success of once-weekly ACTONEL® is immaterial to the issue of obviousness in this case because only one entity, the Procter & Gamble Company, was allowed by law to market risedronate for the first five years after it was approved by the FDA.  This new chemical exclusivity ("NCE") prevented any one else from using risedronate until March of 2003.  *See* 21 U.S.C. § 355(c)(3)(D)(ii) (2000).  Thus, no one else had the incentive to develop new dosing forms of risedronate because no one else could bring an improved dosage form to market.  Accordingly, even if Merck could prove that once-weekly risedronate was a "commercial success," that success would be irrelevant to the obviousness issue. *Merck II* at 1376.

148.    Furthermore, commercial success alone is not sufficient to establish that the product is the result of an invention. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 61 (1969); *In re Inland Steel Co.,* 265 F.3d 1354, 1366 (Fed. Cir. 2001); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.,* 29 F.3d 1120, 1131 (Fed. Cir. 2000); *Richardson-Vicks Inc. v. The Upjohn Co.,* 122 F.3d 1476, 1483 (Fed. Cir. 1997); *Motorola, Inc.* v. *Interdigital Technology Corp.,* 121 F.3d 1461, 1472 (Fed. Cir. 1997) ("In reaching an obviousness determination, a trial court may conclude that a patent claim is obvious, even in the light of strong objective evidence tending to show non-obviousness."); *Ryko,* 950 F.2d at 719 (noting that the weight of secondary considerations may be of insufficient weight to override a determination of obviousness based on primary considerations); *Newell* Cos. v. *Kenney Mfg. Co.,* 864 F.2d 757, 769 (Fed. Cir. 1988) ("although the record shows a highly successful product, the record also establishes such a strong case of obviousness based on admissions and the teachings of the prior art, . . . that the objective evidence of nonobviousness does not persuade us to reach a contrary conclusion.").  In this case, the asserted claims are clearly obvious in view of the prior art.  Moreover, Merck has not shown that any commercial success of the once-weekly risedronate product  is sufficient to override the finding of obviousness.

### 4.    Merck Has the Burden of Proving "Commercial Success"

149.    To be probative of nonobviousness, the commercial success of a patented product must be attributable to the features of the claimed invention, rather than other business considerations. *Brown*, 229 F.3d at 1130 ("A nexus between commercial success and the claimed features is required."); *Riverwood Int'l Corp. v. Mead Corp.*, 212 F.3d 1365,1367 (Fed. Cir. 2000), *cert. denied*, 121 S. Ct. 567 (2000) (a trial court

did not err in finding that (1) the patent owner "presented some evidence of commercial success" but (2) "much of that success was attributable to factors outside the scope of claims 1 and 13 of the ... patent."); *see also Pfaff v. Wells Electronics, Inc.,* 124 F.3d 1429, 1439 (Fed.Cir.1997), *aff'd*, 525 U.S. 55 (1998) ("[N]o evidence suggests that the [patented] socket's commercial success was related to the barb element") (citing Stratoflex, *Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1539 (Fed. Cir. 1983) (requiring nexus between merits of invention and evidence of secondary considerations)); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).

150.    Commercial success cannot consist solely of sales figures.  Among other things, there should be evidence of market share, of growth in market share, and of replacing earlier units sold by others*.  In re Baxter Travenol Labs*, 952 F.2d 388, 392 (Fed. Cir. 1991) ("information solely on numbers of units sold is insufficient to establish commercial success"); *Nursery Supplies Inc. v. Lerio Corp.*, 45 U.S.P.Q.2d (BNA) 1332, 1335 (M.D. Pa. 1997) (citing *Kansas Jack, Inc.* v. *Kuhn,* 719 F.2d 1144, 1151 (Fed. Cir.1983)).  "For example, a market leader who led with sales of a prior product cannot establish a nexus by the fact that it then led with a new product." *Nursery Supplies,* 45 U.S.P.Q.2d at 1335 (citing *Pentec Inc. v. Graphic Control Corp.,* 776 F.2d 309, 316 (Fed. Cir. 1985)).

151.    Merck bears the burden of demonstrating that any commercial success of once-weekly risedronate is attributable to the invention, *i.e.*, to the once-weekly dosing regimen.  *Richardson-Vicks, Inc.*, 122 F.3d at 1483.  Merck can not show either that the once-weekly risedronate product was a "commercial success" or that any such success is causally related to the claimed invention.  Merck's evidence is based on an econometric

model that is inappropriate because several of the key assumptions underlying the model are not met in the case of ACTONEL®; thus the model used by Merck in attempting to establish commercial success does not accurately depict the market. Merck's analysis also did not consider any of the other significant events that were occurring in the marketplace that would have tended to contribute to the sales of once-weekly risedronate, or the promotional spending and detailing activities of P&G that also affected the sales of the once-weekly risedronate product.

152. Merck can not demonstrate that the sales of once-weekly risedronate were attributable in any way to the invention claimed in the '329 and '932 patents, as distinguished from the benefits of the drug itself and the other factors that existed in the marketplace.

153. Merck's reliance on the taking of a license to the once-weekly Merck patents by P&G as an indicator of the "importance" of these patents to ACTONEL®'s success is misplaced and lacks a reasonable basis. The two percent royalty agreed to by Merck is lower than would be expected of a valid, infringed, and enforceable patent, and indicates that the parties do not believe that the Merck patents are an important component of ACTONEL®'s success. When placed in context, *i.e.*, Merck's licensing allows ACTONEL® to compete directly against its own once-weekly product, resulting in its lost profits likely exceeding its royalty from P&G by a factor of ten to one, Merck's license to P&G signifies the insignificance attributed to the Merck patents by the parties.